Jaimee Katz Sussner, Esq.
Joshua N. Howley, Esq.
SILLS CUMMIS & GROSS P.C.
Newark, New Jersey 07102
(973) 643-7000

*Attorneys for Court-Appointed Receiver*
*Colliers International NJ, LLC*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

```
-------------------------------------------------------x
```
U.S. BANK NATIONAL ASSOCIATION,  : Civil Action No. 19-cv-17865 (MCA)(LDW)
AS TRUSTEE FOR THE REGISTERED  :
HOLDERS OF WELLS FARGO  :
COMMERCIAL MORTGAGE  :
SECURITIES, INC., MULTIFAMILY  :
MORTGAGE PASS-THROUGH  :
CERTIFICATES, SERIES 2018-SB51, *et al.,*  :

              Plaintiffs,  :

    vs.  :

ATLANTIC NORSE, LLC, *et al.,*  :

            Defendants.  :

```
-------------------------------------------------------x
```

**DECLARATION OF RICHARD J. MADISON IN SUPPORT OF RECEIVER'S MOTION TO APPROVE SALE OF PROPERTIES FREE AND CLEAR, AUTHORIZING DISTRIBUTION OF SALES PROCEEDS, AND GRANTING <u>OTHER RELATED RELIEF</u>**

RICHARD J. MADISON, pursuant to 28 U.S.C. § 1746, declares as follows:

1.    I am an Executive Managing Director of Colliers International NJ LLC ("**<u>Colliers</u>**" or "**<u>Receiver</u>**"), and I have personal knowledge of the facts and circumstances set forth in this Declaration unless otherwise indicated.

2.    Colliers is the Court-Appointed Receiver for the properties that are at issue in the above-referenced action pursuant to Orders of the Court entered on September 13, 2019 (ECF # 5), and amended on December 4, 2019 (ECF # 46) (together, the "**<u>Receiver Order</u>**").

3.      I respectfully submit this Declaration in support of the Receiver's Motion to approve the sale of certain properties that are the subjects of the action, to authorize the Receiver to disburse the net proceeds from the sale, and for related relief incidental to consummating the sale (the "**Sale Approval Motion**"), pursuant to Paragraphs 6(i) and 27 of the Receiver Order, and the Court's Order Setting Forth Sales Procedures entered May 29, 2020 (the "**Sales Procedure Order**").

4.      Specifically, pursuant to the Receiver Order and Sales Procedure Order, the Receiver respectfully requests the Court's approval of the Agreement of Purchase and Sale, dated as of February 17, 2021, as amended on May 26, 2021, and as may be amended thereafter (the "**PSA**"),[1] entered into between Colliers and ARGO Atlantic LLC, assignee of ARGO Management, LLC, or its assignee ("**Purchaser**"), free and clear of all liens, claims, and encumbrances of any alleged interested or affected party (the "**Interested Parties**"), of the following properties (the "**Subject Properties**"):

| Title Holder | Property Address | First Priority Mortgagee |
|---|---|---|
| Atlantic Norse, LLC | (i) 212 Atlantic Ave., Atlantic City, NJ 08401, also known as Block 126, Lot 4; (ii) 214 Atlantic Ave., Atlantic City, NJ 08401, also known as Block 126, Lot 3; and (iii) 225 Atlantic Ave., Atlantic City, NJ 08401, also known as Block 125, Lot 22 | Wilmington Trust, National Association, as Trustee for the Registered Holders of Credit Suisse First Boston Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2019-SB61 ("**Wilmington**" or "**Plaintiff**") |

---

[1] Annexed hereto as **Exhibit A** is a true and correct copy of the PSA, including the First Amendment to the PSA dated May 26, 2021, and the assignment of the PSA from Argo Management LLC to Argo Atlantic LLC dated June 4, 2021.

**The Status of the Subject Properties**

5.      As set forth in the Receiver's Monthly Status Reports submitted in connection with this action, and in prior pleadings filed with this Court, prior to the inception of the receivership, the Subject Properties were neglected, in disrepair, and mismanaged by their owners.

6.      Consistent with its duties and obligations to this Court, the Receiver has taken steps to improve, maintain, and halt any further deterioration of the Subject Properties. Nonetheless, as reflected in the Receiver's April 2021 Monthly Report annexed hereto as **Exhibit B**, this Property is operating at a significant deficiency due to the need for extensive maintenance and repairs at the Subject Properties, and a large number of defaulting tenants against whom collection has been stayed pursuant to the Executive Orders issued by Governor Murphy in response to the COVID-19 health emergency.

7.       While each of the Subject Properties is the subject of a pending foreclosure action in New Jersey Superior Court, upon information and belief, none of the Subject Properties have been scheduled for sheriff's sale, and the first priority mortgagee for the Subject Properties has consented to the proposed sale to Purchaser based upon the terms presented.

**Efforts to Market and Sell the Subject Properties**

8.      In an effort to sell the Subject Properties, Gebroe-Hammer Associates (the "**Broker**") was engaged to serve as the real estate broker and to market the Subject Properties for sale. The Broker's efforts are detailed in the Declaration of Joseph Brecher submitted herewith.

9.      As set forth in more detail below, a purchase offer was ultimately received that, even after the reduction of the final sales price reflected in the First Amendment to the PSA, in Colliers' business judgment, is fair, reasonable, and the best opportunity to maximize a return to the Interested Parties.

## The PSA

10.     On or about December 17, 2020, GH forwarded Colliers a Letter of Intent ("LOI") from Purchaser to purchase the Subject Properties.

11.     Upon information and belief, Purchaser is not a successor in interest or alter ego of any the defendants in this action or, upon information and belief, of any Interested Party.

12.     Consistent with Colliers' experience with sales of similar properties, Purchaser required that any sale transaction result in its receipt of clear title to the Subject Properties, free and clear of all prior liens, claims, and encumbrances.

13.     On or about February 17, 2021, Colliers and Purchaser executed the PSA, a non-binding contract for the sale and purchase of the Subject Properties. On May 26, 2021, Colliers and Purchaser executed an Amendment to the PSA that reduced the purchase price by $100,000.00. See Exhibit A.  In my business judgment, the reduction was acceptable on account of certain property-related issues that were discovered during the due diligence period, and the final purchase price is still the best opportunity to secure a sale of the Subject Properties that will maximize a return to the Interested Parties.

14.     My understanding is that the first position mortgagee for the Subject Properties, Wilmington, has consented to the terms of the PSA although that the sales price will not satisfy its mortgage in full.

15.     Moreover, notwithstanding the Receiver's ongoing efforts to manage, repair, and preserve the Subject Properties, because the secured debt held by Wilmington increases by virtue of accumulation of mortgage interest and real estate taxes, among other things, if this sale does not occur, it will only become more difficult to market and sell the Subject Properties.

16.     Based on the foregoing, Colliers respectfully requests that the Court grant this Motion, approve the Receiver's sale of the Subject Properties free and clear of all liens, claims, and encumbrances, authorize the Receiver to disburse the net proceeds, including the amounts identified as due to the Receiver in Exhibit C attached to the proposed Order submitted herewith, and establish the procedure for the Receiver's submission of a final accounting and discharge as to the Subject Properties only.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on June 8, 2021.

_____
RICHARD J. MADISON

# Exhibit A

**AGREEMENT OF PURCHASE**

**AND SALE**

**dated as of February 17, 2021**

**between**

**Colliers International NJ LLC, as Court-Appointed Receiver for the Property, Pursuant to**

**the Receiver Order**

**as SELLER,**

**and**

**ARGO Management LLC**

**as PURCHASER**

## Table of Contents

|  |  | Page |
|---|---|---|
| **ARTICLE 1 DEFINITIONS; RULES OF CONSTRUCTION** | | 1 |
| 1.1 | Definitions | 1 |
| **ARTICLE 2 PURCHASE AND SALE; DEPOSIT; PAYMENT OF PURCHASE PRICE** | | 6 |
| 2.1 | Purchase and Sale | 6 |
| 2.2 | Payment of Purchase Price | 6 |
| **ARTICLE 3 COURT APPROVAL** | | 6 |
| 3.1 | **Disclaimer/Court Approval** | 6 |
| 3.2 | The Approval Order | 7 |
| 3.3 | Receivership Estate | 7 |
| **ARTICLE 4 INTENTIONALLY OMITTED** | | 7 |
| **ARTICLE 5 PURCHASER'S REPRESENTATIONS, WARRANTIES AND COVENANTS** | | 7 |
| 5.1 | Organization and Power | 7 |
| 5.2 | Noncontravention | 8 |
| 5.3 | Litigation | 8 |
| 5.4 | OFAC | 8 |
| 5.5 | Anti-Money Laundering Laws | 8 |
| 5.6 | Patriot Act | 9 |
| 5.7 | Survival | 9 |
| **ARTICLE 6 CONDITIONS AND ADDITIONAL COVENANTS** | | 9 |
| 6.1 | Conditions to Purchaser's Obligations | 9 |
| 6.2 | Conditions to Seller's Obligations | 9 |
| 6.3 | Leases and Security Deposits | 10 |
| **ARTICLE 7 CLOSING** | | 10 |
| 7.1 | Closing | 10 |
| 7.2 | Seller's Deliveries | 11 |
| 7.3 | Purchaser's Deliveries | 12 |
| 7.4 | Closing Costs | 12 |
| 7.5 | Prorations | 12 |
| 7.6 | Escrow Agent | 14 |

i

**ARTICLE 8 CONDEMNATION; RISK OF LOSS** ................................................ 14

   8.1    Condemnation ................................................................ 14

   8.2    Risk of Loss ................................................................ 15

**ARTICLE 9 LIABILITY OF SELLER; TERMINATION RIGHTS** ................ 15

   9.1    Liability of Seller ........................................................ 15

   9.2    Termination by Purchaser ........................................ 16

   9.3    Termination by Seller ................................................ 16

**ARTICLE 10 DUE DILIGENCE** ................................................................ 17

   10.1   Feasibility Period. ........................................................ 17

   10.2   Delivery of Data. ........................................................ 18

   10.3   Right To Terminate During Feasibility Period. ........ 18

**ARTICLE 11 MISCELLANEOUS** ................................................................ 18

   11.1   Completeness; Modification ...................................... 18

   11.2   Assignments ................................................................ 18

   11.3   Successors and Assigns .............................................. 18

   11.4   Days ............................................................................ 18

   11.5   Governing Law ............................................................ 19

   11.6   Counterparts ................................................................ 19

   11.7   Severability ................................................................ 19

   11.8   Costs ............................................................................ 19

   11.9   Notices ........................................................................ 19

   11.10  Incorporation by Reference ...................................... 20

   11.11  Further Assurances .................................................... 20

   11.12  No Partnership ............................................................ 20

   11.13  Time of Essence .......................................................... 20

   11.14  No Third-Party Beneficiary ...................................... 20

   11.15  Waiver of Jury Trial .................................................. 21

   11.16  Transfer Taxes ............................................................ 21

   11.17  No Representation; Purchaser's Duty to Review ...... 21

   11.18  Release of Seller. ........................................................ 22

   11.19  Broker.. ...................................................................... 23

   11.20  Confidentiality; Public Disclosure. .......................... 23

   11.21  Right to Market .......................................................... 23

ii

11.22   Waiver of Right to Record Lis Pendens.. ........................................................... 23

7694622 v7

**LIST OF EXHIBITS**

| | | |
|---|---|---|
| Exhibit A | - | Owner, Property, Purchaser and Purchase Price |
| Exhibit B | - | Legal Description of Land |
| Exhibit C | - | Sale Order |
| Exhibit D | - | Form of Deed |
| Exhibit E | - | Form of Bill of Sale |
| Exhibit F | - | Form of Assignment and Assumption of Leases and Intangible Rights |
| Exhibit G | - | Form of Environmental Indemnity Agreement |
| Exhibit H | - | Form of Tax Affidavit |
| Exhibit I | - | Form of Tenant Notice Letter |
| Exhibit J | - | Form of Affidavit of Title |

7694622 v7

AGREEMENT OF PURCHASE AND SALE

THIS AGREEMENT OF PURCHASE AND SALE (this "Agreement"), dated as of February 17, 2021 ("Effective Date"), between Colliers International NJ LLC, in its capacity as the Court-Appointed Receiver for that certain real property identified and described on Exhibits A and B annexed hereto and incorporated herein (hereinafter, the "Property"), and as more fully described on Exhibits A and B to that certain Amended Preliminary Injunction and Receivership Order, entered on December 4, 2019 (the "Receiver Order"), in *U.S. Bank National Association, as Trustee for the Registered Holders of Wells Fargo Commercial Mortgage Securities, Inc. Multifamily Mortgage Pass-Through Certificates, Series 2018-SB51 et al. v. Englewood Funding, LLC et al.,* Civil Action No. 2:19-CV-17865 (MCA)(LDW)  (the "Action") (Colliers International NJ LLC in such capacity is hereinafter referred to as "Seller"), and ARGO Management LLC ("Purchaser").

RECITALS:

WHEREAS, Owner, as identified on Exhibit A, owns a fee simple interest in the Property (as further defined below); and

WHEREAS, pursuant to the Receiver Order entered by the United States District Court for the District of New Jersey (the "Court") in the Action, and an Order Setting Forth Sale Procedures, dated December 4, 2019, also entered by the Court in the Action, a copy of which is attached hereto as Exhibit C (the "Sale Order"), Seller is authorized to market and sell the Property; and

WHEREAS, subject to the terms and conditions set forth in this Agreement, Purchaser desires to acquire from Seller and, subject to the entry of the Approval Order (defined below), Seller desires to sell to Purchaser the Property (as defined below) for the Purchase Price (defined below), upon the terms and conditions of this Agreement.

NOW THEREFORE, in consideration of the foregoing and the representations, warranties, covenants and agreements contained in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller and Purchaser agree as follows:

## ARTICLE 1
## DEFINITIONS; RULES OF CONSTRUCTION

1.1     Definitions.

The following terms shall have the indicated meanings:

 "Agreement" has the meaning set forth in the preamble hereto.

"Applicable Laws" means all statutes, laws (including common law), regulations, rules, ordinances, codes and other requirements of any Governmental Body, including any Orders.

"Approval Order" means an order of the Court approving the Transaction pursuant to this Agreement, and as further defined in the Sale Order, in form and substance acceptable to the Seller in its reasonable discretion.

"Assignment and Assumption Agreement" means an assignment and assumption agreement pursuant to which Seller shall assign without warranty or representation of any kind, and Purchaser shall assume from Seller, the Security Deposits and the Leases corresponding to the Real Property which such Purchaser shall acquire, a form of which is attached hereto as Exhibit F.

"Bill of Sale" means a bill of sale conveying title to the Tangible Personal Property, and Intangible Personal Property, to the extent assignable, from Seller to Purchaser, a form of which is attached hereto as Exhibit E.

"Business Day" shall mean any day other than a Saturday, Sunday, or any other day on which commercial banks in New Jersey are authorized or obligated to close under applicable laws.

"Claims" means claims, suits, proceedings, causes of action, Liabilities, losses, damages, penalties, judgments, settlements, costs, expenses, fines, disbursements, demands, reasonable costs, fees and expenses of counsel, including in respect of investigation, interest, demands and actions of any nature or any kind whatsoever.

"Closing" means a consummation of a purchase and sale of the Property pursuant to this Agreement.

"Closing Date" means the date on which the Closing occurs, but in no event later than the date identified in Section 7.1.

"Contracts" shall mean any contracts and agreements (other than the Leases) entered into by Seller (whether oral or written) during the Receivership Period, affecting or related to the Property by which Seller is bound in connection with the operation of the Property.

"Deed" means, with respect to the Real Property, a quitclaim deed conveying title to such Real Property from Seller to the applicable Purchaser in recordable form, in form attached hereto as Exhibit C, conveying to Purchaser all of Seller's right, title and interest in and to the Property, all in an "as-is, where-is condition, and with all faults," and without any representation or warranty other than as expressly set forth in this Agreement, subject to the Permitted Exceptions and acceptable to the Title Company.

"Effective Date" has the meaning set forth in the preamble hereto.

"Encumbrances" means all easements, rights of way, restrictions, executions or other encumbrances (including notices or other registrations in respect of any of the foregoing) affecting the title, current use, occupancy or operation of the Property or any part thereof or interest therein.

"Environmental Indemnity Agreement" shall mean that certain agreement in favor of Seller, a form of which is attached hereto as Exhibit G.

"Final Closing Statement" has the meaning set forth in Section 7.5(c).

2

"Governmental Body" means any federal, state, municipal or other governmental department, commission, board, bureau, agency or instrumentality, domestic or foreign.

"Hazardous Substances" means any substance, chemical or waste that is listed as hazardous, toxic or dangerous under any applicable federal, state, county or local statute, rule, regulation, ordinance or order.

"Improvements" means, with respect to the Land (or any portion thereof) all buildings, improvements, fixtures, structures, and other items of real estate located thereon.

"Intangible Personal Property" means, to the extent assignable, all intangible personal property, if any, under the control and in the possession of Seller and used solely in connection with the ownership, operation, leasing, occupancy or maintenance of the Property, including, without limitation, the escrow accounts, general intangibles, business records, plans and specifications, and surveys pertaining to the Real Property and the Personal Property, all licenses, permits and approvals with respect to the construction, ownership, operation, leasing, occupancy or maintenance of the Property, any unpaid award for taking by condemnation or any damage to the Land by reason of a change of grade or location of or access to any street or highway.

"Land" means the land legally described on Exhibit B hereto, or all such land (as the context may require), together with all easements, rights, privileges, remainders, reversions and appurtenances thereunto belonging or in any way appertaining, and all of the estate, right, title, interest, claim or demand whatsoever of the Seller therein, in the streets and ways adjacent thereto and in the beds thereof, either at law or in equity, in possession or expectancy.

"Leases" means any agreements to lease, leases, renewals of leases, subtenancy agreements and other rights (including licenses) and all amendments thereto entered into directly between Seller and a tenant or occupant (and not any other party, including Owner) during the Receivership Period, in effect at the time of Closing, which Purchaser shall assume and Seller agrees to assign without representation or warranty, in accordance with Section 7.2 hereof by Assignment and Assumption Agreement.

"Liability" means any debt, liability, commitment or other obligation (whether direct or indirect, known or unknown, absolute or contingent, accrued or unaccrued, liquidated or unliquidated, or due or not yet due) and including all costs, fees and expenses relating thereto.

"Order" means any order, court order, writ, judgment, injunction, decree, stipulation, determination, decision, verdict, ruling, or award entered by or with any Governmental Body (whether temporary, preliminary or permanent).

"Party" means Seller or any Purchaser, individually, and "Parties" means Seller and Purchaser, collectively.

"Permitted Exceptions" means: (i) any state of facts that would be shown on any accurate survey of the Real Property prepared by a professionally licensed land surveyor, including any easements, rights of way, covenants, conditions, limitations and restrictions of record, (ii) all Encumbrances; (iii) laws, regulations, resolutions or ordinances, including building, zoning and environmental protection, as to the use, occupancy, subdivision, development, conversion or

3

redevelopment of the Real Property imposed by any Governmental Body, (iv) liens for Taxes not yet due and payable, (v) all other matters of public record, (vi) all exceptions set forth on the Title Commitment, and (vii) the Leases and other occupancies at the Real Property.

"Person" means an individual, a partnership, a joint venture, a corporation, a business trust, a limited liability company, a trust, an unincorporated organization, a joint stock company, a labor union, an estate, a Governmental Body or any other entity.

"Personal Property" means the Tangible Personal Property and the Intangible Personal Property.

"Property" means, the Real Property owned by Owner, all related Personal Property and Seller's interest in any Leases (to the extent any are in effect at Closing) and the Security Deposits.

"Purchase Price" means the purchase price specified on Exhibit A hereto, which may be adjusted in accordance with Section 7.5 herein (or as otherwise provided in this Agreement).

"Purchaser" has the meaning set forth in the preamble hereto.

"Real Property" means the Land and the Improvements.

"Receiver Order" shall have the meaning set forth in the preamble hereto.

"Receivership Period" shall mean the period commencing when Seller was appointed the receiver of the Property pursuant to the Receiver Order, through the Closing.

"Rent(s)" shall have the meaning set forth in Section 7.5(b) herein.

"Representative" means with respect to any Person, such Person's officers, directors, managers, employees, agents, representatives and financing sources (including any investment banker, financial advisor, accountant, legal counsel, agent, representative or expert retained by or acting on behalf of such Person or its subsidiaries).

"Security Deposits" means all refundable tenant security deposits and letters of credit in lieu of cash security deposits actually received by Seller pursuant to the Leases to the extent such deposits have not been applied against any obligations owing by such tenants under the Leases.

"Seller" has the meaning set forth in the preamble hereto.

"Survey" means a survey of the Real Property delineating the boundary lines of the Land, location of the Improvements, all rights of way and easements and contiguous public roads, as may be obtained by Purchaser at its cost and expense.

"Tangible Personal Property" means the items of tangible personal property consisting of all furniture, fixtures and equipment situated on, attached to or used solely in the operation of the Property, and all furniture furnishings, equipment, machinery and other personal property of every kind located on or used solely in the operation of any Improvement that Seller has an interest in, if any, or the cash proceeds from the sale of any of the foregoing.

"Tax" or "Taxes" means any federal, state, local or non-U.S. net income, gross income, gross receipts, windfall profit, severance, property, production, sales, use, license, excise, franchise, employment, unemployment, payroll, withholding, alternative or add on minimum, ad valorem, value added, transfer, stamp, or environmental tax, escheat payments or any other tax, custom, duty, impost, levy, governmental fee or other like assessment or charge (together with any and all interest, penalties, additions to tax and additional amounts imposed with respect thereto) imposed by a governmental authority against or on the Property.

"Title Company" means Iconic Title Agency LLC, 1815 Lakewood Road, Suite 127, Toms River, New Jersey 08753, Attn: Pearl Stendig, ps@iconictitleagency.com.

"Title Commitment" means a title insurance commitment from the Title Company, describing the Real Property.

"Title Policy" means an owner's title insurance policy, pro forma, or marked and signed title commitment issued to Purchaser by the Title Company, pursuant to which the Title Company insures the Purchaser's ownership of fee simple title to the Real Property described therein subject only to Permitted Exceptions applicable to such Real Property (but also subject to any encumbrances and liens placed on the Property by Purchaser).

"Transaction" means the transactions contemplated by this Agreement to be consummated at the Closing, including, but not limited to, the purchase and sale of the Property.

"Transfer Taxes" means all state and local transfer, documentary, recording, sales, use, stamp, registration conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, or other similar Taxes or governmental assessment in the United States (including any state, municipality, or county).

<u>Rules of Construction.</u>

The following rules shall apply to the construction and interpretation of this Agreement:

(a)     Singular words shall connote the plural number as well as the singular and vice versa, and the masculine shall include the feminine and the neuter.

(b)     All references herein to particular articles, sections, subsections, clauses or exhibits are references to articles, sections, subsections, clauses or exhibits of this Agreement.

(c)     The table of contents and headings contained herein are solely for convenience of reference and shall not constitute a part of this Agreement nor shall they affect its meaning, construction or effect.

(d)     Each Party and its counsel have reviewed and revised (or requested revisions of) this Agreement, and therefore any usual rules of construction requiring that ambiguities are to be resolved against a particular Party shall not be applicable in the construction and interpretation of this Agreement or any exhibits hereto.

7694622 v7

## ARTICLE 2
## PURCHASE AND SALE; DEPOSIT; PAYMENT OF PURCHASE PRICE

2.1     <u>Purchase and Sale</u>.  Subject to the terms, conditions and provisions set forth herein, Seller agrees to sell, transfer, assign, set over and convey to the Purchaser "**as-is, where-is and with all faults**," and the Purchaser agrees to purchase, acquire and assume from Seller "**as-is, where-is and with all faults**," all of Seller's right, title and interest, if any, in, to and under the Property (subject to the Permitted Exceptions), for the Purchase Price.

2.2     <u>Payment of Purchase Price</u>.  Subject to the terms of this Agreement, Seller is to sell and Purchaser is to purchase the Property for the Purchase Price.  If more than one Property is included in this sale, the Purchase Price allocated to each Property is set forth on <u>Exhibit A</u>, and is incorporated herein.

(a)     The Purchase Price for the Property shall be paid in the following manner:

(i)     A deposit in the amount of Fifty Thousand Dollars ($50,000.00) (the "<u>Initial Earnest Money</u>"), shall be due immediately upon the execution of the Agreement by Seller and Purchaser, payable in immediately available funds, and shall be delivered to Iconic Title Agency LLC, whose contact information is 1815 Lakewood Road, Suite 127, Toms River, New Jersey 08753, Attn: Pearl Stendig, ps@iconictitleagency.com ("<u>Escrow Agent</u>"). If Purchaser does not terminate the Agreement prior to the expiration of the Feasibility Period, as defined in Article 10, Purchaser shall pay an additional deposit in the amount of Fifty Thousand Dollars ($50,000.00) (the "Additional Earnest Money", together with the Initial Earnest Money, the "Earnest Money") in immediately available funds to Escrow Agent immediately upon the expiration of the Feasibility Period. The Earnest Money shall be held in escrow by the Escrow Agent in accordance with the terms of this Agreement. The Earnest Money will be non-refundable to Purchaser except as set forth in this Agreement.

(ii)     The balance of the Purchase Price, following any prorations and adjustments at Closing (all as provided below), is due on the Closing Date and is payable in immediately available funds and shall be paid by Purchaser to Seller by wire transfer of immediately available funds at the Closing. Wire instructions shall be sent by or on behalf of the Seller to the Escrow Agent on or before the Closing Date.

## ARTICLE 3
## COURT APPROVAL

3.1     **<u>Disclaimer/Court Approval</u>.  Purchaser acknowledges that it has no legally enforceable rights, claims or causes of action against Seller/Receiver hereunder unless and until this Agreement has been subject to a final, non-appealable Approval Order as defined in Paragraph 9 of the Sale Order.  This Agreement shall automatically terminate in the event the Court declines to enter the Approval Order, whereupon the Earnest Money shall be refunded to Purchaser. Purchaser also acknowledges that this Agreement is subject to the Sale Order, and that the parties shall comply with the terms and conditions thereof.**

7694622 v7

3.2     The Approval Order.   The Approval Order, as applicable, shall, among other matters:

(a)     approve (i) this Agreement and the consummation of the Transaction upon the terms and subject to the conditions of this Agreement, and (ii) all actions as may be necessary or appropriate to effectuate the Transaction; and

(b)     authorize Seller to assign to Purchaser all Leases (if any); and

(c)     approve any other agreement to the extent provided by this Agreement;

3.3     Receivership Estate.   Purchaser acknowledges that Seller does not own the Property and that Seller is only the duly appointed receiver for the Property as provided in the Receiver Order. Notwithstanding anything in this Agreement to the contrary, any liability of Seller under this Agreement shall be limited solely to the receivership estate ("Receivership Estate") established pursuant to the Receiver Order. It is expressly acknowledged and agreed that no assets of Seller in its individual or limited liability capacity shall be subject to any claim for liability of Seller under this Agreement or in connection with, arising under, or as the result of any documents provided by Seller to Purchaser, any termination of this Agreement, or the consummation of the Transaction contemplated under this Agreement or under any of the documents delivered by Seller at or in connection with the Closing. Any claims of Purchaser under this Agreement shall be paid solely and exclusively from the Receivership Estate. Purchaser further acknowledges that Owner shall have no liability of any kind under this Agreement or with respect to the Property or the consummation of the Transaction.

## ARTICLE 4
## INTENTIONALLY OMITTED

## ARTICLE 5
## PURCHASER'S REPRESENTATIONS, WARRANTIES AND COVENANTS

To induce Seller to enter into this Agreement and to sell the Property to Purchaser, subject to the terms of this Agreement, Purchaser hereby makes the following representations, warranties and covenants, upon each of which Purchaser acknowledges and agrees that Seller is entitled to rely and has relied. Each such representation and warranty shall be true and correct in all material respects on the Effective Date and on the Closing Date.

5.1     Organization and Power.

(a)     Purchaser is a limited liability company, duly organized, validly existing and in good standing under the laws of the State of New Jersey, and has all powers and all governmental licenses, authorizations, consents and approvals to carry on its business as now conducted and to enter into and perform its obligations under this Agreement and any document or instrument required to be executed and delivered on behalf of Purchaser hereunder.

(b)     Purchaser has full right, authority and capacity to execute and perform this Agreement and to consummate the Transaction.

7

(c)      if Purchaser is an entity or a trustee of a trust, the individual of the Purchaser who executes and delivers this Agreement and all documents to be delivered to Seller hereunder is and shall be duly authorized to do so.

(d)      Purchaser is not owned, in whole or in part, by, nor does Purchaser own or hold any part of the beneficial ownership in, Seller.

(e)      Purchaser is not in a significantly disparate bargaining position in relation to Seller.

(f)      Purchaser is represented by legal counsel of its own choice and designation in connection with the Transaction.

(g)      Purchaser is purchasing the Property for business or commercial investment or similar purpose and not for use as Purchaser's residence.

5.2      <u>Noncontravention</u>.  The execution and delivery of this Agreement and the performance by Purchaser of its obligations hereunder do not and will not contravene, or constitute a default under, any provisions of Applicable Law, Purchaser's organizational documents, or any agreement, judgment, injunction, order, decree or other instrument binding upon Purchaser.

5.3      <u>Litigation</u>.  To the knowledge of Purchaser, there is no action, suit or proceeding, pending or known by Purchaser to be threatened against or affecting Purchaser in any court or before any arbitrator or before any Governmental Body which (a) in any manner raises any question affecting the validity or enforceability of this Agreement or any other agreement or instrument to which the Purchaser is a party or by which it is bound and that is to be used in connection with, or is contemplated by, this Agreement, (b) could affect the ability of any Purchaser to perform its obligations hereunder, or under any document to be delivered pursuant hereto, (c) could create a lien on the Property, any part thereof or any interest therein, or (d) could adversely affect the Property, any part thereof or any interest therein, or the use, operation, condition or occupancy thereof.

5.4      <u>OFAC</u>.  Purchaser is not now nor shall it be at any time prior to or at the Closing a Person with whom a U.S. Person is prohibited from transacting business of the type contemplated by this Agreement, whether such prohibition arises under United States law, regulation, executive orders and lists published by OFAC (including those executive orders and lists published by OFAC with respect to Specially Designated Nationals and Blocked Persons) or otherwise.  Neither Purchaser nor any Person who owns an interest in Purchaser (collectively, a "<u>Purchaser Party</u>") is now nor shall be at any time prior to or at the Closing a Person with whom a U.S. Person, including a Financial Institution, is prohibited from transacting business of the type contemplated by this Agreement, whether such prohibition arises under United States law, regulation, executive orders and lists published by OFAC (including those executive orders and lists published by OFAC with respect to Specially Designated Nationals and Blocked Persons) or otherwise.

5.5      <u>Anti-Money Laundering Laws</u>. Neither Purchaser nor any Purchaser Party, nor any Person providing funds to Purchaser: (a) is under investigation by any governmental authority for, or has been charged with, or convicted of, money laundering, drug trafficking, terrorist related activities, any crimes which in the United States would be predicate crimes to money laundering, or any violations of any Anti-Money Laundering Laws; (b) has been assessed civil or criminal

8

penalties under any Anti-Money Laundering Laws; or (c) has had any of its funds seized or forfeited in any action under any Anti-Money Laundering Laws.

5.6     Patriot Act. To Purchaser's knowledge, Purchaser is in compliance with any and all applicable provisions of the Patriot Act.

5.7     Survival. All representations and warranties in this Article 5 shall survive the Closing for a period of one (1) year.

## ARTICLE 6
## CONDITIONS AND ADDITIONAL COVENANTS

6.1     Conditions to Purchaser's Obligations. Purchaser's obligations hereunder are subject to the satisfaction of the following conditions precedent with respect to the Property and the compliance by Seller with the following covenants, to the extent applicable to Seller:

(a)     Seller's Deliveries. Seller shall have delivered to the Title Company or the Purchaser, as the case may be, on or before the Closing Date, all of the documents and other information required of Seller pursuant to Section 7.2.

(b)     Court Approval. The Court shall have entered the Approval Order.

(c)     Owner's Title Policy. Subject to Article 10, Purchaser shall have obtained a Title Policy for the Property subject to the Title Company's receipt of payment of the cost therefor as hereinafter provided in Section 7.4, in the amount of the Purchase Price and insuring title to the Property subject to the Permitted Exceptions (but also subject to any encumbrances and liens placed on the Property by Purchaser); provided Purchaser, at its cost and expense, shall have the right to request that the Title Company issue extended coverage or endorsements to such standard policy of title insurance as part of or in connection with the issuance of the above-noted Title Policy. The issuance of such extended coverage or endorsements is not a condition precedent to the Closing and shall not delay or extend the Closing Date; provided, however that this condition precedent set forth in this Section 6.1(c) shall be deemed waived by Purchaser if Purchaser fails to use commercially reasonable efforts to obtain such Policy with respect to a specific Property.

