## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

-------------------------------------------------------x

U.S. BANK NATIONAL ASSOCIATION, :   Civil Action No. 19-cv-17865 (MCA)(LDW)
AS TRUSTEE FOR THE REGISTERED :
HOLDERS OF WELLS FARGO :
COMMERCIAL MORTGAGE :
SECURITIES, INC., MULTIFAMILY :   **DECLARATION OF JOSEPH BRECHER**
MORTGAGE PASS-THROUGH :   **IN SUPPORT OF RECEIVER'S MOTION**
CERTIFICATES, SERIES 2018-SB51, *et al.,* :   **TO APPROVE SALE OF PROPERTIES**
  :   **FREE AND CLEAR, AUTHORIZING**
                  Plaintiffs, :   **DISTRIBUTION OF SALES PROCEEDS,**
  :   **AND GRANTING OTHER RELATED**
v. :   <u>**RELIEF**</u>
  :
ATLANTIC NORSE, LLC, *et al.,* :
  :
                 Defendants. :
  :

-------------------------------------------------------x

JOSEPH BRECHER, pursuant to 28 U.S.C. § 1746, declares as follows:

1.      I am an Executive Managing Director of Gebroe Hammer Associates ("<u>GH</u>"), and I have personal knowledge of the facts and circumstances set forth in this Declaration unless otherwise indicated.

2.      I submit this Declaration in support of Colliers International NJ, LLC's ("<u>Receiver</u>") motion to approve the sale of the properties located at 212, 214, and 225 Atlantic Avenue, Atlantic City, New Jersey 08401 (the "<u>Subject Properties</u>"), to authorize the Receiver to disburse the net proceeds from the sale, including the brokerage commission due to GH in connection with the sale, and for related relief incidental to consummating the sale (the "<u>Sale Approval Motion</u>"),

3.      GH is a duly licensed commercial real estate brokerage firm that was founded in 1975 and has actively engaged in the marketing and sale of hundreds of commercial properties in

New Jersey during that time.  I obtained my NJ Real Estate Salesperson license #0121944 on 4/30/2001, have worked with GH since 5/1/2001, and have been GH's Executive Managing Director since 2017.

4.      On or about August 27, 2020, GH entered an Exclusive Rights Agreement ("Agreement") with the Receiver that appointed GH as the Receiver's exclusive agent for the properties that are at issue in the above-referenced action and identified in Schedule A to the Agreement. Attached hereto as **Exhibit A** is a copy of the Agreement.  The Agreement was also agreed to and accepted by Wilmington Trust, National Association, as Trustee for the Registered Holders of Credit Suisse First Boston Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2019-SB61 ("Wilmington"), a plaintiff in this action who I understand to be the first priority mortgagee for the Subject Properties.

5.      Pursuant to the Agreement, GH was charged with, among other things, marketing and procuring a sale of the properties listed in the Agreement without representation or warranty as to the condition of the properties.  With respect to the Subject Properties, the Agreement provides that GH is entitled to a commission of 3% of the purchase price, which is to be paid from sales proceeds following approval of the sale by this Court.

6.      In connection with the Subject Properties, GH was provided an appraisal report for the Subject Properties dated February 27, 2020 (the "Appraisal Report") from Key Bank National Association, the servicer of the loan held by Wilmington, which estimates the fair market value of the Subject Properties at $1,950,000.  Attached hereto as **Exhibit B** is a copy of excerpts from the Appraisal Report.

7.      GH utilized the Appraisal Report, among other things, to assess the fair market value of the Subject Properties and to list and negotiate the sale of the Subject Properties.

Although GH did not make any representations to prospective purchasers regarding the physical conditions of the Subject Properties, in my experience, the $1,950,000 fair market value identified in the Appraisal Report is reasonable and consistent with industry standards.

8.      In its capacity as broker, and in compliance with applicable law, industry standards, and the Agreement, GH engaged in an extensive marketing campaign to sell the Subject Properties.  Among other things, GH marketed the Subject Properties on multiple online platforms, and performed email blasts that reached over 480 prospective purchasers.

9.      GH's marketing efforts resulted in 63 confidential agreements and 6 written offers from prospective purchasers.

10.      On December 17, 2020, GH received a non-binding Letter of Intent (the "LOI") from ARGO Management, LLC ("Purchaser") to purchase the Subject Properties for a total purchase price of $2,000,000, which is the highest price offered for the Subject Properties.  A true copy of the LOI is attached hereto as **Exhibit C**.

11.      Consistent with other offers GH received, Purchaser required that any purchase of the Subject Properties result in the transfer of clear tile to the Subject Properties, free and clear of all prior liens, claims, and encumbrances.

12.      My understanding is that Receiver and Purchaser entered into an Agreement of Purchase and Sale for the Subject Properties on or about February 17, 2021 (the "PSA"), that Wilmington has agreed to the terms of the PSA, and that no other parties with an interest in the Subject Properties have objected to the terms of the PSA.

13.      GH believes the price offered by Purchaser for the Subject Properties, which is in excess of the fair market value estimated in the Appraisal Report, presents the best opportunity to effect a sale of the Subject Properties, and joins in the Receiver's motion to approve the sale and

to authorize the Receiver to disburse the net proceeds, including a disbursement of $60,000 to GH for its 3% brokerage commission in connection with this sale.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on April 12, 2021.

