LAW OFFICES OF YAN MARGOLIN
Yan Margolin, Esq.
315 West 36th Street
New York, NY 10018
212-964-6200
516-375-3930 (cell)
yan@margolinlawny.com
In-House Counsel for Defendants J&J Capital Realty Associates, LLC, Herbert Tepfer and
Park National Capital Funding LLC

BARRY S. MILLER, ESQ.
Attorney ID#007911989
1211 Liberty Avenue
Hillside, NJ 07205
973-216-7030
973-710-3099 (fax)
bmiller@barrysmilleresq.com
Local Counsel for Defendants J&J Capital Realty Associates, LLC, Herbert Tepfer and
Park National Capital Funding LLC

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, AS TRUEE FOR THE REGISTERED HOLDERS OF WELLS FARGO COMMERCIAL MORTGAGE SECURITIES, INC., MULTIFAMILY MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2018-SB51, *et. al.*<br><br>               Plaintiff,<br>   v.<br>LENOX TEMPLE LLC; LENOX LIBERTY LLC; LENOX HUDSON LLC; HACKENSACK NORSE LLC, et. al.<br><br>               Defendants. | Civil Action No.: 19-cv-17865(MCA)(LDW) |
| JLS EQUITIES, LLC, A NEW YORK LIMITED LIABILITY COMPANY,<br><br>               Plaintiff,<br>   v.<br>LENOX HUDSON, LLC; LENOX TEMPLE, LLC, *et al.*,<br>               Defendants. | Civil Action No.: 19-cv-17615(MCA)(LDW) |

|  |  |
|---|---|
| ASCEND RE PARTNERS, LLC, ASCEND RE PARTNERS II, LLC and DSE FAMILY INVESTMENTS VII, LLC,<br><br>        Intervenor-Plaintiffs,<br><br>   v.<br><br>J&J CAPITAL REALTY ASSOCIATES, LLC, HUTTON VENTURES, LLC; JLS EQUITIES LLC; MAJEK INVESTMENTS LLC, and PARK NATIONAL CAPITAL FUNDING LLC<br><br>        Intervenor-Defendants. |  |
| MAJEK INVESTMENTS LLC,<br><br>        Intervenor-Plaintiff,<br><br>   v.<br><br>HUTTON VENTURES, LLC; JLS EQUITIES LLC; J&J CAPITAL REALTY ASSOCIATES, LLC, HERBERT TEPFER; ASCEND RE PARTNERS II, LLC; JUDAH A. ZELMANOVITZ; and NEIL FINK<br><br>        Intervenor-Defendants. | **ANSWER TO ASCEND RE PARTNERS, LLC'S AND MAJEK INVESTMENTS LLC'S INTERVENTION COMPLAINTS; CROSS-CLAIMS AND COUNTERCLAIMS AGAINST ASCEND RE PARTNERS, LLC; MAJEK INVESTMENTS, LLC; JLS EQUITIES, LLC AND LENOX TEMPLE LLC** |

Defendants, J & J Capital Realty Associates, LLC ("J & J"), Herbert Tepfer ("Tepfer") and Park National Capital Funding LLC ("Park National"), by way of Answer to Intervenor-Plaintiff Ascend RE Partners, LLC's ("Ascend") Intervention Complaint, states:

## NATURE OF THE ACTION

1.     J&J is aware of the court-ordered sale of real property in these matters and it admits that it is a participating party as identified in the Consent Order (*Document 240*) filed in Case #2:19-cv-17865-MCA-LDW.

2. J&J is without sufficient knowledge or information to form a belief as to the truth of the statement contained in the first sentence of paragraph 2 relating to Ascend's interest. As to the second sentence, J&J concurs with Ascend's statement concerning the "Levine" fraud. J&J also admits the allegation that Seth Levine controlled the borrowing entities relevant to this dispute, specifically including Lenox Temple LLC, River Funding LLC, and Norse Holdings LLC.

3. As to specifically the claim of Ascend against J&J, J&J denies that its claim is subordinate to Ascend's claim, and further denies that J&J had any actual or constructive knowledge of Ascend's alleged claim to Lenox Temple. As a creditor, whether secured or unsecured, J&J always has priority over Ascend's claims as 60% member of the debtor (Lenox Temple) pursuant to N.J.S.A. 14A: 12-16.