6.2     Conditions to Seller's Obligations. Seller's obligations hereunder are subject to the satisfaction of the following conditions precedent with respect to the Property and the compliance by Purchaser with the following covenants, to the extent applicable to Purchaser:

(a)     Purchaser's Deliveries. Purchaser shall have delivered to the Title Company, on or before the Closing Date, the Purchase Price and all of the documents and other information required of such Purchaser pursuant to Section 7.3.

(b)     Representations, Warranties and Covenants; Obligations of Purchaser. All of Purchaser's representations and warranties made in this Agreement shall be materially true and correct as of the Effective Date and as of the Closing Date as if then made and Purchaser shall have performed all of the covenants and other obligations under this Agreement applicable to the Purchaser(s).

7694622 v7

(c)   <u>Court Approval.</u> The Court shall have entered the Approval Order.

6.3   <u>Leases and Security Deposits.</u>  Seller does not undertake or guarantee that the status of the Leases will not change prior to the Closing or that any Lease will be in full force or effect on the Closing, and Purchaser agrees that the voluntary or involuntary expiration or termination of any such Lease(s) or removal of tenants or occupants before or after institution of summary proceedings or otherwise shall not give rise to any reduction or abatement of the Purchase Price or other claim or remedy on the part of Purchaser against Seller.  At Closing, Seller shall afford Purchaser a credit in the amount of all cash Security Deposits, including any interest thereon, held by the Seller or its agent as of the Closing Date and shall assign to Purchaser all rights with respect to any such Security Deposits that are other than cash.  Purchaser acknowledges that although a request has been made for the Owner to turn over all Security Deposits received by Owner in connection with the Real Property to Seller, such funds are, apparently, no longer with Owner. Paragraph 17 of the Receiver Order provides in relevant part as follows:

> The Receiver shall not be liable or responsible for . . . any obligation or liability to refund, return or reimburse any security deposit(s) to any tenant(s) of the Properties that were paid by the tenant(s) to the owner of the applicable Property (the "Owner") prior to the date on which the original Receiver Order applicable to that Property was entered and for which the Owner of that Property has not transferred such security deposit to the Receiver.

Purchaser shall be responsible for any and all fees payable to the issuer of any letter of credit in connection with the transfer of any such letter of credit to Purchaser in connection with Closing, unless such fees are payable by the Tenant on whose behalf the letter of credit was issued.

## ARTICLE 7
## CLOSING

7.1   <u>Closing.</u>  The Closing shall take place at 10:00 a.m. on the date that is the later of: (i) sixty (60) days after the date on which the Court enters the Approval Order ("Closing Deadline"), provided that the Closing Deadline shall be extended if any appeal of the Approval Order is filed within such sixty (60)-day period, by the period of time necessary to resolve such appeal and obtain a final, non-appealable Approval Order; or (ii) thirty (30) days after the expiration of the Feasibility Period (hereafter defined) (subject to the satisfaction or waiver in writing of the conditions set forth in <u>Article 6</u> and <u>Article 7</u> (other than any conditions that can only be satisfied as of the Closing, but subject to the satisfaction or waiver of such conditions)), through an escrow arrangement with the Title Company, or at such other time or place, or in such other manner as may be mutually agreed to by the Parties, provided that if the Approval Order is not issued on or before August 31, 2021 ("Outside Date"), then thereafter Purchaser shall have the right to terminate this Agreement upon written notice to Seller, in which event the Earnest Money shall be refunded to Purchaser in accordance with the terms of this Agreement.  Notwithstanding the foregoing if, on the Outside Date, an appeal of the Approval Order has been filed which Seller is opposing, then the Outside Date shall be extended until October 29, 2021 ("Extension Period"), provided Purchaser's acquisition financing remains in effect during the Extension

7694622 v7

Period. Notwithstanding anything herein to the contrary, neither Party may extend the Closing Date by failing to deliver its respective deliveries set out in Section 7.3 (with respect to the Purchaser) and Section 7.2 (with respect to the Seller) on or before the date of Closing, unless the Parties otherwise agree in writing. In such event, provided that the conditions precedent to either Party's obligation to close have been met as of the Closing Date, such failure to deliver its respective deliveries shall be deemed a default under this Agreement in accordance with the terms and conditions of <u>Article 9</u> hereof.

   7.2   <u>Seller's Deliveries</u>.   Subject to the conditions precedent set forth in Section 6.2, Seller shall deliver in escrow to Escrow Agent the following instruments, each of which shall have been duly executed and, where applicable, acknowledged on behalf of Seller:

   (a)   The Deed for the Real Property;

   (b)   The Bill of Sale for the Personal Property;

   (c)   The Assignment and Assumption Agreement;

   (d)   A letter to each tenant of the Property (the "<u>Tenant Notification Letter</u>") in the form of **<u>Exhibit F</u>** attached to this Agreement;

   (e)   a Tax Affidavit, duly executed by Seller, in the form of **<u>Exhibit H</u>** attached to this Agreement;

   (f)   To the extent existing and its possession or reasonable control, Seller shall deliver, without representation or warranty of any kind: (i) the Leases; (ii) a schedule of operating expenses for the Property; and (iii) a current tax bill.   Seller will terminate all Contracts on or prior to Closing;

   (g)   The Affidavit of Title in the form attached as <u>Exhibit J</u>, and such affidavits, transfer forms, or other documents as may be reasonably required by the Title Company solely in favor of the Title Company in order to issue the Title Policy or close the Transaction (collectively the "<u>Additional Instruments</u>"); provided, however, that, (i) except with respect to a customary gap indemnity, in no event shall Seller be required to provide any indemnities to Purchaser or the Title Company hereby, and (ii) with respect to any such Additional Instruments, they must be in form and substance acceptable to Seller and Seller shall only be obligated to opine with respect to facts thereunder to its then current actual knowledge and without having made, or being required to make, any independent investigation of the facts, and only with respect to those matters first occurring during the Receivership Period and Seller shall not otherwise be required to increase its liability hereunder in any material respect;

   (h)   The Final Closing Statement (as defined below); and

   (i)   Any other document or instrument required hereby or required to be executed by Seller in order to record the Deed.

7.3     Purchaser's Deliveries.  At Closing, Purchaser shall deliver in escrow to Escrow Agent the following, each of which, as applicable, shall have been duly executed and, where applicable, acknowledged on behalf of Purchaser:

(a)     The Purchase Price described in Section 2.2;

(b)     An original counterpart of the Assignment and Assumption Agreement;

(c)     The Final Closing Statement (as defined below), duly executed by Purchaser;

(d)     An original Environmental Indemnity in the form of **Exhibit G** attached hereto, duly executed by Purchaser;

(e)     An original counterpart of the Tenant Notification Letter;

(f)      An original counterpart of the Bill of Sale and Assignment;

(g)     Such evidence of the authority and capacity of Purchaser and its Representatives as the Escrow Agent and Title Company may reasonably require; and

(h)     Any documents or instruments required hereby or required to be executed by Purchaser in order to record any Deed or Assignment or Assumption Agreement.

7.4     Closing Costs.  Purchaser shall pay for all costs and expenses associated with the conveyance of the Property, and as set forth in the Sale Order, including, but not limited to, Survey costs and expenses, title insurance premiums and fees (including, but not limited to the premium for the Title Policy and any premium attributable to any extended coverage or the issuance of any endorsements thereto or the deletion of any exceptions including the standard exceptions), any fees for a loan policy of title insurance issued by the Title Company or any other title insurance company, recording fees and taxes, Transfer Taxes in accordance with Section 11.16, all costs associated with the assignment and assumption of the Leases, any customary escrow fee charged by the Escrow Agent in connection with the Closing, due diligence expenses incurred by Purchaser, and all other fees or charges of the Escrow Agent and Title Company in connection with the Closing of the Transaction.  Purchaser shall be responsible for the payment of its own attorney's fees incurred in connection with the Transaction.

7.5     Prorations.

(a)     Apportionments Generally. The following items shall be adjusted at Closing:

(i)      For purposes hereof, the term "Adjustment Time" means 12:01 a.m. Eastern Time on the day of the Closing.

(ii)     Real estate taxes and any prepaid expenses relating to the operation of the Property shall be adjusted as of the Adjustment Time.

(iii)    Utility deposits, or other operating expenses of the Property paid by Seller for any period subsequent to the Adjustment Time shall be credited to Seller at Closing.

12

(iv)     Any income received by Seller from any tenants of the Property (each a "Tenant," collective, the "Tenants") allocable to the period from and after the Adjustment Time shall be credited to Purchaser at Closing. Seller shall remain entitled to all Rents owing prior to the Closing Date, and shall be responsible for their collection, and Purchaser will not be responsible for collecting such Rents for Seller, but if received by Purchaser, Purchaser will promptly forward such Rent to the Seller. If, following Closing, Seller or Purchaser receives any Rent attributable to any time period prior to Closing which is not the subject of prorations under this Section 7.5(a)(iv), such Rent will be the property of Seller and, if received by Purchaser, Purchaser will promptly forward such Rent to Seller. Seller shall submit to Purchaser any Rent payments received after Closing no later than ten Business Days from its receipt.  To the extent a Tenant owes Rent for a period prior to the Closing Date and owes Rent for a period from the Closing Date, and makes a payment to Purchaser, Purchaser shall first apply such amount to Rent owed to Seller, with any balance retained by Purchaser. Without limiting the provisions of this subsection (iv), Seller hereby reserves its right to bring legal proceedings directly against Tenants for collection of any Rent due Seller from such Tenants (without seeking eviction of any Tenant).  The term "Rent" or "Rents" shall mean rents due or to become due from Tenants under the Leases, including fixed rent, additional rentals, percentage rentals, escalation rentals (which include each Tenant's prorated share of building operation and maintenance costs and expenses as provided under the Leases), retroactive rentals, all administrative charges, utility charges, Tenant or real property association dues, storage rentals, special event proceeds, temporary rents, telephone receipts, locker rentals, vending machine receipts and other sums and charges payable by Tenants under the Leases or from other occupants or users of the Property.

(v)     Except as specifically provided in Section 7.5(a)(i) through (iv) hereof, there shall be no prorations of income or expenses at Closing, it being agreed that (i) after Closing, Purchaser shall be liable for the liabilities regarding the ownership and operation of the Property, including any Property-related obligations, costs and liabilities that arise after Closing, and (ii) after Closing, Purchaser shall be entitled to all revenue and income relating to the Property.

(vi)     At Closing, Purchaser shall assume responsibility for the payment of any Tenant Inducement Costs (as hereinafter defined) becoming due and payable from and after the Effective Date, including any Tenant Inducement Costs becoming due and payable by reason of Leases executed after the Effective Date and any Tenant Inducement Costs becoming due and payable from and after the Effective Date by reason of the expansion of the premises demised by a Lease existing as of the Effective Date or the renewal of a Lease existing as of the Effective Date.  If Seller shall have paid any such Tenant Inducement Costs as of the Closing Date, Purchaser shall reimburse Seller therefor at Closing.  For purposes of the foregoing provisions, the term "Tenant Inducement Costs" shall mean any payment required under a Lease to be paid by the landlord thereunder to or for the benefit of the Tenant thereunder which is in the nature of a tenant inducement, including specifically, without limitation, tenant improvement costs, lease buyouts and moving allowance, but only for any such payments paid after the Effective Date.

13

(b)     Closing Statement.  Prior to the Closing Date, Seller and Purchaser shall cause the Title Company to prepare a draft closing statement, made in accordance with the terms hereof, setting forth amounts to be prorated between Seller and Purchaser at the Closing pursuant to this Article 7. The draft closing statement shall contain Seller's good faith estimate of the amounts (based on facts and circumstances then known to Seller), as of the date of the Closing, of the items to be prorated between Seller and Purchaser, or to be credited to either Party, pursuant to this Article 7. Seller and Purchaser shall cause the information set forth in the draft closing statement to be updated with actual information available as of the Closing Date. Not later than the Closing Date, Seller and Purchaser shall cause the Escrow Agent to update the closing statement for purposes of the Closing (the "Final Closing Statement"), which statement shall include the matters on which Seller and Purchaser have agreed pursuant to this Article 7, as updated with actual information as of the Closing Date. With respect to any matter on which Seller and Purchaser still disagree as of such time, Seller's good faith determination of the amount in question as of the Closing Date shall be deemed the agreed upon amount.  The amounts shown in such Final Closing Statement shall be used in determining the amounts due or credited to Seller at the Closing, and the Escrow Agent shall rely conclusively thereon in settling the accounts of Purchaser and Seller at the Closing.

7.6     Escrow Agent.  Upon authorization from Purchaser and Seller on the Closing Date, the Escrow Agent will:

(a)     record the Deed and release to Purchaser the Bill of Sale and Assignment, the Assignment and Assumption Agreement, the Tenant Notification Letter, the Leases, the Tax Affidavit; and

(b)     release to Seller the sale proceeds and all signed counterparts required under Section 7.3.

7.7     Municipal Inspections.  Purchaser will be responsible for obtaining any smoke detector or similar certificates, certificate of occupancy, or inspections from the relevant municipality(ies) where the Property is located that may be required for the Closing, at its sole cost and expense.

## ARTICLE 8
## CONDEMNATION; RISK OF LOSS

8.1     Condemnation.  In the event of any actual or threatened taking, pursuant to the power of eminent domain, of all or any portion of the Real Property, Seller shall give written notice thereof to the Purchaser promptly after Seller learns or receives notice thereof. If all or any part of the Real Property which would materially adversely interfere with the operation or use of the Real Property as currently operated and used is, or is to be, so condemned or sold, Purchaser shall have the right to elect not to purchase the Real Property and to terminate this Agreement by written notice to Seller delivered within ten (10) days after Purchaser's receipt of Seller's notice. If Purchaser elects to terminate this Agreement pursuant to the terms of this Section 8.1, then the Earnest Money shall be returned to Purchaser and all other rights and obligations of either Party under this Agreement (other than any indemnification rights and obligations under this Agreement and any other obligations which by the express terms of this Agreement are intended to survive

any cancellation or termination of this Agreement (collectively, the "Continuing Obligations")) shall be terminated and this Agreement shall be of no further force or effect. If Purchaser elects not to terminate this Agreement, or fails to timely exercise the foregoing termination right, Purchaser shall proceed with Closing without any reduction in the Purchase Price, provided that all proceeds, awards and other payments arising out of such condemnation or sale (actual or threatened) shall be paid or assigned, as applicable, to Purchaser at Closing.

8.2     Risk of Loss.  In the event of any fire or other casualty at the Real Property, Seller shall give written notice thereof to Purchaser promptly after Seller learns or receives notice thereof, and Purchaser shall proceed with the Closing without any reduction in the Purchase Price, provided, however, that Seller shall pay or assign, as applicable, all insurance proceeds and rights to proceeds arising out of such loss or damage to the applicable Purchaser at Closing, less any reasonable costs incurred by Seller to collect such proceeds and any portion of such proceeds that Seller uses to make temporary or emergency repairs that are reasonably consented to by such Purchaser.

## ARTICLE 9
## LIABILITY OF SELLER;
## TERMINATION RIGHTS

9.1     Liability of Seller.

(a)     Seller shall not be responsible and Purchaser hereby releases Seller from and against any Claims arising out of or in connection with the Property and the Transaction, known or unknown, regardless of whether the Claim arises out of events occurring prior to or after the Closing. The foregoing release includes Claims of which Purchaser is presently unaware or which Purchaser does not presently suspect to exist which, if known by Purchaser, would materially affect Purchaser's release of Seller. Purchaser has carefully reviewed this Section 9.1, has discussed its import with legal counsel, is fully aware of its consequences, and acknowledges that this Section 9.1 is a material part of this Agreement.

(b)     Notwithstanding any other provision set forth in this Agreement, Seller shall have no liability under this Agreement, or any other liability to Purchaser or its successors or assigns resulting from, connected with, or arising out of, any breach or default except with respect to a Post-Closing Breach (as such term is hereinafter defined).  With respect to any Post-Closing Breach, Purchaser must deliver to Seller written notice and demand describing with specificity such breach within 30 days of the Closing Date, otherwise such breach or default will be deemed waived.  Seller's recourse obligations under this Agreement with respect to any breach or default by Seller (regardless of whether such default relates to any of its representations or warranties under this Agreement, relates to the Deed, or otherwise) which occurs or is discovered, brought, claimed or alleged by Purchaser following Closing (in any event a "Post-Closing Breach"), shall not exceed the aggregate sum of $10,000.00 (the "Breach Cap").  Seller shall have no liability to Purchaser after Closing for a breach or default of any of Seller's undertakings unless the valid claims for all such breaches and defaults amount, in the aggregate, to more than $5,000.00 (the "Breach Floor").  Notwithstanding anything to the contrary contained in this Agreement, (a) Purchaser's recourse against Seller for any liability of Seller under this Agreement shall be strictly limited to Seller's proceeds from the sale of the Property received from Purchaser (between the

7694622 v7

Breach Floor and the Breach Cap) and Purchaser shall have no recourse against any of Seller's other assets, and (b) in no event shall any entity or person, other than Seller itself, be liable for any obligations of Seller under this Agreement. Notwithstanding anything to the contrary contained in this Agreement, PURCHASER ACKNOWLEDGES AND AGREES THAT THE BREACH CAP REPRESENTS SELLER'S AGGREGATE MAXIMUM POTENTIAL LIABILITY UNDER THIS AGREEMENT FOR A POST-CLOSING BREACH AND, NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED IN THIS AGREEMENT, IN NO EVENT SHALL SELLER'S AGGREGATE LIABILITY UNDER THIS AGREEMENT FOR ANY POST-CLOSING BREACH EXCEED THE BREACH CAP, REGARDLESS OF THE NUMBER OF POST-CLOSING BREACHES WHICH MAY OCCUR OR HAVE OCCURRED AND REGARDLESS OF THE NUMBER OF DEMANDS MADE BY PURCHASER WHETHER RELATED TO ONE OR MULTIPLE POST-CLOSING BREACHES. Except as expressly provided in this Section 9.1(b), neither Seller nor any other Seller Parties shall have any liability of any kind to Purchaser for any Post-Closing Breach. This Section 9.1(b) shall survive the Closing and any termination of this Agreement.

9.2     <u>Termination by Purchaser</u>.  If Seller materially defaults in performing any of its obligations under this Agreement (including its obligation to sell the Property) for any reason other than a default by Purchaser under this Agreement, and Seller fails to cure any such default within three (3) Business Days after notice thereof from Purchaser, Purchaser may, at its option, elect either (but not both) (a) to terminate this Agreement by written notice delivered to the Seller at or prior to the Closing (in which event, however, the Continuing Obligations shall continue in effect), in which event the Earnest Money shall be refunded to Purchaser and all rights and obligations of Seller and Purchaser hereunder shall terminate immediately (except those which expressly survive the termination of this Agreement), or (b) to waive its right to terminate and, instead, to proceed to Closing. In either event, such election by Purchaser shall be its sole and exclusive remedy under this Agreement, under applicable law or in equity, and Purchaser shall not be entitled to any damages of any kind, whether actual, consequential, special, punitive or otherwise.

9.3     <u>Termination by Seller</u>.  If Purchaser materially defaults in performing any of its obligations under this Agreement (including its obligation to purchase any Property), and Purchaser fails to cure any such default within three (3) Business Days after notice thereof from Seller (except in the case of Purchaser's failure to perform its obligations on the Closing Date, in which case, Seller may immediately call Purchaser into default under this Agreement), and Purchaser has delivered the Earnest Money to the Escrow Agent as required under this Agreement, then Seller's sole remedy for such default shall be to terminate this Agreement and retain the Earnest Money as liquidated damages. Seller and Purchaser agree that it is difficult to determine, with any degree of certainty, the loss which Seller would incur in the event of Purchaser's failure to close the purchase of the Property, and the Parties have agreed that the amount of the Earnest Money represents a reasonable estimate of such loss and is intended as a liquidated damages provision. If upon the determination of Seller's directors, trustees, members, or agents, as applicable, and upon advice of counsel, any term or provision of this Agreement shall prevent, amend, alter, or reduce Seller's ability to exercise its fiduciary duties under Applicable Law, Seller shall have the right to terminate this Agreement. Notwithstanding the foregoing, (a) if any portion of the Earnest Money is not delivered to Escrow Agent as required under this Agreement, Purchaser shall be in breach under this Agreement and Seller shall have the right to pursue any remedy available at law or in equity as a result of such breach, including specifically, (i) the right

16

to terminate this Agreement and thereafter recover liquidated damages against Purchaser for Purchaser's breach of this Agreement, and (ii) the right to enforce specific performance of this Agreement, and (b) if Purchaser or any affiliate of Purchaser asserts a claim to the Property which clouds Seller's title thereto, and if such claim is found by a court of competent jurisdiction to be without merit, then Seller shall have all remedies available at law or in equity against Purchaser. This Section 9.3 shall survive Closing or termination of this Agreement.

### ARTICLE 10
### DUE DILIGENCE

10.1    Feasibility Period.  Purchaser shall have the right to inspect the Property and conduct due diligence thereon provided Purchaser concludes all such inspections and investigation within thirty (30) days from the Effective Date hereof (the "Feasibility Period").  During the Feasibility Period, Purchaser may conduct or cause to be conducted on its behalf, reasonable physical and other investigations including review of applicable zoning, environmental and other ordinances, statutes and regulations, and feasibility studies with respect to the Property, including without limitation, wetlands, soil, title, architectural, traffic, engineering, geotechnical and environmental inspections, studies, investigations and/or tests (including marketing studies) to evaluate the condition of the Premises (and marketability thereof) (collectively, the "Feasibility Studies"); provided, however, that notwithstanding any provision hereinabove to the contrary, Purchaser shall not perform any drilling, test borings, soil samples, or other invasive activities or testing of any kind on the Property whatsoever.  Purchaser shall not retain an LSRP to conduct any environmental investigation.  Seller agrees to permit Purchaser and Purchaser's contractors, engineers, employees, consultants and agents to otherwise enter upon the Property for the purpose of performing the Feasibility Studies provided Seller receives notice from Purchaser at least three (3) business days prior to the proposed entry date and Seller confirms such time and date are acceptable.  As a result of the current COVID-19 Public Health Emergency and State of Emergency declared by New Jersey Governor Philip D. Murphy, when accessing the Property Purchaser and its contractors, engineers, employees, consultants and agents shall comply with all safety measures, guidance, recommendations and protocols recommended by the Centers for Disease Control and Prevention (CDC) and the New Jersey Department of Health.  All Feasibility Studies shall be at Purchaser's sole cost and expense.  Purchaser agrees to conduct the Feasibility Studies so as to cause a minimum of disruption to the operation of the Property and a minimum of inconvenience for Seller and the Tenants at the Property.  In no event shall Purchaser have access to occupied units.  Seller shall have a right to have a Representative present during all Feasibility Studies. Purchaser shall restore the Property to substantially the same condition it was in before Purchaser's entry upon same and Purchaser shall also indemnify, hold harmless and defend Seller and any of the other Seller Parties (as defined below) from and against all loss, liability, damage, litigation, sums paid in settlement of any of the foregoing and costs (including without limitation reasonable attorneys' fees and disbursements) arising out of death, bodily injury or property damage resulting from any act of Purchaser or its contractors, engineers, employees, consultants and agents in connection with the Feasibility Studies.  Prior to any entry upon the Property by Purchaser or Purchaser's contractors, engineers, employees, consultants and agents, Purchaser shall furnish Seller with a policy of liability insurance (or a certificate of the insurer evidencing such insurance) covering any claim for death, bodily injury or property damage arising out of acts of Purchaser and its contractors, engineers, employees, consultants and agents in connection with the Feasibility Studies, in an amount not less than $5,000,000 in the aggregate per person in respect

17

of death, bodily injury or property damage and under which Seller and Owner shall be named as an additional insured. If Purchaser has employees, Purchaser shall provide Seller with evidence that it maintains worker's compensation insurance in accordance with applicable law prior to entry onto the Property. Any Purchaser or Representative of Purchaser with employees must provide Seller with evidence that it maintains worker's compensation insurance in accordance with applicable law prior to entry onto the Property. The foregoing shall not limit, diminish, negate or release Purchaser's indemnification obligations contained above.

     10.2    <u>Delivery of Data</u>.  Purchaser shall deliver to Seller (without representation) copies of all raw data, test results, documents and reports obtained or generated in connection with the Feasibility Studies promptly after the receipt thereof regardless of whether Purchaser terminates this Agreement under <u>Section 10.3</u> hereof.

     10.3    <u>Right To Terminate During Feasibility Period</u>.  If Purchaser is not satisfied with the results of the Feasibility Studies, Purchaser shall have the right to terminate this Agreement by written notice to Seller given on or before the expiration of the Feasibility Period, whereupon the Earnest Money shall be paid by Escrow Agent to Purchaser, and the Parties shall have no further obligations hereunder except those that survive the termination of this Agreement.  In the event Purchaser fails to terminate this Agreement pursuant to this Section 10.3 on or before the expiration of the Feasibility Period, Purchaser shall be deemed to have waived its right to terminate this Agreement pursuant to this Section 10, and the Earnest Money shall be non-refundable to Purchaser except as otherwise provided herein, but shall be applicable as a credit to the Purchase Price at Closing. The indemnity obligations of Purchaser set forth in this Article 10 and the release by Purchaser set forth below shall survive the Closing and any termination of this Agreement.

<div align="center">

**ARTICLE 11**
**MISCELLANEOUS**

</div>

     11.1    <u>Completeness; Modification</u>.  This Agreement constitutes the entire agreement between the Parties hereto with respect to the Transaction and supersedes all prior discussions, understandings, agreements and negotiations between the Parties hereto. This Agreement may be modified only by a written instrument duly executed by the Parties hereto.

     11.2    <u>Assignments</u>.  Purchaser may assign its rights hereunder with the consent of Seller (which consent shall not be unreasonably withheld) to any affiliate of such Purchaser; <u>provided, however</u>, that Purchaser shall remain liable under this Agreement and shall not be released from its obligations hereunder.  No Party may assign, delegate or otherwise transfer any of its rights or obligations under this Agreement without the consent of each other Party hereto.

     11.3    <u>Successors and Assigns</u>.  This Agreement shall inure to the benefit of and bind Purchaser and Seller and their respective successors and assigns.

     11.4    <u>Days</u>.  If any action is required to be performed, or if any notice, consent or other communication is given, on a day that is a Saturday or Sunday or a legal holiday in the jurisdiction in which the action is required to be performed or in which is located the intended recipient of such notice, consent or other communication, such performance shall be deemed to be required, and such notice, consent or other communication shall be deemed to be given, on the first

<div align="center">18</div>

(1st) Business Day following such Saturday, Sunday or legal holiday.  Unless otherwise specified herein, all references herein to a "day" or "days" shall refer to calendar days and not Business Days.

11.5    Governing Law.  This Agreement and all documents referred to herein shall be governed by and construed and interpreted in accordance with the laws of the State of New Jersey.

11.6    Counterparts.  To facilitate execution, this Agreement may be executed in as many counterparts as may be required.  It shall not be necessary that the signature on behalf of both Parties hereto appear on each counterpart hereof.  All counterparts hereof shall collectively constitute a single agreement.  This Agreement and any amendment shall be binding if executed with an original signature, by facsimile signature, by email through portable document format ("pdf") signature or by DocuSign electronic signatures.

11.7    Severability.  If any term, covenant or condition of this Agreement, or the application thereof to any Person or circumstance, shall to any extent be invalid or unenforceable, the remainder of this Agreement, or the application of such term, covenant or condition to other persons or circumstances, shall not be affected thereby, and each term, covenant or condition of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

11.8    Costs.  Regardless of whether Closing occurs hereunder, and except as otherwise expressly provided herein, each Party shall be responsible for its own costs in connection with this Agreement and the Transaction, including without limitation fees of attorneys, engineers and accountants.

11.9    Notices.  All notices, requests, demands and other communications hereunder shall be in writing and shall be delivered by hand, transmitted by facsimile transmission, sent by electronic mail in ".pdf" format, sent prepaid by Federal Express (or a comparable overnight delivery service) or sent by the United States mail, certified, postage prepaid, return receipt requested, at the addresses and with such copies as designated below.  Any notice, request, demand or other communication delivered or sent in the manner aforesaid shall be deemed given or made (as the case may be) when actually delivered to the intended recipient.

| | |
|---|---|
| If to Seller: | Colliers International NJ LLC<br>c/o Colliers International<br>300 Interpace Parkway, Building C, 3rd Floor<br>Parsippany NJ 07054<br>Attention: Richard J. Madison, Executive Managing Director<br>(Richard.Madison@colliers.com)<br>Attention: Jacklene Chesler, Executive Managing Director<br>(Jacklene.Chesler@colliers.com) |
| with a copy to: | Sills Cummis & Gross P.C.<br>One Riverfront Plaza<br>Newark, New Jersey 07102<br>Attention: Jaimee Katz Sussner (jsussner@sillscummis.com) |

<u>If to Purchaser</u>:      ARGO Management LLC
1322 Georgian Court Terrace
Lakewood, New Jersey 08701
Attention: Aron Gottlieb
lagottlieb@gmail.com

with a copy to:      Silberberg & Klein LLP
Howell Municipal Building
4553 Route 9 North, Suite 102
Howell, New Jersey 07731
Attention: David E. Klein
dklein@sklawgroup.com

<u>If to Title Company</u>:    Iconic Title Agency LLC
1815 Lakewood Road, Suite 127
Toms River, New Jersey 08753
Attn: Pearl Stendig
Email: ps@iconictitleagency.com

<u>If to Escrow Agent</u>:    Iconic Title Agency LLC
1815 Lakewood Road, Suite 127
Toms River, New Jersey 08753
Attn: Pearl Stendig
Email: ps@iconictitleagency.com

Or to such other address as the intended recipient may have specified in a notice to the other Party. Any Party hereto may change its address or designate different or other persons or entities to receive copies by notifying the other Party in the manner described in this Section. The attorneys for the Parties shall have the right to deliver notices on behalf of their respective clients.

11.10   <u>Incorporation by Reference</u>. All of the exhibits attached hereto are by this reference incorporated herein and made a part hereof

11.11   <u>Further Assurances</u>. Subject to the terms of <u>Article 3</u> hereof, Seller and Purchaser each covenant and agree to sign, execute and deliver, or cause to be signed, executed and delivered, and to do or make, or cause to be done or made, upon the written request of the other Party, any and all agreements, instruments, papers, deeds, acts or things, supplemental, confirmatory or otherwise, as may be reasonably required by either Party for the purpose of or in connection with consummating the Transaction described herein.

11.12   <u>No Partnership</u>. This Agreement does not and shall not be construed to create a partnership, joint venture or any other relationship between the Parties hereto except the relationship of seller and purchaser specifically established hereby.

11.13   <u>Time of Essence</u>. Time is of the essence with respect to every provision hereof.

11.14   <u>No Third-Party Beneficiary</u>. The provisions of this Agreement and of the documents to be executed and delivered at Closing are and will be for the benefit of Seller and

20

7694622 v7

Purchaser, only, and are not for the benefit of any third party, and accordingly, no third party shall have the right to enforce the provisions of this Agreement or of the documents to be executed and delivered at Closing.

11.15   <u>Waiver of Jury Trial</u>. **SELLER AND PURCHASER EACH HEREBY WAIVE ANY RIGHT TO JURY TRIAL IN CONNECTION WITH THE ENFORCEMENT BY SUCH PURCHASER, OR SELLER, OF ANY OF THEIR RESPECTIVE RIGHTS AND REMEDIES HEREUNDER.**

11.16   <u>Transfer Taxes</u>. Purchaser shall be responsible for the payment of Transfer Taxes in connection with the consummation of the sale transactions contemplated by this Agreement.

11.17   <u>No Representation; Purchaser's Duty to Review</u>.