JOSEPH BRECHER

# Exhibit A

### Exclusive Right Agreement

This Exclusive Right Agreement ("**Agreement**") made as of August 27, 2020, between Colliers International NJ LLC, having an office at 300 Interpace Parkway, Parsippany, New Jersey 07054, in its capacity as the Court-Appointed Receiver (the "**Receiver**") for that certain real property identified and described on Schedule A annexed hereto and incorporated herein (hereinafter, the "**Receivership Properties**"), and as more fully described on Exhibits A and B to that certain Amended Preliminary Injunction and Receivership Order, entered on December 4, 2019, *U.S. Bank National Ass'n v. Englewood Funding, LLC, et al.*, Civil Action No. 19-cv-17865-MCA-LDW (the "**Action**"), and Gebroe-Hammer Associates in its capacity as a real estate broker (the "**Agent**"). Agent represents that it is a duly licensed real estate broker in the State of New Jersey. Receiver and Agent intending to be legally bound hereby agree as follows:

1.      Receiver hereby appoints and directs Agent to serve as Receiver's sole and exclusive agent granted with the sole and exclusive right to procure a sale or any other acceptable transfer of one or more of the Receivership Properties (including all improvements now or hereafter made and all appurtenances thereto), except in connection with any sale or other transfer of any of the Receivership Properties made to a sponsor of the defendant in the Action or effectuated under the applicable pooling and servicing agreement (the "**PSA**") governing plaintiff (i) Wilmington Trust, National Association, as trustee for the registered Holders of Wells Fargo Commercial Mortgage Securities, Inc., Multifamily Mortgage Pass Through Certificates, Series 2018-SB55, (ii) U.S. Bank National Association, as Trustee for the Registered Holders of Wells Fargo Commercial Mortgage Securities, Inc., Multifamily Mortgage Pass Through Certificates, Series 2018-SB57, (iii) Wells Fargo Bank, National Association, as trustee for the registered Holders of Amherst Pierpont Commercial Mortgage Securities LLC, Multifamily Mortgage Pass-Through Certificates, Series 2019-SB59, and (iv) Wilmington Trust, National Association, as trustee for the registered Holders of Credit Suisse First Boston Mortgage Securities Corp. Multifamily Mortgage Pass-Through Certificates, Series 2019-SB61 (collectively, "**Plaintiff**") (collectively a "**Sale**") as contemplated, set forth, and agreed in the Receiver Order (defined below), and certain additional orders entered in the Action, and Agent accepts such sole and exclusive right consistent with the terms of this Agreement and the Receiver Order (defined below). References herein to the Receivership Properties shall be understood to include all or any portion of one or more of the Receivership Properties. Plaintiff acknowledges that Receiver's authority to sell or transfer the Receivership Properties, or to direct the sale or transfer of the Receivership Properties, is defined and set forth in: (i) the Amended Preliminary Injunction and Receivership Order, entered on December 4, 2019, by the United States District Court for the District of New Jersey (the "**Court**") in the Action, and in all related actions identified therein (the "**Receiver Order**"), (ii) the Order Setting forth Sale Procedures, entered on May 29, 2020, by the United States District Court for the District of New Jersey in the Action (the "**Sale Procedures Order**"), and (iii) any other orders that have been or may be entered by the Court in the Action. The parties to this Agreement agree and acknowledge that Agent's ability to consummate a sale transaction for one or more of the Receivership Properties is subject to the approval of Plaintiff, any other party required by the Court to consent to the sale, and the Court that entered the Receiver Order, as set forth in Paragraph 6(i) of the Receiver Order.

2.      During the term of this Agreement, Plaintiff and Receiver agree to refer to Agent all offers, inquiries and solicitations related in any way to a Sale and Agent agrees to investigate and develop such offers, inquiries and solicitations.  All negotiations shall be conducted through Agent with assistance and input from Plaintiff and Receiver.  Agent agrees to assist Plaintiff and Receiver in gathering information to enable Plaintiff and Receiver to make a determination as to the credit worthiness of any prospective purchaser (including any designee, successor assignee or related entity hereinafter collectively "**Prospect(s)**"), but the determination to accept or reject a Prospect shall be made by Plaintiff and Receiver. Plaintiff shall not rely on Agent, and Agent shall have no liability, for the financial condition or credit worthiness of a Prospect. Plaintiff and Receiver will be responsible for determining the legal sufficiency of a Sale and any other documents relating to any transactions contemplated by this Agreement. Plaintiff and/or Receiver shall supply Agent with a copy of the contract of sale upon request by Agent.

3.     This Agreement shall become effective as of the date hereof and shall continue for an initial term of nine (9) months.  Thereafter this Agreement shall continue on a month-to-month basis unless and until either party hereto shall serve written notice of cancellation to the other party at the address set forth above, in which event this Agreement shall terminate thirty (30) days after the service of such notice.  The date that this Agreement shall terminate shall hereinafter be referred to as the "**Termination Date**."  Within ten (10) business days after the Termination Date, Agent shall deliver to Plaintiff: (i) a list of all Prospects who have toured any of the Receivership Properties and/or have submitted or received written offers with respect to a Sale of one or more Receivership Properties, and (ii) a list of any pending, proposed and incomplete transactions in connection with a Sale.  In the event that a Sale is completed (or a contract of Sale is executed) with a Prospect (defined below) within one hundred twenty (120) days after the Termination Date, Agent shall be paid a commission in accordance with the terms of this Agreement as if the Termination Date had not occurred.  In the event a Sale is still being negotiated with a Prospect (defined below) at the time such one hundred twenty (120) day period expires, then the one hundred twenty (120) day period shall be further extended for an additional one hundred twenty (120) day period and Agent shall be compensated as if this Agreement were in full force and effect.  For purposes of this Section, Prospect shall include (i) a Prospect whom Agent, during the term of this Agreement, had negotiations regarding a Sale, or from whom Agent received a written offer to purchase any or all of the Receivership Properties, (ii) a Prospect that has executed a confidentiality agreement, and/or (iii) a Prospect that is on a list of Prospects prepared by Agent and delivered to Plaintiff within ten (10) business days following the expiration or termination of this Agreement.