4. J&J admits that Ascend has the right to intervene.

## PARTIES

5. J&J is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 5.

6. J&J admits the allegations contained in paragraph 6.

7. J&J is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 7.

8. J&J is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 8.

9. J&J is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 9.

10. J&J admits the allegations contained in paragraph 10. Counsel for J&J also represents Park National Capital Funding, LLC.

## **FACTS**

11. J&J denies the allegation that Ascend has had ownership at "all times relevant", as Ascend has suggested that they only acquired ownership, if at all, in September of 2013. J&J is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in paragraph 11 and leaves Ascend to its proofs.

12. J&J admits the allegations contained in paragraph 12.

13. J&J is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 13 as to Ascend being a victim of the Levine fraud and leaves Ascend to its proofs, except that J&J admits the public allegations concerning Levine's fraud and admits that it was a victim of such fraud, as was Park National.

14. J&J is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 14 and leaves Ascend to its proofs, except that if the allegations of co-conspirators and "other parties" are directed toward J&J, J&J denies such allegations. J&J also believes that the allegations herein are not appropriate for a pleading.

15. J&J denies the allegations contained in paragraph 15 as they relate to the claim against J&J, specifically as a claimant to the surplus funds. The allegations herein are baseless and founded solely on conjecture.

16. J&J admits the allegations that Levine omitted any mention of Ascend's alleged ownership of any interest in Lenox Temple at any time, and particularly as of the date of J&J's loan. However, J&J denies the allegations contained in paragraph 16 regarding Ascend's lack of knowledge, authority or permission regarding the J&J loan. Furthermore, J&J denies any and all allegations that either expressly or impliedly claim that the J&J loan is unenforceable and thus not subject to a claim to surplus funds.

17. J&J is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 17.

18.     J&J is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 18.

19.     J&J denies the allegations contained in paragraph 19.

20.     J&J denies the allegations contained in paragraph 20.  Additionally, J&J denies that there was anything obvious about alleged fraudulent documents that Levine provided, and also points to the land records from 2015 through late 2018, which show that Levine was signing mortgages and other documents on Lenox Temple's behalf, to which Ascend never objected to, but instead ratified, accepted, and acquiesced to his actions.  Any public filings Ascend points to were earlier in time than the ones J&J references, and create the impression that Levine had the authority to transact on behalf of Lenox Temple in the several years preceding J&J's loan.  Therefore, Ascend's allegations are disproven.

21.     J&J denies the allegations contained in paragraph 21, and points the public record, which suggests that Levine had full authority to execute mortgages on Lenox Temple's behalf.  J&J had every reason to believe that Levine had the authority to act on behalf of Lenox Temple because the public record confirms that Levine did have the authority to act on behalf of Lenox Temple in the several years preceding J&J's loan.

22.     J&J denies the allegations contained in paragraph 22.  The allegations therein are based purely on conjecture and are devoid of substance.

23.     Since the allegations contained in paragraph 23 are not directed specifically at J&J, therefore no response is required.

24.     Since the allegations contained in paragraph 24 are not directed specifically at J&J, therefore no response is required.

25.     Since the allegations contained in paragraph 25 are not directed specifically at J&J, therefore no response is required.

26. Since the allegations contained in paragraph 26 are not directed specifically at J&J, therefore no response is required.

27. Since the allegations contained in paragraph 27 are not directed specifically at J&J, therefore no response is required.

28. Since the allegations contained in paragraph 28 are not directed specifically at J&J, therefore no response is required.

29. Since the allegations contained in paragraph 29 are not directed specifically at J&J, therefore no response is required.

30. Since the allegations contained in paragraph 30 are not directed specifically at J&J, therefore no response is required.

31. Since the allegations contained in paragraph 31 are not directed specifically at J&J, therefore no response is required.

32. Since the allegations contained in paragraph 32 are not directed specifically at J&J, therefore no response is required.

33. Since the allegations contained in paragraph 33 are not directed specifically at J&J, therefore no response is required.

34. Park National is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 34 as they relate to what Ascend claims that Majek purports to have and Park National denies all other allegations.  The claims made in this paragraph are also not ripe, as Park National has not presently made a claim to said funds.

35. Park National is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 35 as they relate to what Ascend claims that Majek knew of Levine's fraud, and Park National denies all other allegations.