**<u>AS A MATERIAL INDUCEMENT TO THE EXECUTION AND DELIVERY OF THIS AGREEMENT BY SELLER, EXCEPT FOR THE REPRESENTATIONS AND WARRANTIES EXPRESSLY CONTAINED IN THIS AGREEMENT, AND AS REFLECTED IN THE PURCHASE PRICE, PURCHASER IS PURCHASING THE PROPERTY IN AN "AS-IS, WHERE- IS" CONDITION AND IN AN "AS-IS, WHERE-IS" STATE OF REPAIR, AND WITH ALL FAULTS, IN EACH CASE AS OF CLOSING</u>.** WITHOUT LIMITING THE GENERALITY OF THE FOREGOING,  PURCHASER UNDERSTANDS AND AGREES THAT SELLER IS NOT MAKING AND HAS NOT AT ANY TIME MADE ANY WARRANTIES OR REPRESENTATIONS OF ANY KIND OR CHARACTER, EXPRESS OR IMPLIED, WITH RESPECT TO THE PROPERTY INCLUDING, BUT NOT LIMITED TO, ANY WARRANTIES OR REPRESENTATIONS AS TO HABITABILITY, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE, ZONING, TAX CONSEQUENCES, LATENT OR PATENT PHYSICAL OR ENVIRONMENTAL CONDITION, UTILITIES, OPERATING HISTORY OR PROJECTIONS, VALUATION, GOVERNMENTAL APPROVALS, THE COMPLIANCE OF THE PROPERTY WITH GOVERNMENTAL LAWS (INCLUDING, WITHOUT LIMITATION, ACCESSIBILITY FOR HANDICAPPED PERSONS), THE TRUTH, ACCURACY OR COMPLETENESS OF ANY PROPERTY DOCUMENTS OR ANY OTHER INFORMATION PROVIDED BY OR ON BEHALF OF SELLER TO PURCHASER, OR ANY OTHER MATTER OR THING REGARDING THE PROPERTY.  PURCHASER ACKNOWLEDGES AND AGREES THAT SUBJECT TO SELLER'S RECEIPT OF THE APPROVAL ORDER, UPON CLOSING, SELLER SHALL SELL AND TRANSFER TO PURCHASER, AND PURCHASER SHALL ACCEPT THE PROPERTY "AS IS, WHERE IS, WITH ALL FAULTS". PURCHASER HAS NOT RELIED AND WILL NOT RELY ON, AND SELLER AND THE OTHER SELLER PARTIES ARE NOT LIABLE FOR OR BOUND BY, ANY EXPRESS OR IMPLIED WARRANTIES, GUARANTIES, STATEMENTS, REPRESENTATIONS OR INFORMATION PERTAINING TO THE PROPERTY OR RELATING THERETO (INCLUDING SPECIFICALLY, WITHOUT LIMITATION, PROPERTY INFORMATION DISTRIBUTED WITH RESPECT TO THE PROPERTY) MADE OR FURNISHED BY SELLER, OWNER, OR ANY REAL ESTATE BROKER OR AGENT REPRESENTING OR PURPORTING TO REPRESENT SELLER, OR ANY OF THEIR RESPECTIVE AGENTS, LOAN SERVICERS, EMPLOYEES, MEMBERS, SHAREHOLDERS, OFFICERS, DIRECTORS, MANAGERS, PARTNERS, ATTORNEYS, REPRESENTATIVES, AND EACH OF THEIR RESPECTIVE

7694622 v7

SUCCESSORS AND ASSIGNS (COLLECTIVELY, "SELLER PARTIES"), CERTIFICATE HOLDERS AND BONDHOLDERS OF OWNER OR ANY MEMBER OF OWNER, TO WHOMEVER MADE OR GIVEN, DIRECTLY OR INDIRECTLY, ORALLY OR IN WRITING.   PURCHASER ACKNOWLEDGES AND UNDERSTANDS THAT SELLER CANNOT AND (EXCEPT AS EXPRESSLY PROVIDED IN THIS AGREEMENT) DOES NOT MAKE ANY REPRESENTATIONS OR WARRANTIES OR GIVE ANY ASSURANCES REGARDING THE TRUTH, ACCURACY OR COMPLETENESS OF ANY MATERIALS PROVIDED TO PURCHASER, INCLUDING, BUT NOT LIMITED TO THOSE MATERIALS PROVIDED TO PURCHASER PURSUANT TO SECTION 7.2(F) HEREOF. PURCHASER REPRESENTS TO SELLER THAT PURCHASER HAS CONDUCTED, OR WILL CONDUCT PRIOR TO THE EXPIRATION OF THE FEASIBILITY PERIOD, SUCH INVESTIGATIONS OF THE PROPERTY, INCLUDING, BUT NOT LIMITED TO, THE PHYSICAL AND ENVIRONMENTAL CONDITIONS THEREOF, AS PURCHASER DEEMS NECESSARY TO SATISFY ITSELF AS TO THE CONDITION OF THE PROPERTY AND THE EXISTENCE OR NONEXISTENCE OR CURATIVE ACTION TO BE TAKEN WITH RESPECT TO ANY HAZARDOUS SUBSTANCES ON OR DISCHARGED FROM THE PROPERTY, AND WILL RELY SOLELY UPON SAME AND NOT UPON ANY INFORMATION PROVIDED BY OR ON BEHALF OF SELLER OR ITS AGENTS OR EMPLOYEES WITH RESPECT THERETO, OTHER THAN SUCH REPRESENTATIONS, WARRANTIES AND COVENANTS OF SELLER AS ARE EXPRESSLY SET FORTH IN THIS AGREEMENT, AND NO SUCH EXPRESS REPRESENTATIONS, WARRANTIES OR COVENANTS OF SELLER SHALL SURVIVE CLOSING.  THE PROVISIONS OF THIS PARAGRAPH SHALL SURVIVE THE CLOSING.

11.18   Release of Seller.

(a)   After the Closing Date, Purchaser irrevocably waives and releases, on behalf of Purchaser, Purchaser's agents, Purchaser's affiliates and all successors in title to the Property, any claims against Seller and the Seller Parties arising out of or in connection with any conditions, including subsurface conditions, whether known or unknown, latent or apparent, defects, violations of any applicable laws, rules, regulations or ordinances (including and whether such claims are based on or sound in contract, tort, statute, common law liability, contribution, indemnity, strict liability or any other theory or cause of action which Purchaser might have asserted or alleged against Seller or any of the other Seller Parties, at any time by reason of or arising out of any defects, physical conditions, violations of any applicable laws, rules, regulations or ordinances (including, without limitation, any environmental, housing or rent control laws, rules, regulations or ordinances) and any and all other acts, omissions, events, circumstances or matters regarding the Property or its occupancy or operation. The provisions of this Section 11.18 shall survive the Closing. Purchaser acknowledges and agrees that it has carefully reviewed this Section 11.18, has discussed its import with legal counsel, is fully aware of its consequences, and acknowledges that the provisions of this Section 11.18 are a material part of this Agreement.

(b)   The acceptance of the Deed by Purchaser shall be deemed to be a full performance and discharge of every representation, warranty and covenant made by Seller herein and every agreement and obligation on the part of Seller to be performed pursuant to the provisions of this Agreement, except those, if any, which are herein specifically stated to survive Closing, including, without limitation Section 9.1(b).

7694622 v7

11.19   Broker.  Seller and Purchaser each warrant and represent to the other that they have not dealt with any broker, agent, finder or similar person in connection with this Agreement, other than Gebroe Hammer Associates (the "Broker").  Seller shall pay all commissions and fees due to Broker pursuant to a separate written agreement between Seller and Broker.  Purchaser agrees to indemnify, defend and hold Seller harmless in full against all claims for commissions, fees and similar compensation asserted by anyone (including Broker) based on alleged dealings with Purchaser in connection with the Transaction.  The provisions of this Section 11.19 shall survive the Closing.

11.20   Confidentiality; Public Disclosure.  Purchaser agrees that it shall keep confidential this Agreement, the terms and conditions of this Agreement and all materials, documents and information pertaining to the Property and the Leases that are at any time (whether before or after the Effective Date) delivered or made available by Seller or any of its agents or representatives to the Purchaser or any of its agents or representatives (collectively, the "Confidential Information") and that Purchaser shall not disclose the Confidential Information to any person or entity for any reason whatsoever except as specifically permitted herein or except as may be necessary to comply with the order of any court or any other Governmental Body of competent jurisdiction or as required by law or regulation. Purchaser shall restrict dissemination of Confidential Information within its own organization and to Purchaser's representatives, advisors, consultants or lenders and to the Title Company and Escrow Agent so that the Confidential Information shall be revealed only to the extent necessary to enable Purchaser to fulfill the terms of this Agreement. Notwithstanding any term or provision of this Agreement to the contrary, the terms and provisions of this Section 11.20 shall survive any termination or cancellation of this Agreement.  In the event this Agreement is terminated or Purchaser defaults hereunder, Purchaser shall promptly return to Seller any and all Confidential Information.  In the event of a breach or threatened breach by Purchaser or its agents under this Section 11.20, Seller shall be entitled to an injunction restraining Purchaser or its agents from disclosing, in whole or in part, any Confidential Information. Nothing herein shall be construed as prohibiting Seller from pursuing any other available remedy at law or in equity for such breach or threatened breach. Prior to Closing, any release to the public of information by Purchaser with respect to any matters set forth in this Agreement, including the existence of this Agreement, will be made only in the form approved by Seller and its counsel.

11.21   Right to Market.  Notwithstanding anything in this Agreement to the contrary, and to the fullest extent permitted by any laws applicable to this Agreement, Seller hereby reserves the right to market the Property to potential purchasers at any time up to the date of Closing, including entering into back-up contracts for the purchase of the Property.  By its execution of this Agreement, Purchaser hereby acknowledges such reservation of marketing rights and agrees that any such actions by or on behalf of Seller at any time up to the date of Closing shall not constitute a default by Seller under this Agreement.

11.22   Waiver of Right to Record Lis Pendens.  AS PARTIAL CONSIDERATION FOR SELLER ENTERING INTO THIS AGREEMENT, PURCHASER EXPRESSLY WAIVES ANY RIGHT UNDER APPLICABLE STATE STATUTES OR AT COMMON LAW OR OTHERWISE TO RECORD OR FILE A LIS PENDENS OR A NOTICE OF PENDENCY OF ACTION OR SIMILAR NOTICE AGAINST ALL OR ANY PORTION OF THE PROPERTY IN CONNECTION WITH ANY ALLEGED DEFAULT BY SELLER HEREUNDER. PURCHASER AND SELLER HEREBY EVIDENCE THEIR SPECIFIC AGREEMENT TO

7694622 v7

THE TERMS OF THIS WAIVER BY PLACING THEIR INITIALS IN THE PLACE PROVIDED HEREINAFTER.  THE PROVISIONS OF THIS PARAGRAPH SHALL SURVIVE CLOSING OR ANY TERMINATION OF THIS AGREEMENT.

_____
PURCHASER'S INITIALS

_____
SELLER'S INITIALS

[SIGNATURES ON FOLLOWING PAGE]

24

7694622 v7

IN WITNESS WHEREOF, Seller and Purchaser have caused this Agreement to be executed as of the day and year first above written.

**SELLER:**

Colliers International NJ LLC, as Court-Appointed Receiver for the Property, Pursuant to the Receiver Order

By: _____

    Name:  Richard J. Madison
    Title:   Executive Managing Director

7694622 v7

**PURCHASER:**

ARGO Management LLC

By: _____

Name:   Aron Gottlieb

Title:   Authorized Signatory

## ESCROW AGENT RECEIPT
## INITIAL EARNEST MONEY

The undersigned Escrow Agent acknowledges receipt of three (3) originally executed counterparts of this Agreement and the Initial Earnest Money in the amount of $50,000.00 to be held and disbursed in accordance with the terms of this Agreement. The Escrow Agent agrees to immediately deliver to Seller and Purchaser an original counterpart of this Agreement executed by the Parties and the Escrow Agent. Copies of the fully executed Agreement, signed also by the Escrow Agent, shall be delivered to Seller's counsel and Purchaser's counsel at the addresses listed in Section 11.9 above. The Escrow Agent does not assume and shall not be under any liability on account of performance or non-performance of any party to this Agreement and the Escrow Agent may at its option require the receipt of a release and authorization in writing from all Parties before paying the Earnest Money to either party. The Escrow Agent has assigned this Agreement GF number: _LTA20208_ .

Dated: _2/16_____, 2021.

ICONIC TITLE AGENCY LLC

By: _____

     Name:    Pearl Stendig
     Title:     Authorized Signatory

**ESCROW AGENT RECEIPT**
**ADDITIONAL EARNEST MONEY**

The undersigned Escrow Agent acknowledges receipt of the Additional Earnest Money in the amount of $50,000.00 to be held and disbursed in accordance with the terms of this Agreement. The Escrow Agent does not assume and shall not be under any liability on account of performance or non-performance of any party to this Agreement and the Escrow Agent may at its option require the receipt of a release and authorization in writing from all Parties before paying the Earnest Money to either party.  The Escrow Agent has assigned this Agreement GF number: _____.

Dated: _____, 2021.

**ICONIC TITLE AGENCY LLC**

By:_____
　　　　　Name:
　　　　　Title:

28

**EXHIBIT A**

**OWNER, PROPERTY, PURCHASER, PURCHASE PRICE**

| Owner | Address | Purchaser | Purchase Price |
|---|---|---|---|
| Atlantic Norse, LLC | 212, 214 and 225 Atlantic Avenue, Atlantic City, NJ | ARGO Management, LLC | $2,000,000.00 |
| | | | |
| | | | |
| | | | |

Ex. A-1

**EXHIBIT B**

**LEGAL DESCRIPTION OF LAND**

**ADDRESS: 212, 214 AND 225 ATLANTIC AVENUE, ATLANTIC CITY, NJ 08401**

7694622 v7

# EXHIBIT A

## DESCRIPTION OF THE LAND

All that certain Lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in Atlantic City, County of Atlantic, State of NJ:

TRACT 1:

BEGINNING at a point in the Southerly line of Atlantic Avenue (100 feet wide), said point being distance 100.00 feet East of the Easterly line of Vermont Avenue (50 feet wide) when measured in and along the aforesaid Southerly line of Atlantic Avenue, and extending from said beginning point; thence

1. North 62 degrees 32 minutes 00 seconds East, in and along the Southerly line of Atlantic Avenue, a distance of 50.00 feet to a point; thence

2. South 27 degrees 28 minutes 00 seconds East, parallel with Vermont Avenue, a distance of 100.00 feet to a point; thence

3. South 62 degrees 32 minutes 00 seconds West, parallel with Atlantic Avenue, a distance of 50.00 feet to a point; thence

4. North 27 degrees 28 minutes 00 seconds West, parallel with Vermont Avenue, a distance of 100.00 feet to the point and place of BEGINNING.


TRACT II:

BEGINNING at a point in the Southerly line of Atlantic Avenue 150.00 feet Eastwardly of the Easterly line of Vermont Avenue and extending; thence

1. Southwardly parallel with Vermont Avenue, 100.00 feet; thence
2. Eastwardly parallel with Atlantic Avenue, 50.00 feet; thence
3. Northwardly parallel with Vermont avenue, 100.00 feet to the Southerly line of Atlantic Avenue; thence
4. Westwardly, along the said Southerly line of Atlantic Avenue 50.00 feet to the place of BEGINNING.

Being further described in accordance with a survey prepared by James J. Kuhn, PLS dated March 20,2004; as;

BEGINNING at a point in the Southerly line of Atlantic Avenue 150.00 feet Easterly from the corner formed by intersection of the Easterly side of Vermont Avenue with the Southerly side of Atlantic Avenue; Thence

1. North 62 degrees, 32 minutes 00 seconds East, along the Southerly side of Atlantic Avenue, a distance of 50.00 feet; Thence

2. South 27 degrees 28 minutes 00 seconds East, a distance of 100.00 feet; Thence

3. South 62 degrees 32 minutes 00 seconds West, a distance of 50.00 feet thence

4. North 27 degrees 28 minutes 00 seconds West, a distance of 100.00 feet to the Southerly side of Atlantic Avenue, being the point and place of BEGINNING.


(continued)

TRACT III:

BEGINNING at the intersection of the Northerly line of Atlantic Avenue (100 feet wide) and the Easterly line of Vermont Avenue (50 feet wide) and extending from said beginning point; thence

1. North 27 degrees 28 minutes 00 seconds West, in and along the Easterly line of Vermont avenue, a distance of 100.00 feet to a point; thence

2. North 62 degrees 32 minutes 00 seconds East, parallel with Atlantic Avenue, a distance of 55.00 feet to a point; thence

3. South 27 degrees 28 minutes 00 seconds East, parallel with Vermont Avenue, a distance of 100.00 feet to a point in the aforesaid Northerly line of Atlantic Avenue; thence

4. South 62 degrees 32 minutes 00 seconds West, in and along same, a distance of 55.00 feet to the point and place of BEGINNING.

**EXHIBIT C**

SALE ORDER
[attached]

Ex. C-1

SILLS CUMMIS & GROSS P.C.
Jaimee Katz Sussner, Esq.
Joshua N. Howley, Esq.
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000

*Attorneys for Court-Appointed Receiver*
*Colliers International NJ, LLC*

<div style="text-align:center">

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

</div>

-------------------------------------------------------x
U.S. BANK NATIONAL ASSOCIATION,     :    Civil Action No. 19-cv-17865 (MCA)(LDW)
AS TRUSTEE FOR THE REGISTERED
HOLDERS OF WELLS FARGO     :
COMMERCIAL MORTGAGE
SECURITIES, INC., MULTIFAMILY     :
MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2018-SB51, *et al.*,     :

            Plaintiffs,     :       **ORDER SETTING FORTH**
               :        **SALE PROCEDURES**
   vs.     :

                             :
ENGLEWOOD FUNDING LLC, *et al.*,     :

            Defendants.     :
-------------------------------------------------------x

     **THIS MATTER** having been opened to the Court by counsel for the plaintiffs in the

following actions: (i) *OREC NJ, LLC v. Levine, et al.*, Civil Action No. 19-cv-17421-MCA-LDW,

(ii) *Wells Fargo Bank, National Association v. Levine, et al.*, 19-cv-17866-MCA-LDW, (iii) *U.S.*

*Bank National Association v. Englewood Funding, LLC, et al.*, 19-cv-17865-MCA-LDW, (iv) *JLS*

*Equities LLC v. River Funding, LLC, et al.*, 19-cv-17615-MCA-LDW, (v) *Privcap Funding, LLC*

*v. Levine, et al.*, 19-cv-18122-MCA-LDW, and (vi) *Conventus, LLC v. Levine, et al.*, 19-cv-18137-

MCA-LDW (the "**Actions**"), and Sills Cummis & Gross P.C., in its capacity as counsel for the

court-appointed receiver in the Actions (the "**Receiver**"), for an Order setting forth the procedures

for the property owners (collectively, the "**Property Owners**" and individually, the "**Property Owner**") identified as defendants in the Actions and/or the Receiver (collectively, the "**Seller**") to sell the subject properties that are identified in Exhibit A attached hereof (collectively, the "**Properties**" and individually, the "**Property**"); and any objections to entry of this Order that were filed having been addressed by the Court; and the Court having considered the papers submitted in connection with this application, and having heard the arguments of counsel, if any; and for good cause shown;

IT IS on this ___29th___ day of _____May_____, 2020,

**ORDERED** as follows:

1.     The Seller is hereby authorized to execute non-binding contracts (each a "**Non-Binding Contract**") for the sale of one or more of the Properties.  Each Non-Binding Contract executed by the Seller shall contain a provision (the "**Disclaimer**") that the purchaser or other counter-party thereto shall not have any legally enforceable rights, claims or causes of action against the seller counter-party thereunder unless and until such Non-Binding Contract has been the subject of an final, non-appealable Approval Order (as herein defined) entered by this Court in accordance with the procedures set forth herein.

2.     Within three (3) business days of execution of a Non-Binding Contract, the proponent of the sale shall serve a copy of the Non-Binding Contract upon (i) the Property Owner(s), c/o Seth Levine, 636 South Forest Drive, Teaneck, New Jersey, with a copy to Jacob Kaplan, Esq., Brafman & Associates, P.C., 767 Third Avenue, 26th Floor, New York, New York 10017, Email: jkaplan@braflaw.com, (ii) Sills Cummis & Gross P.C. on behalf of the Receiver, (iii) the attorneys for the affected first mortgagee(s), (iv) those persons who have appeared in the Action(s) relating to the subject Property(s), and (v) those persons purporting to hold secured debt

2

or otherwise to have an interest in the subject Property(s), including any mezzanine lenders (collectively, the "**Parties**" and individually, a "**Party**"), via e-mail (or first class mail, if e-mail is not possible).

3.      Within three (3) business days thereafter, the proponent of the sale shall file proof of service of the Non-Binding Contract on the Parties.  The proponent of the sale shall serve the Parties with any and all proposed amendments, modifications and addenda to the Non-Binding Contract (which shall contain the Disclaimer provided for in paragraph 1 above) within three (3) business days after execution thereof, and shall file proof of service of any and all proposed amendments, modifications and addenda to the Non-Binding Contract originally served on the Parties.

4.      Upon the request of a Party, the proponent of a sale shall furnish, within seven (7) calendar days of the receipt of such request, information concerning the proposed purchaser and the transaction as the Party requests, including but not limited to information that would reasonably allow a Party to make a determination as to the proposed purchaser's financial wherewithal and other capabilities to close the transaction and the likelihood that any contingencies contained in the Non-Binding Contract can reasonably be satisfied.  Such information shall include the following information to the extent it can be obtained from the proposed purchaser: (i) confirmation whether the proposed purchase is all cash or is contingent upon financing; (ii) if financing is required, the name of the anticipated bank/lender; (iii) proof of funds sufficient to close; and (iv) information concerning the party(s) tendering the purchase offer, including a list of principals.

5.      Within thirty (30) calendar days of service of the Non-Binding Contract, the first mortgagee(s) and any other secured creditors with respect to the Property(s) that is/are the subject

matter of such Non-Binding Contract (including any mezzanine lenders) shall provide payoff statements to the Property Owner(s) c/o Seth Levine, 636 South Forest Drive, Teaneck, New Jersey, with a copy to Jacob Kaplan, Esq., Brafman & Associates, P.C., 767 Third Avenue, 26th Floor, New York, New York 10017, Email: jkaplan@braflaw.com, and Sills Cummis & Gross P.C. on behalf of the Receiver, via e-mail (or first class mail, if e-mail is not possible). The payoff statements shall include per diem interest and a detailed breakdown of the amounts claimed to be due. Additionally, the Receiver shall within such period provide a payoff statement setting forth all sums due to the Receiver in connection with the Property(s). The Property Owners and any Party holding secured debt or otherwise having an interest in the subject Property(s) shall be entitled to request and receive copies of such payoff statements.

6.      Within five (5) calendar days following receipt of all payoff statements, the Seller shall confirm in writing to the Property Owner(s) and any Party holding secured debt or otherwise having an interest in the subject Property(s) whether it agrees to pay the full sum demanded in the first mortgagee's payoff statement and all sums due to the Receiver in good funds at closing, without deduction or offsets of any kind. In addition, the Seller shall within such five-day period advise such parties whether it agrees to pay any other secured creditors the full sum demanded in their payoff statements in good funds at closing, without deduction or offsets of any kind.

7.      In the event the Seller agrees to pay in full all sums demanded by the first mortgagee, any other secured creditors and the Receiver, the Seller may make a motion on no less than twenty-four (24) days' notice to the Parties for approval of the sale (a "**Sale Approval Motion**"). Each Sale Approval Motion shall include a proposed distribution schedule for all sale proceeds, reflecting that the Seller shall pay the full sum demanded in the payoff statements

4

provided by the first mortgagee(s) and any other secured creditors, together with all sums due to the Receiver, in good funds at closing, without deduction or offsets of any kind.

8.     Any objections to a Sale Approval Motion shall be made in accordance with the applicable rules of the Court.  Any disputes regarding the proposed distribution schedule shall be resolved insofar as possible in connection with the Court's consideration of a Sale Approval Motion.  To the extent any bona fide disputes with respect to the validity, extent or priority of a secured claim cannot be so resolved, the Court may require the escrow of any disputed secured claim amounts; provided, however, that the Court shall not approve the proposed sale or require the escrow of any disputed secured claim amounts without the consent of any secured creditor that is not being paid in full.

9.     If the Court approves the sale, the approval order (an **"Approval Order"**) shall state the manner in which the sale proceeds are to be distributed or, as applicable, escrowed.  In addition, any Approval Order shall set forth the terms, conditions and limitations under which the Seller shall be authorized to sign any and all closing documents necessary to convey title to the subject Property(s).  The Approval Order shall further require that the Receiver be contacted forty-eight (48) hours prior to closing to ensure that any supplemental expenditures made by the Receiver and any other sums due to the Receiver with respect to the subject Property(s), as well as any protective advances made by any Party, are satisfied at closing, without deduction or offsets of any kind.

10.    At closing, to the extent existing and in its possession or reasonable control, the Receiver shall turn over to the purchaser copies of the following for each Property, without representation or warranty of any kind: (i) existing surveys and maps, (ii) leases, amendments, and subleases, (iii) a certified rent roll, (iv) all approvals, applications, and communications to and

from government agencies, boards, or bodies with respect to the Property, (v) a Schedule of Operating Expenses, (vi) copies of active vendor contracts, and (vii) a current tax bill.

11.     If, pursuant to an Approval Order, sale proceeds are escrowed by reason of any unresolved disputes, any party claiming an interest in such escrowed proceeds shall make a motion on notice to the Parties within thirty (30) calendar days following the closing of title seeking direction from the Court regarding the distribution of escrowed funds.  Any Party claiming an interest in the escrowed funds may respond to the motion in accordance with the applicable Court rules.

12.     Any surplus funds in excess of amounts needed to pay (i) all secured claims relating to such Property(s), (ii) any sums due to the Receiver, and (iii) normal closing costs (including reasonable attorneys' fees), shall be escrowed pending further order of the Court.  Notwithstanding the prior sentence, in the event there are surplus funds after payment of the amounts set forth in Paragraphs 12(i), (ii) and (iii), any mezzanine lender that is a Party and has provided all information required in Paragraph 5 above, shall be entitled to be paid at closing from the surplus funds, unless an entity or individual claiming an interest in the surplus funds files an objection to payment to such mezzanine lender.  In no event shall the original Property Owner(s) and/or Seth Levine receive surplus funds absent further order of the Court.

13.     In the event that any person or entity, including but not limited to a Party, the respective Property Owner(s) and/or the Receiver, attempts to obtain Court approval of a sale with respect to any Property(s) without abiding by the terms and conditions of this Order, any Party or interest holder shall be deemed to have reserved, and not released, waived or impaired, any and all of its rights to object to such sale, and the entry of this Order and the terms thereof shall not be

6

cited, referred to or relied upon as the basis for a finding that such Party has waived any of its rights or claims.

14.    The terms of this Order are not intended (i) to apply to any foreclosure action instituted by a first mortgagee or other secured creditor or (ii) to interfere with, or place limits or conditions upon, the foreclosure of any properties by first mortgagees or other secured creditors. Additionally, the terms of this Order shall not prevent the Parties from seeking approval of a sale pursuant to state law in a pending foreclosure action.  State court approval of such a sale shall be deemed to satisfy the requirement set forth in this Court's Amended Preliminary Injunction and Receivership Order dated December 4, 2019 that Court approval be obtained for any sale.

_____

HON. LEDA DUNN WETTRE, U.S.M.J.

# Exhibit A —
## Subject Properties and Owners

*U.S. Bank National Association v. Englewood Funding, LLC, et al.*
Civil Action No. 19-cv-17865-MCA-LDW

| Property Address | Property Owner |
|---|---|
| 191 First Street<br>Englewood, New Jersey 07631 | Englewood Funding, LLC |
| 54-78 Temple Avenue<br>Hackensack, New Jersey 07601 | Lenox Temple, LLC |
| 406-444 Liberty Street<br>Little Ferry, New Jersey 07643 | Lenox Liberty, LLC |
| 107-109 Hudson Street<br>Hackensack, New Jersey 07601 | Lenox Hudson, LLC |
| 197-199 Grant Street &<br>359-361 Gorden Street<br>Perth Amboy, New Jersey 08861 | Plainfield Norse, LLC |
| 88 McKinley Street<br>& 170 South Park Street<br>Hackensack, New Jersey 07601 | Hackensack Norse, LLC |
| 77 Hope Avenue<br>Passaic, New Jersey 07055 | Post Avenue Ventures, LLC |
| 159 Fort Lee Road<br>Teaneck, New Jersey 07666 | FLR Ventures LLC |
| 301, 401 & 501 Browning Lane<br>Brooklawn, New Jersey 08030 | Brooklawn Norse, LLC |
| 12 Meadow Road<br>Pennsville, New Jersey 08070 | Penn Norse, LLC |
| 123 Pierre Avenue, 132 Jewell Street<br>a/k/a 113-115<br>Garfield, New Jersey 07026 | Garfield Norse, LLC |
| 357 & 363 West End Avenue<br>Elizabeth, New Jersey 07202 | Elizabeth Norris, LLC |
| 516 Kennedy Boulevard<br>Bayonne, New Jersey 07002 | Sussex Norse, LLC |

8

| Property Address | Property Owner |
|---|---|
| 212, 214 & 225 Atlantic Avenue<br>Atlantic City, New Jersey 08401 | Atlantic Norse, LLC |
| 190 Ackerman Avenue, 286 Parker<br>Avenue, 77 Randolph Avenue<br>Clifton, New Jersey 07011 | Clifton DL Ventures, LLC |
| 301 Broadway<br>Bayonne, New Jersey 07002 | Bayonne Broadway Norse, LLC |
| 137-139 Third Street<br>Passaic, New Jersey 07055 | 137-139 Third Norse, LLC |
| 60-62 Dayton Avenue &<br>15 Hobart Street<br>Passaic, New Jersey 07055 | Passaic Norse, LLC |
| 352-354 New Brunswick Avenue<br>Perth Amboy, New Jersey 08861 | Perth NB Ventures, LLC |
| 2680 John F. Kennedy Boulevard<br>Jersey City, New Jersey 07306 | 2680 Kennedy Ventures LLC |

**EXHIBIT D**

**FORM OF DEED**

Prepared By: _____

**<u>QUIT CLAIM DEED</u>**

This Quit Claim Deed is made on _____, 20___,

**BETWEEN**

> **COLLIERS INTERNATIONAL NJ LLC, IN ITS CAPACITY AS THE COURT-APPOINTED RECEIVER** pursuant to that certain Amended Preliminary Injunction and Receivership Order, entered on December 4, 2019, in *U.S. Bank National Association, as Trustee for the Registered Holders of Wells Fargo Commercial Mortgage Securities, Inc. Multifamily Mortgage Pass-Through Certificates, Series 2018-SB51 et al. v. Englewood Funding, LLC et al.*, Civil Action No. 2:19-CV-17865 (MCA)(LDW) (the "<u>Receivership Order</u>"), having an address of _____, referred to as

> **GRANTOR**

**AND** _____, a _____, having an address of _____, referred to as

**GRANTEE**

The word "Grantee" shall mean all Grantees listed above.

   **Transfer of Ownership.** The Grantor grants and conveys (transfers ownership of) the property described below to the Grantee.  This transfer is made for the sum of _____ DOLLARS ($_____).  The Grantor acknowledges receipt of this money.

   **Tax Map Reference.** (N.J.S.A. 46:15-1.1) Municipality of _____

Block No.   Lot No.       Account No.

Ex. D-1

☐   No property tax identification number is available on the date of this Deed.  (check box if applicable.)

            **Property.**  The property consists of the land in the _____, County of _____ and State of New Jersey.  The legal description is:

See Legal Description annexed hereto as Schedule "A" and made a part hereof.

            **Type of Deed.**  This Deed is called a Quitclaim Deed.  The Grantor makes no promises as to ownership or title, but simply transfers whatever interest the Grantor has to the Grantee, subject to all matters listed on Schedule "B" attached hereto and made a part hereof.

            **Authority.**  Grantor's authority to execute and deliver this Deed is given pursuant to that certain [_____], entered by the [_____] on [_____], 20__[1], entered in *U.S. Bank National Association, as Trustee for the Registered Holders of Wells Fargo Commercial Mortgage Securities, Inc. Multifamily Mortgage Pass-Through Certificates, Series 2018-SB51 et al. v. Englewood Funding, LLC et al.,* Civil Action No. 2:19-CV-17865 (MCA)(LDW), and Grantor's execution and delivery of this Deed is strictly in its capacity as receiver pursuant to the Receivership Order.

           [SIGNATURE ON FOLLOWING PAGE]

---

[1] Insert information related to the Sale Order.

7694622 v7

Ex. D-2

**Signatures.** The Grantor signs this Deed as of the date at the top of the first page. If the Grantor is a corporation, this Deed is signed and attested to by its proper corporate officers and its corporate seal is affixed.

WITNESSED BY:

**COLLIERS INTERNATIONAL NJ LLC, IN ITS CAPACITY AS THE COURT-APPOINTED RECEIVER** pursuant to that certain Amended Preliminary Injunction and Receivership Order, entered on December 4, 2019, in *U.S. Bank National Association, as Trustee for the Registered Holders of Wells Fargo Commercial Mortgage Securities, Inc. Multifamily Mortgage Pass-Through Certificates, Series 2018-SB51 et al. v. Englewood Funding, LLC et al.,* Civil Action No. 2:19-CV-17865 (MCA)(LDW)

_____    By: _____
                                         Name:
                                         Title:

STATE OF NEW JERSEY
COUNTY OF _____ SS.:

I CERTIFY that on _____, 20____, _____, personally came before me and stated to my satisfaction that this person (or if more than one, each person):

(a)    was the maker of the attached Deed;

(b)    was authorized to and did execute this Deed as _____ of Colliers International NJ LLC, the Court-Appointed Receiver for the Property, pursuant to the Receivership Order, the Grantor named in this Deed;

(c)    signed, sealed and delivered this Deed as his or her voluntary act and deed;

(d)    made this Deed for $_____ as the full and actual consideration paid or to be paid for the transfer of title. (Such consideration is defined in N.J.S.A. 46:15-5).