4.     Intentionally omitted.

5.     Intentionally omitted.

6.     Agent is a national brokerage firm and that in some cases it may represent Prospects.  Plaintiff desires that the Receivership Properties be presented to such persons or entities, and consents to the dual representation created thereby.  Agent shall not disclose the confidential information of one principal to the other.

7.     Neither Receiver nor Agent is obligated to and has made no independent investigation of the physical conditions of the Receivership Properties including, but not limited to, the condition of any structures (exterior and interior) on the Receivership Properties, the electrical and mechanical systems thereof, the fixtures, personal property and equipment therein, or of any environmental matters with respect thereto, or of hazardous substances thereon, if any (collectively, the "**Physical Conditions**").   All documents and materials, investigations, reports and information with respect to the Physical Conditions may be furnished to Prospects, as may be required by the Receiver Order or Sale Procedure Order.  Agent acknowledges that neither Plaintiff nor Receiver shall make any representations or warranties regarding the Physical Conditions of the Receivership Properties. As such, Agent shall advise all Prospects that the Receivership Properties shall be sold "AS IS, WITH ALL FAULTS, KNOWN OR UNKNOWN," without representation or warranty of any kind and in their present condition.

8.     The validity and interpretation of this Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of New Jersey applicable to agreements made and to be fully performed therein (excluding the conflicts of laws rules).  The parties hereto irrevocably submit to the jurisdiction of the Court in the Action for the purpose of any suit, action, or other proceeding arising out of this Agreement, or any of the agreements or transactions contemplated hereby.  Neither party shall be liable for consequential, punitive, special, exemplary or similar type damages.  In the event that any litigation is brought with respect to any dispute between the parties hereto, the losing party in such litigation shall reimburse the prevailing party for all of its reasonable out-of-pocket costs incurred, including reasonable attorney's fees and disbursements, in connection with such litigation and the costs of collection of any settlement or judgment thereon.

74537451

PLAINTIFF, RECEIVER, AND AGENT KNOWINGLY AND VOLUNTARILY WAIVE THE RIGHT TO A JURY TRIAL IN THE EVENT OF A DISPUTE ARISING UNDER THIS AGREEMENT.

9.    Each signatory to this Agreement represents and warrants that (s)he has full authority to sign this Agreement on behalf of the party for whom (s)he signs and that this Agreement binds such party, subject to any limitations, restrictions, or obligations contained in the Receivership Order, the Sale Procedure Order, or another order entered in the Action.

10.    The Receivership Properties will be offered in compliance with all anti-discrimination laws.

11.    This Agreement constitutes the entire agreement between Receiver and Agent with respect to the subject matter hereof and supersedes all prior discussions, negotiations and agreements, whether oral or written.  No amendment, alteration, cancellation or withdrawal of this Agreement shall be valid or binding unless made in writing and signed by Receiver and Agent.  This Agreement shall be binding upon, and shall benefit, the heirs, successors and assignees of the parties. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original and all of which together shall constitute a fully executed agreement, with the same effect and validity as a single, original agreement signed by all of the parties.  Facsimile and PDF signatures shall have the same validity and effect as original signatures.

The undersigned Plaintiff hereby acknowledges receipt of a copy of this Agreement.

*Agreed and Accepted:*

Gebroe-Hammer Associates, as Agent

By: _____

Name: Joseph Brecher

Title: Executive Managing Director

Print: Joseph Brecher

*Acknowledged by and Agreed and Accepted by:*

Wilmington Trust, National Association, as trustee for the registered Holders of Wells Fargo Commercial Mortgage Securities, Inc., Multifamily Mortgage Pass Through Certificates, Series 2018-SB55

By: KeyBank National Association
    a national banking association,
    as authorized agent

By: _____

Name: Mike Jenkins

Title: Vice President

*Agreed and Accepted:*

Colliers International NJ LLC, as Court-Appointed Receiver for the Receivership Properties, Pursuant to the Receivership Order,

By: _____

Name: Richard J. Madison

Title: Executive Managing Director

Print: *Richard J. Madison*

74537451

Print: Mike Jenkins

U.S. Bank National Association, as Trustee for the Registered Holders of Wells Fargo Commercial Mortgage Securities, Inc., Multifamily Mortgage Pass Through Certificates, Series 2018-SB57

By: KeyBank National Association
   a national banking association,
   as authorized agent

By: _____
   Name: Mike Jenkins
   Title: Vice President

Print: Mike Jenkins

Wells Fargo Bank, National Association, as trustee for the registered Holders of Amherst Pierpont Commercial Mortgage Securities LLC, Multifamily Mortgage Pass-Through Certificates, Series 2019-SB59

By: KeyBank National Association
   a national banking association,
   as authorized agent

By: _____
   Name: Mike Jenkins
   Title: Vice President

Print: Mike Jenkins

Wilmington Trust, National Association, as trustee for the registered Holders of Credit Suisse First Boston Mortgage Securities Corp. Multifamily Mortgage Pass-Through Certificates, Series 2019-SB61

By: KeyBank National Association
   a national banking association,
   as authorized agent

By: _____
   Name: Mike Jenkins
   Title: Vice President

74537451

Print: Mike Jenkins

**Consult your advisors.** This document has legal consequences.  No representation or recommendation is made by Agent as to the legal or tax consequences of this Agreement or the transaction(s) which it contemplates. These are questions for your attorney and financial advisors.