36.     Park National is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 36 as they relate to what Ascend claims was concealed by Levine and Park National denies all other allegations.

37.     Park National is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 37 as they relate to what Ascend claims that Majek knew or should have known regarding Levine's fraud and Park National denies all other allegations and points to the land records from 2015 through late 2018, which show that Levine was signing mortgages and other documents on Lenox Temple's behalf, to which Ascend never objected to, but instead ratified, accepted, and acquiesced to his actions.  Any public filings Ascend points to were earlier in time than the ones Park National references, and create the impression that Levine had the authority to transact in the several years preceding Park National's loan(s).  Therefore, Ascend's allegations are disproven.

38.     Park National is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 38 as they relate to what Ascend claims that Majek was obligated to do prior to loaning funds to Levine, and Park National denies all other allegations.  Park National also points to the answer to paragraph 37 above.

39.     Park National is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 39 as they relate to Ascend claim that Majek's loan is void *ab initio* and Park National denies all other allegations.  Ascend also lacks standing to challenge the validity of Park National's loans to Seth Levine that do not relate to the entities at issue in this lawsuit.

40.     J&J and Park National denies all allegations contained in paragraph 40.

41.     Since the allegations contained in paragraph 41 are not directed specifically at J&J or Park National, therefore no response is required.

## CAUSE OF ACTION—DECLARATORY JUDGMENT

42. Defendants J&J and Park National repeat and reallege its responses set forth above.

43. Since the allegations contained in paragraph 43 are not directed specifically at J&J or Park National, therefore no response is required, except that J&J and Park National admit the applicability of the cited statute to the controversy over the surplus funds.

44. J&J and Park National denies all allegations contained in paragraph 44, and point to the land record and documents provided to J&J by Seth Levine.

45. J&J and Park National denies all allegations contained in paragraph 45, and point to the land record and documents provided to J&J by Seth Levine.

46. J&J and Park National denies all allegations contained in paragraph 46, and point to the land record and documents provided to J&J by Seth Levine.

WHEREFORE, Defendants J&J and Park National demand judgment dismissing the claims of Ascend that it is entitled to surplus funds and for reimbursement of costs, reasonable attorney's fees and for such other relief as the Court demands is just and proper.

## AFFIRMATIVE DEFENSES

1. The Complaint fails to state a claim upon which relief may be granted.

2. <u>Lack of Standing</u>.  Ascend lacks standing to contest the J&J mortgage, as it alleges that it's an equity holder/investor in Lenox Temple LLC and, therefore, its claim is subordinate to J&J's claim.

3. <u>Validity of J&J's contract</u>.  The Note, Mortgage and attendant documents are valid and binding contractual documents with sufficient consideration flowing to and/or from all of the related parties.  In the absence of fraud, equity demands that the contracts be respected and not be subject to reformation or be considered void *ab initio*.

4. <u>No breach of duty</u>. J&J did not owe any duty to Ascend, and alternatively, to the extent it did owe such a duty, it did not breach any duty owed to Ascend.

5. <u>Estoppel</u>. Ascend's claim is barred by the doctrine of estoppel based on its actual, implied or constructive knowledge of J&J's loan, as well as their actions in allowing Levine to transact business on Lenox Temple's behalf for several years before the J&J loan.

6. <u>Waiver</u>. Ascend's claim is barred by the doctrine of waiver based on the fact that Ascend's principal(s)/beneficial owner(s) and Seth Levine worked together and were, upon information and belief, partners or co-investors with Seth Levine himself; therefore, Ascend knew or should have known that Levine was signing mortgages and other documents on Lenox Temple's behalf, to which Ascend never objected to, but instead ratified, accepted, and acquiesced to his actions and thus Ascend should be bound by any actions undertaken by him.

7. <u>Unjust enrichment</u>. Ascend would be unjustly enriched if it received the surplus funds at the expense of J&J based on its actual, implied or constructive knowledge of J&J's loan.

8. <u>Priority of Mortgage</u>. J&J's mortgage claim is senior in priority to that of Ascend's claim as an investor/equity owner.

9. <u>Laches</u>. Ascend's claim is barred by the doctrine of laches.

10. <u>Exercise of reasonable due diligence</u>. J&J exercised reasonable due diligence in its decision to make its loan to Lenox Temple.