                                    _____
                                    Notary Public


**RECORD & RETURN TO:**

_____
_____
_____


7694622 v7                              Ex. D-3

<u>SCHEDULE A</u>

Legal Description of the Property

(To Be Added)

Ex. D-4

## SCHEDULE B

Permitted Exceptions

(To Be Added)

7694622 v7

## EXHIBIT E

## FORM OF BILL OF SALE

### BILL OF SALE AND ASSIGNMENT

This BILL OF SALE AND ASSIGNMENT (this "Bill of Sale") is made from Colliers International NJ LLC, in its capacity as the Court-Appointed Receiver pursuant to that certain Amended Preliminary Injunction and Receivership Order, entered on December 4, 2019, in *U.S. Bank National Association, as Trustee for the Registered Holders of Wells Fargo Commercial Mortgage Securities, Inc. Multifamily Mortgage Pass-Through Certificates, Series 2018-SB51 et al. v. Englewood Funding, LLC et al.,* Civil Action No. 2:19-CV-17865 (MCA)(LDW) ("Assignor"), to [_____], a [_____] ("Assignee").

### RECITALS

Pursuant to that certain Agreement of Purchase and Sale executed on _____, 2021, by Assignor and Assignee (the "PSA"; capitalized terms not defined herein have the meanings ascribed to them in the PSA), the Assignor has executed and delivered to Assignee on the date hereof that certain deed (the "Deed") pursuant to which Assignor is selling and conveying to Assignee the Real Property.

Assignor desires to assign, transfer and convey to Assignee, and Assignee desires to obtain as of the Closing Date the Tangible Personal Property, to the extent transferrable, all of Seller's utility and entitlement rights benefitting the Real Property (the "Utilities and Entitlement Rights"), and, to the extent transferrable, any easements (including, without limitation, reciprocal easement agreements, if any) belonging to or inuring to the benefit of the Seller and pertaining to the Real Property (the "Easements and Covenants"), all at the time of Closing, subject to the terms and conditions of the PSA.

NOW, THEREFORE, in consideration of the receipt of $10.00 and other good and valuable consideration paid by Assignee to Assignor, the receipt and sufficiency of which are hereby acknowledged by Assignor, Assignor does hereby ASSIGN, TRANSFER, SET OVER, and DELIVER to Assignee the Tangible Personal Property, the Utilities and Entitlement Rights, and Easements and Covenants, subject to the terms and conditions of the PSA.

Notwithstanding anything to the contrary contained herein, Assignor's liability under this Bill of Sale is expressly subject to the limitations set forth in Section 9.1(b) of the PSA.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

Ex. E-1

7694622 v7

EXECUTED to be effective as of _____, 2021.

**ASSIGNOR:**

Colliers International NJ LLC, as Court-Appointed Receiver for the Property, Pursuant to the Receiver Order

By: _____

Name:  Richard J. Madison

Title:   Executive Managing Director

Ex. E-2

**ASSIGNEE:**

[_____],
a [_____]


By:_____
Name:_____
Title:_____

Ex. E-3

## EXHIBIT F

## FORM OF ASSIGNMENT AND ASSUMPTION AGREEMENT

### ASSIGNMENT AND ASSUMPTION OF LEASES, SECURITY DEPOSITS, AND INTANGIBLE RIGHTS

This ASSIGNMENT AND ASSUMPTION OF LEASES, SECURITY DEPOSITS, AND INTANGIBLE RIGHTS (this "Assignment") is made by and between Colliers International NJ LLC, in its capacity as the Court-Appointed Receiver pursuant to that certain Amended Preliminary Injunction and Receivership Order, entered on December 4, 2019, in *U.S. Bank National Association, as Trustee for the Registered Holders of Wells Fargo Commercial Mortgage Securities, Inc. Multifamily Mortgage Pass-Through Certificates, Series 2018-SB51 et al. v. Englewood Funding, LLC et al.*, Civil Action No. 2:19-CV-17865 (MCA)(LDW) ("Assignor"), to [_____], a [_____] ("Assignee").

### RECITALS

Pursuant to that certain Agreement of Purchase and Sale executed on _____, 2021, by Assignor and Assignee (the "PSA"; capitalized terms not defined herein shall have the meaning ascribed to such terms in the PSA), the Assignor has executed and delivered to Assignee on the date hereof that certain deed (the "Deed") pursuant to which Assignor is selling and conveying to Assignee the Real Property.

Assignor desires to assign, transfer and convey to Assignee, and Assignee desires to assume, all of Assignor's right, title and interest in and to the Leases, the Security Deposits, and all assignable intangible personal property and general intangibles of every nature whatsoever (the "Intangible Rights"), to the extent permitted by law and assignable and the PSA, subject to the terms and conditions set forth herein.

NOW, THEREFORE, for and in consideration of the sum of $10.00 and other good and valuable consideration paid by Assignee to Assignor, the receipt and sufficiency of which are hereby acknowledged, Assignor does hereby SELL, ASSIGN, CONVEY, TRANSFER, SET-OVER and DELIVER unto Assignee all of Assignor's right, title and interest in and to the Leases, Security Deposits and the Intangible Rights.

This Assignment is made by Assignor and accepted by Assignee subject to the "Permitted Exceptions" described in the Deed, to the extent that the same validly exist and affect the Leases and Intangible Rights.

By execution of this Assignment and subject to all the terms and conditions of the PSA, Assignee assumes and agrees to perform all of the covenants, agreements and obligations under the Leases. Assignee hereby agrees to indemnify, hold harmless and defend Assignor from and against any and all third party obligations, liabilities, costs and claims (including reasonable attorneys' fees) arising as a result of or with respect to any of the Leases.

Notwithstanding anything to the contrary contained herein, Assignor's liability under this Assignment is expressly subject to the limitations set forth in **Section 9.1(b)** of the PSA.

Ex. F-1

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

7694622 v7

EXECUTED to be effective as of _____, 2021.

**ASSIGNOR:**

Colliers International NJ LLC, as Court-Appointed
Receiver for the Property, Pursuant to the Receiver
Order
By: _____
Name:   Richard J. Madison
Title:   Executive Managing Director

**ASSIGNEE:**

[_____],
a [_____]


By:_____
Name:_____
Title:_____

Ex. F-4

## EXHIBIT G

## FORM OF ENVIRONMENTAL INDEMNITY AGREEMENT

In connection with the purchase by [_____], a [_____] ("Purchaser"), of certain property in Atlantic City, County of Atlantic, New Jersey, more particularly described on Exhibit A attached hereto and made a part hereof for all purposes (the "Property") from Colliers International NJ LLC, in its capacity as the Court-Appointed Receiver pursuant to that certain Amended Preliminary Injunction and Receivership Order, entered on December 4, 2019, in *U.S. Bank National Association, as Trustee for the Registered Holders of Wells Fargo Commercial Mortgage Securities, Inc. Multifamily Mortgage Pass-Through Certificates, Series 2018-SB51 et al. v. Englewood Funding, LLC et al.,* Civil Action No. 2:19-CV-17865 (MCA)(LDW) ("**Seller**"), and in consideration of the conveyance of the Property by Seller, Purchaser hereby unconditionally and irrevocably waives any claim against Seller arising from the presence of Hazardous Substances on the Property. Further, Purchaser hereby indemnifies Seller and the other Seller Parties harmless from and against all loss, liability, damage and expense, including reasonable attorneys' fees, suffered or incurred by Seller arising out of or resulting from the introduction of such Hazardous Substances on the Property from and after the date hereof, including, without limitation, (a) any liability under or on account of the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as the same may be amended from time to time or related regulations or any similar applicable laws or regulations, including the assertion of any lien thereunder (collectively, "Environmental Law"), (b) any loss of value of the Property as a result of the presence of Hazardous Substance, (c) claims brought by third parties for loss or damage incurred or sustained subsequent to the date hereof, which do not arise, result or are related to Seller's ownership and operation of the Property; and (d) liability with respect to any other matter affecting the Property resulting from noncompliance with any Environmental Law, not related to, arising out of or resulting from Seller's ownership and operation of the Property. Capitalized terms not defined herein have the meanings given them in that certain Agreement of Purchase and Sale by and between Purchaser and Seller dated as of _____, 2021.

IN WITNESS WHEREOF, Purchaser has executed this Environmental Indemnity to be effective as of _____, 2021.

PURCHASER:

[_____],
a [_____]


By:_____
Name:_____
Title:_____

Ex. G-1

7694622 v7

## EXHIBIT A TO ENVIRONMENTAL INDEMNITY AGREEMENT

## PROPERTY

7694622 v7

**EXHIBIT H**

**FORM OF TAX AFFIDAVIT**

**SELLER'S NON-FOREIGN AFFIDAVIT**

THE STATE OF _____ §
§
COUNTY OF _____ §

  Section 1445 of the Internal Revenue Code provides that a transferee of a U.S. real property interest must withhold tax if the transferor is a foreign person. To inform [_____] ("Transferee"), that withholding of tax is not required upon the disposition of a U.S. real property interest by Colliers International NJ LLC, in its capacity as the Court-Appointed Receiver pursuant to that certain Amended Preliminary Injunction and Receivership Order, entered on December 4, 2019, in *U.S. Bank National Association, as Trustee for the Registered Holders of Wells Fargo Commercial Mortgage Securities, Inc. Multifamily Mortgage Pass-Through Certificates, Series 2018-SB51 et al. v. Englewood Funding, LLC et al.,* Civil Action No. 2:19-CV-17865 (MCA)(LDW) ("Transferor"), the undersigned hereby certifies as follows:

  1. Transferor is not a foreign corporation, foreign partnership, foreign trust or foreign estate (as those terns are defined in the Internal Revenue Code and Income Tax Regulations);

  2. Transferor's U.S. employer identification number is: # _____;

  3. Transferor's office address is [_____].

  Transferor understands that this certification may be disclosed to the Internal Revenue Service by the Transferee and that any false statement contained herein could be punished by fine, imprisonment, or both.

  Under penalties of perjury, the undersigned, in the capacity set forth below, hereby declares that he has examined this certification and to the best of its knowledge and belief it is true, correct, and complete, and the undersigned further declares that he has authority to sign this document in such capacity.

**[SIGNATURE ON NEXT PAGE]**

Ex. H-1

**TRANSFEROR:**

Colliers International NJ LLC, as Court-Appointed Receiver for the Property, Pursuant to the Receiver Order

By: _____

  Name: Richard J. Madison
  Title:  Executive Managing Director

THE STATE OF _____§
            §
COUNTY OF _____§

   On this, the _____ day of _____, 2021, before me, the subscriber, a Notary Public in and for the State of _____, personally appeared Richard J. Madison, the Executive Managing Director of Colliers International NJ LLC, as Court-Appointed Receiver for the Property, pursuant to that certain Amended Preliminary Injunction and Receivership Order, entered on December 4, 2019, in U.S. Bank National Association, as Trustee for the Registered Holders of *Wells Fargo Commercial Mortgage Securities, Inc. Multifamily Mortgage Pass-Through Certificates, Series 2018-SB51 et al. v. Englewood Funding, LLC et al.*, Civil Action No. 2:19-CV-17865 (MCA)(LDW).  He is personally known to me.

_____
Notary Public in and for the State of Texas

_____
Printed/Typed Name of Notary

My Commission Expires: _____

7694622 v7

Ex. H-2

## EXHIBIT I

## FORM OF TENANT NOTICE LETTER

**[Name and Address of Tenant]**

Date: _____, 2021

      Re:    Sale of [_____] located at [_____]

Ladies and Gentlemen:

Please be advised that _____, a _____ ("Purchaser") has purchased the captioned property, in which you occupy space as a tenant pursuant to a lease (the "Lease"), from [_____] ("Seller"), the court appointed Receiver of the Property.  In connection with such purchase, Seller has assigned its interest as landlord in the Lease to Purchaser and has transferred your security deposit in the amount of $_____ (the "Security Deposit") to Purchaser.  Purchaser specifically acknowledges the receipt of and responsibility for the Security Deposit, the intent of Purchaser and Seller being to relieve Seller of any liability for the return of the Security Deposit.

All rental and other payments that become due subsequent to the date hereof should be payable to _____ and should be addressed as follows:

_____

_____

_____

In addition, all notices from you to the landlord concerning any matter relating to your tenancy should be sent to _____ at the address above.

## [REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

Very truly yours,

Colliers International NJ LLC, as Court-Appointed Receiver for the Property, Pursuant to the Receiver Order

By: _____
     Name:  Richard J. Madison
     Title:   Executive Managing Director

7694622 v7

**PURCHASER:**

[___________________________________],
a [__________________________________]

By:_____________________________________
Name:___________________________________
Its:_____________________________________

**EXHIBIT J**

<u>**AFFIDAVIT OF TITLE**</u>

**STATE OF** _____ )
                                                    ) ss:
**COUNTY OF** _____ )


_____ says under oath:

     1.    **Officers.**  I am an officer of Colliers International NJ LLC ("Receiver"), the Court-Appointed Receiver for the Property (hereafter defined).  I am fully familiar with the business of the Receiver.  I am a citizen of the United States of America and at least 18 years old.

     2.    **Representations.**  The statements contained in this affidavit are true to the best of my knowledge, information and belief.

     3.    **Ownership and Possession.**  Based solely on title commitment No. _____ dated _____ ("Title Commitment "), issued by _____ ("Title Company"), [Owner] has owned the property designated on the tax map of the _____ of _____, County of _____, New Jersey, as Block _____, Lot ___, commonly known as _____, New Jersey (the "Property") since _____.  The Property is being conveyed by Receiver to _____.

     4.    **Improvements.**  Receiver is not aware that anyone has filed or intends to file a mechanic's lien, stop notice, building contract or notice of unpaid balance related to the Property.  No one has notified Receiver that money is due and owing from Receiver for construction or repair work on the Property.

     5.    **Liens or Encumbrances.**  Receiver has not created or allowed any interests (legal rights) which affect its ownership or use of the Property.  To Receiver's actual knowledge, there are no pending lawsuits or judgments against Receiver or other legal obligations which may be enforced against the Property.  No bankruptcy or insolvency proceedings have been started by or against Receiver.

     6.    **Exceptions and Additions.**  The following is a complete list of exceptions and additions to the above statements: (a) items set forth in Section II of Schedule B of the Title Commitment, as modified to date by an authorized agent of said title insurer, (b) subject to all matters of record, (c) the Leases; and (d) the Receiver Order and all proceedings thereunder.

7.     **Reliance.**  Receiver makes this affidavit in order to induce the Title Company to insure title to the Property.  It is aware that the Title Company will rely on the statements made in this affidavit and on its truthfulness.

**COLLIERS INTERNATIONAL NJ LLC**

Signed and sworn to before
me on _____, 20___                    By:_____
                                                          Name:
_____                      Title:
Notary Public

EX. J-2

**FIRST AMENDMENT TO AGREEMENT OF PURCHASE AND SALE**

This **FIRST AMENDMENT TO AGREEMENT OF PURCHASE AND SALE** ("**First Amendment**") is dated as of the 26 day of May, 2021 by and between **COLLIERS INTERNATIONAL NJ LLC, AS COURT-APPOINTED RECEIVER FOR THE PROPERTY, PURSUANT TO THE RECEIVER ORDER** ("**Seller**") and **ARGO MANAGEMENT LLC** ("**Purchaser**").

RECITALS

**WHEREAS**, Seller and Purchaser entered into that certain Agreement of Purchase and Sale dated February 17, 2021("**Agreement**") for the sale of the property known as 212, 214 & 225 Atlantic Avenue, Atlantic City, New Jersey 08401, as more particularly described in the Agreement; and

**WHEREAS**, by letter dated March 22, 2021 the parties extended the Feasibility Period under the Agreement until April 26, 2021; and

**WHEREAS**, by letter dated April 26, 2021 counsel to Purchaser sent a letter to Seller terminating the Agreement ("**Termination Letter**"); and

**WHEREAS**, the Purchaser has agreed to withdrawal the Termination Letter and reinstate the Agreement provided that the parties amend the Agreement in accordance with the terms contained in this First Amendment.

**NOW THEREFORE**, in consideration of the foregoing, Seller and Purchaser hereby agree as follows:

1. **Previously Defined Terms; Conflict**.  Each capitalized term not expressly defined in this First Amendment shall have the meaning ascribed thereto in the Agreement. All references to "this Agreement" in the Agreement or this First Amendment shall be deemed to mean the Agreement and this First Amendment inclusive.  In the event of any conflict or inconsistency between the Agreement and this First Amendment, this First Amendment shall control.

2. **Purchase Price**.   **Exhibit A** attached to the Agreement is hereby deleted in its entirely and replaced with **Exhibit A** attached to this First Amendment.

3. **Feasibility Period; Additional Deposit**.  Purchaser acknowledges that the Feasibility Period, as set forth in Section 10.1 of the Agreement has expired. Purchaser has paid the Additional Earnest Money to Escrow Agent and the Earnest Money shall be immediately nonrefundable to Purchaser except as otherwise set forth in the Agreement.

4. **Withdrawal of Termination Letter**.  Upon execution of this First Amendment by the parties, the Termination Letter is withdrawn by Purchaser and the Agreement is hereby reinstated and in full force and effect.

5. **Extension of Outside Date for Issuance of Approval of Order.** Section 7.1 of the Agreement is revised to delete "August 31, 2021" as the Outside Date, and replace it with "October 31, 2021" and to delete "October 29, 2021" as the Extension Period and replace it with "December 29, 2021."

6. **No Other Revisions to Agreement**. All other provisions of the Agreement which are not specifically amendment by this First Amendment shall remain the same and in full force and effect.

7. **Counterparts**. This First Amendment may be executed and delivered in several counterparts, each of which, when so executed and delivered, shall constitute an original, fully enforceable counterpart for all purposes.

8. **No Defaults**. As of the date hereof, Seller has complied in all respects with the Agreement and there exists no default or event that with the passage of time would become a default by Seller under the Agreement.

9. **Release of Claims**. As a material part of the consideration for Seller's execution of this First Amendment, Purchaser does hereby unconditionally, irrevocably and unequivocally:

(a)     acknowledge, agree and affirm that Purchaser does not possess any claims, defenses, offsets, or counterclaims of any kind or nature against or with respect to the Agreement or this Amendment (including any aspect of the negotiation or enforcement thereof) or any knowledge of any facts or circumstances that might give rise to or be the basis of any such claims, defenses, offsets, or counterclaims.

(b)     release and forever discharge Seller and its past, present, and future members, directors, managers, officers, employees, attorneys, advisers, consultants, servicers, representatives or agents (collectively, the "**Released Parties**") from any and all existing, future, or potential liabilities, obligations, actions, claims, causes of action, suits, proceedings, demands, damages, costs and expenses of every kind whatsoever, whether known or unknown, arising from or relating to any alleged or actual act, omission, occurrence, or transaction prior to or the date of this Amendment (collectively, the "**Claims and Liabilities**").

(c)     acknowledge that, subsequent to the execution of this Amendment, Purchaser may discover Claims and Liabilities that are now unknown to or unanticipated by it, including unknown or unanticipated Claims and Liabilities that may have materially affected the decision to execute this Agreement. Purchaser acknowledges that it is assuming the risk that such unknown or unanticipated Claims and Liabilities exist, and agree that the releases granted by Purchaser in this Agreement shall apply to and are effective with respect to all such Claims and Liabilities.

(d)     acknowledge that Seller is specifically relying upon Purchaser's acknowledgments and agreements in this <u>Section 7</u> in executing this First Amendment,

8034281 v4

and that in the absence of such agreements Seller would be unwilling to agree to this Amendment.

[no further text on this page]

**NOW THEREFORE, the undersigned have executed this First Amendment as of the date first written above.**

**SELLER:**

Colliers International NJ LLC, as Court-Appointed Receiver for the Property, Pursuant to the Receiver Order

By: _____

    Name:  Richard J. Madison
    Title:   Executive Managing Director

**PURCHASER:**

ARGO Management LLC

By: _____
Name: Aron Gottlieb
Title:   Authorized Signatory

Signature Page
First Amendment to Agreement of Purchase and Sale
212, 214 & 225 Atlantic Avenue, Atlantic City, New Jersey

4

**EXHIBIT A**

**OWNER, PROPERTY, PURCHASER, PURCHASE PRICE**

| Owner | Address | Purchaser | Purchase Price |
|-------|---------|-----------|----------------|
| Atlantic Norse, LLC | 212, 214 and 225 Atlantic Avenue, Atlantic City, NJ | ARGO Management, LLC | $1,900,000.00 |

5

8034281 v4

**ASSIGNMENT OF AGREEMENT OF PURCHASE AND SALE**
**FOR**
**212, 214 & 225 ATLANTIC AVENUE, ATLANTIC CITY, NEW JERSEY**

THIS **ASSIGNMENT OF AGREEMENT OF PURCHASE AND SALE** (this "Assignment") made this _4_ day of June, 2021, between **ARGO MANAGEMENT LLC hereinafter** referred to as "ASSIGNOR" and **ARGO ATLANTIC LLC**, hereinafter referred to as "ASSIGNEE".

**WHEREAS**, the Assignor has previously executed an Agreement of Purchase and Sale dated as of February 17, 2021, as amended by First Amendment to Agreement of Sale dated as of May 26, 2021 (jointly, the "Agreement"), (copies of which is incorporated herein by reference) for the purchase from Colliers International NJ LLC, as Court-Appointed Receiver for the Property Pursuant to the Receiver Order, as Seller, and Argo Management LLC as Purchaser for multi-family residential building(s) located at 212, 214 & 225 Atlantic Avenue, Atlantic City, New Jersey 08401 (the "Property"); and

**WHEREAS**, the Assignee has agreed to assume and be liable for all of the obligations of the Assignor pursuant to the terms and provisions of the Agreement; and

**WHEREAS**, by this Assignment, Assignor does hereby assign the Agreement to the Assignee, who agrees to accept said Assignment and agrees to be bound by all the terms and conditions of the Agreement as if it had originally executed the same as the Purchaser.

**NOW, THEREFORE**, in consideration of the mutual promises, covenants and conditions hereinafter set forth the parties agree:

That the undersigned, as Assignor, does hereby assign all its rights, title and interest in the Agreement including any right it may have to the Earnest Money (as defined in Section 2.2(a)(i) of the Agreement), which has been previously deposited with Iconic Title Agency, LLC, the Escrow Agent, pursuant to terms of the Agreement and acknowledged by the "Escrow Agent Receipt Initial Earnest Money" and the Escrow Agent Receipt Additional Earnest Money", each as attachments to

the Agreement. Assignee understands and agrees that its rights to the Earnest Money (if any) are subject in all events to the terms and conditions of the Agreement.

2. The Assignor and Assignee agree, that as a condition precedent for this Assignment to be effective, that both parties assume on a joint and several basis all obligations and responsibilities due by the Purchaser to the Seller pursuant to the terms, covenants and conditions of the Agreement and under no circumstances is the Assignor released from its obligations under the Agreement by this Assignment.

3. The within Assignment shall be binding on the Assignor and Assignee upon the execution of this Assignment by both parties; and

4. Notwithstanding anything contained herein to the contrary, this Assignment shall not become fully effective until such time as same is approved by and signed by the Seller.

**IN WITNESS WHEREOF**, the parties have executed this Assignment of Purchase and Sale Agreement dated as of the date first written above.

ASSIGNOR

ARGO MANAGEMENT LLC

By:

Eliezer Gottlieb, Authorized Signatory

ASSIGNEE

ARGO ATLANTIC LLC

By:

Eliezer Gottlieb, Authorized Signatory

The undersigned, being the Seller under the terms of the Agreement, hereby consents to the assignment of the Agreement to the Assignee the day and year first above written.

**SELLER**

**Colliers International NJ LLC, as**
**Court-Appointed Receiver for**
**the Property Pursuant to the Receiver Order**

By: _____

Name: __Richard J. Madison_____

Title: _____

# Exhibit B



# 212, 214, 225 Atlantic Avenue
# Atlantic Norse LLC

## U.S. Bank National Ass'n v. Englewood Funding, LLC, et al.

## Civil Action No. 19-cv-17865 (MCA) (LDW)

April 2021

PREPARED BY: Bryan Faulkner
704-413-6731
Bryan.Faulkner@colliers.com

# Table of Contents

1. Statement of Case

2. Balance Sheet

3. Income Statement

4. Receipt Register

5. Check Register

6. Aged Receivables

7. Accounts Payable Aging

8. Rent Roll

9. Bank Reconciliation and Statement

U.S. Bank Statement of the Case: In this action, plaintiff U.S. Bank National Ass'n seeks to foreclose a commercial mortgage encumbering certain residential apartment buildings located throughout the State of New Jersey, as more particularly identified and described in the Schedule annexed to this Court's Order appointing Colliers International NJ LLC to serve as the Receiver for the properties at issue. The corporate borrowers deferred maintenance and other management responsibilities for these properties, creating profound and immediate issues for which this appointment was necessary. Due to an ongoing criminal investigation, the managing member for these entities (Seth Levine) refused to provide critical operating information or to otherwise assist with the Receiver's assumption of the management responsibilities necessary to stabilize these assets at the time of its appointment. This Inventory and Report is provided pursuant to the Court's Order.

212, 214 and 225 Atlantic Avenue (1704-nj)                                                                    Page 1

## Balance Sheet

Period = Apr 2021

Book = Cash ; Tree = ysi_bs

| | | Current Balance |
|---|---|---|
| **1000-0000** | **ASSETS** | |
| | | |
| **1005-0000** | **CASH & EQUIVALENTS** | |
| 1020-0000 | Cash-Operating | 3,803.11 |
| | | |
| **1099-9999** | **TOTAL CASH & EQUIVALENTS** | **3,803.11** |
| | | |
| **1999-9999** | **TOTAL ASSETS** | **3,803.11** |
| | | |
| **2000-0000** | **LIABILITY AND EQUITY** | |
| | | |
| **3000-0000** | **EQUITY** | |
| 3100-0300 | Funding from Loan Servicer | 145,621.90 |
| 3800-0000 | Current Year Earnings | 2,772.86 |
| 3811-0000 | Prior Year Retained Earnings | -144,591.65 |
| | | |
| **3900-9999** | **TOTAL EQUITY** | **3,803.11** |
| | | |
| **3999-9999** | **TOTAL LIABILITY & EQUITY** | **3,803.11** |

# Income Statement

Period = Apr 2021

Book = Cash ; Tree = ysi_is

| | | Period to Date | % | Year to Date | % |
|---|---|---:|---:|---:|---:|
| 4001-0000 | **REVENUE** | | | | |
| 4005-0000 | **RENT** | | | | |
| 4006-0000 | Prepaid Income | 430.09 | 5.84 | 1,924.50 | 5.83 |
| 4110-0000 | Rent | 6,936.22 | 94.16 | 31,094.94 | 94.17 |
| 4299-4999 | **TOTAL RENT** | **7,366.31** | **100.00** | **33,019.44** | **100.00** |
| 4998-9999 | **TOTAL REVENUE** | **7,366.31** | **100.00** | **33,019.44** | **100.00** |
| 5000-0000 | **OPERATING EXPENSES** | | | | |
| 5001-0000 | **RECOVERABLE EXPENSES** | | | | |
| 5002-0000 | **TAXES** | | | | |
| 5140-0000 | Taxes Other | 0.00 | 0.00 | 700.00 | 2.12 |
| 5142-0000 | Permits and Taxes | 0.00 | 0.00 | 3,000.00 | 9.09 |
| 5149-9999 | **TOTAL TAXES** | **0.00** | **0.00** | **3,700.00** | **11.21** |
| 5200-0000 | **UTILITIES** | | | | |
| 5205-0000 | Electricity | 933.75 | 12.68 | 2,671.16 | 8.09 |
| 5205-0001 | Electricity - Bldg 1 | 0.00 | 0.00 | 220.92 | 0.67 |
| 5205-0002 | Electricity - Bldg 2 | 0.00 | 0.00 | 3,763.55 | 11.40 |
| 5210-0000 | Gas | 0.00 | 0.00 | 961.99 | 2.91 |
| 5215-0002 | Water - Bldg 2 | 1,827.23 | 24.81 | 1,827.23 | 5.53 |
| 5215-0003 | Water - Bldg 3 | 1,680.75 | 22.82 | 1,680.75 | 5.09 |
| 5220-0000 | Sewer | 0.00 | 0.00 | 420.46 | 1.27 |
| 5230-0000 | Refuse Removal | 391.19 | 5.31 | 2,150.27 | 6.51 |
| 5249-9999 | **TOTAL UTILITIES** | **4,832.92** | **65.61** | **13,696.33** | **41.48** |
| 5250-0000 | **ENGINEERING** | | | | |
| 5255-0000 | Engineering Compensation | 0.00 | 0.00 | 531.30 | 1.61 |
| 5299-9999 | **TOTAL ENGINEERING** | **0.00** | **0.00** | **531.30** | **1.61** |
| 5550-0000 | **LANDSCAPING** | | | | |
| 5555-0000 | Landscaping Contract | 0.00 | 0.00 | 1,340.42 | 4.06 |
| 5599-9999 | **TOTAL LANDSCAPING** | **0.00** | **0.00** | **1,340.42** | **4.06** |
| 5650-0000 | **GEN BLDG REPAIR/MAINT.** | | | | |
| 5651-0000 | Fire Protection Building | 0.00 | 0.00 | 537.26 | 1.63 |
| 5680-0000 | Pest Control | 533.12 | 7.24 | 2,494.39 | 7.55 |
| 5699-9999 | **TOTAL GEN BLDG REPAIR/MAINT.** | **533.12** | **7.24** | **3,031.65** | **9.18** |

212, 214 and 225 Atlantic Avenue (1704-nj)                                                                                                                                Page 2

## Income Statement

Period = Apr 2021

Book = Cash ; Tree = ysi_is

| | | Period to Date | % | Year to Date | % |
|---|---|---:|---:|---:|---:|
| 5750-0000 | **LIFE SAFETY** | | | | |
| 5755-0000 | Life Safety - Alarm Contract | 0.00 | 0.00 | 3,047.07 | 9.23 |
| 5755-0001 | Life Safety - Monitoring | 0.00 | 0.00 | 338.64 | 1.03 |
| 5799-9999 | **TOTAL LIFE SAFETY** | **0.00** | **0.00** | **3,385.71** | **10.25** |
| 5800-0000 | **MANAGEMENT/ADMIN** | | | | |
| 5810-0000 | Management Compensation | 0.00 | 0.00 | 148.80 | 0.45 |
| 5845-0000 | Telephone | 32.13 | 0.44 | 78.03 | 0.24 |
| 5895-0000 | Miscellaneous Operating Expense | 0.00 | 0.00 | 65.60 | 0.20 |
| 5899-9999 | **TOTAL MANAGEMENT/ADMIN** | **32.13** | **0.44** | **292.43** | **0.89** |
| 5950-9999 | **TOTAL RECOVERABLE EXPENSES** | **5,398.17** | **73.28** | **25,977.84** | **78.67** |
| 6000-0000 | **NON-RECOVERABLE EXPENSES** | | | | |
| 6200-0000 | **UTILITIES** | | | | |
| 6210-0000 | Gas | 0.00 | 0.00 | 2,379.75 | 7.21 |
| 6249-9999 | **TOTAL UTILITIES** | **0.00** | **0.00** | **2,379.75** | **7.21** |
| 6650-0000 | **GENERAL BLDG RPR & MAINT** | | | | |
| 6650-0600 | Roofing | 0.00 | 0.00 | 1,136.08 | 3.44 |
| 6699-9999 | **TOTAL GENERAL BLDG RPR & MAINT** | **0.00** | **0.00** | **1,136.08** | **3.44** |
| 6750-0000 | **FIRE/LIFE SAFETY** | | | | |
| 6755-0000 | Alarm Contract | 0.00 | 0.00 | 613.23 | 1.86 |
| 6760-0000 | Alarm Additional Service | 0.00 | 0.00 | 139.68 | 0.42 |
| 6799-9999 | **TOTAL FIRE/LIFE SAFETY** | **0.00** | **0.00** | **752.91** | **2.28** |
| 6997-9999 | **TOTAL NON-RECOVERABLE EXPENSES** | **0.00** | **0.00** | **4,268.74** | **12.93** |
| 6998-9999 | **TOTAL OPERATING EXPENSES** | **5,398.17** | **73.28** | **30,246.58** | **91.60** |
| 6999-9999 | **NET OPERATING INCOME** | **1,968.14** | **26.72** | **2,772.86** | **8.40** |
| 9496-9999 | **NET INCOME** | **1,968.14** | **26.72** | **2,772.86** | **8.40** |