## SCHEDULE A

*U.S. Bank National Association v. Englewood Funding, LLC, et al.*
*Civil Action No. 19-cv-17865-MCA-LDW*

| Property Address | Property Owner | Property Name |
|---|---|---|
| 12 Meadow Road, Pennsville, New Jersey 08070 | Penn Norse, LLC | Penn Terrace Apartments |
| 357 and 363 West End Avenue, Elizabeth, New Jersey 07202 | Elizabeth Norse, LLC | 357 West End Avenue |
| 123 Pierre Avenue, 132 Jewell Street Aka 113-115 Banta Avenue, 77 Prospect Street, Garfield, New Jersey 07026 | Garfield Norse, LLC | Garfield Portfolio |
| 197-199 Grant Street And 359-361 Gordon Street, Perth Amboy, New Jersey 08861 | Plainfield Norse, LLC | 197-199 Grant Street And 359-361 Gordon |
| 212, 214, and 225 Atlantic Avenue, Atlantic City, New Jersey 08401 | Atlantic Norse, LLC | 212 Atlantic Avenue |
| 76-90 Dehart Place, Elizabeth, New Jersey 07202 | Dehart Norse, LLC | 76-90 Dehart Place |
| 512 26th Street, 530 28th Street And 540 28th Street, Union City, New Jersey 07087 | Union City Funding, LLC | 512 26th Street, 530 28th Street And 540 |
| 2911 Bergenline Avenue And 714 22nd Street, Union City, New Jersey 07087 | Union Ventures, LLC | 2911 Bergenline Avenue And 714 22nd Street |
| 17 Teaneck Road, Ridgefield Park, New Jersey 07660 | Jordan Ventures, LLC | 17 Teaneck Road |
| 126 6th Avenue, Clifton, New Jersey 07011 | ALJO Norse, LLC | 126 6th Avenue |
| 2817 Palisade Avenue, Union City, New Jersey 07087 | 2917 Palisade Ventures, LLC | 2817 Palisade Avenue |

| Property Address | Property Owner | Property Name |
|---|---|---|
| 337 And 339 Washington Street, Perth Amboy, New Jersey 08861 | Amboy Norse, LLC | 337 And 339 Washington Street |
| 66-68 Wallis Avenue Jersey City, New Jersey 07306 | Wallis Norse, LLC | 66-68 Wallis Avenue |
| 337-341 68th Street, Guttenberg, New Jersey 07093 | Palisade LM, LLC | 337-341 68th Street |
| 95 Jewell Street, Garfield, New Jersey 07026 | Raleigh Norse Management, LLC | 95 Jewell Street |

## SCHEDULE B

### Sale Commission

Agent shall be paid a commission as set forth in the schedule below for the sale of any of the individual Receivership Properties. The commission shall be included on the proposed distribution schedule for all sale proceeds, as set forth in Paragraph 7 of the Sale Procedures Order, and shall be paid from the sales proceeds for any Receivership Property at the closing, together with all sums due to Plaintiff, Receiver, and any other secured creditors, without deduction or offsets of any kind.

| Property Name | Commission* | Hurdle Commission |
|---|---|---|
| Penn Terrace Apartments | 3% of the gross purchase price | N/A |
| 357 West End Avenue | 2.75% of the gross purchase price | 10% of any sale proceeds in excess of $3,540,000 |
| Garfield Portfolio | 3% of the gross purchase price | 10% of any sale proceeds in excess of $3,790,000 |
| 197-199 Grant Street And 359-361 Gordon | 4% of the gross purchase price | 10% of any sale proceeds in excess of $1,060,000 |
| 212 Atlantic Avenue | 3% of the gross purchase price | N/A |
| 76-90 Dehart Place | 2.75% of the gross purchase price | 10% of any sale proceeds in excess of $4,010,000 |
| 512 26th Street, 530 28th Street And 540 | 2.75% of the gross purchase price | 10% of any sale proceeds in excess of $3,550,000 |
| 2911 Bergenline Avenue And 714 22nd Street | 2.75% of the gross purchase price | 10% of any sale proceeds in excess of $2,210,000 |
| 17 Teaneck Road | 5% of the gross purchase price | 5% of any sale proceeds in excess of $1,960,000 |
| 125 6th Avenue | 5% of the gross purchase price | 5% of any sale proceeds in excess of $1,890,000 |
| 2817 Palisade Avenue | 2.75% of the gross purchase price | 10% of any sale proceeds in excess of $1,800,000 |
| 337 And 339 Washington Street | 4% of the gross purchase price | 5% of any sale proceeds in excess of $1,360,000 |
| 66-68 Wallis Avenue | 5% of the gross purchase price | 5% of any sale proceeds in excess of $1,310,000 |

| Property Name | Commission* | Hurdle Commission |
|---|---|---|
| 337-341 68th Street | 2.75% of the gross purchase price | 10% of any sale proceeds in excess of $1,260,000 |
| 95 Jewell Street | 5% of the gross purchase price | 10% of any sale proceeds in excess of $820,000 |