11. <u>Actual/Apparent Authority</u>. J&J made its loan with the actual and/or apparent authority given by Seth Levine as the authorized representative of the each of the entities named in the Participation Agreement. Levine had actual authority to act on Lenox Temple's behalf, which Ascend does not dispute. The land records show that Levine did in fact have authority and acted with authority as early as 2015 on behalf of Lenox Temple. Ascend allowed and created the apparent authority that Levine was cloaked in, and their conduct in turn allowed Levine to undertake the transaction with J&J.

12. <u>Bonafide Purchaser for Value</u>.  J&J was a bona fide (purchaser for value) mortgagee with no notice of any claim such that would subordinate its position to any other party as a matter of law.

13.  The Note, Mortgage and Declaration of Restrictions were negotiated by the Borrowers and Lender, with counsel, resulting in enforceable contractual obligations of Lenox Temple, with Lenox Temple's role as essentially that of a guarantor.

14.  The Defendants' loan is presumed valid.

15.  Equity bars Ascend from disputing J&J's claim, based on the actions and omissions of Ascend as purported 60% members of Lenox Temple.  Ascend's principal(s)/beneficial owner(s) and Seth Levine worked together and were, upon information and belief, partners or co-investors with Seth Levine himself; therefore, Ascend knew or should have known that Levine was signing mortgages and other documents on Lenox Temple's behalf, to which Ascend never objected to, but instead ratified, accepted, and acquiesced to his actions and thus Ascend should be bound by any actions undertaken by him.

16.  Ascend's claim is subject to N.J.S.A. 14A:12-16.

17.  J&J reserves the right to amend and/or add additional responses to its Answer, including Affirmative Defenses, based on continuing Discovery.

Dated: February 4, 2022

BARRY S. MILLER, ESQ.<br>
Attorney for Defendants<br>
J & J Capital Realty Associates, LLC and<br>
Park National Capital Funding LLC

By:    /s/Barry S. Miller
       Barry S. Miller

**ANSWER TO INTERVENOR-PLAINTIFF, MAJEK INVESTMENTS LLC'S INTERVENTION COMPLAINT**

Defendants, J & J Capital Realty Associates, LLC ("J & J") and Herbert Tepfer ("Tepfer"), by way of Answer to Intervenor-Plaintiff, Majek Investments LLC's ("Majek") Intervention Complaint, states:

**JURISDICTION & VENUE**

1. Since the allegations contained in paragraph 1 are not directed specifically at J&J and Tepfer, therefore no response is required.

2. Since the allegations contained in paragraph 2 are not directed specifically at J&J and Tepfer, therefore no response is required.

**PARTIES**

1. Since the allegations contained in paragraph 1 are not directed specifically at J&J and Tepfer, therefore no response is required.

2. Since the allegations contained in paragraph 2 are not directed specifically at J&J and Tepfer, therefore no response is required.

3. Since the allegations contained in paragraph 3 are not directed specifically at J&J and Tepfer, therefore no response is required.

4. The allegations contained in paragraph 4 are admitted.

5. The allegations contained in paragraph 5 are admitted.

6. Since the allegations contained in paragraph 6 are not directed specifically at J&J and Tepfer, therefore no response is required.

7. Since the allegations contained in paragraph 7 are not directed specifically at J&J and Tepfer, therefore no response is required.

**FACTS COMMON TO ALL COUNTS**

**A.     Majek's Interest in the Sale Proceeds**

8.     J&J and Tepfer lack sufficient knowledge to admit or deny the allegations contained in ¶ 8.

9.     J&J and Tepfer lack sufficient knowledge to admit or deny the allegations contained in ¶ 9.

10.    J&J and Tepfer lack sufficient knowledge to admit or deny the allegations contained in ¶ 10.

11.    J&J and Tepfer lack sufficient knowledge to admit or deny the allegations contained in ¶ 11.

12.    Since the allegations contained in paragraph 12 are not directed specifically at J&J and Tepfer, therefore no response is required.

13.    Since the allegations contained in paragraph 13 are not directed specifically at J&J and Tepfer, therefore no response is required.

14.    Since the allegations contained in paragraph 14 are not directed specifically at J&J and Tepfer, therefore no response is required, however to the extent the "other parties" who have "asserted rights to the proceeds of the sale" include J&J, J&J's position as a mortgage holder and valid creditor of Lenox Temple is superior to the alleged Charging Order claim that Majek has against Seth Levine only.