Thursday, May 06, 2021
12:31 PM

5/6/2021 12:32 PM

212, 214 and 225 Atlantic Avenue (1704-nj)
## Receipt Register
For Period = Apr 2021

| Control | Batch | Period | Date | Person | Property | Cash Acct | Account | Job Code | Interco | Amount | Reference | Check # | Notes |
|---------|-------|--------|------|--------|----------|-----------|---------|----------|---------|--------|-----------|---------|-------|
| R-1268485 | 483342 | 04/2021 | 4/7/2021 | Nilda Ramos(ramo1704) | 212, 214 and 225 Atlantic Avenue(1704-nj) | 1020-0000 | 4110-0000 Rent | | | 525.00 | | 27353963406 | |
| | | | | | 212, 214 and 225 Atlantic Avenue(1704-nj) | 1020-0000 | 4006-0000 Prepaid Income | | | -262.50 | | 27353963406 | |
| R-1268486 | 483342 | 04/2021 | 4/7/2021 | Alvira Campbell and Rudolph Campbell(camp1704) | 212, 214 and 225 Atlantic Avenue(1704-nj) | 1020-0000 | 4006-0000 Prepaid Income | | | 0.09 | | 332 | |
| | | | | | 212, 214 and 225 Atlantic Avenue(1704-nj) | 1020-0000 | 4110-0000 Rent | | | 564.72 | | 332 | |
| R-1270011 | 484006 | 04/2021 | 4/9/2021 | Cindy Lopez(cind1704) | 212, 214 and 225 Atlantic Avenue(1704-nj) | 1020-0000 | 4110-0000 Rent | | | 550.00 | | 19250527926 | |
| R-1270012 | 484006 | 04/2021 | 4/9/2021 | Roberto Morales(mora1704) | 212, 214 and 225 Atlantic Avenue(1704-nj) | 1020-0000 | 4110-0000 Rent | | | 550.00 | | 27119341675 | |
| R-1271013 | 484484 | 04/2021 | 4/13/2021 | Mayra Hernandez(mayr1704) | 212, 214 and 225 Atlantic Avenue(1704-nj) | 1020-0000 | 4110-0000 Rent | | | 500.00 | | 19250590266 | |
| R-1271015 | 484484 | 04/2021 | 4/13/2021 | Mayra Hernandez(mayr1704) | 212, 214 and 225 Atlantic Avenue(1704-nj) | 1020-0000 | 4110-0000 Rent | | | 150.00 | | 19250590267 | |
| R-1271016 | 484484 | 04/2021 | 4/13/2021 | Eddie Rodriguez(erid1704) | 212, 214 and 225 Atlantic Avenue(1704-nj) | 1020-0000 | 4110-0000 Rent | | | 600.00 | | 133 | |
| R-1271028 | 484484 | 04/2021 | 4/13/2021 | Marvin Rodriguez(mar1704) | 212, 214 and 225 Atlantic Avenue(1704-nj) | 1020-0000 | 4110-0000 Rent | | | 350.00 | | 19250590136 | |
| R-1271032 | 484484 | 04/2021 | 4/13/2021 | Marvin Rodriguez(mar1704) | 212, 214 and 225 Atlantic Avenue(1704-nj) | 1020-0000 | 4110-0000 Rent | | | 500.00 | | 19250590135 | |
| R-1271530 | 484659 | 04/2021 | 4/14/2021 | Sharon Cowan(shar1704) | 212, 214 and 225 Atlantic Avenue(1704-nj) | 1020-0000 | 4110-0000 Rent | | | 189.00 | | 19250590315 | |
| R-1271533 | 484659 | 04/2021 | 4/14/2021 | Sharon Cowan(shar1704) | 212, 214 and 225 Atlantic Avenue(1704-nj) | 1020-0000 | 4110-0000 Rent | | | 500.00 | | 19250590314 | |
| R-1273072 | 485307 | 04/2021 | 4/19/2021 | Bethaida Campos(cam1704) | 212, 214 and 225 Atlantic Avenue(1704-nj) | 1020-0000 | 4006-0000 Prepaid Income | | | 700.00 | | 27237953586 | |
| R-1274771 | 486122 | 04/2021 | 4/26/2021 | Gladis Lee(lee1704) | 212, 214 and 225 Atlantic Avenue(1704-nj) | 1020-0000 | 4110-0000 Rent | | | 700.00 | | 202 | |
| R-1274772 | 486122 | 04/2021 | 4/26/2021 | Gladis Lee(lee1704) | 212, 214 and 225 Atlantic Avenue(1704-nj) | 1020-0000 | 4110-0000 Rent | | | 700.00 | | 201 | |
| R-1274789 | 486143 | 04/2021 | 4/23/2021 | Betulia Rodriguez(rodr1704) | 212, 214 and 225 Atlantic Avenue(1704-nj) | 1020-0000 | 4110-0000 Rent | | | 50.00 | | 19234696895 | |
| R-1274791 | 486143 | 04/2021 | 4/23/2021 | Betulia Rodriguez(rodr1704) | 212, 214 and 225 Atlantic Avenue(1704-nj) | 1020-0000 | 4110-0000 Rent | | | 500.00 | | 19234696894 | |
| R-1281063 | 488382 | 04/2021 | 4/30/2021 | Betulia Rodriguez(rodr1704) | 212, 214 and 225 Atlantic Avenue(1704-nj) | 1020-0000 | 4110-0000 Rent | | | 7.50 | | Apply | |
| | | | | | 212, 214 and 225 Atlantic Avenue(1704-nj) | 1020-0000 | 4006-0000 Prepaid Income | | | -7.50 | | Apply | |
| R-1281069 | 488386 | 04/2021 | 4/30/2021 | David Hernandez(hern1704) | 212, 214 and 225 Atlantic Avenue(1704-nj) | 1020-0000 | 4110-0000 Rent | | | 748.00 | | Apply | |
| | | | | | 212, 214 and 225 Atlantic Avenue(1704-nj) | 1020-0000 | 4110-0000 Rent | | | -748.00 | | Apply | |
| | | | | | | | | | **Total** | 7,366.31 | | | |

5/6/2021 1:02 PM

212, 214 and 225 Atlantic Avenue (1704-nj)

## Check Register

For Period = Apr 2021

| Control | Batch | Period | Date | Person | Property | Account | Job Code | Interco | Amount | Reference | Notes |
|---------|-------|--------|------|--------|----------|---------|----------|---------|--------|-----------|-------|
| K-1415724 | | 04/2021 | 4/6/2021 | STATE OF NEW JERSEY (stat662) | 212, 214 and 225 Atlantic Avenue(1704-nj) | 5142-0000 Permits and Taxes | | | -2,000.00 | 377 | |
| K-1415732 | 286732 | 04/2021 | 4/6/2021 | STATE OF NEW JERSEY (stat662) | 212, 214 and 225 Atlantic Avenue(1704-nj) | 5142-0000 Permits and Taxes | | | 2,000.00 | 40621 | |
| K-1417923 | 287225 | 04/2021 | 4/9/2021 | Cooper Pest Solutions, Inc. (coop351) | 212, 214 and 225 Atlantic Avenue(1704-nj) | 5680-0000 Pest Control | | | 133.28 | 378 | 01/20/21 service and inspection |
| K-1417924 | 287225 | 04/2021 | 4/9/2021 | Cooper Pest Solutions, Inc. (coop351) | 212, 214 and 225 Atlantic Avenue(1704-nj) | 5680-0000 Pest Control | | | 133.28 | 379 | 01/26/21 Bug Surcharge |
| K-1417925 | 287225 | 04/2021 | 4/9/2021 | Cooper Pest Solutions, Inc. (coop351) | 212, 214 and 225 Atlantic Avenue(1704-nj) | 5680-0000 Pest Control | | | 133.28 | 380 | 12/12/20 to 01/12/21 inspections |
| K-1417926 | 287225 | 04/2021 | 4/9/2021 | Cooper Pest Solutions, Inc. (coop351) | 212, 214 and 225 Atlantic Avenue(1704-nj) | 5680-0000 Pest Control | | | 133.28 | 381 | 01/26/21 bedbugs surcharge |
| K-1417927 | 287225 | 04/2021 | 4/9/2021 | Waste Management of New Jersey, Inc. (wastenj) | 212, 214 and 225 Atlantic Avenue(1704-nj) | 5230-0000 Refuse Removal | | | 380.96 | 382 | 03/18/21 2yards dumpster service pick-up |
| K-1420037 | 287757 | 04/2021 | 4/15/2021 | ATLANTIC CITY MUNICIPAL UTILITIES AUTH. (atcit18) | 212, 214 and 225 Atlantic Avenue(1704-nj) | 5205-0000 Electricity | | | 933.75 | 383 | 04/04/21 utilities |
| K-1420038 | 287757 | 04/2021 | 4/15/2021 | ATLANTIC CITY MUNICIPAL UTILITIES AUTH. (atcit18) | 212, 214 and 225 Atlantic Avenue(1704-nj) | 5215-0002 Water - Bldg 2 | | | 1,827.23 | 384 | 04/04/21 water conservation building usage |
| K-1420039 | 287757 | 04/2021 | 4/15/2021 | Verizon Wireless (veri408) | 212, 214 and 225 Atlantic Avenue(1704-nj) | 5845-0000 Telephone | | | 16.11 | 385 | 02/24-03/23/21 - TELEPHONE |
| K-1420040 | 287757 | 04/2021 | 4/15/2021 | Verizon Wireless (veri408) | 212, 214 and 225 Atlantic Avenue(1704-nj) | 4840-0000 Telephone | | | 16.02 | 386 | 1/24-2/23/21 - Telephone |
| K-1422927 | 288439 | 04/2021 | 4/21/2021 | ATLANTIC CITY MUNICIPAL UTILITIES AUTH. (atcit18) | 212, 214 and 225 Atlantic Avenue(1704-nj) | 5215-0003 Water - Bldg 3 | | | 1,680.75 | 387 | 04/04/21 building water utilities charge |
| K-1425992 | 289254 | 04/2021 | 4/30/2021 | Waste Management of New Jersey, Inc. (wastenj) | 212, 214 and 225 Atlantic Avenue(1704-nj) | 5230-0000 Refuse Removal | | | 10.23 | 388 | 04/02/21 temp roll off dumpster service |
| | | | | | | | | **Total** | 5,398.17 | | |

Page 1 of 1

# Aging Detail

DB Caption: USA LIVE 7s  Property: 1704-nj  Status: Current, Past, Future  All Selected Accounts  Age As Of: 04/30/2021  Post To: 04/2021

| Property | Customer | Lease | Status | Tran# | Charge Code | Date | Month | Current Owed | 0-30 Owed | 31-60 Owed | 61-90 Owed | Over 90 Owed | Pre-payments | Total Owed |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **212, 214 and 225 Atlantic Avenue (1704-nj)** | | | | | | | | | | | | | | |
| **Alvira Campbell and Rudolph Campbell (camp1704)** | | | | | | | | | | | | | | |
| 1704-nj | | Alvira Campbell and Rudolph Campbell | Current | R-1207447 | Prepay | 11/10/2020 | 11/2020 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -0.09 | -0.09 |
| 1704-nj | | Alvira Campbell and Rudolph Campbell | Current | R-1217655 | Prepay | 12/07/2020 | 12/2020 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -0.09 | -0.09 |
| 1704-nj | | Alvira Campbell and Rudolph Campbell | Current | R-1234955 | Prepay | 01/20/2021 | 01/2021 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -0.09 | -0.09 |
| 1704-nj | | Alvira Campbell and Rudolph Campbell | Current | R-1246371 | Prepay | 02/17/2021 | 02/2021 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -0.09 | -0.09 |
| 1704-nj | | Alvira Campbell and Rudolph Campbell | Current | R-1255359 | Prepay | 03/09/2021 | 03/2021 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -0.09 | -0.09 |
| 1704-nj | | Alvira Campbell and Rudolph Campbell | Current | R-1268486 | Prepay | 04/07/2021 | 04/2021 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -0.09 | -0.09 |
| | | **Alvira Campbell and Rudolph Campbell** | | | | | | **0.00** | **0.00** | **0.00** | **0.00** | **0.00** | **-0.54** | **-0.54** |
| **Anita Troncosco (tron1704)** | | | | | | | | | | | | | | |
| 1704-nj | | Anita Troncosco | Current | C-2198745 | rent | 10/01/2019 | 02/2020 | 500.00 | 0.00 | 0.00 | 0.00 | 500.00 | 0.00 | 500.00 |
| 1704-nj | | Anita Troncosco | Current | C-2198746 | rent | 11/01/2019 | 02/2020 | 500.00 | 0.00 | 0.00 | 0.00 | 500.00 | 0.00 | 500.00 |
| 1704-nj | | Anita Troncosco | Current | C-2198747 | rent | 12/01/2019 | 02/2020 | 500.00 | 0.00 | 0.00 | 0.00 | 500.00 | 0.00 | 500.00 |
| 1704-nj | | Anita Troncosco | Current | C-2198748 | rent | 01/01/2020 | 02/2020 | 500.00 | 0.00 | 0.00 | 0.00 | 500.00 | 0.00 | 500.00 |
| 1704-nj | | Anita Troncosco | Current | C-2198749 | rent | 02/01/2020 | 02/2020 | 500.00 | 0.00 | 0.00 | 0.00 | 500.00 | 0.00 | 500.00 |
| 1704-nj | | Anita Troncosco | Current | C-2203508 | rent | 03/01/2020 | 03/2020 | 500.00 | 0.00 | 0.00 | 0.00 | 500.00 | 0.00 | 500.00 |
| 1704-nj | | Anita Troncosco | Current | C-2202929 | rent | 04/01/2020 | 04/2020 | 500.00 | 0.00 | 0.00 | 0.00 | 500.00 | 0.00 | 500.00 |
| 1704-nj | | Anita Troncosco | Current | C-2230780 | rent | 05/01/2020 | 05/2020 | 500.00 | 0.00 | 0.00 | 0.00 | 500.00 | 0.00 | 500.00 |
| 1704-nj | | Anita Troncosco | Current | C-2259978 | rent | 06/01/2020 | 06/2020 | 500.00 | 0.00 | 0.00 | 0.00 | 500.00 | 0.00 | 500.00 |
| 1704-nj | | Anita Troncosco | Current | C-2287109 | rent | 07/01/2020 | 07/2020 | 500.00 | 0.00 | 0.00 | 0.00 | 500.00 | 0.00 | 500.00 |
| 1704-nj | | Anita Troncosco | Current | C-2323385 | rent | 08/01/2020 | 08/2020 | 500.00 | 0.00 | 0.00 | 0.00 | 500.00 | 0.00 | 500.00 |
| 1704-nj | | Anita Troncosco | Current | C-2338608 | rent | 09/01/2020 | 09/2020 | 500.00 | 0.00 | 0.00 | 0.00 | 500.00 | 0.00 | 500.00 |
| 1704-nj | | Anita Troncosco | Current | C-2363787 | rent | 10/01/2020 | 10/2020 | 500.00 | 0.00 | 0.00 | 0.00 | 500.00 | 0.00 | 500.00 |
| 1704-nj | | Anita Troncosco | Current | C-2395145 | rent | 11/01/2020 | 11/2020 | 500.00 | 0.00 | 0.00 | 0.00 | 500.00 | 0.00 | 500.00 |
| 1704-nj | | Anita Troncosco | Current | C-2416444 | rent | 12/01/2020 | 12/2020 | 500.00 | 0.00 | 0.00 | 0.00 | 500.00 | 0.00 | 500.00 |

# Aging Detail

DB Caption: USA LIVE 7s  Property: 1704-nj  Status: Current, Past, Future  All Selected Accounts  Age As Of: 04/30/2021  Post To: 04/2021

| Property | Customer | Lease | Status | Tran# | Charge Code | Date | Month | Current Owed | 0-30 Owed | 31-60 Owed | 61-90 Owed | Over 90 Owed | Pre-payments | Total Owed |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1704-nj | | Anita Troncosco | Current | C-2446734 | rent | 01/01/2021 | 01/2021 | 500.00 | 0.00 | 0.00 | 0.00 | 500.00 | 0.00 | 500.00 |
| 1704-nj | | Anita Troncosco | Current | C-2463896 | rent | 02/01/2021 | 02/2021 | 500.00 | 0.00 | 0.00 | 500.00 | 0.00 | 0.00 | 500.00 |
| 1704-nj | | Anita Troncosco | Current | C-2491221 | rent | 03/01/2021 | 03/2021 | 500.00 | 0.00 | 500.00 | 0.00 | 0.00 | 0.00 | 500.00 |
| 1704-nj | | Anita Troncosco | Current | C-2520895 | rent | 04/01/2021 | 04/2021 | 500.00 | 500.00 | 0.00 | 0.00 | 0.00 | 0.00 | 500.00 |
| | | **Anita Troncosco** | | | | | | **9,500.00** | **500.00** | **500.00** | **500.00** | **8,000.00** | **0.00** | **9,500.00** |
| **Bethaida Campos (cam1704)** | | | | | | | | | | | | | | |
| 1704-nj | | Bethaida Campos | Current | R-1246357 | Prepay | 02/17/2021 | 02/2021 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -700.00 | -700.00 |
| 1704-nj | | Bethaida Campos | Current | R-1258833 | Prepay | 03/15/2021 | 03/2021 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -700.00 | -700.00 |
| 1704-nj | | Bethaida Campos | Current | R-1273072 | Prepay | 04/19/2021 | 04/2021 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -700.00 | -700.00 |
| | | **Bethaida Campos** | | | | | | **0.00** | **0.00** | **0.00** | **0.00** | **0.00** | **-2,100.00** | **-2,100.00** |
| **Betulia Rodriguez (rodr1704)** | | | | | | | | | | | | | | |
| 1704-nj | | Betulia Rodriguez | Current | R-1263560 | Prepay | 03/30/2021 | 03/2021 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -455.00 | -455.00 |
| 1704-nj | | Betulia Rodriguez | Current | R-1263564 | Prepay | 03/30/2021 | 03/2021 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -50.00 | -50.00 |
| | | **Betulia Rodriguez** | | | | | | **0.00** | **0.00** | **0.00** | **0.00** | **0.00** | **-505.00** | **-505.00** |
| **Carmen Mercado (merc1704)** | | | | | | | | | | | | | | |
| 1704-nj | | Carmen Mercado | Past | R-1207432 | Prepay | 11/10/2020 | 11/2020 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -600.00 | -600.00 |
| 1704-nj | | Carmen Mercado | Past | R-1210194 | Prepay | 11/18/2020 | 11/2020 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -400.00 | -400.00 |
| | | **Carmen Mercado** | | | | | | **0.00** | **0.00** | **0.00** | **0.00** | **0.00** | **-1,000.00** | **-1,000.00** |
| **Carolina Medina (medi1704)** | | | | | | | | | | | | | | |
| 1704-nj | | Carolina Medina | Current | C-2198705 | rent | 10/01/2019 | 02/2020 | 700.00 | 0.00 | 0.00 | 0.00 | 700.00 | 0.00 | 700.00 |
| 1704-nj | | Carolina Medina | Current | C-2446728 | rent | 01/01/2021 | 01/2021 | 700.00 | 0.00 | 0.00 | 0.00 | 700.00 | 0.00 | 700.00 |
| 1704-nj | | Carolina Medina | Current | C-2463890 | rent | 02/01/2021 | 02/2021 | 700.00 | 0.00 | 0.00 | 700.00 | 0.00 | 0.00 | 700.00 |
| 1704-nj | | Carolina Medina | Current | C-2491215 | rent | 03/01/2021 | 03/2021 | 700.00 | 0.00 | 700.00 | 0.00 | 0.00 | 0.00 | 700.00 |
| 1704-nj | | Carolina Medina | Current | C-2520889 | rent | 04/01/2021 | 04/2021 | 700.00 | 700.00 | 0.00 | 0.00 | 0.00 | 0.00 | 700.00 |
| | | **Carolina Medina** | | | | | | **3,500.00** | **700.00** | **700.00** | **700.00** | **1,400.00** | **0.00** | **3,500.00** |
| **Cindy Lopez (cind1704)** | | | | | | | | | | | | | | |

# Aging Detail

DB Caption: USA LIVE 7s  Property: 1704-nj  Status: Current, Past, Future  All Selected Accounts  Age As Of: 04/30/2021  Post To: 04/2021

| Property | Customer | Lease | Status | Tran# | Charge Code | Date | Month | Current Owed | 0-30 Owed | 31-60 Owed | 61-90 Owed | Over 90 Owed | Pre-payments | Total Owed |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1704-nj | | Cindy Lopez | Current | R-1255361 | Prepay | 03/09/2021 | 03/2021 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -75.00 | -75.00 |
| 1704-nj | | Cindy Lopez | Current | R-1255362 | Prepay | 03/09/2021 | 03/2021 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -475.00 | -475.00 |
| | | **Cindy Lopez** | | | | | | **0.00** | **0.00** | **0.00** | **0.00** | **0.00** | **-550.00** | **-550.00** |
| **David Hernandez (hern1704)** | | | | | | | | | | | | | | |
| 1704-nj | | David Hernandez | Current | C-2198731 | rent | 11/01/2019 | 02/2020 | 16.00 | 0.00 | 0.00 | 0.00 | 16.00 | 0.00 | 16.00 |
| 1704-nj | | David Hernandez | Current | C-2463885 | rent | 02/01/2021 | 02/2021 | 748.00 | 0.00 | 0.00 | 748.00 | 0.00 | 0.00 | 748.00 |
| 1704-nj | | David Hernandez | Current | C-2491210 | rent | 03/01/2021 | 03/2021 | 748.00 | 0.00 | 748.00 | 0.00 | 0.00 | 0.00 | 748.00 |
| 1704-nj | | David Hernandez | Current | C-2520884 | rent | 04/01/2021 | 04/2021 | 748.00 | 748.00 | 0.00 | 0.00 | 0.00 | 0.00 | 748.00 |
| | | **David Hernandez** | | | | | | **2,260.00** | **748.00** | **748.00** | **748.00** | **16.00** | **0.00** | **2,260.00** |
| **Diana Moraces (dia1704)** | | | | | | | | | | | | | | |
| 1704-nj | | Diana Moraces | Current | C-2198670 | rent | 10/01/2019 | 02/2020 | 550.00 | 0.00 | 0.00 | 0.00 | 550.00 | 0.00 | 550.00 |
| 1704-nj | | Diana Moraces | Current | C-2198671 | rent | 11/01/2019 | 02/2020 | 550.00 | 0.00 | 0.00 | 0.00 | 550.00 | 0.00 | 550.00 |
| 1704-nj | | Diana Moraces | Current | C-2198672 | rent | 12/01/2019 | 02/2020 | 550.00 | 0.00 | 0.00 | 0.00 | 550.00 | 0.00 | 550.00 |
| 1704-nj | | Diana Moraces | Current | C-2258467 | rent | 01/01/2020 | 05/2020 | 550.00 | 0.00 | 0.00 | 0.00 | 550.00 | 0.00 | 550.00 |
| | | **Diana Moraces** | | | | | | **2,200.00** | **0.00** | **0.00** | **0.00** | **2,200.00** | **0.00** | **2,200.00** |
| **Eddie Rodriguez (erid1704)** | | | | | | | | | | | | | | |
| 1704-nj | | Eddie Rodriguez | Current | C-2395138 | rent | 11/01/2020 | 11/2020 | 600.00 | 0.00 | 0.00 | 0.00 | 600.00 | 0.00 | 600.00 |
| 1704-nj | | Eddie Rodriguez | Current | C-2416437 | rent | 12/01/2020 | 12/2020 | 600.00 | 0.00 | 0.00 | 0.00 | 600.00 | 0.00 | 600.00 |
| 1704-nj | | Eddie Rodriguez | Current | C-2463889 | rent | 02/01/2021 | 02/2021 | 600.00 | 0.00 | 0.00 | 600.00 | 0.00 | 0.00 | 600.00 |
| | | **Eddie Rodriguez** | | | | | | **1,800.00** | **0.00** | **0.00** | **600.00** | **1,200.00** | **0.00** | **1,800.00** |
| **Eliezer Morales Jr (emor1704)** | | | | | | | | | | | | | | |
| 1704-nj | | Eliezer Morales Jr | Current | C-2198765 | rent | 10/01/2019 | 02/2020 | 550.00 | 0.00 | 0.00 | 0.00 | 550.00 | 0.00 | 550.00 |
| 1704-nj | | Eliezer Morales Jr | Current | C-2198766 | rent | 11/01/2019 | 02/2020 | 550.00 | 0.00 | 0.00 | 0.00 | 550.00 | 0.00 | 550.00 |
| 1704-nj | | Eliezer Morales Jr | Current | C-2198767 | rent | 12/01/2019 | 02/2020 | 550.00 | 0.00 | 0.00 | 0.00 | 550.00 | 0.00 | 550.00 |
| 1704-nj | | Eliezer Morales Jr | Current | C-2198768 | rent | 01/01/2020 | 02/2020 | 550.00 | 0.00 | 0.00 | 0.00 | 550.00 | 0.00 | 550.00 |

# Aging Detail

DB Caption: USA LIVE 7s  Property: 1704-nj  Status: Current, Past, Future  All Selected Accounts  Age As Of: 04/30/2021  Post To: 04/2021

| Property | Customer | Lease | Status | Tran# | Charge Code | Date | Month | Current Owed | 0-30 Owed | 31-60 Owed | 61-90 Owed | Over 90 Owed | Pre-payments | Total Owed |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1704-nj | | Eliezer Morales Jr | Current | C-2198769 | rent | 02/01/2020 | 02/2020 | 550.00 | 0.00 | 0.00 | 0.00 | 550.00 | 0.00 | 550.00 |
| 1704-nj | | Eliezer Morales Jr | Current | C-2203510 | rent | 03/01/2020 | 03/2020 | 550.00 | 0.00 | 0.00 | 0.00 | 550.00 | 0.00 | 550.00 |
| 1704-nj | | Eliezer Morales Jr | Current | C-2202931 | rent | 04/01/2020 | 04/2020 | 550.00 | 0.00 | 0.00 | 0.00 | 550.00 | 0.00 | 550.00 |
| 1704-nj | | Eliezer Morales Jr | Current | C-2230782 | rent | 05/01/2020 | 05/2020 | 550.00 | 0.00 | 0.00 | 0.00 | 550.00 | 0.00 | 550.00 |
| 1704-nj | | Eliezer Morales Jr | Current | C-2259980 | rent | 06/01/2020 | 06/2020 | 550.00 | 0.00 | 0.00 | 0.00 | 550.00 | 0.00 | 550.00 |
| 1704-nj | | Eliezer Morales Jr | Current | C-2287111 | rent | 07/01/2020 | 07/2020 | 550.00 | 0.00 | 0.00 | 0.00 | 550.00 | 0.00 | 550.00 |
| 1704-nj | | Eliezer Morales Jr | Current | C-2323387 | rent | 08/01/2020 | 08/2020 | 550.00 | 0.00 | 0.00 | 0.00 | 550.00 | 0.00 | 550.00 |
| 1704-nj | | Eliezer Morales Jr | Current | C-2338610 | rent | 09/01/2020 | 09/2020 | 550.00 | 0.00 | 0.00 | 0.00 | 550.00 | 0.00 | 550.00 |
| 1704-nj | | Eliezer Morales Jr | Current | C-2363789 | rent | 10/01/2020 | 10/2020 | 550.00 | 0.00 | 0.00 | 0.00 | 550.00 | 0.00 | 550.00 |
| 1704-nj | | Eliezer Morales Jr | Current | C-2395147 | rent | 11/01/2020 | 11/2020 | 550.00 | 0.00 | 0.00 | 0.00 | 550.00 | 0.00 | 550.00 |
| 1704-nj | | Eliezer Morales Jr | Current | C-2416446 | rent | 12/01/2020 | 12/2020 | 550.00 | 0.00 | 0.00 | 0.00 | 550.00 | 0.00 | 550.00 |
| 1704-nj | | Eliezer Morales Jr | Current | C-2446736 | rent | 01/01/2021 | 01/2021 | 550.00 | 0.00 | 0.00 | 0.00 | 550.00 | 0.00 | 550.00 |
| 1704-nj | | Eliezer Morales Jr | Current | C-2463898 | rent | 02/01/2021 | 02/2021 | 550.00 | 0.00 | 0.00 | 550.00 | 0.00 | 0.00 | 550.00 |
| 1704-nj | | Eliezer Morales Jr | Current | C-2491223 | rent | 03/01/2021 | 03/2021 | 550.00 | 0.00 | 550.00 | 0.00 | 0.00 | 0.00 | 550.00 |
| 1704-nj | | Eliezer Morales Jr | Current | C-2520897 | rent | 04/01/2021 | 04/2021 | 550.00 | 550.00 | 0.00 | 0.00 | 0.00 | 0.00 | 550.00 |
| | | **Eliezer Morales Jr** | | | | | | **10,450.00** | **550.00** | **550.00** | **550.00** | **8,800.00** | **0.00** | **10,450.00** |
| | | **Gladys Cartagena (cart1704)** | | | | | | | | | | | | |
| 1704-nj | | Gladys Cartagena | Current | C-2198690 | rent | 10/01/2019 | 02/2020 | 769.63 | 0.00 | 0.00 | 0.00 | 769.63 | 0.00 | 769.63 |
| | | **Gladys Cartagena** | | | | | | **769.63** | **0.00** | **0.00** | **0.00** | **769.63** | **0.00** | **769.63** |
| | | **Graig Crosby (cros1704)** | | | | | | | | | | | | |
| 1704-nj | | Graig Crosby | Current | C-2258308 | rent | 10/01/2019 | 05/2020 | 700.00 | 0.00 | 0.00 | 0.00 | 700.00 | 0.00 | 700.00 |
| 1704-nj | | Graig Crosby | Current | C-2258309 | rent | 11/01/2019 | 05/2020 | 700.00 | 0.00 | 0.00 | 0.00 | 700.00 | 0.00 | 700.00 |
| | | **Graig Crosby** | | | | | | **1,400.00** | **0.00** | **0.00** | **0.00** | **1,400.00** | **0.00** | **1,400.00** |
| | | **Jennifer Rodriguez (jrod1704)** | | | | | | | | | | | | |
| 1704-nj | | Jennifer Rodriguez | Past | C-2198655 | rent | 10/01/2019 | 02/2020 | 770.53 | 0.00 | 0.00 | 0.00 | 770.53 | 0.00 | 770.53 |

# Aging Detail

DB Caption: USA LIVE 7s  Property: 1704-nj  Status: Current, Past, Future  All Selected Accounts  Age As Of: 04/30/2021  Post To: 04/2021

| Property | Customer | Lease | Status | Tran# | Charge Code | Date | Month | Current Owed | 0-30 Owed | 31-60 Owed | 61-90 Owed | Over 90 Owed | Pre-payments | Total Owed |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1704-nj | | Jennifer Rodriguez | Past | C-2198656 | rent | 11/01/2019 | 02/2020 | 770.53 | 0.00 | 0.00 | 0.00 | 770.53 | 0.00 | 770.53 |
| 1704-nj | | Jennifer Rodriguez | Past | C-2198657 | rent | 12/01/2019 | 02/2020 | 770.53 | 0.00 | 0.00 | 0.00 | 770.53 | 0.00 | 770.53 |
| 1704-nj | | Jennifer Rodriguez | Past | C-2198658 | rent | 01/01/2020 | 02/2020 | 770.53 | 0.00 | 0.00 | 0.00 | 770.53 | 0.00 | 770.53 |
| 1704-nj | | Jennifer Rodriguez | Past | C-2198659 | rent | 02/01/2020 | 02/2020 | 770.53 | 0.00 | 0.00 | 0.00 | 770.53 | 0.00 | 770.53 |
| 1704-nj | | Jennifer Rodriguez | Past | C-2203501 | rent | 03/01/2020 | 03/2020 | 770.53 | 0.00 | 0.00 | 0.00 | 770.53 | 0.00 | 770.53 |
| 1704-nj | | Jennifer Rodriguez | Past | C-2202922 | rent | 04/01/2020 | 04/2020 | 770.53 | 0.00 | 0.00 | 0.00 | 770.53 | 0.00 | 770.53 |
| 1704-nj | | Jennifer Rodriguez | Past | C-2230773 | rent | 05/01/2020 | 05/2020 | 770.53 | 0.00 | 0.00 | 0.00 | 770.53 | 0.00 | 770.53 |
| 1704-nj | | Jennifer Rodriguez | Past | C-2259971 | rent | 06/01/2020 | 06/2020 | 770.53 | 0.00 | 0.00 | 0.00 | 770.53 | 0.00 | 770.53 |
| 1704-nj | | Jennifer Rodriguez | Past | C-2287104 | rent | 07/01/2020 | 07/2020 | 770.53 | 0.00 | 0.00 | 0.00 | 770.53 | 0.00 | 770.53 |
| 1704-nj | | Jennifer Rodriguez | Past | C-2323381 | rent | 08/01/2020 | 08/2020 | 770.53 | 0.00 | 0.00 | 0.00 | 770.53 | 0.00 | 770.53 |
| 1704-nj | | Jennifer Rodriguez | Past | C-2338603 | rent | 09/01/2020 | 09/2020 | 770.53 | 0.00 | 0.00 | 0.00 | 770.53 | 0.00 | 770.53 |
| 1704-nj | | Jennifer Rodriguez | Past | C-2363782 | rent | 10/01/2020 | 10/2020 | 770.53 | 0.00 | 0.00 | 0.00 | 770.53 | 0.00 | 770.53 |
| 1704-nj | | Jennifer Rodriguez | Past | C-2395140 | rent | 11/01/2020 | 11/2020 | 770.53 | 0.00 | 0.00 | 0.00 | 770.53 | 0.00 | 770.53 |
| 1704-nj | | Jennifer Rodriguez | Past | C-2416439 | rent | 12/01/2020 | 12/2020 | 770.53 | 0.00 | 0.00 | 0.00 | 770.53 | 0.00 | 770.53 |
| 1704-nj | | Jennifer Rodriguez | Past | C-2446729 | rent | 01/01/2021 | 01/2021 | 770.53 | 0.00 | 0.00 | 0.00 | 770.53 | 0.00 | 770.53 |
| 1704-nj | | Jennifer Rodriguez | Past | C-2463891 | rent | 02/01/2021 | 02/2021 | 770.53 | 0.00 | 0.00 | 770.53 | 0.00 | 0.00 | 770.53 |
| 1704-nj | | Jennifer Rodriguez | Past | C-2491216 | rent | 03/01/2021 | 03/2021 | 770.53 | 0.00 | 770.53 | 0.00 | 0.00 | 0.00 | 770.53 |
| 1704-nj | | Jennifer Rodriguez | Past | C-2520890 | rent | 04/01/2021 | 04/2021 | 770.53 | 770.53 | 0.00 | 0.00 | 0.00 | 0.00 | 770.53 |
| | | **Jennifer Rodriguez** | | | | | | **14,640.07** | **770.53** | **770.53** | **770.53** | **12,328.48** | **0.00** | **14,640.07** |
| **Jose Morales (mor1704)** | | | | | | | | | | | | | | |
| 1704-nj | | Jose Morales | Current | C-2198700 | rent | 10/01/2019 | 02/2020 | 890.56 | 0.00 | 0.00 | 0.00 | 890.56 | 0.00 | 890.56 |
| 1704-nj | | Jose Morales | Current | C-2198701 | rent | 11/01/2019 | 02/2020 | 890.56 | 0.00 | 0.00 | 0.00 | 890.56 | 0.00 | 890.56 |
| 1704-nj | | Jose Morales | Current | C-2198702 | rent | 12/01/2019 | 02/2020 | 890.56 | 0.00 | 0.00 | 0.00 | 890.56 | 0.00 | 890.56 |
| 1704-nj | | Jose Morales | Current | C-2198703 | rent | 01/01/2020 | 02/2020 | 890.56 | 0.00 | 0.00 | 0.00 | 890.56 | 0.00 | 890.56 |
| | | **Jose Morales** | | | | | | **3,562.24** | **0.00** | **0.00** | **0.00** | **3,562.24** | **0.00** | **3,562.24** |