* Gross purchase price shall include the gross purchase price or other consideration (including without limitation any existing mortgage that is assumed)

Miscellaneous

**In the event Receiver fails to make payments within 30 days of the time limits set forth herein, then from the expiration of the such 30 days period until paid the delinquent amount shall bear interest at the lesser of the maximum rate permitted by law in New Jersey or the rate of ten percent (10%) per annum.**

74537451

# Exhibit B

**CBRE VALUATION & ADVISORY SERVICES**

# APPRAISAL REPORT

LEVINE PORTFOLIO
212, 214, AND 225 ATLANTIC AVENUE
ATLANTIC CITY, NEW JERSEY  08401
CBRE GROUP, INC. FILE NO. 20-047NE-0213-15

KEYBANK NA

**CBRE**

VALUATION & ADVISORY SERVICES



50 South 16th Street, Suite 3000
Philadelphia, PA  19102

T  215-561-8900
F  215-561-8780

www.cbre.com

February 27, 2020

Ms. Jessica Broocke
KEYBANK NA
11501 Outlook Street
Overland Park, Kansas  66211

RE:     Appraisal of: Levine Portfolio
        212, 214, and 225 Atlantic Avenue
        Atlantic City, Atlantic County, New Jersey  08401
        CBRE, Inc. File No. 20-047NE-0213-15

Dear Ms. Broocke:

At your request and authorization, CBRE, Inc. has prepared an appraisal of the market value of the referenced property.  Our analysis is presented in the following Appraisal Report (Self-Contained).

The subject is a 51-unit multi-family walk-up property located at 212, 214, and 225 Atlantic Avenue in Atlantic City, New Jersey. The property consists of three predominantly 3 and 4-story apartment buildings. The improvements were constructed in 1920 and are situated on a .36-acre site. The property is currently 58.8 percent occupied with the majority of the vacant units being in poor/unrentable condition and requiring complete renovations in order to become leasable again.  In addition, the property had many elements of deferred maintenance and was in poor overall condition.  The subject is more fully described, within the enclosed report.

The subject requires renovations and is not stabilized.  Therefore, we have also estimated the subject's market value at completion of renovation and at stabilized operation values.

The subject is currently in receivership. We have been provided the following statement by Colliers International on the current situation.

Ms. Jessica Broocke
February 27, 2020
Page 2

<u>U.S. Bank Statement of the Case</u>: In this action, plaintiff U.S. Bank National Ass'n seeks to foreclose a commercial mortgage encumbering certain residential apartment buildings located throughout the State of New Jersey, as more particularly identified and described in the Schedule annexed to this Court's Order appointing Colliers International NJ LLC to serve as the Receiver for the properties at issue. The corporate borrowers deferred maintenance and other management responsibilities for these properties, creating profound and immediate issues for which this appointment was necessary. Due to an ongoing criminal investigation, the managing member for these entities (Seth Levine) refused to provide critical operating information or to otherwise assist with the Receiver's assumption of the management responsibilities necessary to stabilize these assets at the time of its appointment. This Inventory and Report is provided pursuant to the Court's Order.

As a result, we have made a series of extraordinary assumptions highlighting the missing pieces of documents requested and how the subject's value is based on market expenses and the current rent roll provided. Additionally, the balance sheets provided are included in the operating history section and addenda of the report, however, are not useful for the purposes of estimating the income/expenses to the real property being appraised, as it may have been impaired by the uncooperative nature of ownership as described above and as such, has not been relied upon for the CBRE Estimates.

Based on the analysis contained in the following report, the market value of the subject is concluded as follows:

| MARKET VALUE CONCLUSION | | | |
|---|---|---|---|
| Appraisal Premise | Interest Appraised | Date of Value | Value Conclusion |
| As Is | Leased Fee Interest | January 27, 2020 | $1,450,000 |
| As Complete | Leased Fee Interest | July 27, 2020 | $1,900,000 |
| As Stabilized | Leased Fee Interest | January 27, 2021 | $1,950,000 |
| Compiled by CBRE | | | |

Data, information, and calculations leading to the value conclusion are incorporated in the report following this letter.  The report, in its entirety, including all assumptions and limiting conditions, is an integral part of, and inseparable from, this letter.   Our appraisal incorporates the extraordinary assumption that the appraisal incorporates the extraordinary assumption that the deferred maintenance estimates provided by KeyBank are accurate and will be sufficient to remedy the downed units and will be completed within the timeline and to a good quality. Use of an extraordinary assumption may affect assignment results.   No hypothetical conditions were utilized in our appraisal of the subject property.

The following appraisal sets forth the most pertinent data gathered, the techniques employed, and the reasoning leading to the opinion of value.  The analyses, opinions and conclusions were developed based on, and this report has been prepared in conformance with, the guidelines and recommendations set forth in the Uniform Standards of Professional Appraisal Practice (USPAP), and the requirements of the Code of Professional Ethics and Standards of Professional Appraisal Practice of the Appraisal Institute.  It also conforms to Title XI Regulations and the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA) updated in 1994 and further updated by the Interagency Appraisal and Evaluation Guidelines promulgated in 2010.