15.    Since the allegations contained in paragraph 15 against Zelmanovitz and Fink are not directed specifically at J&J and Tepfer, therefore no response is required, except that Tepfer admits that he filed a Declaration of Restrictions.

16.    J&J denies all the allegations contained in paragraph 16 as to Tepfer. Since the allegations against Zelmanovitz and Fink are not directed specifically at J&J and/or Tepfer, therefore no response is required.

17.    J&J denies the allegations contained in paragraph 17.

18.    J&J denies the allegations contained in paragraph 18.

19.    J&J denies the allegations contained in paragraph 19.

20.    J&J denies the allegations contained in paragraph 20.

21. J&J denies the allegations contained in paragraph 21.

22. Since the allegations contained in paragraph 22 are not directed specifically at J&J and Tepfer, therefore no response is required,

23. Since the allegations contained in paragraph 23 are not directed specifically at J&J and Tepfer, therefore no response is required.

## COUNT 1
### (Declaratory Judgment)

24. Defendants J&J and Tepfer repeat and reallege its responses to the allegations of the Complaint as set forth above.

25. Defendants J&J and Tepfer repeat and reallege its responses to the allegations of the preceding paragraphs as set forth above.

26. Since the allegations contained in paragraph 26 are not directed specifically at J&J and Tepfer, therefore no response is required, except to say that Majek is not entitled to receive any surplus funds as merely a creditor of Seth Levine and pursuant to the conditions of the District Court's orders referenced in Paragraph 1 of Plaintiff's Intervention Complaint.

27. Since the allegations contained in paragraph 27 are not directed specifically at J&J and Tepfer, therefore no response is required, except to say that Majek is not entitled to receive any distributions as merely a creditor of Seth Levine and pursuant to the conditions of the District Court's orders referenced in Paragraph 1 of Plaintiff's Intervention Complaint.

28. Since the allegations contained in paragraph 28 are not directed specifically at J&J and Tepfer, therefore no response is required, except to say that Majek is not entitled to receive any distributions as merely a creditor of Seth Levine and pursuant to the conditions of the District Court's orders referenced in Paragraph 1 of Plaintiff's Intervention Complaint.

29. Since the allegations contained in paragraph 29 are not directed specifically at J&J and Tepfer, therefore no response is required, except to say that Majek is not entitled to receive any distributions as merely a creditor of Seth Levine and pursuant to the conditions of the District Court's orders referenced in Paragraph 1 of Plaintiff's Intervention Complaint.

30. Since the allegations contained in paragraph 30 are not directed specifically at J&J and Tepfer, therefore no response is required, except to say that Majek is not entitled to receive any distributions as merely a creditor of Seth Levine and pursuant to the conditions of the District Court's orders referenced in Paragraph 1 of Plaintiff's Intervention Complaint.

31. Since the allegations contained in paragraph 31 are not directed specifically at J&J and Tepfer, therefore no response is required, except to say that Majek is not entitled to receive any distributions as merely a creditor of Seth Levine and pursuant to the conditions of the District Court's orders referenced in Paragraph 1 of Plaintiff's Intervention Complaint.

32. Since the allegations contained in paragraph 32 as to Zelmanovits and Fink are not directed specifically at J&J and Tepfer, therefore no response is required.  As to the allegations against Tepfer, he admits that he is not individually entitled to receive any distributions and asserts that Majek is not entitled to receive any distributions as merely a creditor of Seth Levine and pursuant to the conditions of the District Court's orders referenced in Paragraph 1 of Plaintiff's Intervention Complaint.

33. Since the allegations contained in paragraph 33 as to Hutton Ventures LLC are not directed specifically at J&J and Tepfer, therefore no response is required.  Furthermore, J&J denies the allegations that its interest is invalid and asserts that Majek is not entitled to receive any distributions as merely a creditor of Seth Levine and pursuant to the conditions of the District Court's orders referenced in Paragraph 1 of Plaintiff's Intervention Complaint.

WHEREFORE, Defendants J&J and Tepfer demand judgment dismissing the claims of Majek that it is entitled to any surplus funds/sale proceeds and/or distributions and for reimbursement of costs, reasonable attorney's fees and for such other relief as the Court demands is just and proper.