# Aging Detail

Page 6

DB Caption: USA LIVE 7s  Property: 1704-nj  Status: Current, Past, Future  All Selected Accounts  Age As Of: 04/30/2021  Post To: 04/2021

| Property | Customer | Lease | Status | Tran# | Charge Code | Date | Month | Current Owed | 0-30 Owed | 31-60 Owed | 61-90 Owed | Over 90 Owed | Pre-payments | Total Owed |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Joseph Palermo (pale1704)** | | | | | | | | | | | | | | |
| 1704-nj | | Joseph Palermo | Current | C-2258314 | rent | 10/01/2019 | 05/2020 | 550.00 | 0.00 | 0.00 | 0.00 | 550.00 | 0.00 | 550.00 |
| 1704-nj | | Joseph Palermo | Current | C-2258315 | rent | 11/01/2019 | 05/2020 | 550.00 | 0.00 | 0.00 | 0.00 | 550.00 | 0.00 | 550.00 |
| 1704-nj | | Joseph Palermo | Current | C-2258316 | rent | 12/01/2019 | 05/2020 | 550.00 | 0.00 | 0.00 | 0.00 | 550.00 | 0.00 | 550.00 |
| 1704-nj | | Joseph Palermo | Current | C-2258317 | rent | 01/01/2020 | 05/2020 | 550.00 | 0.00 | 0.00 | 0.00 | 550.00 | 0.00 | 550.00 |
| 1704-nj | | Joseph Palermo | Current | C-2258318 | rent | 02/01/2020 | 05/2020 | 550.00 | 0.00 | 0.00 | 0.00 | 550.00 | 0.00 | 550.00 |
| | | **Joseph Palermo** | | | | | | **2,750.00** | **0.00** | **0.00** | **0.00** | **2,750.00** | **0.00** | **2,750.00** |
| **Joseph Smalley (smal1704)** | | | | | | | | | | | | | | |
| 1704-nj | | Joseph Smalley | Current | C-2198665 | rent | 10/01/2019 | 02/2020 | 565.06 | 0.00 | 0.00 | 0.00 | 565.06 | 0.00 | 565.06 |
| 1704-nj | | Joseph Smalley | Current | C-2198666 | rent | 11/01/2019 | 02/2020 | 565.06 | 0.00 | 0.00 | 0.00 | 565.06 | 0.00 | 565.06 |
| 1704-nj | | Joseph Smalley | Current | C-2198667 | rent | 12/01/2019 | 02/2020 | 565.06 | 0.00 | 0.00 | 0.00 | 565.06 | 0.00 | 565.06 |
| 1704-nj | | Joseph Smalley | Current | C-2198668 | rent | 01/01/2020 | 02/2020 | 565.06 | 0.00 | 0.00 | 0.00 | 565.06 | 0.00 | 565.06 |
| 1704-nj | | Joseph Smalley | Current | C-2198669 | rent | 02/01/2020 | 02/2020 | 565.06 | 0.00 | 0.00 | 0.00 | 565.06 | 0.00 | 565.06 |
| 1704-nj | | Joseph Smalley | Current | C-2203504 | rent | 03/01/2020 | 03/2020 | 565.06 | 0.00 | 0.00 | 0.00 | 565.06 | 0.00 | 565.06 |
| 1704-nj | | Joseph Smalley | Current | C-2202925 | rent | 04/01/2020 | 04/2020 | 565.06 | 0.00 | 0.00 | 0.00 | 565.06 | 0.00 | 565.06 |
| 1704-nj | | Joseph Smalley | Current | C-2230776 | rent | 05/01/2020 | 05/2020 | 565.06 | 0.00 | 0.00 | 0.00 | 565.06 | 0.00 | 565.06 |
| 1704-nj | | Joseph Smalley | Current | C-2259974 | rent | 06/01/2020 | 06/2020 | 565.06 | 0.00 | 0.00 | 0.00 | 565.06 | 0.00 | 565.06 |
| 1704-nj | | Joseph Smalley | Current | C-2287106 | rent | 07/01/2020 | 07/2020 | 565.06 | 0.00 | 0.00 | 0.00 | 565.06 | 0.00 | 565.06 |
| 1704-nj | | Joseph Smalley | Current | C-2323383 | rent | 08/01/2020 | 08/2020 | 565.06 | 0.00 | 0.00 | 0.00 | 565.06 | 0.00 | 565.06 |
| 1704-nj | | Joseph Smalley | Current | C-2338605 | rent | 09/01/2020 | 09/2020 | 565.06 | 0.00 | 0.00 | 0.00 | 565.06 | 0.00 | 565.06 |
| 1704-nj | | Joseph Smalley | Current | C-2363784 | rent | 10/01/2020 | 10/2020 | 565.06 | 0.00 | 0.00 | 0.00 | 565.06 | 0.00 | 565.06 |
| 1704-nj | | Joseph Smalley | Current | C-2395142 | rent | 11/01/2020 | 11/2020 | 565.06 | 0.00 | 0.00 | 0.00 | 565.06 | 0.00 | 565.06 |
| 1704-nj | | Joseph Smalley | Current | C-2416441 | rent | 12/01/2020 | 12/2020 | 565.06 | 0.00 | 0.00 | 0.00 | 565.06 | 0.00 | 565.06 |
| 1704-nj | | Joseph Smalley | Current | C-2446731 | rent | 01/01/2021 | 01/2021 | 565.06 | 0.00 | 0.00 | 0.00 | 565.06 | 0.00 | 565.06 |
| 1704-nj | | Joseph Smalley | Current | C-2463893 | rent | 02/01/2021 | 02/2021 | 565.06 | 0.00 | 0.00 | 565.06 | 0.00 | 0.00 | 565.06 |

# Aging Detail

DB Caption: USA LIVE 7s  Property: 1704-nj  Status: Current, Past, Future  All Selected Accounts  Age As Of: 04/30/2021  Post To: 04/2021

| Property | Customer | Lease | Status | Tran# | Charge Code | Date | Month | Current Owed | 0-30 Owed | 31-60 Owed | 61-90 Owed | Over 90 Owed | Pre-payments | Total Owed |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1704-nj | | Joseph Smalley | Current | C-2491218 | rent | 03/01/2021 | 03/2021 | 565.06 | 0.00 | 565.06 | 0.00 | 0.00 | 0.00 | 565.06 |
| 1704-nj | | Joseph Smalley | Current | C-2520892 | rent | 04/01/2021 | 04/2021 | 565.06 | 565.06 | 0.00 | 0.00 | 0.00 | 0.00 | 565.06 |
| | | **Joseph Smalley** | | | | | | **10,736.14** | **565.06** | **565.06** | **565.06** | **9,040.96** | **0.00** | **10,736.14** |
| **Juan Rebolledo (robo1704)** | | | | | | | | | | | | | | |
| 1704-nj | | Juan Rebolledo | Current | C-2198757 | rent | 12/01/2019 | 02/2020 | 150.00 | 0.00 | 0.00 | 0.00 | 150.00 | 0.00 | 150.00 |
| 1704-nj | | Juan Rebolledo | Current | C-2198758 | rent | 01/01/2020 | 02/2020 | 100.00 | 0.00 | 0.00 | 0.00 | 100.00 | 0.00 | 100.00 |
| 1704-nj | | Juan Rebolledo | Current | C-2198759 | rent | 02/01/2020 | 02/2020 | 100.00 | 0.00 | 0.00 | 0.00 | 100.00 | 0.00 | 100.00 |
| 1704-nj | | Juan Rebolledo | Current | C-2230781 | rent | 05/01/2020 | 05/2020 | 850.00 | 0.00 | 0.00 | 0.00 | 850.00 | 0.00 | 850.00 |
| 1704-nj | | Juan Rebolledo | Current | C-2259979 | rent | 06/01/2020 | 06/2020 | 850.00 | 0.00 | 0.00 | 0.00 | 850.00 | 0.00 | 850.00 |
| 1704-nj | | Juan Rebolledo | Current | C-2287110 | rent | 07/01/2020 | 07/2020 | 850.00 | 0.00 | 0.00 | 0.00 | 850.00 | 0.00 | 850.00 |
| 1704-nj | | Juan Rebolledo | Current | C-2363788 | rent | 10/01/2020 | 10/2020 | 850.00 | 0.00 | 0.00 | 0.00 | 850.00 | 0.00 | 850.00 |
| 1704-nj | | Juan Rebolledo | Current | C-2395146 | rent | 11/01/2020 | 11/2020 | 850.00 | 0.00 | 0.00 | 0.00 | 850.00 | 0.00 | 850.00 |
| 1704-nj | | Juan Rebolledo | Current | C-2416445 | rent | 12/01/2020 | 12/2020 | 850.00 | 0.00 | 0.00 | 0.00 | 850.00 | 0.00 | 850.00 |
| 1704-nj | | Juan Rebolledo | Current | C-2446735 | rent | 01/01/2021 | 01/2021 | 850.00 | 0.00 | 0.00 | 0.00 | 850.00 | 0.00 | 850.00 |
| 1704-nj | | Juan Rebolledo | Current | C-2463897 | rent | 02/01/2021 | 02/2021 | 850.00 | 0.00 | 0.00 | 850.00 | 0.00 | 0.00 | 850.00 |
| 1704-nj | | Juan Rebolledo | Current | C-2491222 | rent | 03/01/2021 | 03/2021 | 850.00 | 0.00 | 850.00 | 0.00 | 0.00 | 0.00 | 850.00 |
| 1704-nj | | Juan Rebolledo | Current | C-2520896 | rent | 04/01/2021 | 04/2021 | 850.00 | 850.00 | 0.00 | 0.00 | 0.00 | 0.00 | 850.00 |
| | | **Juan Rebolledo** | | | | | | **8,850.00** | **850.00** | **850.00** | **850.00** | **6,300.00** | **0.00** | **8,850.00** |
| **Julissa Belkis (belk1704)** | | | | | | | | | | | | | | |
| 1704-nj | | Julissa Belkis | Current | C-2285147 | rent | 11/01/2019 | 06/2020 | 700.00 | 0.00 | 0.00 | 0.00 | 700.00 | 0.00 | 700.00 |
| 1704-nj | | Julissa Belkis | Current | C-2285148 | rent | 12/01/2019 | 06/2020 | 700.00 | 0.00 | 0.00 | 0.00 | 700.00 | 0.00 | 700.00 |
| 1704-nj | | Julissa Belkis | Current | C-2285151 | rent | 03/01/2020 | 06/2020 | 700.00 | 0.00 | 0.00 | 0.00 | 700.00 | 0.00 | 700.00 |
| 1704-nj | | Julissa Belkis | Current | C-2285154 | rent | 06/01/2020 | 06/2020 | 700.00 | 0.00 | 0.00 | 0.00 | 700.00 | 0.00 | 700.00 |
| 1704-nj | | Julissa Belkis | Current | C-2287099 | rent | 07/01/2020 | 07/2020 | 700.00 | 0.00 | 0.00 | 0.00 | 700.00 | 0.00 | 700.00 |
| 1704-nj | | Julissa Belkis | Current | C-2323379 | rent | 08/01/2020 | 08/2020 | 700.00 | 0.00 | 0.00 | 0.00 | 700.00 | 0.00 | 700.00 |

# Aging Detail

DB Caption: USA LIVE 7s  Property: 1704-nj  Status: Current, Past, Future  All Selected Accounts  Age As Of: 04/30/2021  Post To: 04/2021

| Property | Customer | Lease | Status | Tran# | Charge Code | Date | Month | Current Owed | 0-30 Owed | 31-60 Owed | 61-90 Owed | Over 90 Owed | Pre-payments | Total Owed |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1704-nj | | Julissa Belkis | Current | C-2338598 | rent | 09/01/2020 | 09/2020 | 700.00 | 0.00 | 0.00 | 0.00 | 700.00 | 0.00 | 700.00 |
| 1704-nj | | Julissa Belkis | Current | C-2363777 | rent | 10/01/2020 | 10/2020 | 700.00 | 0.00 | 0.00 | 0.00 | 700.00 | 0.00 | 700.00 |
| 1704-nj | | Julissa Belkis | Current | C-2395135 | rent | 11/01/2020 | 11/2020 | 700.00 | 0.00 | 0.00 | 0.00 | 700.00 | 0.00 | 700.00 |
| 1704-nj | | Julissa Belkis | Current | C-2416434 | rent | 12/01/2020 | 12/2020 | 700.00 | 0.00 | 0.00 | 0.00 | 700.00 | 0.00 | 700.00 |
| 1704-nj | | Julissa Belkis | Current | C-2446724 | rent | 01/01/2021 | 01/2021 | 700.00 | 0.00 | 0.00 | 0.00 | 700.00 | 0.00 | 700.00 |
| 1704-nj | | Julissa Belkis | Current | C-2463886 | rent | 02/01/2021 | 02/2021 | 700.00 | 0.00 | 0.00 | 700.00 | 0.00 | 0.00 | 700.00 |
| 1704-nj | | Julissa Belkis | Current | C-2491211 | rent | 03/01/2021 | 03/2021 | 700.00 | 0.00 | 700.00 | 0.00 | 0.00 | 0.00 | 700.00 |
| 1704-nj | | Julissa Belkis | Current | C-2520885 | rent | 04/01/2021 | 04/2021 | 700.00 | 700.00 | 0.00 | 0.00 | 0.00 | 0.00 | 700.00 |
| | | **Julissa Belkis** | | | | | | **9,800.00** | **700.00** | **700.00** | **700.00** | **7,700.00** | **0.00** | **9,800.00** |
| **Lamonte Laurence Chiles (chil1704)** | | | | | | | | | | | | | | |
| 1704-nj | | Lamonte Laurence Chiles | Current | C-2395131 | rent | 11/01/2020 | 11/2020 | 536.79 | 0.00 | 0.00 | 0.00 | 536.79 | 0.00 | 536.79 |
| 1704-nj | | Lamonte Laurence Chiles | Current | C-2416430 | rent | 12/01/2020 | 12/2020 | 536.79 | 0.00 | 0.00 | 0.00 | 536.79 | 0.00 | 536.79 |
| 1704-nj | | Lamonte Laurence Chiles | Current | C-2446720 | rent | 01/01/2021 | 01/2021 | 536.79 | 0.00 | 0.00 | 0.00 | 536.79 | 0.00 | 536.79 |
| 1704-nj | | Lamonte Laurence Chiles | Current | C-2463882 | rent | 02/01/2021 | 02/2021 | 536.79 | 0.00 | 0.00 | 536.79 | 0.00 | 0.00 | 536.79 |
| 1704-nj | | Lamonte Laurence Chiles | Current | C-2491207 | rent | 03/01/2021 | 03/2021 | 536.79 | 0.00 | 536.79 | 0.00 | 0.00 | 0.00 | 536.79 |
| 1704-nj | | Lamonte Laurence Chiles | Current | C-2520881 | rent | 04/01/2021 | 04/2021 | 536.79 | 536.79 | 0.00 | 0.00 | 0.00 | 0.00 | 536.79 |
| | | **Lamonte Laurence Chiles** | | | | | | **3,220.74** | **536.79** | **536.79** | **536.79** | **1,610.37** | **0.00** | **3,220.74** |
| **Luis Regalado-Rodriguez (rega1704)** | | | | | | | | | | | | | | |
| 1704-nj | | Luis Regalado-Rodriguez | Current | C-2198720 | rent | 10/01/2019 | 02/2020 | 550.00 | 0.00 | 0.00 | 0.00 | 550.00 | 0.00 | 550.00 |
| 1704-nj | | Luis Regalado-Rodriguez | Current | C-2198721 | rent | 11/01/2019 | 02/2020 | 550.00 | 0.00 | 0.00 | 0.00 | 550.00 | 0.00 | 550.00 |
| 1704-nj | | Luis Regalado-Rodriguez | Current | C-2198722 | rent | 12/01/2019 | 02/2020 | 550.00 | 0.00 | 0.00 | 0.00 | 550.00 | 0.00 | 550.00 |
| 1704-nj | | Luis Regalado-Rodriguez | Current | C-2198724 | rent | 02/01/2020 | 02/2020 | 550.00 | 0.00 | 0.00 | 0.00 | 550.00 | 0.00 | 550.00 |
| 1704-nj | | Luis Regalado-Rodriguez | Current | C-2203503 | rent | 03/01/2020 | 03/2020 | 550.00 | 0.00 | 0.00 | 0.00 | 550.00 | 0.00 | 550.00 |
| 1704-nj | | Luis Regalado-Rodriguez | Current | C-2202924 | rent | 04/01/2020 | 04/2020 | 550.00 | 0.00 | 0.00 | 0.00 | 550.00 | 0.00 | 550.00 |
| 1704-nj | | Luis Regalado-Rodriguez | Current | C-2230775 | rent | 05/01/2020 | 05/2020 | 550.00 | 0.00 | 0.00 | 0.00 | 550.00 | 0.00 | 550.00 |

DB Caption: USA LIVE 7s  Property: 1704-nj  Status: Current, Past, Future  All Selected Accounts  Age As Of: 04/30/2021  Post To: 04/2021

| Property | Customer | Lease | Status | Tran# | Charge Code | Date | Month | Current Owed | 0-30 Owed | 31-60 Owed | 61-90 Owed | Over 90 Owed | Pre-payments | Total Owed |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1704-nj | | Luis Regalado-Rodriguez | Current | C-2259973 | rent | 06/01/2020 | 06/2020 | 550.00 | 0.00 | 0.00 | 0.00 | 550.00 | 0.00 | 550.00 |
| 1704-nj | | Luis Regalado-Rodriguez | Current | C-2338604 | rent | 09/01/2020 | 09/2020 | 550.00 | 0.00 | 0.00 | 0.00 | 550.00 | 0.00 | 550.00 |
| 1704-nj | | Luis Regalado-Rodriguez | Current | C-2363783 | rent | 10/01/2020 | 10/2020 | 550.00 | 0.00 | 0.00 | 0.00 | 550.00 | 0.00 | 550.00 |
| 1704-nj | | Luis Regalado-Rodriguez | Current | C-2395141 | rent | 11/01/2020 | 11/2020 | 300.00 | 0.00 | 0.00 | 0.00 | 300.00 | 0.00 | 300.00 |
| 1704-nj | | Luis Regalado-Rodriguez | Current | C-2446730 | rent | 01/01/2021 | 01/2021 | 550.00 | 0.00 | 0.00 | 0.00 | 550.00 | 0.00 | 550.00 |
| 1704-nj | | Luis Regalado-Rodriguez | Current | C-2463892 | rent | 02/01/2021 | 02/2021 | 550.00 | 0.00 | 0.00 | 550.00 | 0.00 | 0.00 | 550.00 |
| 1704-nj | | Luis Regalado-Rodriguez | Current | C-2491217 | rent | 03/01/2021 | 03/2021 | 550.00 | 0.00 | 550.00 | 0.00 | 0.00 | 0.00 | 550.00 |
| 1704-nj | | Luis Regalado-Rodriguez | Current | C-2520891 | rent | 04/01/2021 | 04/2021 | 550.00 | 550.00 | 0.00 | 0.00 | 0.00 | 0.00 | 550.00 |
| | | Luis Regalado-Rodriguez | | | | | | 8,000.00 | 550.00 | 550.00 | 550.00 | 6,350.00 | 0.00 | 8,000.00 |
| **Marvin Rodriguez (mar1704)** | | | | | | | | | | | | | | |
| 1704-nj | | Marvin Rodriguez | Current | C-2198735 | rent | 10/01/2019 | 02/2020 | 890.64 | 0.00 | 0.00 | 0.00 | 890.64 | 0.00 | 890.64 |
| 1704-nj | | Marvin Rodriguez | Current | C-2198736 | rent | 11/01/2019 | 02/2020 | 890.64 | 0.00 | 0.00 | 0.00 | 890.64 | 0.00 | 890.64 |
| 1704-nj | | Marvin Rodriguez | Current | C-2198737 | rent | 12/01/2019 | 02/2020 | 890.64 | 0.00 | 0.00 | 0.00 | 890.64 | 0.00 | 890.64 |
| 1704-nj | | Marvin Rodriguez | Current | C-2198738 | rent | 01/01/2020 | 02/2020 | 890.64 | 0.00 | 0.00 | 0.00 | 890.64 | 0.00 | 890.64 |
| 1704-nj | | Marvin Rodriguez | Current | C-2198739 | rent | 02/01/2020 | 02/2020 | 890.64 | 0.00 | 0.00 | 0.00 | 890.64 | 0.00 | 890.64 |
| 1704-nj | | Marvin Rodriguez | Current | C-2203507 | rent | 03/01/2020 | 03/2020 | 890.64 | 0.00 | 0.00 | 0.00 | 890.64 | 0.00 | 890.64 |
| 1704-nj | | Marvin Rodriguez | Current | C-2202928 | rent | 04/01/2020 | 04/2020 | 890.64 | 0.00 | 0.00 | 0.00 | 890.64 | 0.00 | 890.64 |
| 1704-nj | | Marvin Rodriguez | Current | C-2230779 | rent | 05/01/2020 | 05/2020 | 890.64 | 0.00 | 0.00 | 0.00 | 890.64 | 0.00 | 890.64 |
| 1704-nj | | Marvin Rodriguez | Current | C-2259977 | rent | 06/01/2020 | 06/2020 | 890.64 | 0.00 | 0.00 | 0.00 | 890.64 | 0.00 | 890.64 |
| 1704-nj | | Marvin Rodriguez | Current | C-2287108 | rent | 07/01/2020 | 07/2020 | 890.64 | 0.00 | 0.00 | 0.00 | 890.64 | 0.00 | 890.64 |
| 1704-nj | | Marvin Rodriguez | Current | C-2323384 | rent | 08/01/2020 | 08/2020 | 890.64 | 0.00 | 0.00 | 0.00 | 890.64 | 0.00 | 890.64 |
| 1704-nj | | Marvin Rodriguez | Current | C-2338607 | rent | 09/01/2020 | 09/2020 | 890.64 | 0.00 | 0.00 | 0.00 | 890.64 | 0.00 | 890.64 |
| 1704-nj | | Marvin Rodriguez | Current | C-2363786 | rent | 10/01/2020 | 10/2020 | 890.64 | 0.00 | 0.00 | 0.00 | 890.64 | 0.00 | 890.64 |
| 1704-nj | | Marvin Rodriguez | Current | C-2395144 | rent | 11/01/2020 | 11/2020 | 81.28 | 0.00 | 0.00 | 0.00 | 81.28 | 0.00 | 81.28 |
| 1704-nj | | Marvin Rodriguez | Current | C-2446733 | rent | 01/01/2021 | 01/2021 | 890.64 | 0.00 | 0.00 | 0.00 | 890.64 | 0.00 | 890.64 |

# Aging Detail

DB Caption: USA LIVE 7s  Property: 1704-nj  Status: Current, Past, Future  All Selected Accounts  Age As Of: 04/30/2021  Post To: 04/2021

| Property | Customer | Lease | Status | Tran# | Charge Code | Date | Month | Current Owed | 0-30 Owed | 31-60 Owed | 61-90 Owed | Over 90 Owed | Pre-payments | Total Owed |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1704-nj | | Marvin Rodriguez | Current | C-2463895 | rent | 02/01/2021 | 02/2021 | 890.64 | 0.00 | 0.00 | 890.64 | 0.00 | 0.00 | 890.64 |
| 1704-nj | | Marvin Rodriguez | Current | C-2491220 | rent | 03/01/2021 | 03/2021 | 890.64 | 0.00 | 890.64 | 0.00 | 0.00 | 0.00 | 890.64 |
| 1704-nj | | Marvin Rodriguez | Current | C-2520894 | rent | 04/01/2021 | 04/2021 | 40.64 | 40.64 | 0.00 | 0.00 | 0.00 | 0.00 | 40.64 |
| | | **Marvin Rodriguez** | | | | | | **14,372.16** | **40.64** | **890.64** | **890.64** | **12,550.24** | **0.00** | **14,372.16** |
| **Raquel Vargas (varg1704)** | | | | | | | | | | | | | | |
| 1704-nj | | Raquel Vargas | Current | C-2258311 | rent | 11/01/2019 | 05/2020 | 890.00 | 0.00 | 0.00 | 0.00 | 890.00 | 0.00 | 890.00 |
| 1704-nj | | Raquel Vargas | Current | C-2258312 | rent | 12/01/2019 | 05/2020 | 890.00 | 0.00 | 0.00 | 0.00 | 890.00 | 0.00 | 890.00 |
| 1704-nj | | Raquel Vargas | Current | C-2258313 | rent | 01/01/2020 | 05/2020 | 890.00 | 0.00 | 0.00 | 0.00 | 890.00 | 0.00 | 890.00 |
| | | **Raquel Vargas** | | | | | | **2,670.00** | **0.00** | **0.00** | **0.00** | **2,670.00** | **0.00** | **2,670.00** |
| **Roberto Morales (mora1704)** | | | | | | | | | | | | | | |
| 1704-nj | | Roberto Morales | Current | C-2463879 | rent | 02/01/2021 | 02/2021 | 550.00 | 0.00 | 0.00 | 550.00 | 0.00 | 0.00 | 550.00 |
| | | **Roberto Morales** | | | | | | **550.00** | **0.00** | **0.00** | **550.00** | **0.00** | **0.00** | **550.00** |
| **Rosana Sanchez-Castillo (cast1704)** | | | | | | | | | | | | | | |
| 1704-nj | | Rosana Sanchez-Castillo | Current | C-2198725 | rent | 10/01/2019 | 02/2020 | 556.05 | 0.00 | 0.00 | 0.00 | 556.05 | 0.00 | 556.05 |
| 1704-nj | | Rosana Sanchez-Castillo | Current | C-2198726 | rent | 11/01/2019 | 02/2020 | 556.05 | 0.00 | 0.00 | 0.00 | 556.05 | 0.00 | 556.05 |
| 1704-nj | | Rosana Sanchez-Castillo | Current | C-2198727 | rent | 12/01/2019 | 02/2020 | 556.05 | 0.00 | 0.00 | 0.00 | 556.05 | 0.00 | 556.05 |
| 1704-nj | | Rosana Sanchez-Castillo | Current | C-2198728 | rent | 01/01/2020 | 02/2020 | 556.05 | 0.00 | 0.00 | 0.00 | 556.05 | 0.00 | 556.05 |
| 1704-nj | | Rosana Sanchez-Castillo | Current | C-2198729 | rent | 02/01/2020 | 02/2020 | 556.05 | 0.00 | 0.00 | 0.00 | 556.05 | 0.00 | 556.05 |
| | | **Rosana Sanchez-Castillo** | | | | | | **2,780.25** | **0.00** | **0.00** | **0.00** | **2,780.25** | **0.00** | **2,780.25** |
| **Sharon Cowan (shar1704)** | | | | | | | | | | | | | | |
| 1704-nj | | Sharon Cowan | Current | R-1262147 | Prepay | 03/26/2021 | 03/2021 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -367.05 | -367.05 |
| 1704-nj | | Sharon Cowan | Current | R-1262150 | Prepay | 03/26/2021 | 03/2021 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -189.00 | -189.00 |
| | | **Sharon Cowan** | | | | | | **0.00** | **0.00** | **0.00** | **0.00** | **0.00** | **-556.05** | **-556.05** |
| **Timothy Loper (fra1704)** | | | | | | | | | | | | | | |
| 1704-nj | | Timothy Loper | Current | C-2198770 | rent | 10/01/2019 | 02/2020 | 500.00 | 0.00 | 0.00 | 0.00 | 500.00 | 0.00 | 500.00 |
| 1704-nj | | Timothy Loper | Current | C-2198771 | rent | 11/01/2019 | 02/2020 | 500.00 | 0.00 | 0.00 | 0.00 | 500.00 | 0.00 | 500.00 |

# Aging Detail

DB Caption: USA LIVE 7s  Property: 1704-nj  Status: Current, Past, Future  All Selected Accounts  Age As Of: 04/30/2021  Post To: 04/2021

| Property | Customer | Lease | Status | Tran# | Charge Code | Date | Month | Current Owed | 0-30 Owed | 31-60 Owed | 61-90 Owed | Over 90 Owed | Pre-payments | Total Owed |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1704-nj | | Timothy Loper | Current | C-2198772 | rent | 12/01/2019 | 02/2020 | 500.00 | 0.00 | 0.00 | 0.00 | 500.00 | 0.00 | 500.00 |
| 1704-nj | | Timothy Loper | Current | C-2198773 | rent | 01/01/2020 | 02/2020 | 500.00 | 0.00 | 0.00 | 0.00 | 500.00 | 0.00 | 500.00 |
| 1704-nj | | Timothy Loper | Current | C-2198774 | rent | 02/01/2020 | 02/2020 | 500.00 | 0.00 | 0.00 | 0.00 | 500.00 | 0.00 | 500.00 |
| 1704-nj | | Timothy Loper | Current | C-2203511 | rent | 03/01/2020 | 03/2020 | 500.00 | 0.00 | 0.00 | 0.00 | 500.00 | 0.00 | 500.00 |
| 1704-nj | | Timothy Loper | Current | C-2202932 | rent | 04/01/2020 | 04/2020 | 500.00 | 0.00 | 0.00 | 0.00 | 500.00 | 0.00 | 500.00 |
| 1704-nj | | Timothy Loper | Current | C-2230783 | rent | 05/01/2020 | 05/2020 | 500.00 | 0.00 | 0.00 | 0.00 | 500.00 | 0.00 | 500.00 |
| 1704-nj | | Timothy Loper | Current | C-2259981 | rent | 06/01/2020 | 06/2020 | 500.00 | 0.00 | 0.00 | 0.00 | 500.00 | 0.00 | 500.00 |
| 1704-nj | | Timothy Loper | Current | C-2287112 | rent | 07/01/2020 | 07/2020 | 500.00 | 0.00 | 0.00 | 0.00 | 500.00 | 0.00 | 500.00 |
| 1704-nj | | Timothy Loper | Current | C-2323388 | rent | 08/01/2020 | 08/2020 | 500.00 | 0.00 | 0.00 | 0.00 | 500.00 | 0.00 | 500.00 |
| 1704-nj | | Timothy Loper | Current | C-2338611 | rent | 09/01/2020 | 09/2020 | 500.00 | 0.00 | 0.00 | 0.00 | 500.00 | 0.00 | 500.00 |
| 1704-nj | | Timothy Loper | Current | C-2363790 | rent | 10/01/2020 | 10/2020 | 500.00 | 0.00 | 0.00 | 0.00 | 500.00 | 0.00 | 500.00 |
| 1704-nj | | Timothy Loper | Current | C-2395148 | rent | 11/01/2020 | 11/2020 | 500.00 | 0.00 | 0.00 | 0.00 | 500.00 | 0.00 | 500.00 |
| 1704-nj | | Timothy Loper | Current | C-2416447 | rent | 12/01/2020 | 12/2020 | 500.00 | 0.00 | 0.00 | 0.00 | 500.00 | 0.00 | 500.00 |
| 1704-nj | | Timothy Loper | Current | C-2446737 | rent | 01/01/2021 | 01/2021 | 500.00 | 0.00 | 0.00 | 0.00 | 500.00 | 0.00 | 500.00 |
| 1704-nj | | Timothy Loper | Current | C-2463899 | rent | 02/01/2021 | 02/2021 | 500.00 | 0.00 | 0.00 | 500.00 | 0.00 | 0.00 | 500.00 |
| 1704-nj | | Timothy Loper | Current | C-2491224 | rent | 03/01/2021 | 03/2021 | 500.00 | 0.00 | 500.00 | 0.00 | 0.00 | 0.00 | 500.00 |
| 1704-nj | | Timothy Loper | Current | C-2520898 | rent | 04/01/2021 | 04/2021 | 500.00 | 500.00 | 0.00 | 0.00 | 0.00 | 0.00 | 500.00 |
| | | **Timothy Loper** | | | | | | **9,500.00** | **500.00** | **500.00** | **500.00** | **8,000.00** | **0.00** | **9,500.00** |
| | | | | | | | | | | | | | | |
| **Tony Bosques, Jr (bosq1704)** | | | | | | | | | | | | | | |
| 1704-nj | | Tony Bosques, Jr | Current | C-2198775 | rent | 10/01/2019 | 02/2020 | 513.69 | 0.00 | 0.00 | 0.00 | 513.69 | 0.00 | 513.69 |
| 1704-nj | | Tony Bosques, Jr | Current | C-2198776 | rent | 11/01/2019 | 02/2020 | 513.69 | 0.00 | 0.00 | 0.00 | 513.69 | 0.00 | 513.69 |
| 1704-nj | | Tony Bosques, Jr | Current | C-2198777 | rent | 12/01/2019 | 02/2020 | 513.69 | 0.00 | 0.00 | 0.00 | 513.69 | 0.00 | 513.69 |
| 1704-nj | | Tony Bosques, Jr | Current | C-2198778 | rent | 01/01/2020 | 02/2020 | 513.69 | 0.00 | 0.00 | 0.00 | 513.69 | 0.00 | 513.69 |
| 1704-nj | | Tony Bosques, Jr | Current | C-2258471 | rent | 02/01/2020 | 05/2020 | 513.69 | 0.00 | 0.00 | 0.00 | 513.69 | 0.00 | 513.69 |
| | | **Tony Bosques, Jr** | | | | | | **2,568.45** | **0.00** | **0.00** | **0.00** | **2,568.45** | **0.00** | **2,568.45** |