Ms. Jessica Broocke
February 27, 2020
Page 3

The intended use and user of our report are specifically identified in our report as agreed upon in our contract for services and/or reliance language found in the report. As a condition to being granted the status of an intended user, any intended user who has not entered into a written agreement with CBRE in connection with its use of our report agrees to be bound by the terms and conditions of the agreement between CBRE and the client who ordered the report. No other use or user of the report is permitted by any other party for any other purpose. Dissemination of this report by any party to any non-intended users does not extend reliance to any such party, and CBRE will not be responsible for any unauthorized use of or reliance upon the report, its conclusions or contents (or any portion thereof).

It has been a pleasure to assist you in this assignment. If you have any questions concerning the analysis, or if CBRE can be of further service, please contact us.

Respectfully submitted,

CBRE - VALUATION & ADVISORY SERVICES

John J. Lynch, MAI
Managing Director
New Jersey Certified General
Real Estate Appraiser #RG-001269
Phone:   215-561-8905
Email:  John.Lynch@cbre.com



# Certification

We certify to the best of our knowledge and belief:

1.  The statements of fact contained in this report are true and correct.

2.  The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are our personal, impartial and unbiased professional analyses, opinions, and conclusions.

3.  We have no present or prospective interest in or bias with respect to the property that is the subject of this report and have no personal interest in or bias with respect to the parties involved with this assignment.

4.  Our engagement in this assignment was not contingent upon developing or reporting predetermined results.

5.  Our compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

6.  This appraisal assignment was not based upon a requested minimum valuation, a specific valuation, or the approval of a loan.

7.  Our analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice, as well as the requirements of the State of New Jersey.

8.  The reported analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the requirements of the Code of Professional Ethics and Standards of Professional Appraisal Practice of the Appraisal Institute.

9.  The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

10. As of the date of this report, John J. Lynch, MAI, had completed the continuing education program for Designated Members of the Appraisal Institute.

11. John J. Lynch, MAI, and Shelly E. D'Aleo have made a personal inspection of the property that is the subject of this report.

12. Shelly E. D'Aleo provided significant real property appraisal assistance to the persons signing this report and helped with compiling and analyzing due diligence, sale comparables, rental comparbles, and neighborhood, area, market data and touring the subject property.

13. Valuation & Advisory Services operates as an independent economic entity within CBRE, Inc.  Although employees of other CBRE, Inc. divisions may be contacted as a part of our routine market research investigations, absolute client confidentiality and privacy were maintained at all times with regard to this assignment without conflict of interest.

14. John J. Lynch, MAI, has not provided any services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

John J. Lynch, MAI
New Jersey Certified General
Real Estate Appraiser #RG-001269

i



# Subject Photographs



**Aerial View**





Exterior View of the Subject



Exterior View of the Subject



Exterior View of the Subject



Exterior View of the Subject



Exterior View of the Subject



Corridor





Kitchen



Bathroom



Bedroom



Kitchen



Corridor



Kitchen





Bedroom



Kitchen



Bedroom



Heating Unit



Vacant Unit Ceiling



Fire Escape

CBRE

# Executive Summary

| | |
|---|---|
| **Property Name** | 212, 214, and 225 Atlantic Avenue |
| **Location** | 212, 214, and 225 Atlantic Avenue |
| | Atlantic City, Atlantic County, NJ 08401 |
| **Client** | KeyBank NA |
| **Highest and Best Use** | |
| As If Vacant | Multifamily |
| As Improved | Multifamily |
| **Property Rights Appraised** | Leased Fee Interest |
| **Date of Inspection** | January 27, 2020 |
| **Estimated Exposure Time** | 0 - 9 Months |
| **Estimated Marketing Time** | 0 - 9 Months |
| **Land Area** | 0.36 AC          15,504 SF |
| **Zoning** | RS-C, & NE-INLET |
| **Improvements** | |
| Property Type | Multifamily     (Multi-Family Walk-Up) |
| Number of Buildings | 3 |
| Number of Stories | 3 and 4 |
| Gross Building Area | 48,750 SF |
| Net Rentable Area | 29,440 SF |
| Number of Units | 51 |
| Average Unit Size | 577 SF |
| Year Built | 1920 |
| Effective Age | 30 Years |
| Remaining Economic Life | 15 Years |
| Condition | Poor |
| **Buyer Profile** | Investor-Local |
| **Financial Indicators** | |
| Current Occupancy | 60.8% |
| Stabilized Occupancy | 90.0% |
| Estimated Lease-up Period | 6 Months |
| Overall Capitalization Rate | 6.50% |

| **Pro Forma Operating Data** | *Total* | *Per Unit* |
|---|---|---|
| Effective Gross Income | $370,308 | $7,261 |
| Operating Expenses | $244,128 | $4,787 |
| Expense Ratio | 65.93% | |
| Net Operating Income | $126,181 | $2,474 |