## AFFIRMATIVE DEFENSES

1. The Complaint fails to state a claim upon which relief may be granted.

2. <u>Lack of Standing</u>.  Majek lacks standing to contest the J&J mortgage because its alleged claim is based on a Charging Order as referenced in paragraph 11 of the Intervention Complaint and that its alleged claim is subject to the conditions of the District Court's orders as referenced in paragraph 1 of the Intervention Complaint.

3. <u>Validity of J&J's contract</u>.  The Note, Mortgage and attendant documents are valid and binding contractual documents with sufficient consideration flowing to and/or from all of the related parties.  In the absence of fraud, equity demands that the contracts be respected and not be subject to reformation or be considered void *ab initio*.

4. <u>No breach of duty</u>.  J&J did not owe any duty to Majek, and alternatively, to the extent it did owe such a duty, it did not breach any duty owed to Majek.

5. <u>Estoppel</u>.  Majek's claim is barred by the doctrine of estoppel based on its claim to receive merely distributions flowing from a Charging Order and is therefore estopped from claiming a higher priority interest than J&J, the holder of a duly recorded mortgage against the Lenox Temple LLC real property. Majek is also barred by its statements in its letter to the Special Master on November 9, 2021 (and as referenced in a consent order signed by the Special Master on 11/21/21), specifically that "Majek. . .does not intend to participate further in any dispute over the right to receive surplus proceeds from Lenox Temple, LLC. . . ."

6. <u>Waiver</u>.  Majek's claim is barred by the doctrine of waiver.

15

7.  Unjust enrichment.  Majek would be unjustly enriched if it received any distribution from the surplus funds at the expense of J&J's superior claim/priority interest.

8.  Priority of Mortgage.  J&J's mortgage claim is senior in priority to that of Majek's alleged claim derived from a Charging Order.

9.  Laches.  Majek's claim is barred by the doctrine of laches.

10. Exercise of reasonable due diligence.  J&J exercised reasonable due diligence in its decision to make its loan to Lenox Temple.

11. Actual/Apparent Authority.  J&J made its loan with the actual and/or apparent authority given by Seth Levine as the authorized representative of the relevant entities and providing the basis for the J&J loan and mortgage.  Furthermore, Levine had actual authority to act on Lenox Temple's behalf.  The land records show that Levine did in fact have authority and acted with authority as early as 2015 on behalf of Lenox Temple.

12. Bonafide Purchaser for Value.  J&J was a bona fide (purchaser for value) mortgagee with no notice of any claim such that would subordinate its position to any other party as a matter of law.

13. The Note, Mortgage and Declaration of Restrictions were negotiated by the Borrowers and Lender, with counsel, resulting in enforceable contractual obligations of Lenox Temple, with Lenox Temple's role as essentially that of a guarantor.

14. The Defendants' loan is presumed valid.

15. Equity bars Majek from disputing J&J's claim, based on Majek's alleged claim to receive only distributions derived from a Charging Order and because its alleged claim is subject to the conditions of the District Court's orders as referenced in paragraph 1 of the Intervention Complaint.

16. Res Judicata and Collateral Estoppel.  In a State Action filed by JLS in the New Jersey Superior Court (BER-C-000124-20), Seth Levine was found to hold no further interest in any ownership or any distributions of Lenox Temple LLC, River Funding LLC, or Norse Holdings LLC.  Any findings

16

against Levine are binding on Majek, as Majek only draws any claimed rights directly from Levine himself. Therefore, Majek has no rights to any proceeds from Lenox Temple by a valid previous Court order to which Levine was a party.

17. J&J reserves the right to amend and/or add additional responses to its Answer, including Affirmative Defenses, based on continuing Discovery.

Dated: February 4, 2022

BARRY S. MILLER, ESQ.
Attorney for Defendants
J & J Capital Realty Associates, LLC and
Herbert Tepfer

By:   /s/Barry S. Miller
      Barry S. Miller

### CROSS-CLAIMS AND COUNTERCLAIMS AGAINST ASCEND RE PARTNERS, LLC; MAJEK INVESTMENTS, LLC; JLS EQUITIES, LLC; LENOX TEMPLE, LLC; AND FOR DECLARATORY JUDGMENT

#### (Background Facts Substantiating Claims)

1. Defendant/Counterclaimant/Crossclaimant, J&J's, duly executed, notarized and recorded mortgage is presumptively valid and enforceable on its face and its loan was made for good and valuable consideration on January 15, 2019.