# Aging Detail

DB Caption: USA LIVE 7s  Property: 1704-nj  Status: Current, Past, Future  All Selected Accounts  Age As Of: 04/30/2021  Post To: 04/2021

| Property | Customer | Lease | Status | Tran# | Charge Code | Date | Month | Current Owed | 0-30 Owed | 31-60 Owed | 61-90 Owed | Over 90 Owed | Pre-payments | Total Owed |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Tracy Dewitt (dewi1704)** | | | | | | | | | | | | | | |
| 1704-nj | | Tracy Dewitt | Current | R-1054999 | Prepay | 10/18/2019 | 10/2019 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -3.57 | -3.57 |
| 1704-nj | | Tracy Dewitt | Current | R-1059868 | Prepay | 11/13/2019 | 11/2019 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -3.57 | -3.57 |
| 1704-nj | | Tracy Dewitt | Current | R-1072096 | Prepay | 12/20/2019 | 12/2019 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -3.57 | -3.57 |
| 1704-nj | | Tracy Dewitt | Current | R-1082033 | Prepay | 01/16/2020 | 01/2020 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -3.57 | -3.57 |
| 1704-nj | | Tracy Dewitt | Current | R-1109819 | Prepay | 03/17/2020 | 03/2020 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -130.00 | -130.00 |
| 1704-nj | | Tracy Dewitt | Current | R-1109820 | Prepay | 03/17/2020 | 03/2020 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -463.57 | -463.57 |
| | | **Tracy Dewitt** | | | | | | **0.00** | **0.00** | **0.00** | **0.00** | **0.00** | **-607.85** | **-607.85** |
| **Victoria Mato (vict1704)** | | | | | | | | | | | | | | |
| 1704-nj | | Victoria Mato | Current | C-2416429 | rent | 12/01/2020 | 12/2020 | 395.65 | 0.00 | 0.00 | 0.00 | 395.65 | 0.00 | 395.65 |
| 1704-nj | | Victoria Mato | Current | C-2446719 | rent | 01/01/2021 | 01/2021 | 9.01 | 0.00 | 0.00 | 0.00 | 9.01 | 0.00 | 9.01 |
| 1704-nj | | Victoria Mato | Current | C-2463881 | rent | 02/01/2021 | 02/2021 | 9.01 | 0.00 | 0.00 | 9.01 | 0.00 | 0.00 | 9.01 |
| 1704-nj | | Victoria Mato | Current | C-2491206 | rent | 03/01/2021 | 03/2021 | 9.01 | 0.00 | 9.01 | 0.00 | 0.00 | 0.00 | 9.01 |
| 1704-nj | | Victoria Mato | Current | C-2520880 | rent | 04/01/2021 | 04/2021 | 565.06 | 565.06 | 0.00 | 0.00 | 0.00 | 0.00 | 565.06 |
| | | **Victoria Mato** | | | | | | **987.74** | **565.06** | **9.01** | **9.01** | **404.66** | **0.00** | **987.74** |
| **Wellington Acosta (acos1704)** | | | | | | | | | | | | | | |
| 1704-nj | | Wellington Acosta | Current | C-2463894 | rent | 02/01/2021 | 02/2021 | 550.00 | 0.00 | 0.00 | 550.00 | 0.00 | 0.00 | 550.00 |
| 1704-nj | | Wellington Acosta | Current | C-2491219 | rent | 03/01/2021 | 03/2021 | 550.00 | 0.00 | 550.00 | 0.00 | 0.00 | 0.00 | 550.00 |
| 1704-nj | | Wellington Acosta | Current | C-2520893 | rent | 04/01/2021 | 04/2021 | 550.00 | 550.00 | 0.00 | 0.00 | 0.00 | 0.00 | 550.00 |
| | | **Wellington Acosta** | | | | | | **1,650.00** | **550.00** | **550.00** | **550.00** | **0.00** | **0.00** | **1,650.00** |
| **x Ingris Garcia (garc1704)** | | | | | | | | | | | | | | |
| 1704-nj | | x Ingris Garcia | Past | C-2258239 | rent | 10/01/2019 | 04/2020 | 700.00 | 0.00 | 0.00 | 0.00 | 700.00 | 0.00 | 700.00 |
| 1704-nj | | x Ingris Garcia | Past | C-2258240 | rent | 11/01/2019 | 04/2020 | 700.00 | 0.00 | 0.00 | 0.00 | 700.00 | 0.00 | 700.00 |
| 1704-nj | | x Ingris Garcia | Past | C-2258241 | rent | 12/01/2019 | 04/2020 | 700.00 | 0.00 | 0.00 | 0.00 | 700.00 | 0.00 | 700.00 |
| 1704-nj | | x Ingris Garcia | Past | C-2258242 | rent | 01/01/2020 | 04/2020 | 700.00 | 0.00 | 0.00 | 0.00 | 700.00 | 0.00 | 700.00 |
| 1704-nj | | x Ingris Garcia | Past | C-2258245 | rent | 04/01/2020 | 04/2020 | 700.00 | 0.00 | 0.00 | 0.00 | 700.00 | 0.00 | 700.00 |

DB Caption: USA LIVE 7s  Property: 1704-nj  Status: Current, Past, Future  All Selected Accounts   Age As Of: 04/30/2021  Post To: 04/2021

| Property | Customer | Lease | Status | Tran# | Charge Code | Date | Month | Current Owed | 0-30 Owed | 31-60 Owed | 61-90 Owed | Over 90 Owed | Pre-payments | Total Owed |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1704-nj | | x Ingris Garcia | Past | C-2258246 | rent | 05/01/2020 | 05/2020 | 700.00 | 0.00 | 0.00 | 0.00 | 700.00 | 0.00 | 700.00 |
| 1704-nj | | x Ingris Garcia | Past | C-2259984 | rent | 06/01/2020 | 06/2020 | 700.00 | 0.00 | 0.00 | 0.00 | 700.00 | 0.00 | 700.00 |
| 1704-nj | | x Ingris Garcia | Past | C-2287114 | rent | 07/01/2020 | 07/2020 | 700.00 | 0.00 | 0.00 | 0.00 | 700.00 | 0.00 | 700.00 |
| 1704-nj | | x Ingris Garcia | Past | C-2323390 | rent | 08/01/2020 | 08/2020 | 700.00 | 0.00 | 0.00 | 0.00 | 700.00 | 0.00 | 700.00 |
| 1704-nj | | x Ingris Garcia | Past | C-2338613 | rent | 09/01/2020 | 09/2020 | 700.00 | 0.00 | 0.00 | 0.00 | 700.00 | 0.00 | 700.00 |
| 1704-nj | | x Ingris Garcia | Past | C-2363792 | rent | 10/01/2020 | 10/2020 | 700.00 | 0.00 | 0.00 | 0.00 | 700.00 | 0.00 | 700.00 |
| | | x Ingris Garcia | | | | | | 7,700.00 | 0.00 | 0.00 | 0.00 | 7,700.00 | 0.00 | 7,700.00 |
| **x Karen Garcia (kare1704)** | | | | | | | | | | | | | | |
| 1704-nj | | x Karen Garcia | Past | C-2258255 | rent | 10/01/2019 | 04/2020 | 750.00 | 0.00 | 0.00 | 0.00 | 750.00 | 0.00 | 750.00 |
| 1704-nj | | x Karen Garcia | Past | C-2258256 | rent | 11/01/2019 | 04/2020 | 750.00 | 0.00 | 0.00 | 0.00 | 750.00 | 0.00 | 750.00 |
| 1704-nj | | x Karen Garcia | Past | C-2258257 | rent | 12/01/2019 | 04/2020 | 750.00 | 0.00 | 0.00 | 0.00 | 750.00 | 0.00 | 750.00 |
| 1704-nj | | x Karen Garcia | Past | C-2258258 | rent | 01/01/2020 | 04/2020 | 750.00 | 0.00 | 0.00 | 0.00 | 750.00 | 0.00 | 750.00 |
| 1704-nj | | x Karen Garcia | Past | C-2259986 | rent | 06/01/2020 | 06/2020 | 750.00 | 0.00 | 0.00 | 0.00 | 750.00 | 0.00 | 750.00 |
| 1704-nj | | x Karen Garcia | Past | C-2287116 | rent | 07/01/2020 | 07/2020 | 750.00 | 0.00 | 0.00 | 0.00 | 750.00 | 0.00 | 750.00 |
| 1704-nj | | x Karen Garcia | Past | C-2323391 | rent | 08/01/2020 | 08/2020 | 750.00 | 0.00 | 0.00 | 0.00 | 750.00 | 0.00 | 750.00 |
| 1704-nj | | x Karen Garcia | Past | C-2338615 | rent | 09/01/2020 | 09/2020 | 750.00 | 0.00 | 0.00 | 0.00 | 750.00 | 0.00 | 750.00 |
| 1704-nj | | x Karen Garcia | Past | C-2363794 | rent | 10/01/2020 | 10/2020 | 750.00 | 0.00 | 0.00 | 0.00 | 750.00 | 0.00 | 750.00 |
| | | x Karen Garcia | | | | | | 6,750.00 | 0.00 | 0.00 | 0.00 | 6,750.00 | 0.00 | 6,750.00 |
| **x Marina Lopez (lope1704)** | | | | | | | | | | | | | | |
| 1704-nj | | x Marina Lopez | Past | C-2363769 | rent | 10/01/2020 | 10/2020 | 546.33 | 0.00 | 0.00 | 0.00 | 546.33 | 0.00 | 546.33 |
| | | x Marina Lopez | | | | | | 546.33 | 0.00 | 0.00 | 0.00 | 546.33 | 0.00 | 546.33 |
| **x Sheyrin Hercules (herc1704)** | | | | | | | | | | | | | | |
| 1704-nj | | x Sheyrin Hercules | Past | C-2258247 | rent | 10/01/2019 | 04/2020 | 700.00 | 0.00 | 0.00 | 0.00 | 700.00 | 0.00 | 700.00 |
| 1704-nj | | x Sheyrin Hercules | Past | C-2258248 | rent | 11/01/2019 | 04/2020 | 700.00 | 0.00 | 0.00 | 0.00 | 700.00 | 0.00 | 700.00 |
| 1704-nj | | x Sheyrin Hercules | Past | C-2258249 | rent | 12/01/2019 | 04/2020 | 700.00 | 0.00 | 0.00 | 0.00 | 700.00 | 0.00 | 700.00 |

# Aging Detail

DB Caption: USA LIVE 7s  Property: 1704-nj  Status: Current, Past, Future  All Selected Accounts  Age As Of: 04/30/2021  Post To: 04/2021

| Property | Customer | Lease | Status | Tran# | Charge Code | Date | Month | Current Owed | 0-30 Owed | 31-60 Owed | 61-90 Owed | Over 90 Owed | Pre-payments | Total Owed |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1704-nj | | x Sheyrin Hercules | Past | C-2258250 | rent | 01/01/2020 | 04/2020 | 700.00 | 0.00 | 0.00 | 0.00 | 700.00 | 0.00 | 700.00 |
| 1704-nj | | x Sheyrin Hercules | Past | C-2258251 | rent | 02/01/2020 | 04/2020 | 700.00 | 0.00 | 0.00 | 0.00 | 700.00 | 0.00 | 700.00 |
| 1704-nj | | x Sheyrin Hercules | Past | C-2258252 | rent | 03/01/2020 | 04/2020 | 700.00 | 0.00 | 0.00 | 0.00 | 700.00 | 0.00 | 700.00 |
| 1704-nj | | x Sheyrin Hercules | Past | C-2258253 | rent | 04/01/2020 | 04/2020 | 700.00 | 0.00 | 0.00 | 0.00 | 700.00 | 0.00 | 700.00 |
| 1704-nj | | x Sheyrin Hercules | Past | C-2258254 | rent | 05/01/2020 | 05/2020 | 700.00 | 0.00 | 0.00 | 0.00 | 700.00 | 0.00 | 700.00 |
| 1704-nj | | x Sheyrin Hercules | Past | C-2259985 | rent | 06/01/2020 | 06/2020 | 700.00 | 0.00 | 0.00 | 0.00 | 700.00 | 0.00 | 700.00 |
| 1704-nj | | x Sheyrin Hercules | Past | C-2287115 | rent | 07/01/2020 | 07/2020 | 700.00 | 0.00 | 0.00 | 0.00 | 700.00 | 0.00 | 700.00 |
| 1704-nj | | x Sheyrin Hercules | Past | C-2325565 | rent | 08/01/2020 | 08/2020 | 700.00 | 0.00 | 0.00 | 0.00 | 700.00 | 0.00 | 700.00 |
| 1704-nj | | x Sheyrin Hercules | Past | C-2338614 | rent | 09/01/2020 | 09/2020 | 700.00 | 0.00 | 0.00 | 0.00 | 700.00 | 0.00 | 700.00 |
| 1704-nj | | x Sheyrin Hercules | Past | C-2363793 | rent | 10/01/2020 | 10/2020 | 700.00 | 0.00 | 0.00 | 0.00 | 700.00 | 0.00 | 700.00 |
| 1704-nj | | x Sheyrin Hercules | Past | C-2395152 | rent | 11/01/2020 | 11/2020 | 700.00 | 0.00 | 0.00 | 0.00 | 700.00 | 0.00 | 700.00 |
| | | x Sheyrin Hercules | | | | | | 9,800.00 | 0.00 | 0.00 | 0.00 | 9,800.00 | 0.00 | 9,800.00 |
| **Yonathan Palnco (paln1704)** | | | | | | | | | | | | | | |
| 1704-nj | | Yonathan Palnco | Current | C-2258466 | rent | 12/01/2019 | 05/2020 | 550.00 | 0.00 | 0.00 | 0.00 | 550.00 | 0.00 | 550.00 |
| | | Yonathan Palnco | | | | | | 550.00 | 0.00 | 0.00 | 0.00 | 550.00 | 0.00 | 550.00 |
| **1704-nj** | | | | | | | | 153,863.75 | 8,126.08 | 8,420.03 | 9,570.03 | 127,747.61 | -5,319.44 | 148,544.31 |
| **Grand Total** | | | | | | | | 153,863.75 | 8,126.08 | 8,420.03 | 9,570.03 | 127,747.61 | -5,319.44 | 148,544.31 |

UserId : bryanfaulkner Date : 5/6/2021 Time : 1:03 PM

# Payables Aging Report

1704-nj
Period: 04/2021
As of : 04/30/2021

| Payee Code | Payee Name | Doc Seq # | Control | Batch Id | Property | Invoice Date | Due Date | Post Month | Account | Invoice # | Base Currency | Current Owed | 0-30 Owed | 31-60 Owed | 61-90 Owed | Over 90 Owed | Future Invoice | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| atla1200 | The Atlantic City Sewerage Co | | | | | | | | | | | | | | | | 0.00 | |
| | | | P-1942666 | 655252 | 1704-nj | 01/01/2021 | 01/01/2021 | 01/2021 | 5220-0000 Sewer | 111780/0121 | | 5,692.22 | 0.00 | 0.00 | 0.00 | 5,692.22 | 0.00 | 01/01/21 building sewerage/collection charge/adjustment/treatment |
| **Total atla1200** | | | | | | | | | | | | **5,692.22** | **0.00** | **0.00** | **0.00** | **5,692.22** | **0.00** | |
| col1625b | COLLIERS INTL HOLDINGS (col1625b) | | | | | | | | | | | | | | | | 0.00 | |
| | | | P-1948980 | 655819 | 1704-nj | 01/31/2021 | 01/31/2021 | 02/2021 | 8616-0000 Administration Expense | 1704NJFDX0121 | | 12.77 | 0.00 | 0.00 | 12.77 | 0.00 | 0.00 | 01/31/21 Federal Express Charges |
| **Total col1625b** | | | | | | | | | | | | **12.77** | **0.00** | **0.00** | **12.77** | **0.00** | **0.00** | |
| coll1625 | COLLIERS INT'L HOLDINGS (USA), INC. | | | | | | | | | | | | | | | | 0.00 | |
| | | | P-1898140 | 651595 | 1704-nj | 10/01/2020 | 10/01/2020 | 10/2020 | 5805-0000 Management Fees | 1704-nj10.20MGMTFEE | | 6,875.00 | 0.00 | 0.00 | 0.00 | 6,875.00 | 0.00 | 10/20 Management Fee |
| | | | P-1911125 | 652782 | 1704-nj | 11/01/2020 | 11/01/2020 | 11/2020 | 5805-0000 Management Fees | 1704-nj11.20MGMTFEE | | 6,875.00 | 0.00 | 0.00 | 0.00 | 6,875.00 | 0.00 | November 2020 Management Fee |
| | | | P-1928133 | 654126 | 1704-nj | 12/01/2020 | 12/01/2020 | 12/2020 | 5805-0000 Management Fees | 1704-nj12.20MGMTFEE | | 6,875.00 | 0.00 | 0.00 | 0.00 | 6,875.00 | 0.00 | 12/20 Mgmt Fee |
| | | | P-1797434 | 643268 | 1704-nj | 04/01/2020 | 04/01/2020 | 04/2020 | 5805-0000 Management Fees | 1704-nj4.20MGMTFEE | | 6,875.00 | 0.00 | 0.00 | 0.00 | 6,875.00 | 0.00 | April Mgmt Fee |
| | | | P-1862545 | 648662 | 1704-nj | 08/01/2020 | 08/01/2020 | 08/2020 | 5805-0000 Management Fees | 1704-nj8.20MGMTFEE | | 6,875.00 | 0.00 | 0.00 | 0.00 | 6,875.00 | 0.00 | August Mgmt Fee |
| | | | P-1829666 | 645986 | 1704-nj | 06/01/2020 | 06/01/2020 | 06/2020 | 5805-0000 Management Fees | 1704-nj6.20MGMTFEEBill | | 6,875.00 | 0.00 | 0.00 | 0.00 | 6,875.00 | 0.00 | June Management Fee |
| | | | P-1808593 | 644243 | 1704-nj | 05/01/2020 | 05/01/2020 | 05/2020 | 5805-0000 Management Fees | 1704-nj5.20MGMTFEE | | 6,875.00 | 0.00 | 0.00 | 0.00 | 6,875.00 | 0.00 | May Mgmt fee |
| | | | P-1880060 | 649976 | 1704-nj | 09/01/2020 | 09/01/2020 | 09/2020 | 5805-0000 Management Fees | 1704-nj9.20MGMTFEE | | 6,875.00 | 0.00 | 0.00 | 0.00 | 6,875.00 | 0.00 | Management Fees |

# Payables Aging Report

1704-nj
Period: 04/2021
As of : 04/30/2021

| Payee Code | Payee Name | Doc Seq # | Control | Batch Id | Property | Invoice Date | Due Date | Post Month | Account | Invoice # | Base Currency | Current Owed | 0-30 Owed | 31-60 Owed | 61-90 Owed | Over 90 Owed | Future Invoice | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | P-1941075 | 655077 | 1704-nj | 01/01/2021 | 01/01/2021 | 01/2021 | 5805-0000 Management Fees | 1704-nj1.21MG MTFEE | | 6,875.00 | 0.00 | 0.00 | 0.00 | 6,875.00 | 0.00 | 12.20 Mgmt Fee |
| | | | P-1953551 | 656194 | 1704-nj | 02/01/2021 | 02/01/2021 | 02/2021 | 5805-0000 Management Fees | 1704-nj2.21MG MTFEE | | 6,875.00 | 0.00 | 0.00 | 6,875.00 | 0.00 | 0.00 | 02/21 Mgmt Fee |
| | | | P-1966166 | 657220 | 1704-nj | 03/01/2021 | 03/01/2021 | 03/2021 | 5805-0000 Management Fees | 1704-nj3.21MG MTFEE | | 6,875.00 | 0.00 | 0.00 | 6,875.00 | 0.00 | 0.00 | 03/21 Mgmt Fee |
| | | | P-1979325 | 658325 | 1704-nj | 04/01/2021 | 04/01/2021 | 04/2021 | 5805-0000 Management Fees | 1704-nj4.21MG MTFEE | | 6,875.00 | 6,875.00 | 0.00 | 0.00 | 0.00 | 0.00 | 04/21 Mgmt Fee |
| **Total coll1625** | | | | | | | | | | | | **82,500.00** | **6,875.00** | **0.00** | **13,750.00** | **61,875.00** | **0.00** | |
| coll666a | COLLIERS INT'L HOLDINGS (coll666a) | | | | | | | | | | | | | | | | 0.00 | |
| | | | P-1940351 | 655030 | 1704-nj | 01/01/2021 | 01/01/2021 | 01/2021 | 5895-0000 Miscellaneous Operating Expense | 1704svctr0121 | | 65.60 | 0.00 | 0.00 | 0.00 | 65.60 | 0.00 | Call Center Service Fee 01/2021 |
| | | | P-1956284 | 656400 | 1704-nj | 02/01/2021 | 02/01/2021 | 02/2021 | 5895-0000 Miscellaneous Operating Expense | 1704svctr0221 | | 65.60 | 0.00 | 0.00 | 65.60 | 0.00 | 0.00 | Call Center Service Fee 02/2021 |
| | | | P-1980623 | 658418 | 1704-nj | 04/01/2021 | 04/01/2021 | 04/2021 | 5895-0000 Miscellaneous Operating Expense | 1704svctr0421 | | 65.60 | 65.60 | 0.00 | 0.00 | 0.00 | 0.00 | Call Center Service Fee 04/2021 |
| | | | P-1956219 | 656399 | 1704-nj | 02/14/2021 | 02/14/2021 | 02/2021 | 5810-0000 Management Compensation | 1704pr021421 | | 148.80 | 0.00 | 0.00 | 148.80 | 0.00 | 0.00 | Reimb Payroll 01/18-02/14/2021 |
| | | | P-1968366 | 657410 | 1704-nj | 03/14/2021 | 03/14/2021 | 03/2021 | 5810-0000 Management Compensation | 1704pr031421 | | 148.80 | 0.00 | 148.80 | 0.00 | 0.00 | 0.00 | Reimb Payroll 02/15-03/14/2021 |
| | | | P-1950858 | 655999 | 1704-nj | 01/17/2021 | 01/17/2021 | 02/2021 | 5810-0000 Management Compensation | 1704pr011721 | | 148.80 | 0.00 | 0.00 | 0.00 | 148.80 | 0.00 | Reimb Payroll 12/21-01/17/2021 |
| **Total coll666a** | | | | | | | | | | | | **643.20** | **65.60** | **148.80** | **214.40** | **214.40** | **0.00** | |
| coop351 | Cooper Pest Solutions, Inc. | | | | | | | | | | | | | | | | 0.00 | |
| | | | P-1939435 | 654955 | 1704-nj | 01/08/2021 | 01/08/2021 | 01/2021 | 5680-0000 Pest Control | 1519368 | | 1,231.52 | 0.00 | 0.00 | 0.00 | 1,231.52 | 0.00 | 01/08/21 Annual Baiting service |

# Payables Aging Report

1704-nj
Period: 04/2021
As of : 04/30/2021

| Payee Code | Payee Name | Doc Seq # | Control | Batch Id | Property | Invoice Date | Due Date | Post Month | Account | Invoice # | Base Currency | Current Owed | 0-30 Owed | 31-60 Owed | 61-90 Owed | Over 90 Owed | Future Invoice | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | P-1939438 | 654955 | 1704-nj | 01/08/2021 | 01/08/2021 | 01/2021 | 5680-0001 Pest Control - Bldg 1 | 1519545 | | 1,690.17 | 0.00 | 0.00 | 0.00 | 1,690.17 | 0.00 | 01/08/21 BEDBUGS -7 STEPS INITIAL SERVICE SET-UP |
| | | | P-1939436 | 654955 | 1704-nj | 01/08/2021 | 02/07/2021 | 01/2021 | 5680-0000 Pest Control | 1519270 | | 879.66 | 0.00 | 0.00 | 0.00 | 879.66 | 0.00 | 01/08/21 Annual Baiting service |
| | | | P-1945673 | 655541 | 1704-nj | 01/26/2021 | 02/25/2021 | 02/2021 | 5680-0000 Pest Control | 1524497 | | 133.28 | 0.00 | 0.00 | 0.00 | 133.28 | 0.00 | 01/26/21 unit inspection service |
| | | | P-1945674 | 655541 | 1704-nj | 01/26/2021 | 02/25/2021 | 02/2021 | 5680-0000 Pest Control | 1524495 | | 133.28 | 0.00 | 0.00 | 0.00 | 133.28 | 0.00 | 0126/21 #5 additional units service |
| | | | P-1945675 | 655541 | 1704-nj | 01/26/2021 | 02/25/2021 | 02/2021 | 5680-0000 Pest Control | 1524496 | | 133.28 | 0.00 | 0.00 | 0.00 | 133.28 | 0.00 | 01/26/21 level of infestation/ inspection service |
| | | | P-1945676 | 655541 | 1704-nj | 01/20/2021 | 02/19/2021 | 02/2021 | 5680-0000 Pest Control | 1524465 | | 238.18 | 0.00 | 0.00 | 0.00 | 238.18 | 0.00 | 01/21/21 surrounding unit inspection |
| | | | P-1955289 | 656332 | 1704-nj | 02/17/2021 | 03/19/2021 | 02/2021 | 5680-0000 Pest Control | 1535627 | | 1,599.38 | 0.00 | 0.00 | 1,599.38 | 0.00 | 0.00 | 02/07/21 Bedbugs inspection &services |
| | | | P-1961940 | 656898 | 1704-nj | 03/03/2021 | 04/02/2021 | 03/2021 | 5680-0000 Pest Control | 1543739 | | 159.94 | 0.00 | 159.94 | 0.00 | 0.00 | 0.00 | 03/03/21 bedbugs service, surcharge |
| **Total coop351** | | | | | | | | | | | | **6,198.69** | **0.00** | **159.94** | **1,599.38** | **4,439.37** | **0.00** | |
| emco2 | EMCOR SERVICES | | | | | | | | | | | | | | | | 0.00 | |
| | | | P-1890206 | 650904 | 1704-nj | 09/25/2020 | 09/25/2020 | 10/2020 | 5655-0000 General Building Expense | 002053270 | | 9,592.80 | 0.00 | 0.00 | 0.00 | 9,592.80 | 0.00 | AUG 2020 - Gen Bldg Exp - Atlant |
| **Total emco2** | | | | | | | | | | | | **9,592.80** | **0.00** | **0.00** | **0.00** | **9,592.80** | **0.00** | |
| emco9815 | EMCOR Services Fluidics | | | | | | | | | | | | | | | | 0.00 | |
| | | | P-1898091 | 651595 | 1704-nj | 09/18/2020 | 09/18/2020 | 10/2020 | 5255-0000 Engineering Compensation | 002053192 | | 6,629.06 | 0.00 | 0.00 | 0.00 | 6,629.06 | 0.00 | AUG 2020 - Engineerg Comp - 212/ |
| | | | P-1898111 | 651595 | 1704-nj | 10/15/2020 | 10/15/2020 | 10/2020 | 5255-0000 Engineering Compensation | 002053498 | | 6,748.90 | 0.00 | 0.00 | 0.00 | 6,748.90 | 0.00 | SEPT 2020- Engineerg Comp- Atlan |

# Payables Aging Report

1704-nj

Period: 04/2021

As of : 04/30/2021

| Payee Code | Payee Name | Doc Seq # | Control | Batch Id | Property | Invoice Date | Due Date | Post Month | Account | Invoice # | Base Currency | Current Owed | 0-30 Owed | 31-60 Owed | 61-90 Owed | Over 90 Owed | Future Invoice | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | P-191566 9 | 653149 | 1704-nj | 10/26/2020 | 10/26/2020 | 12/2020 | 5255-0000 Engineering Compensation | 002053598 | | 933.41 | 0.00 | 0.00 | 0.00 | 933.41 | 0.00 | SEPT 2020- Engineerg Comp- Atlan |
| | | | P-191566 9 | 653149 | 1704-nj | 10/26/2020 | 10/26/2020 | 12/2020 | 5655-0000 General Building Expense | 002053598 | | 5,759.31 | 0.00 | 0.00 | 0.00 | 5,759.31 | 0.00 | SEPT 2020- Gen Bldg Exp - Atlanti |
| | | | P-191568 8 | 653149 | 1704-nj | 11/18/2020 | 11/18/2020 | 12/2020 | 5255-0000 Engineering Compensation | 002053863 | | 384.10 | 0.00 | 0.00 | 0.00 | 384.10 | 0.00 | OCT 2020 - Engineerg Comp - Atla |
| | | | P-191568 8 | 653149 | 1704-nj | 11/18/2020 | 11/18/2020 | 12/2020 | 5655-0000 General Building Expense | 002053863 | | 2,375.40 | 0.00 | 0.00 | 0.00 | 2,375.40 | 0.00 | OCT 2020 - Gen Bldg Exp - Atlant |
| | | | P-191569 9 | 653149 | 1704-nj | 11/18/2020 | 11/18/2020 | 12/2020 | 5255-0000 Engineering Compensation | 002053897 | | 6,083.09 | 0.00 | 0.00 | 0.00 | 6,083.09 | 0.00 | OCT 2020 - ENGINEERG COMP - Atla |
| | | | P-179405 5 | 642962 | 1704-nj | 03/30/2020 | 03/30/2020 | 04/2020 | 5255-0000 Engineering Compensation | 31952-01 | | 56,796.73 | 0.00 | 0.00 | 0.00 | 56,796.73 | 0.00 | Sept 2019 - Feb 2020 - Engineerg |
| | | | P-180854 9 | 644243 | 1704-nj | 04/30/2020 | 04/30/2020 | 05/2020 | 5255-0000 Engineering Compensation | 002051607 | | 18,553.21 | 0.00 | 0.00 | 0.00 | 18,553.21 | 0.00 | MARCH 2020 ENGINEERING COMPENSAT |
| | | | P-180855 7 | 644243 | 1704-nj | 04/30/2020 | 04/30/2020 | 05/2020 | 5255-0000 Engineering Compensation | 002051571 | | 8,420.96 | 0.00 | 0.00 | 0.00 | 8,420.96 | 0.00 | MARCH 2020 ENGINEERING COMPENSAT |
| | | | P-186255 0 | 648662 | 1704-nj | 08/20/2020 | 08/20/2020 | 08/2020 | 5255-0000 Engineering Compensation | 002052820 | | 7,260.41 | 0.00 | 0.00 | 0.00 | 7,260.41 | 0.00 | JUL 2020 - Engineering Comp - 21 |
| | | | P-186540 1 | 648935 | 1704-nj | 08/24/2020 | 08/24/2020 | 08/2020 | 5255-0000 Engineering Compensation | 002052867 | | 165.93 | 0.00 | 0.00 | 0.00 | 165.93 | 0.00 | JUL 2020 - Engineer ing Compensa |
| | | | P-186540 1 | 648935 | 1704-nj | 08/24/2020 | 08/24/2020 | 08/2020 | 5655-0000 General Building Expense | 002052867 | | 321.40 | 0.00 | 0.00 | 0.00 | 321.40 | 0.00 | JUL 2020 - Gen Bldg Exp - Atlant |
| | | | P-178751 6 | 642317 | 1704-nj | 03/18/2020 | 03/18/2020 | 03/2020 | 5655-0000 General Building Expense | 002050974 | | 11,591.69 | 0.00 | 0.00 | 0.00 | 11,591.69 | 0.00 | Feb 2020 - General Bldg Exp - 21 |
| | | | P-182967 6 | 645986 | 1704-nj | 05/28/2020 | 05/28/2020 | 06/2020 | 5655-0000 General Building Expense | 002051937 | | 2,088.25 | 0.00 | 0.00 | 0.00 | 2,088.25 | 0.00 | APRIL 2020 GENERAL EXPENSES 212, |
| | | | P-182968 2 | 645986 | 1704-nj | 06/17/2020 | 06/17/2020 | 06/2020 | 5655-0000 General Building Expense | 002052179 | | 3,801.09 | 0.00 | 0.00 | 0.00 | 3,801.09 | 0.00 | MAY 2020 GENERAL EXPENSES 212,21 |