| VALUATION | | Total | Per Unit |
|---|---|---|---|
| **Market Value As Is On** | **January 27, 2020** | | |
| Sales Comparison Approach | | $1,500,000 | $29,412 |
| Income Capitalization Approach | | $1,450,000 | $28,431 |
| **Market Value As Complete On** | **July 27, 2020** | | |
| Sales Comparison Approach | | $1,950,000 | $38,235 |
| Income Capitalization Approach | | $1,900,000 | $37,255 |
| **Market Value As Stabilized On** | **January 27, 2021** | | |
| Sales Comparison Approach | | $1,975,000 | $38,725 |
| Income Capitalization Approach | | $1,950,000 | $38,235 |
| Insurable Value | | $4,800,000 | $94,118 |

| CONCLUDED MARKET VALUE | | | |
|---|---|---|---|
| **Appraisal Premise** | **Interest Appraised** | **Date of Value** | **Value** |
| As Is | Leased Fee Interest | January 27, 2020 | $1,450,000 |
| As Complete | Leased Fee Interest | July 27, 2020 | $1,900,000 |
| As Stabilized | Leased Fee Interest | January 27, 2021 | $1,950,000 |

Compiled by CBRE

## EXTRAORDINARY ASSUMPTIONS

An extraordinary assumption is defined as "an assignment-specific assumption as of the effective date regarding uncertain information used in an analysis which, if found to be false, could alter the appraiser's opinions or conclusions." [1]

- The 'as complete' appraisal assumes the deferred maintenance/renovations of the improvements will be in line with the budget provided by KeyBank NA and as specifically described herein and that the project will be completed on time and to an assumed good level of specifications commensurate with other properties in the surrounding area.
- The appraisal includes a Prospective opinion of market value at the completion of deferred maintenance and stabilization of the property. As such, the prospective values are based on forward looking projections that are based on current market indications and typical underwriting witnessed by market participants. Any significant change in market conditions that are inconsistent with the assumptions made herein could impact the opinions of market value.
- The appraisal includes the assumption that all information provided to us such as the rent roll and deferred maintenance costs are correct as of the date of the appraisal.
- The use of these extraordinary assumptions may have affected the assignment results.

---

[1] The Appraisal Foundation, *USPAP, 2018-2019*

CBRE

## HYPOTHETICAL CONDITIONS

A hypothetical condition is defined as "a condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purposes of analysis." [2]

- This appraisal assumes the remaining deferred maintenance items that are mentioned within the improvement analysis section, but not quoted have been remedied as of the date of this report.

## OWNERSHIP AND PROPERTY HISTORY

| OWNERSHIP SUMMARY | |
| --- | --- |
| Item | Current |
| Owner: | Atlantic Norse, LLC |
| Date Purchased: | May 14, 2008 |
| Purchase Price: | $2,853,325 |
| Legal Reference | 47048 |
| County/Locality Name: | Atlantic |
| Pending Sale: | No |
| Change of Ownership - Past 3 Years | No |
| Compiled by CBRE | |

Title to the property is currently vested in the name of Atlantic Norse, LLC, who acquired title to the property in May 14, 2008, as improved for $2,853,325, as recorded in 47048 of the Atlantic County Deed Records.

To the best of our knowledge, there has been no ownership transfer of the property during the previous three years and the property is not currently listed for sale.

## EXPOSURE/MARKETING TIME

Current appraisal guidelines require an estimate of a reasonable time period in which the subject could be brought to market and sold. This reasonable time frame can either be examined historically or prospectively. In a historical analysis, this is referred to as exposure time. Exposure time always precedes the date of value, with the underlying premise being the time a property would have been on the market prior to the date of value, such that it would sell at its appraised value as of the date of value. On a prospective basis, the term marketing time is most often used. The exposure/marketing time is a function of price, time, and use. It is not an isolated estimate of time alone. In consideration of these factors, we have analyzed the following:

- exposure periods for comparable sales used in this appraisal;
- exposure/marketing time information from the CBRE, Inc. National Investor Survey and the PwC Real Estate Investor Survey; and
- the opinions of market participants.

---

[2] The Appraisal Foundation, *USPAP, 2018-2019*



The following table presents the information derived from these sources.

| EXPOSURE/MARKETING TIME DATA | | | |
|---|---|---|---|
| Investment Type | Exposure/Mktg. (Months) | | |
| | Range | | Average |
| *PwC Apartment* | | | |
|   National Data | 1.0 - | 9.0 | 3.6 |
| Local Market Professionals | 6.0 - | 12.0 | 9.0 |
| **CBRE Exposure Time Estimate** | **0 - 9 Months** | | |
| **CBRE Marketing Period Estimate** | **0 - 9 Months** | | |
| Source: CBRE National Investor Survey, RealtyRates.com Survey & PwC Real Estate Survey | | | |



# Table of Contents

Certification ............................................................................................................................ i

Subject Photographs ............................................................................................................. ii

Executive Summary ............................................................................................................... vi

Table of Contents ................................................................................................................. x

Scope of Work ...................................................................................................................... 1

Area Analysis ........................................................................................................................ 5

Neighborhood Analysis ........................................................................................................ 8

Site Analysis ......................................................................................................................... 14

Improvements Analysis ........................................................................................................ 16

Zoning .................................................................................................................................. 21

Tax and Assessment Data ..................................................................................................... 23

Market Analysis .................................................................................................................... 25

Highest and Best Use ........................................................................................................... 33

Insurable Replacement Cost ................................................................................................. 36

Sales Comparison Approach ................................................................................................. 38

Income Capitalization Approach .......................................................................................... 43

Reconciliation of Value ......................................................................................................... 61

Assumptions and Limiting Conditions .................................................................................. 63

**ADDENDA**

A   Improved Sale Data Sheets
B   Rent Comparable Data Sheets
C   Operating Data
D   Client Contract Information
E   Qualifications



# Exhibit C

December 17, 2020

Joseph Brecher
Executive Managing Director
Gebroe Hammer Associates
2 West Northfield Road
Livingston, NJ 07039
Email: Joe Brecher <jbrecher@gebroehammer.com>

**RE:    Purchase LOI**
        212 Atlantic Ave, Atlantic City ,NJ 08401
        214 Atlantic Ave, Atlantic City, NJ 08401
        225 Atlantic Ave, Atlantic City, NJ 08401

Dear Mr. Brecher.