2. The Borrowers on the J&J mortgage include Lenox Temple LLC ("Lenox Temple") as well as Teaneck Plaza Ventures LLC ("Teaneck Plaza"). Herbert Tepfer ("Tepfer"), as principal of J&J, performed due diligence prior to J&J giving its loan to the Borrowers.

3. Lenox Temple was formed on July 11, 2008. The only Operating Agreement for Lenox Temple provided to Tepfer in late December/early January of 2019 was dated July 3, 2013 and showed that neither JLS Equities, LLC ("JLS") nor Ascend were members or otherwise mentioned, and that Seth Levine was the sole manager. Mr. Levine was thus empowered to mortgage assets of Lenox Temple.

4. Mr. Levine also provided Tepfer a Certificate of Authority confirming that he was duly authorized to execute documents for Lenox Temple.

5. Mr. Levine's attorney, Andrew Selevan ("Selevan"), provided J&J with a title policy commitment with a title search from Madison Title Agency dated January 11, 2018 showing only that a first mortgage had been placed on the subject property without any other liens or encumbrances having been disclosed in the public records.

6. As of the date of the transaction with J&J, Mr. Levine had actual authority as a member and sole manager of Lenox Temple, LLC to bind the Borrowers.

7. In the alternative, as of the date of the transaction with J&J, Mr. Levine had apparent authority, holding himself out as a member and sole manager of Lenox Temple, to bind the Borrowers.

18

8. J&J was a bona fide (purchaser for value) mortgagee with no notice of any claim such that would subordinate its position to any other party as a matter of law.

9. Mr. Levine provided the Note, Mortgage and attendant loan documents as well as an escrow letter from Selevan stating that Seth Levine had the authority to conduct business.

10. On January 15, 2019, Mr. Levine signed the Mortgage Note on behalf of Teaneck Plaza and Lenox Temple.

11. On January 16, 2019, J&J wired the borrowed funds ($750,000), as consideration given per the instructions of Seth Levine on behalf of Lenox Temple, to an account directed by Mr. Levine.

12. Thereafter, Tepfer attempted to record the mortgage and attendant documents but delays ensued until the mortgage was finally recorded on September 16, 2019.

## FIRST COUNT

1. J&J repeats the allegations contained above in paragraphs 1 through 12 of the *Background Facts Substantiating Claims*, as if set forth in full herein.

2. J&J gave the above described loan to/on behalf of Lenox Temple with the expectation that it would be repaid in accordance with the terms of the Note.

3. On or about June 15, 2019, Lenox Temple failed to make the required payment to J&J. As of 2/16/21, the amount due to J&J from Lenox Temple was the sum of $1,153,000.

4. The balance remains outstanding after repeated demands had been made by J&J.

WHEREFORE, J&J demands judgment against Lenox Temple in the amount of $1,153,000 plus per diem interest from 2/17/21 to date, together with attorney's fees, costs of suit, interest and such other and further relief as the Court deems just and appropriate.

## SECOND COUNT

1. J&J repeats the allegations contained above in paragraphs 1 through 12 of the *Background Facts Substantiating Claims*, as if set forth in full herein.

2. J&J brings these counterclaims and crossclaims pursuant to 28 U.S.C. §2201(a) and Rule 57 of the Federal Rules of Civil Procedure, to obtain judgment declaring the rights and obligations of J&J, Ascend, Majek and JLS seeking a determination of their priority interest in the surplus funds on deposit with the Court's registry as memorialized in the Consent Order (Document 240) filed on 11/22/21 in Case 2:19-cv-17865-MCA-LDW.

WHEREFORE, J&J demands that an Order be entered against Ascend, Majek and JLS and in favor of J&J for the following relief:

1) Declaring that J&J's duly recorded mortgage and note are in full force and effect; and

2) Declaring that J&J's duly mortgage has priority over Ascend, Majek and JLS's claims to the surplus proceeds; and

3) Awarding reasonable attorney's fees, costs of suit and such other and further relief as the Court deems just and appropriate.

Dated: February 4, 2022

BARRY S. MILLER, ESQ.
Attorney for Defendant/Counterclaimant/Crossclaimant
J & J Capital Realty Associates, LLC and Park National Capital Funding, LLC

By:   /s/Barry S. Miller
      Barry S. Miller

20