# Payables Aging Report

1704-nj
Period: 04/2021
As of : 04/30/2021

| Payee Code | Payee Name | Doc Seq # | Control | Batch Id | Property | Invoice Date | Due Date | Post Month | Account | Invoice # | Base Currency | Current Owed | 0-30 Owed | 31-60 Owed | 61-90 Owed | Over 90 Owed | Future Invoice | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | P-1862511 | 648662 | 1704-nj | 07/24/2020 | 07/24/2020 | 08/2020 | 5655-0000 General Building Expense | 002052558 | | 6,944.73 | 0.00 | 0.00 | 0.00 | 6,944.73 | 0.00 | JUNE 2020 GENERAL EXPENSES 212, |
| | | | P-1826008 | 645688 | 1704-nj | 06/12/2020 | 06/12/2020 | 06/2020 | 5655-0000 General Building Expense | 002052139 | | 6,629.06 | 0.00 | 0.00 | 0.00 | 6,629.06 | 0.00 | MAY 2020 GENERAL EXPENSES 212,21 |
| | | | P-1815567 | 644838 | 1704-nj | 05/22/2020 | 05/22/2020 | 05/2020 | 5655-0000 General Building Expense | 002051862 | | 13,005.13 | 0.00 | 0.00 | 0.00 | 13,005.13 | 0.00 | APRIL 2020 GENERAL EXPENSES 212, |
| | | | P-1862538 | 648662 | 1704-nj | 08/18/2020 | 08/18/2020 | 08/2020 | 5672-0000 Misc Maintenance Supplies | 002052816 | | 911.52 | 0.00 | 0.00 | 0.00 | 911.52 | 0.00 | 08/18/20 misc. materials |
| | | | P-1931714 | 654349 | 1704-nj | 12/17/2020 | 12/17/2020 | 12/2020 | 5255-0000 Engineering Compensation | 002054344 | | 345.58 | 0.00 | 0.00 | 0.00 | 345.58 | 0.00 | 11/2020 - Engineerg Comp - Atlantic City |
| | | | P-1931714 | 654349 | 1704-nj | 12/17/2020 | 12/17/2020 | 12/2020 | 5655-0000 General Building Expense | 002054344 | | 2,221.78 | 0.00 | 0.00 | 0.00 | 2,221.78 | 0.00 | 11/2020 - Gen Bldg Exp - Atlantic City |
| | | | P-1936571 | 654719 | 1704-nj | 12/11/2020 | 12/11/2020 | 01/2021 | 5255-0000 Engineering Compensation | 002054284 | | 9,086.20 | 0.00 | 0.00 | 0.00 | 9,086.20 | 0.00 | 11/2020 - Engineerg Comp - Atlantic City |
| | | | P-1939437 | 654955 | 1704-nj | 01/11/2021 | 01/11/2021 | 01/2021 | 5255-0000 Engineering Compensation | 002054582 | | 11,074.04 | 0.00 | 0.00 | 0.00 | 11,074.04 | 0.00 | 12/2020 - Engineering Comp - Atlantic City |
| | | | P-1948978 | 655819 | 1704-nj | 01/14/2021 | 01/14/2021 | 02/2021 | 5255-0000 Engineering Compensation | 002054651 | | 499.11 | 0.00 | 0.00 | 0.00 | 499.11 | 0.00 | 12/2020 - Engineering Comp - Atlantic City |
| | | | P-1948978 | 655819 | 1704-nj | 01/14/2021 | 01/14/2021 | 02/2021 | 5655-0000 General Building Expense | 002054651 | | 2,709.09 | 0.00 | 0.00 | 0.00 | 2,709.09 | 0.00 | 12/2020 - Gen Bldg Exp - Atlantic City |
| | | | P-1955288 | 656332 | 1704-nj | 02/16/2021 | 03/03/2021 | 02/2021 | 5255-0000 Engineering Compensation | 002054947 | | 1,045.94 | 0.00 | 0.00 | 1,045.94 | 0.00 | 0.00 | 01/2021 - Engineerg Comp - Atlantic City |
| | | | P-1955288 | 656332 | 1704-nj | 02/16/2021 | 03/03/2021 | 02/2021 | 5655-0000 General Building Expense | 002054947 | | 1,091.21 | 0.00 | 0.00 | 1,091.21 | 0.00 | 0.00 | 01/2021 - Gen Bldg Exp - Atlantic City |
| | | | P-1964417 | 657091 | 1704-nj | 03/09/2021 | 03/09/2021 | 03/2021 | 5255-0000 Engineering Compensation | 002055288 | | 1,201.76 | 0.00 | 1,201.76 | 0.00 | 0.00 | 0.00 | FEB 2021 - ENGINEERING COMP - Atlantic Ave |
| | | | P-1964417 | 657091 | 1704-nj | 03/09/2021 | 03/09/2021 | 03/2021 | 5655-0000 General Building Expense | 002055288 | | 363.17 | 0.00 | 363.17 | 0.00 | 0.00 | 0.00 | FEB 2021 - Gen Bldg Exp - Atlantic Ave |

# Payables Aging Report

1704-nj
Period: 04/2021
As of : 04/30/2021

| Payee Code | Payee Name | Doc Seq # | Control | Batch Id | Property | Invoice Date | Due Date | Post Month | Account | Invoice # | Base Currency | Current Owed | 0-30 Owed | 31-60 Owed | 61-90 Owed | Over 90 Owed | Future Invoice | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | P-1964418 | 657091 | 1704-nj | 03/09/2021 | 03/24/2021 | 03/2021 | 5255-0000 Engineering Compensation | 002055318 | | 9,629.60 | 0.00 | 9,629.60 | 0.00 | 0.00 | 0.00 | FEB 2021 - ENGINEERING COMP - Atlantic City |
| | | | P-1983572 | 658651 | 1704-nj | 04/22/2021 | 04/22/2021 | 04/2021 | 5255-0000 Engineering Compensation | 002055783 | | 10,619.22 | 10,619.22 | 0.00 | 0.00 | 0.00 | 0.00 | MAR 2021 - ENGINEERING COMP- AC Atlantic Ave |
| | | | P-1983573 | 658651 | 1704-nj | 04/22/2021 | 04/22/2021 | 04/2021 | 5255-0000 Engineering Compensation | 002055789 | | 1,395.63 | 1,395.63 | 0.00 | 0.00 | 0.00 | 0.00 | MAR 2021 - ENGINEERING COMP- Atlantic City |
| | | | P-1983573 | 658651 | 1704-nj | 04/22/2021 | 04/22/2021 | 04/2021 | 5655-0000 General Building Expense | 002055789 | | 1,231.16 | 1,231.16 | 0.00 | 0.00 | 0.00 | 0.00 | MAR 2021 -GEN BLDG EXP- Atlantic City |
| | | | P-1955287 | 656332 | 1704-nj | 02/16/2021 | 02/16/2021 | 02/2021 | 5255-0000 Engineering Compensation | 002054960 | | 10,111.08 | 0.00 | 0.00 | 10,111.08 | 0.00 | 0.00 | 01/2021 - Engineerg Comp - Atlantic City |
| **Total emco9815** | | | | | | | | | | | | **228,027.95** | **13,246.01** | **11,194.53** | **12,248.23** | **191,339.18** | **0.00** | |
| lawn9 | Lawns by Yorkshire | | | | | | | | | | | | | | | | 0.00 | |
| | | | P-1729336 | 637279 | 1704-nj | 11/29/2019 | 11/29/2019 | 12/2019 | 5843-0000 Repairs & Maintenance | 18109 | | 8,836.55 | 0.00 | 0.00 | 0.00 | 8,836.55 | 0.00 | GENERAL INTERIOR CLEANUP 214 |
| | | | P-1729337 | 637279 | 1704-nj | 11/29/2019 | 11/29/2019 | 12/2019 | 5843-0000 Repairs & Maintenance | 18110 | | 8,316.75 | 0.00 | 0.00 | 0.00 | 8,316.75 | 0.00 | GENERAL INTERIOR CLEANUP 212, 21 |
| | | | P-1890214 | 650904 | 1704-nj | 10/01/2020 | 10/01/2020 | 10/2020 | 5555-0000 Landscaping Contract | 20679 | | 670.21 | 0.00 | 0.00 | 0.00 | 670.21 | 0.00 | Oct 1- Oct 31. Landscaping. 212, |
| | | | P-1729339 | 637279 | 1704-nj | 11/29/2019 | 11/29/2019 | 12/2019 | 5230-0000 Refuse Removal | 18114 | | 15,732.52 | 0.00 | 0.00 | 0.00 | 15,732.52 | 0.00 | GENERAL LABOR/GENERAL CLEANUP |
| **Total lawn9** | | | | | | | | | | | | **33,556.03** | **0.00** | **0.00** | **0.00** | **33,556.03** | **0.00** | |
| sillone | SILLS, CUMMIS & GROSS P.C. | | | | | | | | | | | | | | | | 0.00 | |
| | | | P-1928442 | 654157 | 1704-nj | 11/09/2020 | 11/09/2020 | 12/2020 | 7905-0000 Legal | 1785510 | | 3,908.05 | 0.00 | 0.00 | 0.00 | 3,908.05 | 0.00 | 10/31/20 |
| | | | P-1928443 | 654157 | 1704-nj | 12/08/2020 | 12/08/2020 | 12/2020 | 7905-0000 Legal | 1787314 | | 5,498.47 | 0.00 | 0.00 | 0.00 | 5,498.47 | 0.00 | 11/30/20 |

# Payables Aging Report

1704-nj
Period: 04/2021
As of : 04/30/2021

| Payee Code | Payee Name | Doc Seq # | Control | Batch Id | Property | Invoice Date | Due Date | Post Month | Account | Invoice # | Base Currency | Current Owed | 0-30 Owed | 31-60 Owed | 61-90 Owed | Over 90 Owed | Future Invoice | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | P-1928445 | 654157 | 1704-nj | 08/14/2020 | 08/14/2020 | 12/2020 | 7905-0000 Legal | 1781337 | | 5,469.42 | 0.00 | 0.00 | 0.00 | 5,469.42 | 0.00 | 07/31/20 |
| | | | P-1928446 | 654157 | 1704-nj | 09/03/2020 | 09/03/2020 | 12/2020 | 7905-0000 Legal | 1781868 | | 4,367.72 | 0.00 | 0.00 | 0.00 | 4,367.72 | 0.00 | 08/31/20 |
| | | | P-1944719 | 655454 | 1704-nj | 01/12/2021 | 01/12/2021 | 01/2021 | 7905-0000 Legal | 1789299 | | 5,247.57 | 0.00 | 0.00 | 0.00 | 5,247.57 | 0.00 | legal services through 12/31 |
| **Total sillone** | | | | | | | | | | | | **24,491.23** | **0.00** | **0.00** | **0.00** | **24,491.23** | **0.00** | |
| sout6091 | SOUTH JERSEY GAS | | | | | | | | | | | | | | | | 0.00 | |
| | | | P-1915736 | 653149 | 1704-nj | 11/16/2020 | 11/16/2020 | 12/2020 | 5210-0000 Gas | 096464-2011 | | -141.98 | 0.00 | 0.00 | 0.00 | -141.98 | 0.00 | 10/14/20 to 11/02/20 service usa |
| **Total sout6091** | | | | | | | | | | | | **-141.98** | **0.00** | **0.00** | **0.00** | **-141.98** | **0.00** | |
| tolplu62 | TOLEDO PLUMBING & HEATING INC | | | | | | | | | | | | | | | | 0.00 | |
| | | | P-1952195 | 656080 | 1704-nj | 02/05/2021 | 02/10/2021 | 02/2021 | 5405-0000 Plumbing | 11686 | | 373.19 | 0.00 | 0.00 | 373.19 | 0.00 | 0.00 | 02/05/21 Main pipe blockage cleared |
| | | | P-1971393 | 657655 | 1704-nj | 03/10/2021 | 03/15/2021 | 03/2021 | 5405-0000 Plumbing | 12028 | | 911.64 | 0.00 | 911.64 | 0.00 | 0.00 | 0.00 | 03/10/21 power jetted main drain service |
| **Total tolplu62** | | | | | | | | | | | | **1,284.83** | **0.00** | **911.64** | **373.19** | **0.00** | **0.00** | |
| **Grand Total** | | | | | | | | | | | | **391,857.74** | **20,186.61** | **12,414.91** | **28,197.97** | **331,058.25** | **0.00** | |

# Rent Roll

Property: 1704-nj  From Date: 04/01/2021  By Property

| Property | Unit(s) | Lease | Lease Type | Area | Lease From | Lease To | Term | Monthly Rent | Monthly Rent Per Area | Annual Rent | Annual Rent Per Area | Annual Rec. Per Area | Annual Misc Per Area | Security Deposit | LOC Amount/ Bank Guarantee |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **1704-nj - 212, 214 and 225 Atlantic Avenue, Atlantic City** | | | | | | | | | | | | | | | |
| **Current Leases** | | | | | | | | | | | | | | | |
| 1704-nj | | x Marina Lopez | Residential | 0.00 | 10/01/2019 | | 0 | 604.91 | 0.00 | 7,258.92 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 1704-nj | 212APT A3 | Victoria Mato | Residential | 0.00 | 10/01/2019 | | 0 | 565.06 | 0.00 | 6,780.72 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 1704-nj | 212APT A4 | Cindy Lopez | Residential | 0.00 | 10/01/2019 | | 0 | 550.00 | 0.00 | 6,600.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 1704-nj | 212APT A5 | Carolina Medina | Residential | 0.00 | 10/01/2019 | | 0 | 700.00 | 0.00 | 8,400.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 1704-nj | 212APT B2 | Eddie Rodriguez | Residential | 0.00 | 10/01/2019 | | 0 | 600.00 | 0.00 | 7,200.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 1704-nj | 212APT B3 | Betulia Rodriguez | Residential | 0.00 | 10/01/2019 | 07/31/2021 | 22 | 557.50 | 0.00 | 6,690.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 1704-nj | 212APT B4 | Alvira Campbell and Rudolph Campbell | Residential | 0.00 | 10/01/2019 | 07/31/2021 | 22 | 564.72 | 0.00 | 6,776.64 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 1704-nj | 214APT A1 | Mayra Hernandez | Residential | 0.00 | 10/01/2019 | | 0 | 650.00 | 0.00 | 7,800.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 1704-nj | 214APT A3 | Sharon Cowan | Residential | 0.00 | 10/01/2019 | | 0 | 689.00 | 0.00 | 8,268.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 1704-nj | 214APT B2 | Lamonte Laurence Chiles | Residential | 0.00 | 10/01/2019 | 04/30/2021 | 19 | 536.79 | 0.00 | 6,441.48 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 1704-nj | 214APT C1 | Julissa Belkis | Residential | 0.00 | 10/01/2019 | | 0 | 700.00 | 0.00 | 8,400.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 1704-nj | 214APT C3 | Luis Regalado-Rodriguez | Residential | 0.00 | 10/01/2019 | | 0 | 550.00 | 0.00 | 6,600.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 1704-nj | 225APT A1 | Gregorio Gonzalez and Tammy Greenwood | Residential | 0.00 | 10/01/2019 | 07/31/2021 | 22 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 1704-nj | 225APT A3 | Joseph Smalley | Residential | 0.00 | 10/01/2019 | | 0 | 565.06 | 0.00 | 6,780.72 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 1704-nj | 225APT A5 | Wellington Acosta | Residential | 0.00 | 10/01/2019 | | 0 | 550.00 | 0.00 | 6,600.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 1704-nj | 225APT A7 | David Hernandez | Residential | 0.00 | 10/01/2019 | | 0 | 748.00 | 0.00 | 8,976.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 1704-nj | 225APT B1 | Marvin Rodriguez | Residential | 0.00 | 10/01/2019 | | 0 | 890.64 | 0.00 | 10,687.68 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 1704-nj | 225APT B2 | Roberto Morales | Residential | 0.00 | 10/01/2019 | | 0 | 550.00 | 0.00 | 6,600.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 1704-nj | 225APT B3 | Anita Troncosco | Residential | 0.00 | 10/01/2019 | | 0 | 500.00 | 0.00 | 6,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 1704-nj | 225APT B6 | Juan Rebolledo | Residential | 0.00 | 10/01/2019 | | 0 | 850.00 | 0.00 | 10,200.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 1704-nj | 225APT C1 | Gladis Lee | Residential | 0.00 | 10/01/2019 | | 0 | 700.00 | 0.00 | 8,400.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 1704-nj | 225APT C2 | Nilda Ramos | Residential | 0.00 | 10/01/2019 | | 0 | 525.00 | 0.00 | 6,300.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

# Rent Roll

Property: 1704-nj  From Date: 04/01/2021  By Property

| Property | Unit(s) | Lease | Lease Type | Area | Lease From | Lease To | Term | Monthly Rent | Monthly Rent Per Area | Annual Rent | Annual Rent Per Area | Annual Rec. Per Area | Annual Misc Per Area | Security Deposit | LOC Amount/ Bank Guarantee |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1704-nj | 225APT C4 | Eliezer Morales Jr | Residential | 0.00 | 10/01/2019 | | 0 | 550.00 | 0.00 | 6,600.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 1704-nj | 225APT C5 | Timothy Loper | Residential | 0.00 | 10/01/2019 | | 0 | 500.00 | 0.00 | 6,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 1704-nj | 212APT A1 | VACANT | | 600.00 | | | 0 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 1704-nj | 212APT A2 | VACANT | | 500.00 | | | 0 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 1704-nj | 212APT B1 | VACANT | | 600.00 | | | 0 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 1704-nj | 212APT B5 | VACANT | | 600.00 | | | 0 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 1704-nj | 212APT C1 | VACANT | | 600.00 | | | 0 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 1704-nj | 212APT C2 | VACANT | | 625.00 | | | 0 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 1704-nj | 212APT C3 | VACANT | | 450.00 | | | 0 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 1704-nj | 212APT C4 | VACANT | | 450.00 | | | 0 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 1704-nj | 212APT C5 | VACANT | | 0.00 | | | 0 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 1704-nj | 214APT A2 | VACANT | | 450.00 | | | 0 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 1704-nj | 214APT A4 | VACANT | | 450.00 | | | 0 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 1704-nj | 214APT A5 | VACANT | | 0.00 | | | 0 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 1704-nj | 214APT B1 | VACANT | | 0.00 | | | 0 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 1704-nj | 214APT B3 | VACANT | | 450.00 | | | 0 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 1704-nj | 214APT B4 | VACANT | | 450.00 | | | 0 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 1704-nj | 214APT B5 | VACANT | | 0.00 | | | 0 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 1704-nj | 214APT C2 | VACANT | | 450.00 | | | 0 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 1704-nj | 214APT C4 | VACANT | | 625.00 | | | 0 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 1704-nj | 214APT C5 | VACANT | | 600.00 | | | 0 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 1704-nj | 225APT A2 | VACANT | | 500.00 | | | 0 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 1704-nj | 225APT A4 | VACANT | | 500.00 | | | 0 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 1704-nj | 225APT A6 | VACANT | | 800.00 | | | 0 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

# Rent Roll

Property: 1704-nj  From Date: 04/01/2021  By Property

| Property | Unit(s) | Lease | Lease Type | Area | Lease From | Lease To | Term | Monthly Rent | Monthly Rent Per Area | Annual Rent | Annual Rent Per Area | Annual Rec. Per Area | Annual Misc Per Area | Security Deposit | LOC Amount/ Bank Guarantee |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1704-nj | 225APT B4 | VACANT | | 0.00 | | | 0 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 1704-nj | 225APT B5 | VACANT | | 500.00 | | | 0 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 1704-nj | 225APT B7 | VACANT | | 750.00 | | | 0 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 1704-nj | 225APT C3 | VACANT | | 500.00 | | | 0 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 1704-nj | 225APT C6 | VACANT | | 800.00 | | | 0 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 1704-nj | 225APT C7 | VACANT | | 750.00 | | | 0 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Total Current | | | | 13,000.00 | | | | 14,196.68 | 1.09 | 170,360.16 | 13.10 | 0.00 | 0.00 | 0.00 | 0.00 |

| | Total Units | Total Area | Percentage | Monthly Rent | Annual Rent |
|---|---|---|---|---|---|
| Occupied | 23 | 0.00 | 0.00 | 14,196.68 | 170,360.16 |
| Vacant | 28 | 13,000.00 | 100.00 | 0.00 | 0.00 |
| Total | 51 | 13,000.00 | | 14,196.68 | 170,360.16 |

**212, 214, 225 Atlantic Av Oper**

5/6/2021

**Bank Reconciliation Report**

**4/30/2021**

██████████

**Posted by: DBO**

**Balance Per Bank Statement as of 4/30/2021**                                              **5,517.07**

**Outstanding Checks**

| Check Date | Check Number | Payee | Amount |
|---|---|---|---|
| 2/13/2021 | 353 | veri408 - Verizon Wireless | 22.98 |
| 4/21/2021 | 387 | atcit18 - ATLANTIC CITY MUNICIPAL UTILITIES AUTH. | 1,680.75 |
| 4/30/2021 | 388 | wastenj - Waste Management of New Jersey, Inc. | 10.23 |
| **Less:** | **Outstanding Checks** | | **1,713.96** |
| | **Reconciled Bank Balance** | | **3,803.11** |

**Balance per GL as of 4/30/2021**                                                          **3,803.11**

**Reconciled Balance Per G/L**                                              **3,803.11**

**Difference**          (Reconciled Bank Balance And Reconciled Balance Per G/L)          **0.00**

212, 214, 225 Atlantic Av Oper

5/6/2021

## Bank Reconciliation Report

### 4/30/2021

▉▉▉▉▉▉

**Posted by: DBO**

**Cleared Items:**

**Cleared Checks**

| Date | Tran # | Notes | Amount | Date Cleared |
|------|--------|-------|--------|--------------|
| 3/12/2021 | 371 | wastenj - Waste Management of New Jersey, Inc. | 929.57 | 4/30/2021 |
| 3/31/2021 | 372 | atla1361 - Atlantic City Electric | 36.07 | 4/30/2021 |
| 3/31/2021 | 373 | coop351 - Cooper Pest Solutions, Inc. | 103.96 | 4/30/2021 |
| 3/31/2021 | 374 | coop351 - Cooper Pest Solutions, Inc. | 44.68 | 4/30/2021 |
| 3/31/2021 | 375 | coop351 - Cooper Pest Solutions, Inc. | 159.94 | 4/30/2021 |
| 3/31/2021 | 376 | sout6091 - SOUTH JERSEY GAS | 35.82 | 4/30/2021 |
| 4/6/2021 | 40621 | stat662 - STATE OF NEW JERSEY | 2,000.00 | 4/30/2021 |
| 4/9/2021 | 378 | coop351 - Cooper Pest Solutions, Inc. | 133.28 | 4/30/2021 |
| 4/9/2021 | 379 | coop351 - Cooper Pest Solutions, Inc. | 133.28 | 4/30/2021 |
| 4/9/2021 | 380 | coop351 - Cooper Pest Solutions, Inc. | 133.28 | 4/30/2021 |
| 4/9/2021 | 381 | coop351 - Cooper Pest Solutions, Inc. | 133.28 | 4/30/2021 |
| 4/9/2021 | 382 | wastenj - Waste Management of New Jersey, Inc. | 380.96 | 4/30/2021 |
| 4/15/2021 | 383 | atcit18 - ATLANTIC CITY MUNICIPAL UTILITIES AUTH. | 933.75 | 4/30/2021 |
| 4/15/2021 | 384 | atcit18 - ATLANTIC CITY MUNICIPAL UTILITIES AUTH. | 1,827.23 | 4/30/2021 |
| 4/15/2021 | 385 | veri408 - Verizon Wireless | 16.11 | 4/30/2021 |
| 4/15/2021 | 386 | veri408 - Verizon Wireless | 16.02 | 4/30/2021 |
| **Total Cleared Checks** | | | **7,017.23** | |

**Cleared Deposits**

| Date | Tran # | Notes | Amount | Date Cleared |
|------|--------|-------|--------|--------------|
| 4/7/2021 | 129 | | 827.31 | 4/30/2021 |
| 4/9/2021 | 130 | | 1,100.00 | 4/30/2021 |
| 4/13/2021 | 131 | | 2,100.00 | 4/30/2021 |
| 4/14/2021 | 132 | | 689.00 | 4/30/2021 |
| 4/19/2021 | 133 | | 700.00 | 4/30/2021 |
| 4/23/2021 | 135 | | 550.00 | 4/30/2021 |
| 4/26/2021 | 134 | | 1,400.00 | 4/30/2021 |
| **Total Cleared Deposits** | | | **7,366.31** | |

# MANAGE YOUR CASH

**Capital One Bank**
Commercial Banking Group

CASH MANAGEMENT | CHECKING | MONEY MARKET | CDs | LOANS

ATLANTIC NORSE LLC
DISTRICT OF NEW JERSEY
C/O COLLIERS INTERNATIONAL REMS US, LLC
AS RECEIVER
2550 WEST TYVOLA ROAD, SUITE 300
CHARLOTTE NC  28217

▸ Contact your Relationship Manager to discuss
targeted solutions for your evolving business needs.

## ACCOUNT SUMMARY      FOR PERIOD  APRIL 01, 2021  -  APRIL 30, 2021

**Blended Checking** ███████████                                      **ATLANTIC NORSE LLC**

| | | | |
|---|---|---|---|
| Previous Balance  03/31/21 | $5,167.99 | Number of Days in Cycle | 30 |
| 7 Deposits/Credits | $7,366.31 | Minimum Balance This Cycle | $3,065.73 |
| 16 Checks/Debits | ($7,017.23) | Average Collected Balance | $4,682.55 |
| Service Charges | $0.00 | | |
| Ending Balance 04/30/21 | $5,517.07 | | |

## ACCOUNT DETAIL    FOR PERIOD  APRIL 01, 2021   -   APRIL 30, 2021

**Blended Checking** ███████████                                       **ATLANTIC NORSE LLC**

| Date | Description | Deposits/Credits | Withdrawals/Debits | Resulting Balance |
|---|---|---|---|---|
| 04/05 | Check        371 | | $929.57 | $4,238.42 |
| 04/07 | Customer Deposit | $827.31 | | $5,065.73 |
| 04/07 | ACH Withdrawal NJ WEB PMT 11010 NJWEB11010 040721 BRYAN FAULKNER 091000XXXXX9139 | | $2,000.00 | $3,065.73 |
| 04/09 | Customer Deposit | $1,100.00 | | $4,165.73 |
| 04/13 | Customer Deposit | $2,100.00 | | $6,265.73 |
| 04/13 | Check        376 | | $35.82 | $6,229.91 |
| 04/14 | Customer Deposit | $689.00 | | $6,918.91 |
| 04/14 | Check        375 | | $159.94 | $6,758.97 |
| 04/14 | Check        373 | | $103.96 | $6,655.01 |
| 04/14 | Check        374 | | $44.68 | $6,610.33 |
| 04/16 | Check        382 | | $380.96 | $6,229.37 |
| 04/16 | Check        378 | | $133.28 | $6,096.09 |
| 04/16 | Check        380 | | $133.28 | $5,962.81 |
| 04/16 | Check        381 | | $133.28 | $5,829.53 |
| 04/16 | Check        379 | | $133.28 | $5,696.25 |
| 04/19 | Customer Deposit | $700.00 | | $6,396.25 |
| 04/21 | Check        385 | | $16.11 | $6,380.14 |
| 04/21 | Check        386 | | $16.02 | $6,364.12 |

*Thank you for banking with us.*

Products and services are offered by Capital One, N.A., Member FDIC.
©2021 Capital One. All rights reserved.



MEMBER
FDIC      EQUAL HOUSING LENDER

ACCOUNT DETAIL   CONTINUED FOR PERIOD  APRIL 01, 2021  -  APRIL 30, 2021

| Date | Description | Deposits/Credits | Withdrawals/Debits | Resulting Balance |
|------|-------------|------------------|--------------------|-------------------|
| 04/22 | Check      384 | | $1,827.23 | $4,536.89 |
| 04/22 | Check      383 | | $933.75 | $3,603.14 |
| 04/22 | Check      372 | | $36.07 | $3,567.07 |
| 04/23 | Customer Deposit | $550.00 | | $4,117.07 |
| 04/26 | Customer Deposit | $1,400.00 | | $5,517.07 |
| *Total* | | $7,366.31 | $7,017.23 | |

**Blended Checking** ███████████        **ATLANTIC NORSE LLC**

**Checks** * designates gap in check sequence

| Check No. | Date | Amount | Check No. | Date | Amount | Check No. | Date | Amount |
|-----------|------|--------|-----------|------|--------|-----------|------|--------|
| 371 | 04/05 | $929.57 | 376 | 04/13 | $35.82 | 382 | 04/16 | $380.96 |
| 372 | 04/22 | $36.07 | 378* | 04/16 | $133.28 | 383 | 04/22 | $933.75 |
| 373 | 04/14 | $103.96 | 379 | 04/16 | $133.28 | 384 | 04/22 | $1,827.23 |
| 374 | 04/14 | $44.68 | 380 | 04/16 | $133.28 | 385 | 04/21 | $16.11 |
| 375 | 04/14 | $159.94 | 381 | 04/16 | $133.28 | 386 | 04/21 | $16.02 |

PAGE 2 OF 2

PSI: 1 / SHC: 0 / LOB :C

**Atlantic Norse Sec Dep**

5/6/2021

**Bank Reconciliation Report**

**4/30/2021**

███████

**Posted by: DBO**

| | |
|---|---|
| **Balance Per Bank Statement as of 4/30/2021** | **0.00** |
| **Reconciled Bank Balance** | **0.00** |
| | |
| **Balance per GL as of 4/30/2021** | **0.00** |
| **Reconciled Balance Per G/L** | **0.00** |
| | |
| **Difference**    (Reconciled Bank Balance And Reconciled Balance Per G/L) | **0.00** |

# MANAGE YOUR CASH

**Capital One Bank**
Commercial Banking Group

**CASH MANAGEMENT** | **CHECKING** | **MONEY MARKET** | **CDs** | **LOANS**

ATLANTIC NORSE LLC
DISTRICT OF NEW JERSEY-SECURITY DEPOSIT
C/O COLLIERS INTERNATIONAL REMS US, LLC
AS RECEIVER
2550 WEST TYVOLA ROAD, SUITE 300
CHARLOTTE NC  28217

▸ Contact your Relationship Manager to discuss
targeted solutions for your evolving business needs.

## ACCOUNT SUMMARY  FOR PERIOD  APRIL 01, 2021  -  APRIL 30, 2021

**Commercial Tower** ███████                                      **ATLANTIC NORSE LLC**

| | | | |
|---|---|---|---|
| Previous Balance  03/31/21 | $0.00 | Number of Days in Cycle | 30 |
| 0 Deposits/Credits | $0.00 | Minimum Balance This Cycle | $0.00 |
| Interest Paid | $0.00 | Average Collected Balance | $0.00 |
| 0 Checks/Debits | $0.00 | Interest Earned During this Cycle | $0.00 |
| Service Charges | $0.00 | Interest Paid Year-To-Date | $0.00 |
| Ending Balance 04/30/21 | $0.00 | Annual Percentage Yield | 0.00% |
| | | (This Statement Period) | |

## ACCOUNT DETAIL  FOR PERIOD  APRIL 01, 2021  -  APRIL 30, 2021

**Commercial Tower** ███████                                      **ATLANTIC NORSE LLC**

| Date | Description | Deposits/Credits | Withdrawals/Debits | Resulting Balance |
|---|---|---|---|---|
| 04/01 | | | | $0.00 |
| | No Account Activity this Statement Period | | | |
| 04/30 | | | | $0.00 |
| **Total** | | $0.00 | $0.00 | |
| No Items Processed | | | | |

*Thank you for banking with us.*

Products and services are offered by Capital One, N.A., Member FDIC.
©2021 Capital One. All rights reserved.

 

MEMBER FDIC
EQUAL HOUSING LENDER

PSI: 0 / SHC: 0 / LOB :C