This will serve as our Letter of Intent (LOI) and general outline of the terms and conditions for the prospective purchase of the subject property. This LOI is not legally binding on either party, except as hereafter set forth. It is, however, an indication of good faith intent between the parties to be detailed in a future contractual agreement if the parties so agree.

**Seller:**                     c/o Colliers International

**Purchaser:**                  ARGO MANAGEMENT LLC and/or assignee(s)

**Property:**

| Address | City, State | Price |
|---|---|---|
| ☒ 212,214,225 Atlantic Avenue | Atlantic City. NJ | $  2,000,000 |

***Total Purchase Price:***                                    $2,000,000

**Total Purchase Price:**    **$2,000,000**.  The balance of the Purchase Price as adjusted for closing prorations and less credit for the Deposit, shall be paid by Purchaser to Seller in cash via wire transfer at the Closing.

| | |
|---|---|
| **Purchase and Sale Agreement (the PSA):** | The parties shall begin negotiations concerning the terms of a PSA mutually satisfactory to both parties, which shall supersede the terms of this LOI, unless otherwise indicated herein. The PSA will be prepared by the Seller's counsel and submitted to the Purchaser for review and be subject to Court approval. Purchaser and Seller shall each use their best efforts to, within seven (7) business days of the execution of this Letter of Intent to enter into a binding Contract for Purchase and Sale which the Seller's lawyer shall prepare (the "Contract"). |
| **Court Approval:** | Purchaser understands this offer is subject to Court approval in the case filed in the United States District Court for the Plaintiffs, as (i) U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF WELLS FARGO COMMERCIAL MORTGAGE SECURITIES, INC. MULTIFAMILY MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2018-SB51 et al v. ENGLEWOOD FUNDING, LLC et al., Civil Action No. 2:19-CV-17865 (MCA)(LDW) (the "U.S. Bank Action"), and (ii) PORTAL et al v. LEVINE et al., Civil Action No. 2:19-CV- 19611 (MCA)(LDW) (the "PORTAL Action"), and (iii) JLS EQUITIES LLC v. RIVER FUNDING LLC et al., Civil Action No. 2:19-CV-17615 (MCA)(LDW). |
| **Deposit:** | The initial deposit shall be **$50,000** to be paid upon mutual execution of the PSA. An additional deposit **$50,000** to be paid upon the satisfactory completion of the due diligence period. This deposit is refundable upon cancellation of this contract by either party prior to the end of the Due Diligence Period. Upon satisfactory completion or Purchaser's waiver of the Due Diligence Period, the Deposit shall become nonrefundable. |
| **Due Diligence:** | Purchaser shall have a thirty (30) day Due Diligence period that shall commence on the date of execution of the PSA by Seller and Purchaser. Purchaser shall have the right to terminate as a result of Purchaser's dissatisfaction with the results of its due diligence investigation and receive a full refund of the Deposit in such case. |
| **Closing and Closing Costs:** | Closing shall occur on the later of (i) thirty (30) days from the expiry of the Due Diligence period or (ii) 10 days from the date that Court Approval is granted. Purchaser shall be responsible for the costs of its due diligence including its own third-party fees and legal costs, and any expenses incurred by Purchaser prior to Court Approval. Closing costs shall otherwise be incurred by Seller and Purchaser as is customary in the local market. |

**Contingency:**  This agreement is not subject to any contingencies other than those contained herein.

**Prorations:**  Taxes, utilities, operating expenses, rents and other customarily apportioned items will be prorated or apportioned as of Closing.

**Brokerage:**  Purchaser and Seller acknowledge the only broker that is due a commission on the consummation of this transaction is Gebroe Hammer Associates. Gebroe Hammer Associates shall be paid a commission by the Seller. Said commission will be the sole responsibility of the Seller.

**Confidentiality:**  The existence of this proposal, the Seller's and Purchaser's response thereto, and all subsequent correspondence and the requirements stated therein are confidential and may not be disseminated or disclosed by either party, except as required by law or a court of competent jurisdiction.

This letter shall serve as an expression of interest only and does not bind Purchaser or Seller in any way, except for the provision regarding Confidentiality set forth above. No discussion, negotiation or verbal agreement regarding the proposed transaction and no presentation, negotiation or revision of any document regarding the proposed transaction, shall constitute a contract or evidence of a contract, and there shall be no binding agreement, unless and until a written agreement is executed by and delivered to all parties.

If you agree to the terms and conditions described in this letter, please sign below. We look forward to working with you on this transaction.

Sincerely,

**Purchaser**

**ARGO MANAGEMENT LLC**

Signature: _____

Name:

Date:

**Seller**

Signature:_____

Name:_____

Title:_____

Date: _____