**STARK & STARK**
A Professional Corporation
Timothy P. Duggan, Esq. (037691991)
993 Lenox Drive, Bldg. 2
Lawrenceville, NJ 08648-2389
(609) 896-9060

**BECKER & POLIAKOFF, LLP**
Paul H. Shur, Esq. (020511977)
Sarah Klein, Esq. (164602015)
331 Newman Springs Road, Suite 225
Red Bank, New Jersey 07701
Tel. (732) 967-7112

*Co-counsel for JLS Equities, LLC*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, AS TRUEE FOR THE REGISTERED HOLDERS OF WELLS FARGO COMMERCIAL MORTGAGE SECURITIES, INC., MULTIFAMILY MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2018-SB51, et. al.<br><br>Plaintiff,<br><br>vs.<br><br>LENOX TEMPLE LLC, et. al.<br><br>Defendants. | **Civil Action No.: 19-cv-17865(MCA)(LDW)** |
| JLS EQUITIES, LLC, A NEW YORK LIMITED LIABILITY COMPANY,<br><br>Plaintiff,<br>vs.<br><br>RIVER FUNDING, et. al.,<br><br>Defendants. | **Civil Action No.: 19-cv-17615(MCA)(LDW)** |

ASCEND RE PARTNERS, LLC, ASCEND RE PARTNERS II, LLC and DSE FAMILY INVESTMENTS VII, LLC,

       Intervenor-Plaintiffs,

vs.

J&J CAPITAL REALTY ASSOCIATES, LLC, HUTTON VENTURES, LLC; JLS EQUITIES LLC; MAJEK INVESTMENTS LLC, and PARK NATIONAL CAPITAL FUNDING LLC,

       Intervenor-Defendants

---

MAJEK INVESTMENTS LLC,

       Intervenor-Plaintiff,

vs.

HUTTON VENTURES, LLC; JLS EQUITIES LLC; J&J CAPITAL REALTY ASSOCIATES, LLC, HERBERT TEPFER; ASCEND RE PARTNERS II, LLC; JUDAH A. ZELMANOVITZ; and NEIL FINK,

       Intervenor-Defendants.

**JLS EQUITIES, LLC'S ANSWER TO CROSS-CLAIM OF J&J CAPITAL REALTY ASSOCIATES, LLC, HEBERT TEPFER AND PARK NATIONAL CAPITAL FUNDING, LLC FILED IN CASE 2:19-cv-17865-MCA-LDW, DOCUMENT 278, FILED 02/04/22**

Plaintiff and Cross-Claim Defendant JLS Equities, LLC ("JLS") files the following Answer to the Cross-Claim filed by J & J Capital Realty Associates, LLC ("J & J"), Herbert Tepfer ("Tepfer") and Park National Capital Funding LLC ("Park

National") (J&J, Tepfer and Park National are sometimes collectively referred to as the "J&J Defendants"), in Case 2:19-cv-17865-MCA-LDW, Document 278, Filed 02/04/22, and says:

## NATURE OF ACTION

1. Denied.

2. JLS  has insufficient knowledge to form a belief as to the allegations of paragraph 2.

3. JLS  has insufficient knowledge to form a belief as to the allegations of paragraph 3.

4. JLS  has insufficient knowledge to form a belief as to the allegations of paragraph 4.

5. JLS  has insufficient knowledge to form a belief as to the allegations of paragraph 5.

6. Denied.

7. Denied.

8. Denied.

9. JLS  has insufficient knowledge to form a belief as to the allegations of paragraph 9.

10. JLS  has insufficient knowledge to form a belief as to the allegations of paragraph 10.

11. JLS  has insufficient knowledge to form a belief as to the allegations of paragraph 11.

12. JLS  has insufficient knowledge to form a belief as to the allegations of paragraph 12.

## FIRST COUNT

1. JLS repeats all answers made to allegations of the prior paragraph.

2. JLS  has insufficient knowledge to form a belief as to the allegations of paragraph 2.

3. JLS  has insufficient knowledge to form a belief as to the allegations of paragraph 3.

4. JLS   has insufficient knowledge to form a belief as to the allegations of paragraph

   **WHEREFORE**, JLS demands that the Cross-Claim be dismissed, with prejudice, and the Court award JLS legal fees and expenses.

## SECOND COUNT

1. JLS repeats all answers made to allegations of the prior paragraph.

2. JLS has insufficient knowledge to form a belief as to the allegations of paragraph 2.

   **WHEREFORE**, JLS demands that the Cross-Claim be dismissed, with prejudice, and the Court award JLS legal fees and expenses.

## AFFIRMATIVE DEFENSES

1. The Cross-Claim fails to state a claim upon which relief may be granted and JLS reserves the right to move to dismiss the Cross-Claim.

2. The relief sought in the Cross-Claim is barred, either in whole or in part, by the Doctrines of Unclean Hands, Waiver, Estoppel, and Laches.

3. The relief sought in the Cross-Claim is barred by the Doctrines of Res Judaica and Collateral estoppel based upon, among other things, Orders entered in an action captioned *JLS Equities, LLC v. Hutton Ventures, LLC, et. al*, docket no. BER-C-214-20.

4. The relief sought in the Cross-Claim is barred by Cross-Claim Plaintiff's own actions, either negligent or fraudulent.

5. The relief sought in the Cross-Claim is barred by failure and/or lack of consideration.

6. The relief sought in the Cross-Claim is barred since the J&J Defendants are not creditors of Lenox Temple.

7. If the transaction described by J&J Defendants is a loan, the interest rate exceeds the civil and criminal usury rate and the loan is not enforceable.

8. All claims and relief asserted in JLS's Cross-Claim against the J&J Defendants as set forth below are incorporated herein and alleged as affirmative defenses.

**CROSS-CLAIM/COUNTERCLAIM AGAINST J&J CAPITAL REALTY ASSOCIATES, LLC, HEBERT TEPFER AND PARK NATIONAL CAPITAL FUNDING, LLC**

## PARTIES

1.      Cross-Claim/Counterclaim Plaintiff JLS Equities, LLC ("JLS"), is a New York limited liability company with a principal place of business at 58 Larch Hill Road, Lawrence, New York 11559.   JLS is the Plaintiff in   Civil Action No.: 19-cv-17615(MCA)(LDW).

2.      Cross-Claim Defendant J&J Capital Realty Associates, LLC, is a New York limited liability company with an address of 4429 18th Avenue, Brooklynn New Jersey ("J&J Capital").

3.      Cross-Claim Defendant Herbert Tepfer is an individual with an address of 4429 18th Avenue, Brooklynn New Jersey ("Tepfer").

## BACKGROUND

**A.  Loan Documents and Transaction**

4.      River Funding, LLC ("River Funding") and Norse Holdings, LLC ("Norse Holdings") are indebted to JLS in the principal sum of $1,100,000.00 together with interest and attorney's fees pursuant to a Secured Promissory Note dated January 17, 2019 (the "Note").  A true copy of the Note is attached hereto as Exhibit A.

5.      To secure payment and performance of the obligations evidenced by the Note, River Funding executed and delivered to JLS, among other things, a Pledge and Security Agreement dated January 17, 2019 (the "Pledge Agreement"), wherein River Funding granted JLS a security interest and pledge in, among other things, the

membership interests and all property rights and proceeds represented thereby in each of Lenox Hudson LLC ("Lenox Hudson"), Lenox Temple LLC ("Lenox Temple") and Teaneck Plaza Ventures, LLC ("Teaneck Plaza") with each such limited liability company being referred therein as an "Issuer" as follows:

| PLEDGOR | INTERESTS PLEDGED | ISSUER |
|---|---|---|
| River Funding LLC, a New Jersey limited liability company | 100% membership interest | Lenox Temple LLC, a New Jersey limited liability company |
| River Funding LLC, a New Jersey limited liability company | 100% membership interest | Lenox Hudson LLC, a New Jersey limited liability company |
| River Funding LLC, a New Jersey limited liability company | 100% membership interest | Teaneck Plaza Ventures, LLC, a New Jersey limited liability company |

The foregoing and its proceeds are collectively referred to herein as the "Collateral". A true copy of the Pledge Agreement is attached hereto as Exhibit B.

6. To effectuate its pledge by River Funding, each of Lenox Hudson, Lenox Temple and Teaneck Plaza, as limited liability companies, "opted in" to Article 8 of the Uniform Commercial Code and certificated each membership interest pledged to JLS to be a "security" governed by N.J.S.A. 12A:8-101 *et seq.* ("Article 8").

7. JLS perfected its security interest and pledge in the Collateral by (a) taking possession of each such security of Lenox Hudson, Lenox Temple and Teaneck Plaza pledged to JLS constituting "control" pursuant to Article 8, and (b) filing a UCC Financing Statement (the "JLS UCC") with the New Jersey Department of Treasury pursuant to N.J.S.A. 12A:9-101 *et seq*. ("Article 9"). JLS filed its JLS UCC on two debtors as follows:

A. #53193223 recorded on January 18, 2019 as to Seth Levine; and

B. #53193223 recorded on January 18, 2019 as to River Funding.

The JLS UCC identifies the Collateral pledged to JLS and the name of each Issuer.  A true copy of the JLS UCC is attached hereto as <u>Exhibit C</u>.

8.      Based upon its due diligence of record then and to date, the JLS UCC is first in time and priority under Article 9 as to both Levine and River Funding with respect to the Collateral.

9.      The Note, Pledge Agreement (with Exhibits), JLS UCC and all other related loan documents executed in connection therewith are collectively referred to as the "Loan Documents".

10.     The Issuers each own one parcel of real estate:

A.      Lenox Hudson – 107 Hudson Street, Hackensack, New Jersey ("Lenox Hudson Property").

B.      Lenox Temple – 54-78 Temple Avenue, Hackensack, New Jersey ("Lenox Temple Property").

C.      Teaneck Plaza – 1407 Palisade Avenue, Teaneck, New Jersey ("Teaneck Plaza Property").

11.      River Funding, Norse Holdings and Seth Levine have failed to pay the Note in accordance with its terms.  The unpaid principal balance due on the Note is $1,100,000 plus interest and attorney's fees as therein provided.

12.     On August 26, 2019, JLS sent a Notice of Default to River Funding and Norse Holdings.

13.     On September 4, 2019, JLS filed an action in the United States District Court for the District of New Jersey (Arleo, J.) <u>*JLS Equities, LLC v. River Funding, LLC et al*</u>., Civil Action No. 19-cv-17615-MCA-LDW ("Federal Action") for various relief

relating to the foregoing real properties (not for the relief set forth herein) and obtained an Amended Preliminary Injunction and Receivership Order entered December 4, 2019 appointing a Receiver for the Lenox Hudson Property, Lenox Temple Property and Teaneck Plaza Property.   The Court extended this relief to other pending actions involving Levine.

14.     On May 29, 2020, the Court in the Federal Action entered an Order Setting Forth Sale Procedures permitting the sale of the Lenox Hudson Property, Lenox Temple Property and Teaneck Plaza Property. (See Doc. No. 84).  Paragraph 12 of that Order provided, in pertinent part, "In no event shall the original Property Owner(s) and/or Seth Levine receive surplus funds absent further order of the Court." That Order was also extended to several other actions involving Levine.

15.     The Court in the Federal Action entered an Order which severed part of the JLS Complaint to permit it to foreclose its Article 8 and Article 9 interests herein described against all other parties claiming an interest or having an interest in the Collateral other than River Funding. (See Doc No. 87).

16.     JLS filed an action in the Superior Court of New Jersey, Chancery Division, Bergen County, captioned *JLS Equities, LLC v. Hutton Ventures, LLC, et. al*, docket no. BER-C-214-20 (the "State Court Lien Foreclosure Action") seeking to foreclose its Article 8 and Article 9 interests herein described.

17.     The State Court Lien Foreclosure Action was ultimately resolved via the entry by the Court of several orders, which determined the rights of each of the parties to both the State Court Lien Foreclosure Action and the instant litigation, and entered judgment of foreclosure as follows:

A.      On December 30, 2020, the Court entered a Consent Order Entering Judgment of Foreclosure Against Defendants Ascend RE Partners II, LLC and Lenox Real Estate Partners LLC as to Certain of Plaintiff's Collateral and Otherwise Recognizing Certain Property Rights of Defendants Ascend RE Partners II, LLC and Lenox Real Estate Partners LLC (collectively, "Ascend"). A true copy of that Order is attached hereto as Exhibit D. Per that Order, the Court ruled that Ascend owned 60% of the membership interests in Lenox Hudson and Lenox Temple, and that the JLS UCC perfected JLS's security interest as a first priority lien on 40% of the membership interests in Lenox Hudson and Lenox Temple. The Court further ruled that Ascend's ownership rights and JLS's security interests were concurrent in right and interest such that they "shall share distributions, proceeds, income, and any other property rights pro rata and to the extent of their respective percentage ownership of or claims to Defendants Lenox Hudson LLC and Lenox Temple LLC…" (Exh. D, ¶ 4). The Order also provided that Ascend waived and released any objection to the foreclosure by JLS of its Collateral.

B.      On January 6, 2021, the Court entered a Consent Order Entering Judgment of Foreclosure Against Defendants Larry Portal, Frank Maiorano, Gracy Weberman, Jahn Brodwin, and Donald J. Noone II as to Certain of Plaintiff's Collateral and Otherwise Recognizing Certain Property Rights of Defendants Larry Portal, Frank Maiorano, Gracy Weberman, Jahn Brodwin, and Donald J. Noone II (collectively, "Portal

Parties"). Per that Order, the Court ruled that the Portal Parties collectively owned 50% of the membership interests in Teaneck Plaza, and that the JLS UCC perfected JLS's security interest as a first priority lien in 50% of the membership interests in Teaneck Plaza. The Court further ruled that JLS and the Portal Parties had concurrent rights and interests such that they "shall share distributions, proceeds, income, and any other property rights pro rata and to the extent of their respective 50 percent claims and interests." The Order also provided that the Portal Parties waived and released any objection to the foreclosure by JLS of its Collateral.

18.     In the State Court Lien Foreclosure Action, JLS named as Defendants "Unknown Owner (or Unknown Claimant), his or her heirs, devisees and personal representatives, and his, hers, their or any of their successors in right, title and interest" ("Unknown Owner") as fictitious parties intended to represent currently unidentified persons or entities who were or may have been the victims of fraud by Levine and acquired or may have acquired property interests or claims in and to Lenox Hudson, Lenox Temple and/or Teaneck Plaza and their successors and assigns.  JLS sought foreclosure relief against said parties with respect to JLS's first priority security interest in the Collateral in the Complaint filed in the State Court Lien Foreclosure Action.

19.     Unknown Owner was served by publication pursuant to the Court's August 19, 2020 Order Permitting Service by Publication Pursuant to R. 4:4-5(a)(3) and R. 4:26-5(c). A true copy of that Order is attached hereto as Exhibit E.

20.     On December 4, 2020, the Court entered a Final Judgment by Default in Foreclosure Against Hudson Norse LLC, Temple Norse LLC, Lenox Hudson LLC,

Lenox Temple LLC, Teaneck Plaza Ventures, LLC, Seth Levine, Unknown Owner (Or Unknown Claimant), His or Her Heirs, Devisees and Personal Representatives, and His, Hers, Their or Any of Their Successors in Right, Title and Interest and Other Relief as to River Funding LLC. A true copy of that Order is attached hereto as Exhibit F. By virtue of that Order, the Court entered final judgment of foreclosure in favor of JLS with respect to the JLS UCC as to, among others, the Unknown Owner and Seth Levine, including but not limited to all membership interests in and to Lenox Hudson, Lenox Temple, and Teaneck Plaza. All Unknown Owners were adjudged "(a) to no longer have and be foreclosed of any ownership, claim, lien, security interest or other entitlement to the Collateral, (b) to have waived any further rights with respect to the Collateral, and (c) that…[Unknown Owner] and all persons or entities taking, holding or claiming on their behalf stand absolutely debarred and foreclosed of and from all equity of redemption of in and to the Collateral by virtue of this Judgment." (Exh. F, ¶ 1).

21.     In the State Court Lien Foreclosure Action, the Court also entered three other consent orders foreclosing various other junior creditors and adjudging JLS to have a first priority security interest in the Collateral. These orders were entered as to Hutton Ventures LLC, ZF Capital Holdings LLC, and JG Funding Corp., who were and are the only other known creditors or claimants who alleged an interest or claim to the Collateral except for Majek Investments.

22.     The rights established in the foregoing paragraphs are superior to the interests of all parties in interest of this action by virtue of the provisions thereof and the final judgment. Each aforementioned order was entered upon notice and lack of objection by any other party to the State Court Lien Foreclosure Action. To the extent the parties

herein were not parties to State Court Lien Foreclosure Action, they are bound by the terms of the Order permitting JLS to serve Unknown Owner by publication, and the subsequent Order entering final judgment of foreclosure in favor of JLS and against Unknown Owner.

**D.      J&J Capital Alleged Loan, Mortgage and Declaration of Restrictions.**

22.      J&J Capital has alleged it was granted a mortgage on property owned by Lenox Temple to secure a mortgage loan.

23.      In support of this allegation, J&J Capital produced the following documents:

A.      $825,000 Note dated January 15, 2019 (the "$825,000 Note") allegedly executed by Lenox Temple and Teaneck Plaza.

B.      Mortgage dated January 15, 2019 (the "$825,000 Mortgage") allegedly executed by Lenox Temple and Teaneck Plaza.

C.      Declaration of Restrictions dated May 21, 2019 (the "Declaration of Restrictions") allegedly executed by Lenox Temple.

D.      NJ Business Gateway Status Report ("Gateway Search") for Lenox Temple.

E.      The alleged Operating Agreement for Lenox Temple.

F.      Participation Agreement allegedly executed by Lenox Temple.

G.      Wire confirmation (the "Wire Confirmation") showing who received the proceeds of the J&J Capital transaction.

E.    **Sale of Property and Escrow of Funds**.

24.    On April 7, 2021, the Court in the Federal Action entered an Order and Judgment Approving The Receiver's Sale of Properties (the "Receiver Sale Order").

25.    The Receiver Sale Order approved the sale of the property owned by Lenox Temple which is allegedly encumbered with a second mortgage to J&J Capital.

26.    JLS and other interested parties objected to the payment of the $825,000 Mortgage.

27.    The Receiver Sale Order required a certain amount of funds (the "Disputed Escrow Amount") to be held in escrow pending a resolution of claims against the funds, including the validity of the $825,000 Mortgage.

## COUNT ONE
### (Declaratory Relief – Part I)

28.    JLS repeats and realleges the allegations heretofore stated.

29.    JLS seeks declaratory relief under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201-2202, to resolve any disputes regarding the right to proceeds derived from the sale of real properties owned by Lenox Hudson, Lenox Temple, and Teaneck Plaza.

30.    Pursuant to 28 U.S.C. § 2201, "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

31.    Per the orders entered in the State Court Lien Foreclosure Action, the rights of the parties to this action have already been determined by the Superior Court of New Jersey.

32.    To the extent the parties herein were not parties to State Court Lien Foreclosure Action, they are bound by the terms of the Order permitting JLS to serve Unknown Owner by

publication, and the subsequent Order entering final judgment of foreclosure in favor of JLS and against Unknown Owner.

**WHEREFORE**, JLS demands judgment for declaratory relief pursuant to 28 U.S.C.§ 2201-2202, *et. seq.* as follows:

A.    A determination that the parties' respective rights to receive distributions from the surplus funds deposited with the Court following the sale of the real property of the Issuers is as follows:

i.    Ascend is entitled to 60% of the proceeds otherwise payable to Lenox Hudson.

ii.    JLS is entitled to 40% of the proceeds otherwise payable to Lenox Hudson.

iii.    Ascend is entitled to 60% of the proceeds otherwise payable to Lenox Temple.

iv.    JLS is entitled to 40% of the proceeds otherwise payable to Lenox Temple.

v.    The Portal Parties are entitled to 50% of the proceeds otherwise payable to Teaneck Plaza.

vi.    JLS is entitled to 50% of the proceeds otherwise payable to Teaneck Plaza.

B.    Any other relief the Court deems equitable and proper.

## COUNT TWO
### (Declaratory Relief – Part II)

33.    JLS repeats and realleges the allegations heretofore stated.

34.     The Participation Agreement expressly states that the "funding of $750,000 shall be wired to the account of NORSE HOLDINGS or any other account designated by ASSIGNEES. It is specifically represented that the said funds shall remain on deposit and not be used for any purpose and shall be fully returned to INVESTORS together with the 10% return either upon the closing of the agreement, FEBRUARY 1, 2019, or immediately thereafter (within 10 days)."

35.     The Participation Agreement does not allow any of the cash proceeds to be used for any purpose.

36.     The Participation Agreement does not allow any of the cash proceeds to be transferred to or used by Lenox Temple.

37.     The Wire Confirmation confirms that Lenox Temple did not receive any portion of the cash proceeds from the alleged $825,000 loan evidenced by the $825,000 Note, $825,000 Mortgage or Declaration of Restrictions.

38.     The Participation Agreement alleges that the $825,000 advance was not a loan, but an investment for the purchase of an unrelated note and mortgage.

39.     The investment to purchase unrelated debt is not a loan, but a business transaction akin to a joint venture, sale of equity or other business arrangement.

40.     The investment does not include any consideration running to Lenox Temple to support the granting of the $825,000 Mortgage and Declaration of Restrictions.

41.     The $825,000 Mortgage and Declaration of Restrictions were granted without any consideration to Lenox Temple to support the granting of the $825,000 Mortgage and Declaration of Restrictions.

42.     The $825,000 Note, $825,000 Mortgage and Declaration of Restrictions are not enforceable and are void for a lack of consideration.

43.      The interest rate on the alleged loan exceeds the civil and criminal usury laws and the loans are void.

44.     The Operating Agreement is not a valid Operating Agreement and misrepresents the ownership of Lenox Temple.

45.     The Operating Agreement requires the consent of the majority members of Lenox Temple to borrow money.

46.     Ascend is the majority member of Lenox Temple and did not consent to the borrowing of the loan evidenced by the $825,000 Note, $825,000 Mortgage and Declaration of Restrictions.

47.     Ascend's interest in Lenox Temple is part of the public record as evidenced by the Gateway Search.

48.     Lenox Temple did not have sufficient corporate authority to borrow funds or grant the $825,000 Mortgage and Declaration of Restrictions.

49.     The $825,000 Note, $825,000 Mortgage and Declaration of Restrictions are not enforceable and void for lack of the requisite corporate authority to borrow money.

50.      J&J Capital and Tepfler are bound by the Orders entered in the State Court Lien Foreclosure Action.

**WHEREFORE,** JLS demands judgment for declaratory relief pursuant to 28 U.S.C.§ 2201-2202, *et. seq.* as follows:

A.    Declaring that the loan evidenced by the $825,000 Note, $825,000 Mortgage and Declaration of Restrictions is not a valid and enforceable liability of Lenox Temple and Lenox Temple owes no money to J&J Capital or Tepfler;

B.    Declaring that the $825,000 Mortgage and Declaration of Restrictions do not secure a valid, subsisting debt or obligation of Lenox Temple and therefore have no legal effect and are null and void;

C.    Declaring that the $825,000 Mortgage and Declaration of Restrictions shall be discharged and removed from the land records of the Clerk of Bergen County;

D.    Declaring that J&J Capital and Tepfler are not entitled to be paid as creditors of Lenox Temple and are not entitled to any of the Disputed Escrow Amounts;

E.    Awarding JLS its attorney's fees and costs incurred in this proceeding; and

F.    Awarding JLS such other and further relief as this Court deems just and proper.

## **<u>COUNT THREE</u>**
### **(Reclassifying Claim)**

51.    JLS repeats and realleges the allegations heretofore stated.

52.    The money allegedly advanced by J&J Capital was not a loan, but an investment made with other parties as clearly set forth in the Participation Agreement.

53.    The Participation Agreement identifies J&J Capital as an investor, not lender.

54.   The Participation Agreement states that J&J Capital (INVESTOR) "shall invest" and "Seth Levine, Norse Holdings and Riverside Norse (ASSIGNEES) shall receive the sum of $750,000 for purchase and closing of the Note, Mortgage and Foreclosure Action covering the Premises pursuant to the terms of agreement with Provident Bank."

55.   The Participation Agreement confirms Norse Holdings entered into a contract to purchase a note and mortgage from Provident Bank.

56.   The contract to purchase the note and mortgage was to be assigned to River Funding.

57.   Lenox Temple was not a part of this transaction and received no benefit from this transaction.

58.   The Participation Agreement provides that Seth Levine, Norse Holdings and Riverside Norse shall "repay the full principal of $750,000 together with a 10% return of $75,000 on or before February 10, 2019, whereupon [J&J Capital] shall be bought out of all of its rights, title and interest in and to the agreement or the Premises."

59.   The Participation Agreement provides a "10% return of $75,000" for a 26day investment.

60.   If the $75,000 return is interest for a loan, that results in a per diem interest rate of $2,884.61, or 140% percent per annum, well above the civil and criminal usury rates in New York and the interest would not be recoverable and the loan would be void.

61.   The Participation Agreement expressly states that the "funding of $750,000 shall be wired to the account of NORSE HOLDINGS or any other account

designated by ASSIGNEES. It is specifically represented that the said funds shall remain on deposit and not be used for any purpose and shall be fully returned to INVESTORS together with the 10% return either upon the closing of the agreement, FEBRUARY 1, 2019, or immediately thereafter (within 10 days)."

62.     The Participation Agreement expressly states the $750,000 investment was to remain on deposit with Norse Holdings and returned to J&J Capital within a 10% return.

63.     The Participation Agreement expressly prohibits Lenox Temple from receiving any of the $750,000 investment.

64.     The Participation Agreement states that J&J Capital was investing with Norse Holdings, Riverside Norse and Seth Levine to purchase a certain note and mortgage held by Provident Bank.

65.     The Participation Agreement does not evidence a lending relationship, but a joint venture, partnership or business arrangement between J&J Capital, Norse Holdings, Riverside Norse and Seth Levine to purchase an asset together, each owning an interest in the asset, in a transaction that has nothing to do with Lenox Temple.

66.     The $750,000 is a contribution to a joint venture investment or partnership to purchase debt held by Provident Bank, not a loan.

67.     The premises that is subject to the transaction set forth in the Participation Agreement is 50 West Main Street, Sommerville, New Jersey (the "Participation Property").

68.     Lenox Temple does not, and never had, an interest in the Participation Property.

69.     The obligation evidenced by the $825,000 Note, $825,000 Mortgage, Declaration of Restrictions and Participation Agreement should be characterized as a joint venture, partnership agreement or equity contribution, not debt, and Lenox Temple is not liable for any portion of the alleged $825,000 debt.

70.     Any interest J&J Capital has in the Disputed Escrow Funds, assets of Lenox Temple, or membership interest in Lenox Temple are subordinate to the rights of JLS.

**WHEREFORE,** JLS demands judgment for declaratory relief pursuant to 28 U.S.C.§ 2201-2202, *et. seq.* as follows:

A.      Declaring that the loan evidenced by the $825,000 Note, $825,000 Mortgage and Declaration of Restrictions is not a valid and enforceable liability of Lenox Temple;

B.      Declaring that the alleged loan is a joint venture, partnership or some other transaction that is not a loan and no debt is owed by Lenox Temple on account of the transaction described above;

C.      Declaring that the $825,000 Mortgage does not secure any liability arising under or any way related to the $725,000 or $825,000 transaction described above and is null and void;

D.      Declaring that the interest rate, to the extent the Court finds that there is a valid debt, exceeds the New York usury rate (civil and criminal) and the debt and interest is forfeited;

E.      Declaring that that the $825,000 Mortgage and Declaration of Restrictions shall be discharged and removed from the land records of the Clerk of Bergen County;

F.      Declaring that J&J Capital and Tepfler are not entitled to be paid as creditors of Lenox Temple and are not entitled to any of the Disputed Escrow Amounts;

G.      Declaring that any rights J&J Capital may have to any assets of Lenox Temple or to the Disputed Escrow Amounts are subordinate to the rights of JLS;

H.      Awarding JLS its attorney's fees and costs incurred in this proceeding; and

I.      Awarding JLS such other and further relief as this Court deems just and proper.

## CERTIFICATION PURSUANT TO LOCAL RULE 11.2

Pursuant to Local Rule 11.2, the matter in controversy is the subject of another proceeding before the United States District Court for the District of New Jersey, captioned <u>JLS Equities, LLC v. River Funding, LLC, et al.</u>, Case No. 2:19-cv-17615-MCA-LDW. The plaintiff thereto is JLS Equities, LLC and the defendants thereto are River Funding, LLC, Lenox Hudson, LLC, Lenox Temple, LLC, Teaneck Plaza Ventures, LLC, Seth Levine, and Shira Levine.

Dated:  February 14, 2022

**STARK & STARK**
**A Professional Corporation**

*/s/ Timothy P. Duggan*
Timothy P. Duggan

**BECKER & POLIAKOFF, LLP**

*/s/Paul H. Shur*
Paul H. Shur

*Co-Counsel for Plaintiff JLS Equities, LLC*

# EXHIBIT "A"

## SECURED PROMISSORY NOTE

$1,100,000.00

Dated: Teaneck, New Jersey
January 17, 2019

**SECURED PROMISSORY NOTE** (hereinafter, the "**Note**") made this ___ day of January __, 2019, by **NORSE HOLDINGS, LLC**, a New York limited liability company and **RIVER FUNDING LLC**, a New Jersey limited liability company, each having an address at 210 River St, Suite 24, Hackensack, New Jersey 07601 (hereinafter, collectively, the "**Maker**") for the benefit of **JLS EQUITIES, LLC**, a New York limited liability company, its successors and/or assigns, as their interests may appear, (hereinafter, the "**Payee**"), having offices c/o Y. Schwartz P.C., 930 E. County Line Rd., Suite 202, Lakewood, New Jersey 08701.

**FOR VALUE RECEIVED**, Maker promises to pay to the order of Payee, at such place as Payee may designate to Maker in writing from time to time, the principal sum of One Million One Hundred Thousand and 00/100 Dollars ($1,100,000.00) (the "**Principal Balance**"), together with interest thereon at the Interest Rate (or the Default Rate if applicable), calculated in the manner hereinafter set forth from and including the date of this Note to the date this Note is paid in full, as follows:

A.   On the date hereof, interest on the principal sum of this Note from the date hereof to January 31, 2019 at the Interest Rate.

B.   Interest only, at the Interest Rate, on the Principal Balance shall be due monthly and shall be paid monthly in arrears, commencing on March 1, 2019, and monthly thereafter on the first (1st) day of each month (the "**Payment Date**") until the Maturity Date (each such monthly payment, a "**Monthly Payment**").

C.   On the Maturity Date, the entire Principal Balance, together with all accrued and unpaid interest through the Maturity Date at the Interest Rate, if any, and all other sums payable to the holder of this Note (whether pursuant to this Note, the Pledge or Other Security Documents (as hereinafter defined)) shall become due and payable.

For the purposes of this Note, these terms shall be defined as follows:

1.   The term "**Interest Rate**" as used in this Note shall mean interest at the annual rate equal to forty-eight percent (48.00%), except as otherwise expressly provided herein.

2.   The term "**Maturity Date**" as used in this Note shall mean the earlier of (i) January 31, 2020, or (ii) such sooner date, by acceleration or otherwise, as may be applicable pursuant to the terms hereof, at which time the entire Debt shall become due and payable.

3.  The term "**Debt**" shall mean all principal, interest and other sums of any nature whatsoever, which may or shall become due to Payee in accordance with the provisions of this Note, the Pledge or Other Security Documents.

4.  The term "**Pledge**" shall mean that certain Pledge and Security Agreement dated the date hereof, made by Maker in favor of Payee.

5.  The term "**Other Security Documents**" shall mean any of the documents other than this Note or the Pledge, now or hereafter executed by the Maker or others, and by or in favor of Payee, which wholly or partially secure or guarantee payment of this Note, or which otherwise pertain to the Loan.

6.  The term "**Loan Documents**" shall mean this Note, the Pledge and all and any of the documents now or hereafter executed by Maker and/or others and by or in favor of Payee, which evidences, secures or guarantees all or any portion of the payments due under this Note or otherwise is executed and delivered in connection with this Note, the Pledge, guarantees and agreements.

Any capitalized terms used herein but not defined shall have the meanings ascribed to them in the Pledge or Other Security Documents.

Interest shall be computed on the basis of a year of 360 days and actual days elapsed.

The failure to make any payment required under this Note or the occurrence of any Event of Default (as such term is defined in the Pledge or the Other Security Documents) shall constitute an "Event of Default" under this Note.

Upon the occurrence of an Event of Default: (a) interest shall accrue hereunder at the Default Rate (as defined hereunder) prior to and subsequent to the entry of a UCC Judgment of Foreclosure and Sale, (b) Payee may, at its option, without any written notice given to the Maker (such notice being expressly waived), DECLARE AND DEMAND this Note and the Debt immediately due and payable and (c) Payee may pursue all rights and remedies available hereunder or under the Pledge and the Other Security Documents. Payee's rights, remedies and powers, as provided in this Note, the Pledge or the Other Security Documents are cumulative and concurrent, and may be pursued singly, successively or together against Maker, any Guarantor of the indebtedness evidenced hereby or against any collateral granted or pledged by Maker under any of the Loan Documents or any other collateral security given at any time to secure the payment hereof, all at the sole discretion of Payee. Additionally, Payee may resort to every other right or remedy available at law or in equity without first exhausting the rights and remedies contained herein, all in Payee's sole discretion. Failure of Payee, for any period of time or on more than one occasion, to DECLARE AND DEMAND this Note and the Debt immediately due and payable shall not constitute a waiver of the right to exercise the same at any time from and after any Event of Default.

A payment shall not be deemed to have been made on any day unless such payment has been received by Payee, at the required place of payment, in U.S. dollars by no later than 3:00

- 2 -

p.m. (New York time) on such day.  Whenever any payment to Payee hereunder would otherwise be due (except by reason of acceleration) on a day that is not a Business Day, such payment shall instead be due on the next succeeding Business Day.  If any installment of principal, interest or other sums due hereunder or under the Pledge or any Other Security Document are not paid by the date on which same are due, the Maker shall pay to the Payee a late charge of ten percent (10.00%) of such unpaid installment as a late payment charge, such late charge to be immediately due and payable without demand by the Payee.  Notwithstanding anything to the contrary, all payments due under this Note, the Pledge and the Loan Documents shall be made by means of wire transfer to the order of Payee, as directed by Payee, and Payee shall have the absolute right to reject any payment not made by wire transfer. In addition, Maker shall pay to Payee the sum of $100.00 for any payment which is returned for any reason by Maker's bank unpaid.

Subject to the following provisions, provided that, simultaneously with any prepayment of the Debt, Maker shall pay to Payee a prepayment premium in an amount equal to (i) $66,000.00, less (ii) the actual interest paid to Payee by Maker (or applied from any reserves being held by Payee) (the "**Prepayment Premium**"), but in no event less than zero dollars ($0.00), then Maker shall have the right to prepay the Principal Balance in whole only, along with additional interest, additional interest, and any other sums then due under this Note, the Pledge or the Other Security Documents upon prior irrevocable written notice sent by Maker (a "**Prepayment Notice**"), setting forth the intended prepayment date ("**Prepayment Date**"), which Prepayment Notice must be received by Payee not more than ten (10) days prior to the Prepayment Date and not less than two (2) days prior to the Prepayment Date and on the Prepayment Date, Maker shall make prepayment as herein above provided. **SUCH PREPAYMENT PREMIUM SHALL BE PAID WHETHER THE PREPAYMENT IS VOLUNTARY OR INVOLUNTARY, INCLUDING ANY PREPAYMENT AFFECTED BY THE ACCELERATION PROVISIONS CONTAINED IN THE NOTE OR THE LOAN DOCUMENTS.   UPON ACCELERATION, THE PREPAYMENT PREMIUM SHALL BE CALCULATED BASED UPON THE AMOUNT OF THE PREPAYMENT DUE ON THE DATE OF SUCH ACCELERATION. PROVIDED, HOWEVER, IF SUCH PREPAYMENT PREMIUM CONSTITUTES INTEREST UNDER APPLICABLE LAW, THE AMOUNT OF SUCH PREPAYMENT PREMIUM WILL BE REDUCED TO AN AMOUNT WHICH, WHEN ADDED TO ALL OTHER AMOUNTS WHICH CONSTITUTE INTEREST UNDER APPLICABLE LAW, WILL NOT EXCEED THE MAXIMUM AMOUNT OF INTEREST WHICH MAY BE CONTRACTED FOR, CHARGED OR RECEIVED WITH RESPECT TO THE LOAN EVIDENCED HEREBY UNDER APPLICABLE LAW FOR THE ACTUAL PERIOD TIME OF SUCH LOAN IS OUTSTANDING.** Notwithstanding the foregoing, in the event the Prepayment Date shall be prior to January 31, 2019, the Prepayment Premium shall be an amount equal to (ii) $27,500.00 less (ii) the actual interest paid to Payee by Maker (or applied from any reserves being held by Payee), but in no event less than zero dollars ($0.00).

Maker acknowledges that this Note and Maker's obligations under this Note are and shall at all times continue to be absolute and unconditional in all respects.  This Note, the Pledge and the Other Security Document set forth the entire agreement and understanding of Payee, Guarantor and Maker.

Maker agrees to pay all costs and expenses of collection incurred by Payee, in addition to principal and interest (including, without limitation, attorneys' fees and disbursements),

and including all costs and expenses incurred in connection with the pursuit by Payee of any of its rights or remedies hereunder or under the Pledge and/or the Other Security Documents or the protection of or realization of collateral or in connection with any of Payee's collection efforts, whether or not any action or proceeding on this Note, on the Pledge and/or the Other Security Documents or any foreclosure proceeding is filed, all such costs and expenses being payable on demand, together with interest at the Default Rate thereon and being secured by the Pledge and the Other Security Documents.

The indebtedness herein evidenced by this Note is secured by the Pledge and the Other Security Documents.

THIS NOTE, THE PLEDGE AND EACH OF THE OTHER SECURITY DOCUMENTS SHALL IN ALL RESPECTS BE GOVERNED, CONSTRUED, APPLIED AND ENFORCED IN ACCORDANCE WITH THE INTERNAL LAWS OF THE STATE OF NEW JERSEY WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAW.

Maker does hereby agree that upon the occurrence of an Event of Default (as such capitalized term is defined in the Pledge), or upon the failure of Maker to pay the Debt in full on the Maturity Date, Payee shall be entitled to receive and Maker shall pay interest on the entire Debt at the rate of forty-nine percent (49%) percent per annum or at the maximum rate of interest which Maker may by law pay, whichever is lower (the "**Default Rate**"), to be computed from the occurrence of the Event of Default until the actual receipt and collection of the Debt, including all periods prior to or subsequent to the entry of a UCC Judgment of Foreclosure and Sale. This charge shall be added to the Debt, and shall be deemed secured by the Pledge and the Other Security Documents. This clause, however, shall not be construed as an agreement or privilege to extend the date of the payment of the Debt, nor as a waiver of any other right or remedy accruing to Payee by reason of the occurrence of any Event of Default.

This Note is subject to the express condition that at no time shall Maker be obligated or required to pay interest on the Principal Balance at a rate which could subject Payee to either civil or criminal liability as a result of being in excess of the maximum rate which Maker is permitted by law to contract or agree to pay. For the purposes of calculating the actual amount of interest paid and or payable, in respect of laws pertaining to usury or such other laws, all sums paid or agreed to be paid to Payee for the use, forbearance or detention of the indebtedness evidenced hereby shall, to the extent permitted by applicable law, be amortized, allocated and spread from the date of disbursement of the proceeds thereof until payment in full of the loan obligations, so that the actual rate of interest on account thereof is uniform throughout the term hereof. If, by the terms of this Note, Maker is at any time required or obligated to pay interest on the Principal Balance at a rate in excess of such maximum rate, the rate of interest under this Note shall be deemed to be immediately reduced to such maximum rate, and interest payable hereunder shall be computed at such maximum rate and the portion of all prior interest payments in excess of such maximum rate shall be applied and shall be deemed to have been payments in reduction of the Principal Balance.

No delay on the part of Payee in exercising any right or remedy under this Note, the Pledge or the Other Security Documents or failure to exercise the same shall operate as a waiver in whole or in part of any such right or remedy. No notice to or demand on Maker shall be deemed

to be a waiver of the obligation of Maker or of the right of Payee to take further action without further notice or demand as provided in this Note, the Pledge and the Other Security Documents.

Each of Payee's rights and remedies under this Note shall be in addition to all of its other rights and remedies under the Pledge, Other Security Documents and applicable law.

**TIME IS OF THE ESSENCE** with regard to Maker's performance of all the terms, covenants and conditions of this Note.

Any provision of this Note, the Pledge or the Other Security Documents that is prohibited or unenforceable shall be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions thereof or affecting the validity or enforceability of such provision.

All of the provisions of this Note shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

Maker hereby warrants, represents and covenants that no funds disbursed hereunder shall be used for personal family or household purposes.

Maker (and the undersigned representative of Maker, if any) represents that Maker has full power, authority and legal right to execute and deliver this Note and that the Debt hereunder constitutes a valid and binding obligation of Maker.

All notices to be given under this Note shall be given in the same manner as provided in the Pledge.

This Note, and any provisions hereof, may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Maker or Payee, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

Without limiting any other provisions of the Pledge or the Loan Documents, Maker, for itself and all endorsers, guarantors and sureties of this Note, and their heirs, legal representatives, successors and assigns, hereby waives valuation, appraisement, presentment for payment, demand, notice of nonpayment, notice of dishonor, protest of any dishonor, notice of protest and protest of this Note, lack of diligence, delays in collection or enforcement of this Note, notice of the intention to accelerate, the benefit of all applicable law affording any right or redemption or cure and all other notices in connection with the delivery, acceptance, performance, default or enforcement of the payment of this Note, except as expressly provided herein or in the Pledge or any of the Other Security Documents, and in connection with any suit, action or proceeding brought by Payee on this Note, any and every right it may have to (a) a trial by jury, (b) interpose any counterclaim therein (other than a counterclaim which can only be asserted in a suit, action or proceeding brought by Payee on this Note and cannot be maintained in a separate action), and (c) have the same consolidated with any other or separate suit, action or proceeding, and agrees that their respective liability shall be unconditional and without regard to the liability of any other party and shall not be in any manner affected by any indulgence, extension of time,

- 5 -

renewal, waiver or modification granted or consented to by Payee. Maker, for itself and all endorsers, guarantors and sureties of this Note, and their heirs, legal representatives, successors and assigns, hereby consents to every extension of time, renewal, waiver or modification that may be granted by Payee with respect to the payment or other provisions of this Note, and to the release of any makers, endorsers, guarantors or sureties, and their heirs, legal representatives, successors and assigns, and of any collateral given to secure the payment hereof, or any part hereof, with or without substitution, and agrees that additional makers, endorsers, guarantors or sureties and their heirs, legal representatives, successors and assigns, may become parties hereto without notice to Maker or to any endorser, guarantor or surety and without affecting the liability of any of them.

FOR ANY CLAIM, ACTION, OR DISPUTE ARISING UNDER, OR TO INTERPRET OR APPLY, THIS NOTE OR ANY OTHER SECURITY DOCUMENT, OR TO RESOLVE ANY DISPUTE ARISING UNDER THE FOREGOING OR THE RELATIONSHIP BETWEEN THE PARTIES, MAKER AND PAYEE IRREVOCABLY SUBMIT TO THE NONEXCLUSIVE JURISDICTION OF THE COURTS OF THE STATE OF NEW JERSEY AND THE UNITED STATES DISTRICT COURT LOCATED IN THE COUNTY OF OCEAN, NEW JERSEY, AND APPELLATE COURTS FROM ANY OF SUCH COURTS. MAKER AND PAYEE IRREVOCABLY WAIVE ANY OBJECTION THAT IT MAY HAVE AT ANY TIME TO VENUE OF ANY SUCH SUIT, ACTION, OR PROCEEDING BROUGHT IN ANY SUCH COURT, INCLUDING ANY CLAIM THAT ANY SUCH SUIT, ACTION, OR PROCEEDING SO BROUGHT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM. NOTHING IN THE PLEDGE OR OTHER SECURITY DOCUMENTS SHALL BE DEEMED TO PRECLUDE PAYEE FROM BRINGING ANY SUIT, ACTION, OR PROCEEDING RELATING TO ANY OTHER SECURITY DOCUMENT OR THE DEBT IN ANY OTHER JURISDICTION WHERE PAYEE COULD OTHERWISE PROPERLY BRING SUCH SUIT, ACTION, OR PROCEEDING.

**[Remainder of Page Intentionally Left Blank]**

**IN WITNESS WHEREOF,** Maker has duly executed this Note the day and year first above written.

RIVER FUNDING LLC, a New Jersey limited
liability company

By: _____

Name: Seth Levine

Title:   Managing Member

NORSE HOLDINGS, LLC, a New York limited
liability company

By: _____

Name: Seth Levine

Title:   Managing Member

Signature Page to Secured Promissory Note

STATE OF NEW JERSEY      )
                        )   ss.:
COUNTY OF BERGEN        )

         On the 15th day of January in the year 2019, before me, the undersigned, a Notary Public in and for said State, personally appeared **Seth Levine**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

ANDREW SELEVAN
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires 1/25/2021

Acknowledgment Page to Secured Promissory Note

# EXHIBIT "B"

## PLEDGE AND SECURITY AGREEMENT (MEMBERSHIP INTERESTS)

This **PLEDGE AND SECURITY AGREEMENT (MEMBERSHIP INTERESTS)** (this "Agreement") is made as of the 17th day of January in the year 2019, by **NORSE HOLDINGS, LLC**, a New York limited liability company and **RIVER FUNDING LLC**, a New Jersey limited liability company, each having an address at 210 River St, Suite 24, Hackensack, New Jersey 07601 (collectively, "Pledgor"), in favor of **JLS EQUITIES, LLC**, a New York limited liability company, its successors and/or assigns, as their interests may appear, having an address c/o Y. Schwartz P.C., 930 E. County Line Rd., Suite 202, Lakewood, New Jersey 08701 ("Pledgee" or "Lender").

### W I T N E S S E T H:

**WHEREAS**, this Agreement is given to secure a loan from Pledgee to Pledgor, in the principal sum of up to One Million One Hundred Thousand and 00/100 Dollars ($1,100,000.00) (the "**Loan**"), evidenced by that certain Secured Promissory Note dated the date hereof made by Pledgor and payable to the order of Pledgee (together with all extensions, renewals, replacements, restatements or modifications thereof, the "**Note**"; the Note and the other documents evidencing and securing the Loan, collectively, the "**Loan Documents**");

**WHEREAS**, Pledgor owns the membership interests described on **Schedule I** attached hereto; and

**WHEREAS**, it is a condition precedent to the obligation of Pledgee to make the Loan to Pledgor that Pledgor shall have executed and delivered this Agreement to Pledgee, together with all other documents required to be executed by Pledgor and delivered to Pledgee pursuant to this Agreement, the forms of which are annexed hereto as exhibits to the Agreement (collectively, the "**Pledgor Documents**").

**NOW, THEREFORE**, in consideration of the premises and to induce Pledgee to make the Loan, and for other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Pledgor hereby agrees with Pledgee as follows:

1.      Definitions.  Unless the context otherwise requires, capitalized terms used but not otherwise defined herein shall have the respective meanings provided therefor in the Note or Loan Documents, and the following terms shall have the following meanings:

"Business Day" has the meaning given such term in the Note.

"Code" means the Uniform Commercial Code, as in effect from time to time in the State of New York or New Jersey, as applicable.

"Current Percentage Interest" shall have the meaning set forth in Section 4(b) hereof.

"Event of Default" shall have the meaning set forth in Section 9 hereof

"Indemnified Parties" shall have the meaning set forth in Section 18 hereof.

"IRC" means the Internal Revenue Code of 1986, as amended, and as it may be further amended from time to time, any successor statutes thereto, and applicable U.S. Department of Treasury regulations issued pursuant thereto in temporary or final form.

"Issuer Formation Agreements" means the Organizational Documents of the entities comprising Issuer.

"Lien" means any mortgage, deed of trust, lien (statutory or other), pledge, hypothecation, assignment, deposit arrangement, preference, priority, security interest, or any other encumbrance or charge of any kind or nature whatsoever, including, without limitation, any conditional sale or other title retention agreement, any financing lease having substantially the same economic effect as any of the foregoing, the filing of any financing statement or similar instrument under the Code or comparable law of any jurisdiction, domestic or foreign, and mechanics', materialmen's and other similar liens and encumbrances.

"Obligations" means all liabilities and obligations of the Pledgor to the Lender under the Note and Loan Documents and all related documents, all interest accrued thereon, any fees due Lender thereunder or hereunder, any expenses incurred by Lender thereunder or hereunder and any and all other liabilities and obligations of the Pledgor to the Lender, howsoever created, arising or evidenced, and howsoever owned, held or acquired, whether now or hereafter existing, whether now due or to become due, direct or indirect, absolute or contingent, and whether several, joint or joint and several.

"Organizational Documents" means (i) with respect to a limited partnership, such Person's certificate of limited partnership, limited partnership agreement, voting trusts or similar arrangements applicable to any of its partnership interests, (ii) with respect to a limited liability company, such Person's certificate of formation, limited liability company agreement or other document affecting the rights of holders of limited liability company interests, and (iii) any and all agreements between any constituent member, partner or shareholder of the Person in question, including any contribution agreement or indemnification agreements.   In each case, "Organizational Documents" shall include any indemnity, contribution, shareholders or other agreement among any of the owners of the entity in question.

"Person" means any individual, corporation, partnership, limited liability company, joint venture, estate, trust, unincorporated association, any federal, state, county or municipal government or any bureau, department or agency thereof and any fiduciary acting in such capacity on behalf of any of the foregoing.

"Pledged Interest" means all limited liability company membership interests, partnership interests, capital stock and other equity interests of, and all other right, title and interest now owned or hereafter acquired by Pledgor in and to, each entity described on **Schedule I** attached hereto (each such entity, individually or collectively, as the context may require, hereinafter referred to as an "**Issuer**"), together with: (a) all additional membership interests, partnership interests, capital stock and other equity interests in each Issuer, and options, warrants, and other rights now or hereafter acquired by Pledgor in respect of such membership interests, partnership interests, capital stock and other equity interests (whether in connection with any capital increase, recapitalization, reclassification, or reorganization of each Issuer or otherwise)

2

and all other property, rights and instruments of any description at any time issued or issuable as an addition to or in substitution for such membership interests, partnership interests, capital stock or other equity interests; (b) all certificates, instruments and other writings representing or evidencing interests in each Issuer now owned or hereafter acquired by Pledgor, and all accounts and general intangibles arising out of, or in connection with, the interests in any Issuer now owned or hereafter acquired by Pledgor; (c) any and all moneys or property due and to become due to Pledgor now or in the future in respect of the interests in each Issuer, or to which Pledgor may now or in the future be entitled in its capacity as a member, partner, shareholder or other equity holder of such Issuer, whether by way of a dividend, distribution, return of capital or otherwise; (d) all other claims which Pledgor now has or may in the future acquire in its capacity as a member, partner, shareholder or other equity holder of any Issuer against any Issuer and its property; and (e) all rights of Pledgor under each Issuer Formation Agreement applicable to each Issuer (and all other agreements, if any, to which a Pledgor is a party from time to time which relate to its ownership of the interests in each Issuer) including, without limitation, all voting and consent rights of Pledgor arising thereunder or otherwise in connection with Pledgor's ownership of the interests in each Issuer.

"Pledgor's Collateral" shall have the meaning set forth in Section 2 hereof.

"Proceeds" means (i) Pledgor's share, right, title and interest in and to all distributions, monies, fees, payments, compensations and proceeds now or hereafter becoming due and payable to Pledgor by each applicable Issuer with respect to the Pledged Interest whether payable as profits, distributions, asset distributions, repayment of loans or capital or otherwise and including all "proceeds" as such term is defined in Section 9-102(a)(64) of the Code; (ii) all contract rights, general intangibles, claims, powers, privileges, benefits and remedies of Pledgor relating to the foregoing; and (iii) all cash and non-cash proceeds of any of the foregoing.

"Transfer" shall have the meaning set forth in Section 4(f) hereof.

2.    Grant of Security in Pledgor's Membership and Corporate Interest.

(a)    As security for the full and punctual payment of the Obligations when due and payable (whether upon stated maturity, by acceleration or otherwise), Pledgor hereby grants and pledges a continuing lien on and security interest in, and, as a part of such grant and pledge, hereby transfers and assigns to Pledgee as collateral security, all of the following (collectively, the "Pledgor's Collateral") whether now owned or hereafter acquired, now existing or hereafter arising and wherever located:  Pledgor's Pledged Interest and all of Pledgor's right, title and interest in and to Issuer, including, without limitation:  (i) all of Pledgor's interest in the capital of Issuer and Pledgor's interest in all profits and distributions to which Pledgor shall at any time be entitled in respect of the Pledged Interest; (ii) all of Pledgor's right, title and interest to the assets of Issuer including, without limitation, real property, profits, revenues, operating accounts, account receivables, fixtures, chattels and articles of personal property, (iii) all other payments, if any, due or to become due to Pledgor in respect of the Pledged Interest under or arising out of the Organizational Documents, whether as contractual obligations, damages, insurance proceeds, condemnation awards or otherwise; (iv) all of Pledgor's claims, rights, powers, privileges, authority, options, security interests, liens and remedies, if any, under or arising out of the Organizational Documents or the ownership of the Pledged Interest pursuant thereto; (v) all present

3

and future claims, if any, of Pledgor against Issuer under or arising out of the Organizational Documents for monies loaned or advanced, for services rendered or otherwise; (vi) all of Pledgor's rights, if any, in Issuer pursuant to the Organizational Documents or at law, to exercise and enforce every right, power, remedy, authority, option and privilege of the Pledgor relating to the Pledged Interest, including any power to terminate, cancel or modify the Organizational Documents, to execute any instruments and to take any and all other action on behalf of and in the name of Pledgor in respect of the Pledged Interest and Issuer, to make determinations, to exercise any election (including, but not limited to, election of remedies) or option or to give or receive any notice, consent, amendment, waiver or approval, together with full power and authority to demand, receive, enforce or collect any of the foregoing or any property of Issuer, to enforce or execute any checks, or other instruments or orders, to file any claims and to take any action in connection with any of the foregoing; and (vii) to the extent not otherwise included, all Proceeds of any or all of the foregoing.

(b)    Nothing contained in the foregoing provisions of Section 2(a) shall be deemed or construed to be a limitation on, or waiver by Pledgee of, any of Pledgee's other rights or remedies hereunder or under the Note or Loan Documents.

3.    <u>Powers of Pledgor</u>. All distributions with respect to the Pledgor's Collateral shall be remitted to Pledgee. Notwithstanding anything contained herein to the contrary, unless an Event of Default shall have occurred and then be continuing, Pledgor shall be entitled to exercise (but only in a manner not inconsistent with the terms hereof or Note or Loan Documents) the voting, consent, administration, management and other powers, rights and remedies of Pledgor under the Organizational Documents or otherwise with respect to Pledgor's Collateral only with the prior consent of Pledgee. Notwithstanding the foregoing and regardless of whether or not an Event of Default has occurred and is continuing, so long as the Loan is outstanding, the irrevocable proxy granted by Pledgor in <u>Exhibit D</u> hereto shall be absolute, and Pledgor shall have no right to vote, consent, administer, manage and other utilize any other powers under the Organization Documents or otherwise with respect to Pledgor's Collateral, with respect to Article 8 Matter (as hereinafter defined). Pledgor's Collateral shall include any additional ownership interests of, and any membership, partnership, or other ownership interests exchangeable for or convertible into and warrants, options, and other rights to purchase or otherwise acquire shares of ownership interests of, the Issuer, or entity which is the successor of the Issuer, from time to time acquired by Pledgor in any manner (all of which interests shall be deemed to be part of the Pledged Interest), and any certificates or other instruments representing such additional interests, warrants, options, and other rights, and all Distributions and other property or proceeds from time to time received, receivable, or otherwise distributed or distributable in respect of or in exchange for any or all of such additional shares, warrants, options, or other rights. Pledgor agrees that Lender may from time to time attach as Schedule A hereto an updated list of the Collateral at the time pledged to Lender hereunder (although the failure to so update Schedule A shall not limit the pledge of such additional interests to Lender). As used herein, "<u>Article 8 Matter</u>" means any action, decision, determination or election by the Issuer or its member(s) that its membership interests or other equity interests, or any of them, be, or cease to be, a "security" as defined in and governed by Article 8 of the Uniform Commercial Code, and all other matters related to any such action, decision, determination or election.

4

4.     Representations, Warranties and Covenants of Pledgor. Pledgor hereby covenants with and represents and warrants to Pledgee as follows:

(a)     The execution and delivery by Pledgor of this Agreement, Pledgor's performance of its obligations hereunder and the creation of the security interests and liens provided for in this Agreement have been duly authorized by all requisite action on the part of Pledgor, including the consent of any Person where required, and will not violate any provision of law, any order of any court or other governmental authority, the Organizational Documents, or any indenture, agreement or other instrument to which Pledgor or Issuer is a party, or by which Pledgor or Issuer is bound, or be in conflict with, result in a breach of, or constitute (with due notice or lapse of time or both) a default thereunder, or except as may be provided by this Agreement or Note or Loan Documents, result in the creation or imposition of any Lien of any nature whatsoever upon any of the property or assets of Pledgor pursuant to, any such indenture, agreement or instrument. Pledgor is not required to obtain any consent, approval or authorization from, or to file any declaration or statement with, any governmental authority or other agency in connection with or as a condition to the execution, delivery or performance of this Agreement.

(b)     Pledgor, as the a member of the Issuer, owns the percentage of membership and management interests (each such percentage Interest referred to herein as a "Current Percentage Interest") set forth on Exhibit A hereto in and to Issuer pursuant to the terms of the Organizational Documents, and will at all times hereinafter during the term of this Agreement continue to hold its Current Percentage Interest in Issuer, except as otherwise permitted under the Note or Loan Documents. Pledgor does not have outstanding any options or rights or other agreements to sell or otherwise transfer all or any portion of the Pledgor's Current Percentage Interest in Issuer.

(c)     Pledgor will defend Pledgee's right, title and interest in and to the Pledgor's Collateral pledged by it pursuant hereto and in which it has granted a security interest pursuant hereto against the claims and demands of all other Persons.

(d)     Pledgor is the legal and beneficial owner of and has good title to the Pledgor's Collateral in which it has granted a security interest pursuant hereto, free and clear of all Liens, claims or security interest of every nature whatsoever, except the security interests created pursuant to this Agreement or expressly agreed to in the Note or Loan Documents, and has the unqualified right to pledge and grant a security interest in the same as herein provided without the consent of any other Person other than any such consent that has been obtained in writing.

(e)     The Pledged Interest was validly acquired by Pledgor, is fully paid, no sums are currently due in respect thereof and is duly and validly pledged hereunder.

(f)     Except as permitted under the Note or Loan Documents, Pledgor agrees that Pledgor will not sell, assign, transfer or otherwise dispose of, or mortgage, encumber, assign, pledge or grant a security interest in, the Pledged Interest or any of the Pledgor's Collateral or any interest therein, or suffer or permit any of the foregoing to occur (any of the foregoing is hereinafter sometimes hereinafter referred to as a "Transfer"). Any Transfer made in violation of the foregoing provisions shall be an immediate Event of Default hereunder without notice or

opportunity to cure and such Transfer shall be void and of no force and effect, and upon demand of Pledgee shall forthwith be canceled or satisfied by an appropriate instrument in writing.

(g)   The principal place of business and chief executive office of Pledgor, and the place where Pledgor's records concerning the Pledgor's Collateral are kept, is set forth the preamble of this Agreement. Pledgor will not change such principal place of business or chief executive office or domicile or residence, as the case may be, or remove such records unless Pledgor shall provide Pledgee with written notice thereof within thirty (30) days after such change (but in any event, within the period required pursuant to the Code) and there shall have been taken such action, satisfactory to Pledgee, as may be necessary to maintain the security interest of Pledgee hereunder at all times fully perfected and in full force and effect. Pledgor shall not change its name unless Pledgor shall have given Pledgee written notice thereof within thirty (30) days after the name change (but in any event, within the period required pursuant to the Code) and shall have taken such action, satisfactory to Pledgee, as may be necessary to maintain the security interest of Pledgee in the Pledgor's Collateral granted hereunder at all times fully perfected and in full force and effect.

(h)   Giving effect to the aforesaid grant and assignment to Pledgee, Pledgee has, as of the date of this Agreement, and as to Pledgor's Collateral acquired from time to time after the date hereof, shall have a valid, perfected and continuing first (1st) lien upon and security interest in the Pledgor's Collateral.

(i)   There are no financing statements under the Code covering any or all of the Pledgor's Collateral. Pledgor will not, without the prior written consent of Pledgee, execute and, until payment in full of all of the Obligations there will not ever be on file in any public office, any financing statement or statements covering any or all of the Pledgor Collateral, except financing statements filed or to be filed in favor of Pledgee.

(j)   The Organizational Documents and this Agreement have been duly executed and delivered by Pledgor and constitute the legal, valid and binding obligations of Pledgor, enforceable in accordance with their respective terms, subject to equitable principles and the laws generally affecting creditors' rights. Pledgor is not in default under or with respect to, nor has any Pledgor received any notice alleging any default that remains uncured under or with respect to, any of Pledgor's obligations under the Organizational Documents.

(k)   The Organizational Documents delivered to Pledgee are true, correct and complete copies of the Organizational Documents in effect on the date hereof and has not as of the date hereof been modified or amended.

(l)   Pledgor shall not pursue or take any action which may, directly, or indirectly, cause a dissolution or liquidation of any property Issuer now owns or has an interest in or owns or has an interest hereafter.

(m)   Pledgor shall not withdraw as a member or director of Issuer or file or pursue or take any action which may, directly or indirectly, cause a dissolution or liquidation of Issuer or seek a partition of any property of Issuer.

(n)     Pledgor will not (i) terminate or agree to terminate the Organizational Documents, or (ii) amend or modify or agree to amend or modify the Organizational Documents in contravention of the terms and conditions of this Agreement without Lender's prior written consent, which shall not be unreasonably withheld, conditioned or delayed.

(o)     None of the Pledgor's Collateral is, as of the date of this Agreement, nor shall any of Pledgor's Collateral which arises from time to time after the date hereof be, evidenced by any instrument, note or chattel paper, except such as have been or will be endorsed, assigned or pledged and delivered to Pledgee by Pledgor simultaneously with the creation thereof.

(p)     Pledgor shall, at its sole cost and expense, keep and observe, perform and discharge, duly and punctually, all and singular the obligations, terms, conditions, representations and warranties of the Organizational Documents on the part of Pledgor to be kept, observed, performed and discharged. Pledgor shall hold Pledgee harmless and indemnify Pledgee from and against any liability, loss, claim, damage, cost or expense (including, without limitation, attorneys' fees and disbursements) that Pledgee may incur or sustain by reason of the failure on Pledgor's part to so perform and observe the Organizational Documents or to satisfy, perform and observe such conditions thereunder.

(q)     Pledgor shall deliver to Lender a true, correct and complete copy of the Note Sale and Assignment Agreement by and between Provident Bank, a New Jersey banking corporation and Orange Norse Limited Liability Company (the "Note Sale Agreement"), pursuant to which Orange Norse Limited Liability Company ("Orange Norse") will purchase the indebtedness of Sterling Enterprises of Hunterdon, L.L.C. owed to Provident Bank, within two (2) days following the date hereof. Pledgor cause the Note Sale Agreement in full force and effect and shall cause the compliance of all of Issuer's obligations thereunder. Failure by Orange Norse to enter into the Note Sale Agreement on or prior to February 1, 2019 shall be an Event of Default under this Agreement.

5.     <u>Negative Covenants Concerning Issuer</u>.  Pledgor covenants and agrees that as a member of Issuer, to the extent the Pledgor has any control rights in the Issuer, it will not exercise any of the rights under the Organizational Documents, including, without limitation, any consent rights thereunder, or otherwise so as to cause or allow the Issuer to violate any of the covenants contained in the Note or Loan Documents or other related documents and shall affirmatively exercise all of the rights of Pledgor to cause compliance with the Note and Loan Documents.

6.     <u>Certain Understandings of Parties; Registration of Pledge; Control of Collateral, Etc</u>. Pledgor represents and warrants that the terms of the Issuer Formation Documents do and will provide that the Pledged Interests shall constitute a "security" within the meaning of Article 8 of the Code (including Section 8-102(a)(15) thereof) as in effect from time to time in the State of New York, or the State of New Jersey, as applicable, and Article 8 of the Uniform Commercial Code of any other applicable jurisdiction that now or hereafter substantially includes the 1994 revisions to Article 8 thereof as adopted by the American Law Institute and the National Conference of Commissioners on Uniform State Laws and approved by the American Bar Association on February 14, 1995. The parties acknowledge and agree that the Pledged Interests, and the Certificates of Pledgor in each Issuer which have been delivered to Pledgee on the date hereof, constitute and will constitute "certificated securities" (as defined in the Code). Pledgor

therefor covenants and agrees that Pledgor shall not, directly or indirectly, without the prior written consent of Pledgee, alter, amend modify, supplement or change in any way, the operating agreement of an Issuer or Pledgor as in effect on the date hereof.

      7.    <u>Distributions</u>.

      (a)    Except as otherwise provided in the terms of the Note and Loan Documents, if notwithstanding any prohibition herein or in Note or Loan Documents, Pledgor shall at any time receive any cash distributions with respect to the Pledged Interest or otherwise pursuant to the Organizational Documents, all such amounts received by Pledgor shall, immediately upon receipt, be remitted to Pledgee for application to the Obligations in accordance with the Note and Loan Documents. In the event a non-cash distribution shall be paid or made to Pledgor following the occurrence and during the continuation of any Event of Default, Pledgor shall receive the same in trust for the sole purpose of forthwith delivering the same in kind (appropriately endorsed) to Pledgee, to be added to the Pledgor's Collateral hereunder.

      (b)    If Pledgor shall become entitled to receive or shall receive from Issuer, any instrument or certificate evidencing the Pledged Interest, as an addition to, in substitution of, or in exchange for, such Pledged Interest or any part thereof, after and during the continuance of an Event of Default, Pledgor shall hold the same as the agent and in trust for Pledgee, and shall deliver it forthwith to Pledgee in the exact form received, with Pledgor's endorsement or assignment or other instrument as Pledgee may deem appropriate, to be held by Pledgee, subject to the terms hereof, as further Pledgor's Collateral for the Obligations.

      (c)    To the extent Pledgor receives any cash distributions in contravention hereof or of the other Credit Documents, Pledgor shall take all necessary actions to cause such distributions to be remitted directly to Pledgee for application to the Obligations.

      8.    <u>Application of Pledgor's Collateral</u>.  All proceeds of any of Pledgor's Collateral (including, without limitation, any proceeds from the sale of all or any portion of the Pledged Interest, and all distributions, liquidating and otherwise, received by Pledgee in respect of the Pledged Interest) now or at any time hereafter received or retained by Pledgee pursuant to the provisions of this Agreement (including, without limitation, the provisions of Section 10 hereof) shall, after the occurrence and during the continuation of an Event of Default be applied by Pledgee to the Obligations.

      9.    <u>Events of Default</u>.  The occurrence of any one or more of the following events shall constitute an "<u>Event of Default</u>" under this Agreement:

      (a)    The occurrence of an "Event of Default," as such term is defined in the Note and Loan Documents;

      (b)    Any representation or warranty made or given by Pledgor under this Agreement was false or misleading in any material respect when made or deemed made;

      (c)    Pledgor's failure to pay any fees, costs or other amounts as and when required to be paid under this Agreement within five (5) days after demand by Pledgee.

(d)     Except with respect to (i) the payment of money and (ii) the matters herein before and hereafter specified in this Section 9, if Pledgor shall default in the observance or performance of any covenant or agreement contained in this Agreement for ten (10) days after the giving by the Pledgee to Pledgor of notice thereof (provided, however, if such default cannot reasonably be cured within such ten (10) day period, then Pledgor shall have such additional time as is reasonable under the circumstances, so long as Pledgor commences such cure within the initial ten (10) day period and diligently and in good faith pursues such cure to completion, provided that in no event shall such additional time period exceed 60 days).

(e)     Any Transfer made by Pledgor in violation of the provisions of Section 4(f) hereof or any breach or violation by any Pledgor of the provisions of Sections 4(n), 4(o), 4(q) or 5, any of which shall be an immediate Event of Default hereunder without notice or opportunity to cure.

(f)     Any default under the Note and loan documents entered into simultaneously with such note.

(g)     Any default under the Note Sale Agreement.

10.     Remedies.  If an Event of Default shall occur and be continuing:

(a)     Pledgee, without obligation to resort to any other security, right or remedy granted under any other agreement or instrument, shall have the right to, in addition to all rights, powers and remedies of a secured party pursuant to the Code, at any time and from time to time, (i) cause any portion or all of the Pledged Interest to be registered in or transferred into the name of Pledgee or into the name of a nominee or nominees, or designee or designees, of Pledgee; and/or (ii) sell, resell, assign and deliver, in its sole discretion, any or all of the Pledgor's Collateral or any other collateral security for the Obligations (whether in whole or in part and at the same or different times) and all right, title and interest, claim and demand therein and right of redemption thereof, at public or private sale, for cash, upon credit or for future delivery, and in connection therewith Pledgee may grant options and may impose reasonable conditions such as requiring any purchaser to represent that any "securities" constituting any part of the Pledgor's Collateral are being purchased for investment only, Pledgor hereby waiving and releasing any and all equity or right of redemption with respect to the Pledgor's Collateral. If all or any of the Pledgor's Collateral is sold by Pledgee upon credit or for future delivery, Pledgee shall not be liable for the failure of the purchaser to purchase or pay for the same, and, in the event of any such failure, Pledgee may resell such Pledgor's Collateral. It is expressly agreed that Pledgee may exercise its rights with respect to less than all of the Pledgor's Collateral, leaving unexercised its rights with respect to the remainder of the Pledgor's Collateral; provided, however, that such partial exercise shall in no way restrict or jeopardize Pledgee's right to exercise its rights with respect to all or any other portion of the Pledgor's Collateral at a later time or times.

(b)     Pledgee may exercise, either by itself or by its nominee or designee, in the name of any Pledgor, the rights, powers and remedies granted to Pledgee in Section 2 hereof in respect of the Organizational Documents, the Pledged Interest, Issuer and the other Pledgor's Collateral. Such rights and remedies shall include, without limitation, the right to exercise all voting, consent, managerial and other rights relating to the Pledged Interest, whether in Pledgor's

name or otherwise, and the right to exercise any or all of the Pledgor' rights, if any, to dissolve Issuer and either continue the business of Issuer or sell or dispose of all or any part of its assets.

(c)     Pledgor hereby irrevocably, in the name of Pledgor, authorizes and empowers Pledgee and assigns and transfers unto Pledgee, and constitutes and appoints Pledgee its true and lawful attorney-in-fact, and as its agent, irrevocably, with full power of substitution for it and in its name during the continuation of an Event of Default, (i) to exercise and enforce every right, power, remedy, authority, option and privilege of Pledgor under the Organizational Documents, including any power to subordinate, terminate, cancel or modify the Organizational Documents, or to give any notices, or to take any action resulting in such subordination, termination, cancellation or modification, and (ii) in order to more fully vest in Pledgee the rights and remedies provided for herein, to exercise all of the rights, remedies and powers granted to Pledgee in this Agreement, and Pledgor further authorizes and empowers Pledgee, as its attorney-in-fact, and as its agent, irrevocably, with full power of substitution for it and in its name, to (A) give any authorization, to furnish any information, to make any demands, to execute any instruments and to take any and all other action on behalf of and in the name of Pledgor which in the opinion of Pledgee may be necessary or appropriate to be given, furnished, made, exercised or taken under the Organizational Documents in order to comply therewith, to perform the conditions thereof or to prevent or remedy any default by Pledgor thereunder or to enforce any of Pledgor's rights thereunder, and (B) proceed from time to time in Pledgor's name in any statutory or non-statutory proceeding affecting any Pledgor's Collateral, and Pledgee or its nominee may (I) execute and file proof of claims for the full amount of any Pledgor's Collateral and vote such claims for the full amount thereof (II) vote for or against proposal or resolution, (III) vote for a trustee or trustees or for a receiver or receivers or for a committee of creditors and/or (IV) vote for the acceptance or rejection of any proposed arrangement, plan or reorganization, composition or extension, and Pledgee or its nominee may receive any payment of distribution and give acquittance therefor and may exchange or release Pledgor's Collateral; and (V) endorse any draft or other instrument for the payment of money, execute releases and negotiate settlements with respect to the Pledgor's Collateral or in any way related thereto. Nothing contained in the foregoing provisions of this Section 9 shall be deemed or construed to be a limitation on, or waiver by Pledgee of, any of the Pledgee's other rights or remedies hereunder or under Note or Loan Documents. Pledgee shall have no duty to exercise any of the aforesaid rights, privileges or options and shall not be responsible for any failure to do so or delay in so doing. The foregoing powers-of-attorney are irrevocable and coupled with an interest, and any similar or dissimilar powers heretofore given by Pledgor in respect of the Pledged Interest to any other person is hereby revoked. The powers-of-attorney granted herein shall terminate automatically upon the termination of this Agreement in accordance with the terms thereof.

(d)     Pledgee may at such time and from time to time thereafter during the continuation of an Event of Default, without notice to, or assent by, any Pledgor or any other Person (to the extent permitted by law), but without affecting any of the Obligations, in the name of Pledgor or in the name of Pledgee, notify any other party to the Organizational Documents, if applicable, to make payment and performance directly to Pledgee; extend the time of payment and performance of, compromise or settle for cash, credit or otherwise, and upon any terms and conditions, any obligations owing to Pledgor, or claims of Pledgor, under the Organizational Documents; file any claims, commence, maintain or discontinue any actions, suits or other proceeding deemed by Pledgee necessary or advisable for the purpose of collecting upon or

10

enforcing the Organizational Documents; and execute any instrument and do all other things deemed necessary and proper by Pledgee to protect and preserve and realize upon the Pledgor's Collateral and the other rights contemplated hereby.

(e)     Pledgee may at such time and during the continuation of an Event of Default without notice to or assent by Pledgor require that any and distributions, dividends, interest and other payments payable to Pledgor with respect to the Pledged Interest be paid to Pledgee.

(f)     Pursuant to the powers-of-attorney provided for in clause (c) above, Pledgee may take any action and exercise and execute any instrument which it may deem necessary or advisable to accomplish the purposes hereof. Without limiting the generality of the foregoing, after the occurrence and during the continuation of an Event of Default, Pledgee shall have the right and power to receive, endorse and collect all checks and other orders for the payment of money made payable to Pledgor representing any interest, payment of principal or other distribution payable in respect of the Pledgor's Collateral or any part thereof, and for and in the name, place and stead of Pledgor, to execute endorsements, assignments or other instruments of conveyance or transfer in respect of any or all of the Pledged Interest or any other property which is or may become a part of the Pledgor's Collateral hereunder.

(g)     Pledgee may exercise any or all of the rights and remedies of a secured party under the Code.

(h)     Without limiting any other provision of this Agreement, and without waiving or releasing any Pledgor from any obligation or Event of Default, Pledgee shall have the right, but not the obligation, to perform any act or take any appropriate action, as it, in its judgment, may deem necessary to cure such Event of Default or cause any term, covenant, condition or obligation under this Agreement or the Organizational Documents to be performed or observed by or on behalf of Pledgor to protect the security of the Pledgor's Collateral or this Agreement. All reasonable amounts advanced by or on behalf of Pledgee in exercising its rights under this section (including, but not limited to, reasonable legal expenses and disbursements incurred in connection therewith), together with interest thereon at the Default Rate under the Note from the date of each such advance, shall be payable by Pledgor to Pledgee upon demand and shall be secured by this Agreement.

11.     Sale of Pledgor's Collateral.  To the extent permitted by applicable law, no demand, advertisement or notice, all of which are hereby expressly waived by Pledgor, shall be required in connection with any sale or other disposition of all or any part of the Pledgor's Collateral, except that Pledgee shall give Pledgor at least ten (10) Business Days prior written notice of the time and place of any public sale or of the time and the place where any private sale or other disposition is to be made, which notice Pledgor hereby agrees is reasonable, all other demands, advertisements and notices being hereby waived. To the extent permitted by law, Pledgee shall not be obligated to make any sale of the Pledgor's Collateral if it shall determine not to do so, regardless of the fact that notice of sale may have been given, and Pledgee may with notice or publication adjourn any public or private sale, and such sale may, with further notice, be made at the time and place to which the same was so adjourned. Upon each private sale of the Pledgor's Collateral of a type customarily sold in a recognized market and upon each public sale, Pledgee (or its nominee or designee) may purchase any or all of the Pledgor's Collateral being

11

sold, free and clear of and discharged from any trusts, claims, equity or right of redemption of Pledgor, all of which are hereby waived and released by Pledgor to the extent permitted by law, and may make payment therefor by credit against any of the obligations in lieu of cash or any other obligations. In the case of all sales of the Pledgor's Collateral, public or private, Pledgor will pay all reasonable costs and expenses of every kind for sale or delivery, including, without limitation, brokers and reasonable attorneys' fees and disbursements and any tax imposed thereon. However, the proceeds of sale of Pledgor's Collateral shall be available to cover such costs and expenses, and, after deducting such costs and expenses from the proceeds of sale, Pledgee shall apply any remainder to the payment of the Obligations in such order and priority as Pledgee may determine.

12.    Securities Act of 1933, Etc.  Pledgor recognizes that the Pledged Interest will not be effectively registered under the Securities Act of 1933. Pledgee, in its sole and absolute discretion, is hereby authorized to sell the Pledged Interest or any part thereof by private sale in such manner and under such circumstances as Pledgee may reasonably deem necessary or advisable in order that such sale may legally be effected without registration. Pledgor acknowledges that private sales so made may be at prices and on other terms less favorable to the seller than if such Pledged Interest was sold at public sales, and agrees that Pledgee has no obligation to delay the sale of any such Pledged Interest for such period of time necessary to permit the issuer of such Pledged Interest, even if such issuer would agree, to register such Pledged Interest for public sale under such applicable securities laws. Pledgor agrees that private sales made under the foregoing circumstances shall not, because so made, be deemed to have been made in a commercially unreasonable manner.

13.    Receipt of Sale Proceeds.  Upon any sale of the Pledgor's Collateral, or any portion thereof, by Pledgee hereunder (whether by virtue of the power of sale herein granted, pursuant to judicial process or otherwise), the receipt of Pledgee or the officer making the sale shall be a sufficient discharge to the purchaser or purchasers of the Pledgor's Collateral so sold, and such purchaser or purchasers shall not be obligated to see to the application of any part of the purchase money paid over to Pledgee or such officer or be answerable in any way for the misapplication or non-application thereof.

14.    Waivers; Modifications.    No modification, amendment, extension, discharge, termination or waiver of any provision of this Agreement or Note or Loan Documents, nor consent to any departure by Pledgor therefrom, shall in any event be effective unless the same shall be in writing signed by the party against whose enforcement is sought, and then such waiver or consent shall be effective only in the specific instance, and for the purpose, for which given.

15.    Remedies Cumulative.  The rights, powers and remedies of Pledgee under this Agreement shall be cumulative and not exclusive of any other right, power or remedy which Pledgee may have against Pledgor pursuant to this Agreement or Note or Loan Documents, or existing at law or in equity or otherwise. No delay or omission to exercise any remedy, right or power accruing upon an Event of Default shall impair any such remedy, right or power or shall be construed as a waiver thereof, but any such remedy, right or power may be exercised from time to time and as often as may be deemed expedient. A waiver by Pledgee of one Event of Default shall not be construed to be a waiver of any subsequent Event of Default or to impair any remedy, right or power consequent thereon.

16.    Notices.  Any and all notices given in connection with this Agreement shall be in writing and shall be hand delivered or sent by Federal Express or other reputable courier service, or by registered or certified mail, return receipt requested, and shall be deemed given when received or receipt is refused at the following addresses:

If to Lender/Pledgee:

JLS EQUITES, LLC
c/o Y. Schwartz PC
930 E. County Line Rd, Suite 202
Lakewood, New Jersey 08701
Attention:  Yisroel S. Schwartz, Esq.

If to Pledgor at the address stated at the beginning on this Agreement

Each party may designate a change of address by notice to the other parties, given at least fifteen (15) days before such change of address is to become effective.

17.    Successors and Assigns.  This Agreement and all representations, warranties and covenants of Pledgor made herein shall be binding upon and inure to the benefit of Pledgor and its successors and assigns. This Agreement shall be binding upon and shall inure to the benefit of Pledgee and its successors and assigns.

18.    Pledgee Not Bound.

(a)    Nothing herein shall be construed to make Pledgee liable as a shareholder, officer or director of Issuer, and Pledgee, by virtue of this Agreement or otherwise, shall not have any of the duties, obligations or liabilities as a shareholder, officer or director of Issuer. The parties hereto expressly agree that this Agreement shall not be construed as creating a membership or joint venture between Pledgee and Pledgor.

(b)    The mere execution and delivery of this Agreement shall not be deemed to be evidence of any intention of Pledgee to become a constituent shareholder, officer or director of Issuer or a shareholder, officer or director of any Pledgor or otherwise be deemed to be a co-venturer with respect to any Pledgor or Issuer; provided, however, that Pledgee may, in Pledgee's sole discretion, during the occurrence and continuance of an Event of Default elect to become a constituent shareholder, officer or director in Issuer. Pledgee shall assume none of the duties, obligations or liabilities of a shareholder, officer or director of Issuer or any Pledgor unless and until Pledgee actually becomes a constituent shareholder, officer or director of Issuer.

(c)    Pledgee shall not be obligated to perform or discharge any obligation of Pledgor as a result of the collateral assignment hereby effected.

13

(d)    The acceptance of Pledge of this Agreement, with all the rights, powers, privileges and authority so created, shall not at any time or in any event obligate Pledgee to appear in or defend any action or proceeding relating to the Pledgor's Collateral, or to take any action hereunder or thereunder, or to expend any money or incur any expense or perform or discharge any obligation, duty or liability under or with respect to the Pledgor's Collateral.

19.    <u>Acts of Pledge</u>. All Pledgor's Collateral at any time delivered to Pledgee pursuant hereto shall be held by Pledgee subject to the terms, covenants and conditions herein set forth. Neither Pledgee nor any of Pledgee's directors, officers, agents, employees or counsel shall be liable for any action taken or omitted to be taken by such party or parties relative to any of the Pledgor's Collateral, except for such party's or parties' own gross negligence or willful misconduct. Pledgee shall be entitled to rely in good faith upon any writing or other document, telegram or telephone conversation reasonably believed by it to be genuine and correct and to have been signed, sent or made by the proper person or persons, and, with respect to any legal matter, Pledgee may (but shall not be obligated to) rely in acting or in refraining from acting upon the advice of counsel selected by it concerning all matters hereunder. Pledgor hereby agrees to and does hereby indemnify, defend and hold harmless Pledgee and any of Pledgee's directors, officers, agents, employees (collectively, the "<u>Indemnified Parties</u>") from and against any and all claims, demands, losses, judgments and liabilities (including, without limitation, liabilities for penalties and all damages, liabilities, losses, costs and expenses which Pledgee may incur or suffer if it becomes, or is alleged to have become, a shareholder, officer or director of Issuer by reason of the operation of this Agreement or Pledgee's exercise of the rights, remedies or powers under or in accordance with the terms hereof or otherwise) and to reimburse, within five (5) business days after written demand therefor, Pledgee for all costs and expenses, including, without limitation, attorneys' fees arising out of or resulting from this Agreement or the exercise by Pledgee of any lawful right or remedy granted to it hereunder, such as operating, selling or disposing of any Pledgor's property, including, without limitation, the Pledged Interest (or any portion thereof), together with interest on such sums at the Default Rate, from the date such expenses were paid by Pledgee to the date of payment to Pledgee of such sums. In any action to enforce this Agreement, the provisions of this Section 18 shall, to the extent permitted by law, prevail notwithstanding any provision of applicable law respecting the recovery of costs, disbursements and allowances to the contrary.

20.    <u>Custody of Pledgor's Collateral: Notice of Exercise of Remedies</u>. Pledgee shall not have any duty as to the collection or protection of the Pledgor's Collateral or any income thereon or payments with respect thereto, or as to the preservation of any rights pertaining thereto except with respect to any Pledgor's Collateral actually in its possession. Pledgor hereby waives notice of acceptance hereof, and except as otherwise specifically provided herein or required by provision of law which may not be waived, hereby waives any and all notices or demands with respect to any exercise by Pledgee of any rights or powers which it may have or to which it may be entitled with respect to the Pledgor's Collateral.

21.    <u>Severability</u>. Wherever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement.

22.     Further Assurances.  Pledgor agrees to do such further acts and things and to execute and deliver to Pledgee such additional conveyances, assignments, agreements and instruments as Pledgee from time to time may require or deem advisable to carry into effect this Agreement or to further assure and confirm unto Pledgee the rights, powers and remedies intended to be granted hereunder or under Note or Loan Documents; provided, however, that no such further acts and things and conveyances, assignments, agreements and instruments shall increase Pledgor's obligations or shall decrease Pledgor's rights under this Agreement or under the Note or Loan Documents or increase Pledgee's rights beyond those intended to be granted hereunder or under the Note or Loan Documents. Pledgor hereby agrees to sign and deliver to Pledgee financing statements, in form acceptable to Pledgee, as Pledgee may from time to time request or as are necessary in the opinion of Pledgee to establish and maintain a valid and perfected security interest in the Pledgor's Collateral and to promptly pay any filing fees relative thereto. Pledgor also authorizes Pledgee, to the extent permitted by law, to file such financing statements (and continuation statements with respect thereto) without the signature of Pledgor and further authorizes Pledgee, to the extent permitted by law, to file a photographic or other reproduction of this Agreement or of a financing statement in lieu of a financing statement.

23.     Headings/Recitals.  The article and/or section headings in this Agreement are included herein for convenience of reference only and shall not constitute a part of this Agreement for any other purpose. The recitals are hereby incorporated in this Agreement as if fully set forth herein.

24.     Governing Law.  THIS AGREEMENT IS, AND SHALL BE DEEMED TO BE, A CONTRACT ENTERED INTO UNDER AND PURSUANT TO THE LAWS OF THE STATE OF NEW JERSEY AND SHALL IN ALL RESPECTS BE GOVERNED, CONSTRUED, APPLIED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO THE PRINCIPLES OF CONFLICTS OF LAW OF SUCH STATE. NO DEFENSE GIVEN OR ALLOWED BY THE LAWS OF ANY OTHER STATE OR COUNTRY SHALL BE INTERPOSED IN ANY ACTION OR PROCEEDING HEREON UNLESS SUCH DEFENSE IS ALSO GIVEN OR ALLOWED BY THE LAWS OF THE STATE OF NEW JERSEY.

25.     Consent to Jurisdiction.  FOR ANY CLAIM, ACTION, OR DISPUTE ARISING UNDER, OR TO INTERPRET OR APPLY, THIS AGREEMENT, OR TO RESOLVE ANY DISPUTE ARISING UNDER THIS AGREEMENT OR THE RELATIONSHIP BETWEEN THE PARTIES, PLEDGOR IRREVOCABLY SUBMITS TO THE NONEXCLUSIVE JURISDICTION OF THE COURTS OF THE STATE OF NEW JERSEY AND THE UNITED STATES DISTRICT COURT LOCATED IN BERGEN COUNTY, NEW JERSEY, AND APPELLATE COURTS FROM ANY OF SUCH COURTS.  PLEDGOR IRREVOCABLY WAIVES ANY OBJECTION THAT IT MAY HAVE AT ANY TIME TO VENUE OF ANY SUCH SUIT, ACTION, OR PROCEEDING BROUGHT IN ANY SUCH COURT, INCLUDING ANY CLAIM THAT ANY SUCH SUIT, ACTION, OR PROCEEDING SO BROUGHT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM.  NOTHING IN THIS AGREEMENT SHALL BE DEEMED TO PRECLUDE LENDER FROM BRINGING ANY SUIT, ACTION, OR PROCEEDING RELATING TO THIS AGREEMENT OR THE DEBT (AS SUCH TERM IS DEFINED IN THE NOTE) IN ANY OTHER JURISDICTION WHERE LENDER COULD OTHERWISE PROPERLY BRING SUCH SUIT, ACTION, OR PROCEEDING.  PLEDGOR

15

FURTHER CONSENTS AND AGREES TO SERVICE OF ANY SUMMONS, COMPLAINT OR OTHER LEGAL PROCESS IN ANY SUCH SUIT, ACTION OR PROCEEDING BY REGISTERED OR CERTIFIED U.S. MAIL, POSTAGE PREPAID, TO PLEDGOR AT THE ADDRESS SET FORTH ON PAGE 1 HEREOF, AND CONSENTS AND AGREES THAT SUCH SERVICE SHALL CONSTITUTE IN EVERY RESPECT VALID AND EFFECTIVE SERVICE (BUT NOTHING HEREIN SHALL AFFECT THE VALIDITY OR EFFECTIVENESS OF PROCESS SERVED IN ANY OTHER MANNER PERMITTED BY LAW).

26. <u>Miscellaneous</u>.

(a) In enforcing any rights hereunder or under the Note or Loan Documents, Pledgee shall not be required to resort to any particular security, right or remedy through foreclosure or otherwise or to proceed in any particular order or priority, or otherwise act or refrain from acting, and, to the extent permitted by law, Pledgor hereby waiving and releasing any right to a marshaling of assets or a sale in inverse order of alienation.

(b) Whenever any payment or performance of any Obligation shall be due on a day which is not a Business Day, such payment or performance shall be made on the next succeeding Business Day and such extension of time shall be included in the computation of interest and of the time period within which such payment may be made or performance rendered without an Event of Default occurring hereunder.

**[SIGNATURES COMMENCE ON THE FOLLOWING PAGE]**

**IN WITNESS WHEREOF,** the parties have caused this Agreement to be duly executed as of the date set forth above.

**PLEDGOR:**

**RIVER FUNDING LLC,** a New Jersey limited liability company

By: _____
Name: Seth Levine
Title:  Managing Member

**NORSE HOLDINGS, LLC,** a New York limited liability company

By: _____
Name: Seth Levine
Title:  Managing Member

[ADDITIONAL SIGNATURE PAGE FOLLOWS]

**PLEDGEE:**
**JLS EQUITIES, LLC,** a New York limited liability
company


By: *Jacob Sod*
Name/Title: Jacob Sod, Manager

## EXHIBIT A

FORM OF ACKNOWLEDGMENT AND CONSENT

[SEE ATTACHED]

## ACKNOWLEDGMENT AND CONSENT

**ORANGE NORSE LIMITED LIABILITY COMPANY**, a New Jersey limited liability company, **LENOX HUDSON LLC**, a New Jersey limited liability company, **LENOX TEMPLE LLC**, a New Jersey limited liability company and **TEANECK PLAZA VENTURES, LLC**, a New Jersey limited liability company, each having an address at 210 River St, Suite 24, Hackensack, New Jersey 07601 (collectively, "**Issuer**"), hereby acknowledges receipt of a copy of that certain Pledge and Security Agreement (the "**Pledge Agreement**") granted by **RIVER FUNDING LLC**, a New Jersey limited liability company and **NORSE HOLDINGS, LLC**, a New York limited liability company (collectively, the "**Pledgor**"), to and for the benefit of **JLS EQUITIES, LLC** (collectively with its successors and assigns, "**Pledgee**"), and acknowledges that Pledgor is bound thereby.

Dated:  As of January __, 2019

<u>ISSUER</u>:

**LENOX HUDSON LLC**, a New Jersey limited
liability company

By: _____
Name: Seth Levine
Title:  Manager

**LENOX TEMPLE LLC**, a New Jersey limited
liability company

By: _____
Name: Seth Levine
Title:  Manager

**TEANECK PLAZA VENTURES, LLC**, a New
Jersey limited liability company

By: _____
Name: Seth Levine
Title:  Manager

**ORANGE NORSE ~~LLC~~**, a New Jersey limited
liability company *Limited Liability Company*

By: _____
Name: Seth Levine
Title:  Manager

## EXHIBIT B

FORM OF INSTRUCTION TO REGISTER PLEDGE

[SEE ATTACHED]

## INSTRUCTION TO REGISTER PLEDGE

As of January __, 2019

To:     **ORANGE NORSE LIMITED LIABILITY COMPANY**, a New Jersey limited liability company, **LENOX HUDSON LLC**, a New Jersey limited liability company, **LENOX TEMPLE LLC**, a New Jersey limited liability company and **TEANECK PLAZA VENTURES, LLC**, a New Jersey limited liability company, each having an address at 210 River St, Suite 24, Hackensack, New Jersey 07601 (collectively, "**Issuer**")

In accordance with the requirements of that certain Pledge and Security Agreement dated as the date hereof (as it may be amended, supplemented or otherwise modified from time to time, the "**Pledge Agreement**"; capitalized used but not defined herein shall have the meanings given to them in the Pledge Agreement), granted by **RIVER FUNDING LLC**, a New Jersey limited liability company and **NORSE HOLDINGS, LLC**, a New York limited liability company (collectively, the "**Pledgor**") to and for the benefit of **JLS EQUITIES, LLC** (collectively with its successors and assigns, "**Pledgee**") you are hereby instructed, notwithstanding your and our understanding that the ownership interest described below is not a security under the Uniform Commercial Code, as a precaution in the event that such interest was nevertheless held to be a security, to register the pledge of the following interests as follows:

All right, title and interest now owned or hereafter acquired by Pledgor in the following:

(i)      all limited liability company membership interests, partnership interests, capital stock or other equity interests of, and all other right, title and interest now owned or hereafter acquired by Pledgor in and to Issuer, together with (a) all additional membership interests, partnership interests, capital stock or other equity interests in, each Issuer and options, warrants, and other rights now or hereafter acquired by Pledgor in respect of such membership interests, partnership interests, capital stock or other equity interests (whether in connection with any capital increase, recapitalization, reclassification, or reorganization of each Issuer or otherwise) and all other property, rights or instruments of any description at any time issued or issuable as an addition to or in substitution for such membership interests, partnership interests, capital stock or other equity interests; (b) all certificates, instruments, or other writings representing or evidencing interests in Issuer now owned or hereafter acquired by Pledgor, and all accounts and general intangibles arising out of, or in connection with, the interests in Issuer now owned or hereafter acquired by Pledgor; (c) any and all moneys or property due and to become due to Pledgor now or in the future in respect of the interests in Issuer, or to which Pledgor may now or in the future be entitled in its capacity as a member, partner, shareholder or other equity holder of Issuer, whether by way of a dividend, distribution, return of capital or otherwise; (d) all other claims which Pledgor now has or may in the future acquire in its capacity as a member, partner, shareholder or other equity holder of Issuer against Issuer and its property; and (e) all rights of the Pledgor under the Issuer Formation Agreement applicable to Issuer (and all other agreements, if any, to which Pledgor is a party from time to time which relate to its ownership of the interests in Issuer), including, without limitation, all

voting and consent rights of Pledgor arising thereunder or otherwise in connection with Pledgor's ownership of the interests in Issuer (collectively, the **"Pledged Interest"**);

(ii)     all right, title and interest of the Pledgor in, to and under any policy of insurance payable by reason of loss or damage to the Pledged Interest and any other Collateral;

(iii)    all "accounts", "general intangibles", "instruments" and "investment property" (in each case as defined in the Code) constituting or relating to the foregoing; and

(iv)    to the extent not otherwise part of the Pledged Interest, all Proceeds, income and profits thereof and all property received in exchange or substitution thereof, of any of the foregoing property of Pledgor.

You are hereby further authorized and instructed to execute and deliver to Pledgee a Confirmation Statement and Instruction Agreement, substantially in the form of Exhibit C to the Pledge Agreement and, to the extent provided more fully therein, to comply with the instructions of Pledgee in respect of the Collateral without further consent of, or notice to, Pledgor. Notwithstanding anything in this paragraph to the contrary, this instruction shall not be construed as expanding the rights of Pledgee to give instructions with respect to the Collateral beyond such rights set forth in the Pledge Agreement.

**[NO FURTHER TEXT ON THIS PAGE]**

**IN WITNESS WHEREOF,** the parties have caused this Agreement to be duly executed as of the date set forth above.

PLEDGOR:

**RIVER FUNDING LLC**, a New Jersey limited liability company

By: _____
Name: Seth Levine
Title:   Managing Member

**NORSE HOLDINGS, LLC**, a New York limited liability company

By: _____
Name: Seth Levine
Title:   Managing Member

[ADDITIONAL SIGNATURE PAGE FOLLOWS]

**ISSUER:**

**LENOX HUDSON LLC**, a New Jersey limited
liability company

By: _____
Name: Seth Levine
Title:  Manager

**LENOX TEMPLE LLC**, a New Jersey limited
liability company

By: _____
Name: Seth Levine
Title:  Manager

**TEANECK PLAZA VENTURES, LLC**, a New
Jersey limited liability company

By: _____
Name: Seth Levine
Title:  Manager

LIMITED LIABILITY COMPANY
**ORANGE NORSE** ~~LLC~~, a New Jersey limited
liability company

By: _____
Name: Seth Levine
Title:  Manager

PLEDGEE:

**JLS EQUITIES, LLC,** a New York limited liability company

By: _Jacob Sod_____
    Name/Title: Jacob Sod, Manager

## EXHIBIT C

FORM OF CONFIRMATION STATEMENT AND INSTRUCTION AGREEMENT

[SEE ATTACHED]

## CONFIRMATION STATEMENT AND INSTRUCTION AGREEMENT

As of January ___, 2019

To:     **JLS EQUITIES, LLC**, a New York limited liability company

Pursuant to the requirements of that certain Pledge and Security Agreement dated as the date hereof (as it may be amended, supplemented or otherwise modified from time to time, the "**Pledge Agreement**"; capitalized used but not defined herein shall have the meanings given to them in the Pledge Agreement), granted by **NORSE HOLDINGS, LLC**, a New York limited liability company and **RIVER FUNDING LLC**, a New Jersey limited liability company, each having an address at 210 River St, Suite 24, Hackensack, New Jersey 07601 (collectively, the "**Pledgor**") to and for the benefit of **JLS EQUITIES, LLC**, a New York limited liability company (collectively with its successors and assigns, "**Pledgee**"), this Confirmation Statement and Instruction Agreement relates to those ownership interests owned by Pledgor (the "**Pledged Interest**"), as further described on **Schedule I** to the Pledge Agreement, issued by **ORANGE NORSE LIMITED LIABILITY COMPANY**, a New Jersey limited liability company, **LENOX HUDSON LLC**, a New Jersey limited liability company, **LENOX TEMPLE LLC**, a New Jersey limited liability company and **TEANECK PLAZA VENTURES, LLC**, a New Jersey limited liability company, each having an address at 210 River St, Suite 24, Hackensack, New Jersey 07601 (collectively, "**Issuer**").

The Pledged Interest are "securities" (within the meaning of Sections 8-102(a)(15) and 8-103 of the Code), and therefore, for purposes of perfecting the security interest of Pledgee therein, Issuer agrees as follows:

On the date hereof, the registered owner of the Pledged Interest is Pledgor.

The registered pledgee of the Pledged Interest is:

**JLS EQUITIES, LLC**, a New York limited liability company

There are no liens of Issuer on the Pledged Interest or any adverse claims thereto for which Issuer has a duty under Section 8-403 of the Code.  Issuer has by book-entry registered the Pledged Interest in the name of the registered pledgee on or before the date hereof.  No other pledge is currently registered on the books and records of Issuer with respect to the Pledged Interest.

Until the Loan is paid in full (exclusive of provisions which shall survive full payment), Issuer agrees to:  (i) comply with the instructions of Pledgee sent in accordance with Section 20(i) of the Pledge Agreement, without any further consent from Pledgor or any other Person, in respect of the Collateral; and (ii) disregard any request made by Pledgor or any other Person which contravenes the instructions of Pledgee with respect to the Collateral. Notwithstanding anything in this paragraph, this Confirmation Statement and Instruction Agreement shall not be construed as expanding the rights of Pledgee to give instructions with respect to the Collateral beyond such rights set forth in the Pledge Agreement.

SIGNATURES TO
CONFIRMATION STATEMENT AND INSTRUCTION AGREEMENT

PLEDGOR:

**RIVER FUNDING LLC**, a New Jersey limited
liability company

By: _____

Name: Seth Levine
Title:  Managing Member

**NORSE HOLDINGS, LLC**, a New York limited
liability company

By: _____

Name: Seth Levine
Title:  Managing Member

**[ADDITIONAL SIGNATURE PAGE FOLLOWS]**

ISSUER:

**LENOX HUDSON LLC**, a New Jersey limited liability company

By: _____
Name: Seth Levine
Title:  Manager

**LENOX TEMPLE LLC**, a New Jersey limited liability company

By: _____
Name: Seth Levine
Title:  Manager

**TEANECK PLAZA VENTURES, LLC**, a New Jersey limited liability company

By: _____
Name: Seth Levine
Title:  Manager

**ORANGE NORSE ~~LLC~~** *Limited Liability Company*, a New Jersey limited liability company

By: _____
Name: Seth Levine
Title:  Manager

<u>EXHIBIT D</u>

FORM OF IRREVOCABLE PROXY COUPLED WITH INTEREST

[SEE ATTACHED]

## IRREVOCABLE PROXY COUPLED WITH INTEREST

The undersigned **NORSE HOLDINGS, LLC**, a New York limited liability company and **RIVER FUNDING LLC**, a New Jersey limited liability company, each having an address at 210 River St, Suite 24, Hackensack, New Jersey 07601 (collectively, the "**Member**") hereby irrevocably designates and appoints **JLS EQUITIES, LLC**, a New York limited liability company (collectively with its successors and assigns, "**Pledgee**"), to represent it at all annual and special meetings of the members of each of **ORANGE NORSE LIMITED LIABILITY COMPANY**, a New Jersey limited liability company, **LENOX HUDSON LLC**, a New Jersey limited liability company, **LENOX TEMPLE LLC**, a New Jersey limited liability company and **TEANECK PLAZA VENTURES, LLC**, a New Jersey limited liability company, each having an address at 210 River St, Suite 24, Hackensack, New Jersey 07601 (collectively, "**Issuer**"), and the Member hereby authorizes and empowers Pledgee to vote any and all membership interests of Issuer pledged by Member to Pledgee pursuant to that certain Pledge and Security Agreement dated as the date hereof (as it may be amended, restated, supplemented or otherwise modified from time to time, the "**Pledge Agreement**") granted by Member, as Pledgor, to and for the benefit of Pledgee, and to do all things which Member might do if present and acting itself.

With respect to Article 8 Matters, Pledgor hereby irrevocably grants and appoints Pledgee, from the date of this Agreement until the termination of this Agreement in accordance with its terms, as Pledgor's true and lawful proxy, for and in Pledgor's name, place and stead to vote the Pledged Interest in Issuer by Pledgor, whether directly or indirectly, beneficially or of record, now owned or hereafter acquired, with respect to such Article 8 Matters. The proxy granted and appointed in this paragraph shall include the right to sign Pledgor's name (as a member of Issuer) to any consent, certificate or other document relating to an Article 8 Matter and the Pledged Interests that applicable law may permit or require, to cause the Pledged Interest to be voted in accordance with the preceding sentence. Pledgor hereby represents and warrants that there are no other proxies and powers of attorney with respect to an Article 8 Matter and the Pledged Interest that Pledgor may have granted or entered into. Pledgor will not give a subsequent proxy or power of attorney or enter into any other voting agreement with respect to the Pledged Interest with respect to any Article 8 Matter and any attempt to do so with respect to an Article 8 Matter shall be void and of no effect.

This proxy is an irrevocable proxy coupled with an interest. Member recognizes that Pledgee has an interest in said Pledged Interest to secure the obligations of Issuer to Pledgee and, to the extent permitted by law, this proxy shall continue in full force and effect until all such obligations are paid in full.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

This proxy is issued pursuant to the Pledge Agreement and shall remain subject to the terms thereof and Pledgee shall not exercise any right or privileges granted therein unless and until the occurrence of events set forth in the Pledge Agreement which authorizes the voting of the Pledged Interest pursuant to this proxy.

Dated: As of January __, 2019

<div style="margin-left:40%">

**MEMBER:**

**RIVER FUNDING LLC**, a New Jersey limited liability company

By: _____
Name: Seth Levine
Title:   Managing Member

**NORSE HOLDINGS, LLC**, a New York limited liability company

By: _____
Name: Seth Levine
Title:   Managing Member

</div>

**SCHEDULE I**

| PLEDGOR | ISSUER | INTERESTS PLEDGED |
|---|---|---|
| River Funding LLC, a New Jersey limited liability company | Lenox Temple LLC, a New Jersey limited liability company | 100% membership interest |
| River Funding LLC, a New Jersey limited liability company | Lenox Hudson LLC, a New Jersey limited liability company | 100% membership interest |
| River Funding LLC, a New Jersey limited liability company | Teaneck Plaza Ventures, LLC, a New Jersey limited liability company | 100% membership interest |
| Norse Holdings, LLC, a New York limited liability company | Orange Norse Limited Liability Company, a New Jersey limited liability company | 100% membership interest |

## <u>SCHEDULE II</u>

| Pledgor | Chief Executive Office/ Principal Place of Business | Type of Entity | Jurisdiction of Incorporation or Formation | Name under which Pledgor does business, if other than its legal name | Date located at present address if less than six years |
|---|---|---|---|---|---|
| **Norse Holdings, LLC** | | Limited liability company | New York | N/A | N/A |
| **River Funding LLC** | | Limited liability company | New Jersey | N/A | N/A |

**<u>SCHEDULE III</u>**

**<u>FORM OF ASSIGNMENT OF MEMBERSHIP INTERESTS</u>**

**[SEE ATTACHED]**

## ASSIGNMENT OF MEMBERSHIP INTERESTS

      **NORSE HOLDINGS, LLC**, a New York limited liability company and **RIVER FUNDING LLC**, a New Jersey limited liability company, each having an address at 210 River St, Suite 24, Hackensack, New Jersey 07601 ("**Assignor**"), for Ten Dollars and other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, hereby sells, transfers, assigns, delivers, sets over and conveys to **JLS EQUITIES, LLC**, a New York limited liability company, its successors and assigns ("**Assignee**"), all of its right, title and interest in and to the interests identified on <u>Exhibit A</u> attached hereto (the "**Interests**") including, without limitation, all of Assignor's rights to, and interests in, any and all profits, distributions and other entitlements allocable to such Interests.

      Assignor represents and warrants to Assignee that none of the Interests has been sold, assigned, transferred, pledged, hypothecated or otherwise encumbered, in whole or in part, other than pursuant to this Assignment, and each of the Interests is being transferred free and clear of all liens, encumbrances, claims, security interest, rights of first refusal, options and liabilities of any kind or nature.  No person or entity has asserted any claims in respect of, or claimed any interest in, any of the Interests.

      [REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

**IN WITNESS WHEREOF,** Assignor has caused this Assignment to be executed as of January ___, 2019.

ASSIGNOR:

**RIVER FUNDING LLC,** a New Jersey limited liability company

By: _____
Name: Seth Levine
Title:  Managing Member

**NORSE HOLDINGS, LLC,** a New York limited liability company

By: _____
Name: Seth Levine
Title:  Managing Member

## EXHIBIT A

### Description of the Interests

All of Assignor's right, title and interest in and to Assignor's membership and management interest as follows:

| PLEDGOR | ISSUER | INTERESTS PLEDGED |
|---|---|---|
| River Funding LLC, a New Jersey limited liability company | Lenox Temple LLC, a New Jersey limited liability company | 100% membership interest |
| River Funding LLC, a New Jersey limited liability company | Lenox Hudson LLC, a New Jersey limited liability company | 100% membership interest |
| River Funding LLC, a New Jersey limited liability company | Teaneck Plaza Ventures, LLC, a New Jersey limited liability company | 100% membership interest |
| Norse Holdings, LLC, a New York limited liability company | Orange Norse Limited Liability Company, a New Jersey limited liability company | 100% membership interest |

JOINDER BY ISSUER

       The undersigned, being the limited liability companies whose membership interests are the subject of the Pledge and Security Agreement (Membership Interests) of even date herewith hereby acknowledges, agrees and consents to the terms of said Pledge and Security Agreement as of the ___ day of January, 2019.

**LENOX HUDSON LLC**, a New Jersey limited liability company

By: _____
Name: Seth Levine
Title:   Manager

**LENOX TEMPLE LLC**, a New Jersey limited liability company

By: _____
Name: Seth Levine
Title:   Manager

**TEANECK PLAZA VENTURES, LLC**, a New Jersey limited liability company

By: _____
Name: Seth Levine
Title:   Manager

*LLIMITED LIABILITY COMPANY*

**ORANGE NORSE ~~LLC~~,** a New Jersey limited liability company

By: _____
Name: Seth Levine
Title:   Manager

STATE OF NEW JERSEY  )
                      )  ss.:
COUNTY OF BERGEN      )

     On the ___ day of _____ in the year 2019, before me, the undersigned, a Notary Public in and for said State, personally appeared Seth Levine, manager of each of **ORANGE NORSE LLC**, a New Jersey limited liability company, **LENOX HUDSON LLC**, a New Jersey limited liability company, **LENOX TEMPLE LLC**, a New Jersey limited liability company and **TEANECK PLAZA VENTURES, LLC**, a New Jersey limited liability company, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

                                       _____
                                       Notary Public

                            **ANDREW SELEVAN**
                   **NOTARY PUBLIC OF NEW JERSEY**
                 **My Commission Expires 1/25/2021**

# EXHIBIT "C"

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT FILER (optional) | |
|---|---|
| THAO BUI | 7142508626 |

**B. E-MAIL CONTACT AT FILER (optional)**
thabui@firstam.com

**C. SEND ACKNOWLEDGMENT TO:** (Name and Address)

THAO BUI
901 S. 2nd St, Suite 201
Springfield, IL 62704
US

State of New Jersey
Department of the Treasury
Division of Revenue & Enterprise Services
UCC Section
Filed

Filing Number:53193223

01/18/19 12:20:03

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| RIVER FUNDING LLC | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 210 River St., Suite 24 | Hackensack | NJ | 07601 | US |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| Levine | Seth | | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 636 South Forest Drive | Teaneck | NJ | 07666 | US |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| JLS EQUITIES, LLC | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 930 E. County Line Rd., Suite 202 | Lakewood | NJ | 08701 | US |

4. COLLATERAL: This financing statement covers the following collateral

See attachment.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

| 6a. Check only if applicable and check only one box: | | | 6b. Check only if applicable and check only one box: | |
|---|---|---|---|---|
| ☐ Public-Finance Transaction | ☐ Manufactured-Home Transaction | ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien | ☐ Non-UCC Filing |

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGMENT TO:  (Name and Address)

Y. SCHWARTZ PC
930 E. COUNTY LINE RD., SUITE 202
LAKEWOOD, NEW JERSEY 08701

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| RIVER FUNDING LLC | | | | |
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 210 River St., Suite 24 | Hackensack | NJ | 07601 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| Levine | Seth | | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 636 South Forest Drive | Teaneck | NJ | 07666 | USA |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| JLS EQUITIES, LLC | | | | |
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 930 E. County Line Rd., Suite 202 | Lakewood | NJ | 08701 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
See attached Schedule A for a description of the collateral covered hereby.

The filer attests that the Collateral set forth in this Financing Statement is within the scope of the New Jersey Uniform Code - Secured Transactions pursuant to N.J.S.A. 12A:9-102 and N.J.S.A. 12A:9-109, as required by N.J.S.A. 12A:9-502.

| 5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative | | |
|---|---|---|
| 6a. Check only if applicable and check only one box: | | 6b. Check only if applicable and check only one box: |
| ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien ☐ Non-UCC Filing | |
| 7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor | | |

8. OPTIONAL FILER REFERENCE DATA:
File in the State of New Jersey

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)    International Association of Commercial Administrators (IACA)
Ucc New Filing: 2/5

## SCHEDULE A

### Description of Collateral

All of Debtor's right, title and interest to the following (the "Collateral"):

(i)     all of Debtor's interest in the capital of Issuer and Debtor's interest in all profits and distributions to which Debtor shall at any time be entitled in respect of the Pledged Interest;

(ii)    all of Debtor's right, title and interest to the assets of Issuer including, without limitation, real property, profits, revenues, operating accounts, account receivables, fixtures, chattels and articles of personal property;

(iii)   all other payments, if any, due or to become due to Debtor in respect of the Pledged Interest under or arising out of the Organizational Documents, whether as contractual obligations, damages, insurance proceeds, condemnation awards or otherwise;

(iv)    all of Debtor's claims, rights, powers, privileges, authority, options, security interests, liens and remedies, if any, under or arising out of the Organizational Documents or the ownership of the Pledged Interest pursuant thereto;

(v)     all present and future claims, if any, of Debtor against Issuer under or arising out of the Organizational Documents for monies loaned or advanced, for services rendered or otherwise;

(vi)    all of Debtor's rights, if any, in Issuer pursuant to the Organizational Documents or at law, to exercise and enforce every right, power, remedy, authority, option and privilege of the Debtor relating to the Pledged Interest, including any power to terminate, cancel or modify the Organizational Documents, to execute any instruments and to take any and all other action on behalf of and in the name of Debtor in respect of the Pledged Interest and Issuer, to make determinations, to exercise any election (including, but not limited to, election of remedies) or option or to give or receive any notice, consent, amendment, waiver or approval, together with full power and authority to demand, receive, enforce or collect any of the foregoing or any property of Issuer, to enforce or execute any checks, or other instruments or orders, to file any claims and to take any action in connection with any of the foregoing; and

(vii)   to the extent not otherwise included, all Proceeds of any or all of the foregoing.

## DEFINITIONS

"Code" means the Uniform Commercial Code from time to time in effect in the State of New Jersey; provided, however, that with respect to the perfection, the effect of perfection or non-perfection and the priority of the security interests granted hereunder, and with respect to the exercise of remedies with regard to such security interests, "Code" shall mean the Uniform Commercial Code as in effect in an applicable jurisdiction in accordance with applicable law.

"Issuer Formation Agreements" means the Organizational Documents of the entities comprising Issuer.

"Organizational Documents" means (i) with respect to a limited partnership, such Person's certificate of limited partnership, limited partnership agreement, voting trusts or similar arrangements applicable to any of its partnership interests, (ii) with respect to a limited liability company, such Person's certificate of formation, limited liability company agreement or other document affecting the rights of holders of limited liability company interests, and (iii) any and all agreements between any constituent member, partner or shareholder of the Person in question, including any contribution agreement or indemnification agreements. In each case, "Organizational Documents" shall include any indemnity, contribution, shareholders or other agreement among any of the owners of the entity in question.

"Person" means any individual, corporation, partnership, joint venture, limited liability company, estate, trust, unincorporated association, any federal, State, county or municipal government or any bureau, department or agency thereof and any fiduciary acting in such capacity on behalf of any of the foregoing.

"Pledged Interests" means all limited liability company membership interests, partnership interests, capital stock and other equity interests of, and all other right, title and interest now owned or hereafter acquired by Debtor in and to, each entity described on Schedule I attached hereto (each such entity, individually or collectively, as the context may require, hereinafter referred to as an "Issuer"), together with: (a) all

additional membership interests, partnership interests, capital stock and other equity interests in each Issuer, and options, warrants, and other rights now or hereafter acquired by Debtor in respect of such membership interests, partnership interests, capital stock and other equity interests (whether in connection with any capital increase, recapitalization, reclassification, or reorganization of each Issuer or otherwise) and all other property, rights and instruments of any description at any time issued or issuable as an addition to or in substitution for such membership interests, partnership interests, capital stock or other equity interests; (b) all certificates, instruments and other writings representing or evidencing interests in each Issuer now owned or hereafter acquired by Debtor, and all accounts and general intangibles arising out of, or in connection with, the interests in any Issuer now owned or hereafter acquired by Debtor; (c) any and all moneys or property due and to become due to Debtor now or in the future in respect of the interests in each Issuer, or to which Debtor may now or in the future be entitled in its capacity as a member, partner, shareholder or other equity holder of such Issuer, whether by way of a dividend, distribution, return of capital or otherwise; (d) all other claims which Debtor now has or may in the future acquire in its capacity as a member, partner, shareholder or other equity holder of any Issuer against any Issuer and its property; and (e) all rights of Debtor under each Issuer Formation Agreement applicable to each Issuer (and all other agreements, if any, to which a Debtor is a party from time to time which relate to its ownership of the interests in each Issuer) including, without limitation, all voting and consent rights of Debtor arising thereunder or otherwise in connection with Debtor's ownership of the interests in each Issuer.

"**Proceeds**" means (i) Debtor's share, right, title and interest in and to all distributions, monies, fees, payments, compensations and proceeds now or hereafter becoming due and payable to Debtor by each applicable Issuer with respect to the Pledged Interests whether payable as profits, distributions, asset distributions, repayment of loans or capital or otherwise and including all "proceeds" as such term is defined in Section 9-102(a)(64) of the Code; (ii) all contract rights, general intangibles, claims, powers, privileges, benefits and remedies of Debtor relating to the foregoing; and (iii) all cash and non-cash proceeds of any of the foregoing.

SCHEDULE I

| DEBTOR | ISSUER | INTERESTS PLEDGED |
|---|---|---|
| River Funding LLC, a New Jersey limited liability company | Lenox Temple LLC, a New Jersey limited liability company | 100% membership interest |
| River Funding LLC, a New Jersey limited liability company | Lenox Hudson LLC, a New Jersey limited liability company | 100% membership interest |
| River Funding LLC, a New Jersey limited liability company | Teaneck Plaza Ventures, LLC, a New Jersey limited liability company | 100% membership interest |

# EXHIBIT "D"

**BECKER & POLIAKOFF, LLP**
Paul H. Shur (020511977)
Sarah Klein, Esq. (164602015)
331 Newman Springs Road, Suite 225
Red Bank, New Jersey 07701
Tel. (732) 967-7112

**STARK & STARK**
**A Professional Corporation**
Timothy P. Duggan, Esq. (037691991)
993 Lenox Drive, Bldg. 2
Lawrenceville, NJ 08648-2389
(609) 896-9060

*Attorneys for Plaintiff JLS Equities LLC*

```
F I L E D

DEC 3 0 2020

James J. DeLuca, J.S.C.
```

| | |
|---|---|
| JLS EQUITIES LLC,<br><br>                              Plaintiff,<br><br>v.<br><br>HUTTON VENTURES LLC; ZF CAPITAL<br>HOLDINGS LLC; ASCEND RE PARTNERS<br>II, LLC; JG FUNDING CORP.; LENOX<br>REAL ESTATE PARTNERS LLC; LARRY<br>PORTAL; FRANK MAIORANO; GRACY<br>WEBERMAN; JAHN BRODWIN; DONALD<br>J. NOONE II; HUDSON NORSE LLC;<br>TEMPLE NORSE LLC; RIVER FUNDING<br>LLC; LENOX HUDSON LLC; LENOX<br>TEMPLE LLC; TEANECK PLAZA<br>VENTURES, LLC; SETH LEVINE;<br>UNKNOWN OWNER (OR UNKNOWN<br>CLAIMANT), HIS OR HER HEIRS,<br>DEVISEES AND PERSONAL<br>REPRESENTATIVES, AND HIS, HERS,<br>THEIR OR ANY OF THEIR SUCCESSORS<br>IN RIGHT, TITLE AND INTEREST.<br><br>                              Defendants. | SUPERIOR COURT OF NEW JERSEY<br>CHANCERY DIVISION: BERGEN<br>COUNTY<br><br>DOCKET NO.: BER-C-124-20<br><br>Civil Action<br><br>**CONSENT ORDER ENTERING<br>JUDGMENT OF FORECLOSURE<br>AGAINST DEFENDANTS<br>ASCEND RE PARTNERS II, LLC<br>AND LENOX REAL ESTATE PARTNERS<br>LLC AS TO CERTAIN OF PLAINTIFF'S<br>COLLATERAL AND OTHERWISE<br>RECOGNIZING CERTAIN PROPERTY<br>RIGHTS OF DEFENDANTS<br>ASCEND RE PARTNERS II, LLC AND<br>LENOX REAL ESTATE PARTNERS LLC** |

**THIS MATTER** having been opened to the Court on the joint application of Plaintiff, JLS

Equities LLC, a New York limited liability company ("JLS") by Becker & Poliakoff LLP, (Paul

H. Shur, Esq., appearing) and Defendants Ascend RE Partners II, LLC and Lenox Real Estate Partners LLC, Delaware limited liability companies (collectively, "Ascend") by Kasowitz Benson Torres LLP (Israel J. Atkin, Esq. appearing); and it appearing that Ascend has provided documentation substantiating ownership of 60% of the membership interests in Defendants Lenox Hudson LLC and Lenox Temple LLC, New Jersey limited liability companies (which 60% ownership interest is referred to herein as the "Ascend Property Rights"); and it further appearing that Ascend has acknowledged and agrees not to dispute that the Uniform Commercial Code Financing Statements filed on behalf of JLS in the New Jersey Department of the Treasury: (a) No. 53193223 recorded on January 18, 2019 as to defendant Seth Levine and (b) No. 53193223 recorded on January 18, 2019 as to defendant River Funding LLC, a New Jersey limited liability company, perfect JLS's security interest in 40% of the membership interests in Defendants Lenox Hudson LLC and Lenox Temple LLC (which 40% interest is referred to herein as the "JLS Collateral"); and it further appearing that JLS and Ascend have agreed that each has a concurrent property interest in the JLS Collateral and Ascend Property Rights, respectively; and it further appearing that, while reserving its legal claims and rights as against all parties other than JLS with respect to the JLS Collateral, Ascend has consented to foreclosure of JLS' security interest in the JLS Collateral and all other claims in and to the JLS Collateral and otherwise consents to the relief pleaded by JLS in its Complaint solely as to the JLS Collateral vis-à-vis Ascend; and good cause being shown;

IT IS on this **30** day of *December* , 2020, **ORDERED AND ADJUDGED:**

1. That Ascend hereby waives and releases any claim or objection to JLS' security interest in the JLS Collateral or JLS' foreclosure of its security interest in the JLS Collateral;

2

2.      That Ascend hereby withdraws any defense or objection to and otherwise does not object or interpose any defense to a judgment of foreclosure in favor of JLS on the JLS Collateral;

3.      That JLS hereby waives and releases any claim or objection to Ascend's claim to the Ascend Property Rights;

4.      That JLS' security interest in the JLS Collateral is concurrent in right and interest to Ascend's Property Rights such that JLS and Ascend shall share distributions, proceeds, income, and any other property rights pro rata and to the extent of their respective percentage ownership of or claims to Defendants Lenox Hudson LLC and Lenox Temple LLC that constitute the JLS Collateral and Ascend's Property Rights;

5.      That JLS hereby acknowledges and agrees that it has alleged in the complaint in this action no other claims against Ascend other than its claims as set forth in Count Three of the Complaint;

6.      That Ascend hereby consents to the relief pleaded against it in the Complaint as to the JLS Collateral, and that a judgment be and the same is hereby entered as follows:

   a.   That JLS has a first priority security interest in the JLS Collateral;

   b.   That JLS may foreclose its security interest in the JLS Collateral and to dispose of it in accordance with N.J.S.A. 12A:9-601 and applicable law at a foreclosure sale;

   c.   That the procedure and disposition of JLS Collateral herein provided is a commercially reasonable disposition in accordance with N.J.S.A. 12A:9-627;

   d.   That JLS may apply the proceeds of such disposition as herein provided to pay the Note defined in the Complaint including but not limited to principal, interest and attorney's fees in accordance with N.J.S.A. 12A:9-615;

3

    e.   That any transferee of such foreclosure takes free of and discharges any claim that Ascend has or may claim to have against the JLS Collateral; and

    f.   That JLS may recover its attorney's fees and costs incurred in this proceeding from the proceeds of such disposition.

7.    That both JLS and Ascend reserve (i) all rights and claims against other parties in this action and (ii) any claims each may have against the other, if any; except that Ascend hereby releases and waives all rights and claims against the JLS Collateral and JLS hereby releases and waives all rights and claims against Ascend's Property Rights;

8.    That both JLS and Ascend hereby acknowledge and agree that this Consent Order and any final judgment or foreclosure based on this Consent Order shall not constitute collateral estoppel or res judicata as to any matter in dispute or that may be in dispute between them or with any third party other than with respect to their respective claims to the JLS Collateral and Ascend's Property Rights;

9.    That, except as otherwise provided in this Order, this action is dismissed with prejudice as to Ascend; and it is further

**ORDERED** that a true copy of this Order shall be served upon all other parties of record within seven (7) days of receipt by Plaintiff.

HON. JAMES J. DeLUCA, J.S.C.

4

We hereby consent to the form and entry of the within Order.

Attorneys for Plaintiff
*JLS Equities LLC*

BECKER & POLIAKOFF, LLP

By: _____
           Paul H. Shur

Dated: _____ 12/15/2020 _____


Attorneys for Defendants
*Ascend RE Partners II, LLC and Lenox Real Estate Partners LLC*

KASOWITZ BENSON TORRES LLP

By: ____ */s/ Israel J Atkin* ____
           Israel J. Atkin

Dated: 12/8/20 _____


STARK & STARK
**A Professional Corporation**

By: _____
           Timothy P. Duggan

Dated: 12-15-2020 _____

# EXHIBIT "E"

**BECKER & POLIAKOFF, LLP**
Paul H. Shur (020511977)
Sarah Klein, Esq. (164602015)
331 Newman Springs Road, Suite 225
Red Bank, New Jersey 07701
Tel. (732) 967-7112

**STARK & STARK**
**A Professional Corporation**
Timothy P. Duggan, Esq. (037691991)
993 Lenox Drive, Bldg. 2
Lawrenceville, NJ 08648-2389
(609) 896-9060

*Attorneys for Plaintiff JLS Equities LLC*

F I L E D

AUG 19 2020

James J. DeLuca, J.S.C.

| | |
|---|---|
| JLS EQUITIES LLC,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>HUTTON VENTURES LLC; ZF CAPITAL HOLDINGS LLC; ASCEND RE PARTNERS II, LLC; JG FUNDING CORP.; LENOX REAL ESTATE PARTNERS LLC; LARRY PORTAL; FRANK MAIORANO; GRACY WEBERMAN; JAHN BRODWIN; DONALD J. NOONE II; HUDSON NORSE LLC; TEMPLE NORSE LLC; RIVER FUNDING LLC; LENOX HUDSON LLC; LENOX TEMPLE LLC; TEANECK PLAZA VENTURES, LLC; SETH LEVINE; UNKNOWN OWNER (OR UNKNOWN CLAIMANT), HIS OR HER HEIRS, DEVISEES AND PERSONAL REPRERSENTATIVES, AND HIS, HERS, THEIR OR ANY OF THEIR SUCCESSORS IN RIGHT, TITLE AND INTEREST.<br><br>　　　　　　　Defendants. | :   SUPERIOR COURT OF NEW JERSEY<br>:   CHANCERY DIVISION: BERGEN<br>    COUNTY<br>:<br>    DOCKET NO.: BER-C-124-20<br>:<br>:   <u>Civil Action</u><br>:<br>:   **ORDER PERMITTING SERVICE**<br>    **BY PUBLICATION PURSUANT TO**<br>    **R. 4:4-5(a)(3) AND R. 4:26-5(c)**<br>:<br>:<br>:<br>:<br>:<br>: |

**THIS MATTER** having been brought before the Court by Becker & Poliakoff, LLP, co-

counsel for Plaintiff, JLS Equities, LLC ("Plaintiff") for an Order, pursuant to <u>R.</u> 4:4-5(a)(3) and

{N0271969 3 }

R. 4:26-5(c), permitting service by publication upon defendant "Unknown Owner (or Unknown Claimant), His or Her Heirs, Devisees and Personal Representatives, and His, Hers, Their or Any of Their Successors in Right, Title and Interest" (the "Unknown Owner"); and for good cause shown;

IT IS, on this _19_ day of _August_, 2020

**ORDERED** that Plaintiff is permitted to effectuate service on the Unknown Owner by publication of the attached form of notice once in <u>The Bergen Record</u>; and it is further

**ORDERED** that such publication shall constitute good and effective service on the Unknown Owner;

**ORDERED** that a true copy of this Order shall be served upon all other parties of record within seven (7) days of receipt by Plaintiff. **X**

A ORDER IS ATTACHED HEREWIG
AND INCORPORATED HEREIN.

JAMES J. DeLUCA, J.S.C.

_X_ Unopposed

_____ Opposed

X The court will conduct A CASE MANAGEMENT Conference in this Action on September 16, 2020 @ 9:00 A.M.

# JLS EQUITIES, LLC v. HUTTON VENTURES, LLC, et al.
## DOCKET No. C-124-20

## RIDER TO THE ORDER DATED AUGUST 19, 2020

### Introduction

Before the court is a motion (the "Motion") filed on behalf of JLS Equities, LLC ("Plaintiff") seeking to permit service by publication upon unidentified members, if any, of Lenox Temple, LLC ("Lenox Temple"), Lenox Hudson, LLC ("Lenox Hudson"), and Teaneck Plaza Ventures, LLC ("Teaneck Plaza").  The Motion is unopposed and was decided on the papers.

### Background

On July 1, 2020, Plaintiff filed its complaint asserting that: (i) River Funding, LLC ("River Funding") is indebted to Plaintiff pursuant to a promissory note dated January 17, 2019 in the principal amount of $1,100,000, plus interest and attorney's fees and (ii) to secure the amounts owed to the Plaintiff, River Funding pledged to Plaintiff a security interest in the membership interests in Lenox Temple, Lenox Hudson and Teaneck Plaza (the "Collateral").  Pursuant to its complaint, Plaintiff seeks to foreclose upon the Collateral.  See Complaint at ¶ 21.  Lenox Temple, Lenox Hudson and Teaneck Plaza each own one parcel of real estate as follows:  Lenox Hudson, 107 Hudson St., Hackensack, NJ; Lenox Temple, 54-78 Temple Ave., Hackensack, NJ; and Teaneck Plaza, 1407 Palisade Ave., Teaneck, NJ.  Plaintiff's complaint also alleges that Seth Levine ("Levine"), the managing member of River

Funding, fraudulently orchestrated the pledging of Collateral for the Loan. Id. at ¶ 32.

Pursuant to the Motion, Plaintiff seeks authority to publish a notice of the action in order to serve all potential members of any entity which pledged a security interest in the membership interests in lieu of personal service. Plaintiff asserts that due to the extent of Levine's alleged fraud, there may be several yet-unidentified members (the "Unknown Owners") of Lenox Hudson, Lenox Temple and Teaneck Plaza that Plaintiff is unaware of and has not been able to serve.

Plaintiff asserts that it has undertaken due diligence to determine who may have a claim to the Collateral. See memorandum of law dated July 2, 2020 submitted in support of the Motion (hereinafter "Plaintiff's Brief") at page 2. Plaintiff asserts that it has conducted a search of New Jersey Secretary of State records, as well as review of the dockets of other actions involving Levine. Id. at 3. Plaintiff asserts that the due diligence searches revealed that the membership interests in Lenox Temple, Lenox Hudson and Teaneck Plaza may have been fraudulently sold multiple times by Levine. Id.

## Rule of Law

Rule 4:4-5 provides that in actions affecting specific property, or any interest therein, or any res within the jurisdiction of the court . . . (a)(3) "service may be made by publication of a notice to absent defendants once in a newspaper published or general circulation in the county in which the venue is laid . . ." Service of process by

publication requires that the notice be reasonably calculated to apprise interest

parties of the action and inform the parties an opportunity to present any objection.

See <u>Mullane v. Central Hanover Bank & Trust Co.,</u> 339 U.S. 306, 314 (1950).

## Discussion

Here, the court is satisfied that Plaintiff has made diligent inquiry as to any

party who may have an interest in the Collateral. The proposed form of notice,

provided with the moving papers, is reasonably calculated to apprise any interested

party of the pending action, specifically mentions the Collateral, and provides any

interested party with instructions on how to respond to the Complaint.

Additionally, the court sua sponte raises whether this action is properly

brought in the Chancery Division. Upon considering the matter, the court is satisfied

that this matter is properly before the Chancery Division. <u>Rule</u> 4:3-1 provides that

actions in which the plaintiff's primary relief sought is equitable in nature shall be

filed in the Chancery Division, General Equity, even if the plaintiff seeks legal relief

in addition to the equitable relief. Further, New Jersey courts have long held that

adjudication of security interests in personal property transactions are equitable

matters which are appropriately filed in Chancery. <u>See</u> <u>St. Abrams v. Brown</u>, 122

N.J. Eq. 563 (Ch. 1937); <u>see</u> <u>Maplewood Bank & Tr. v. Sears, Roebuck & Co.</u>, 265 N.J.

Super. 25, 32 (App. Div. 1993), <u>aff'd sub nom.</u> <u>Maplewood Bank & Tr. Co. v. Sears,</u>

<u>Roebuck & Co.,</u> 135 N.J. 97 (1994). Here, Plaintiff has brought an action pertaining

to a security interest, and the court finds that the matter is properly brought before the Chancery Division.

## Conclusion

For the reasons set forth above, the Motion is granted.

### FORM OF NOTICE

SUPERIOR COURT OF NEW JERSEY
CHANCERY DIVISION: BERGEN COUNTY

DOCKET NO.: BER-C-124-20

PLAINTIF:       JLS EQUITIES LLC

DEFENDANTS:     HUTTON VENTURES LLC, ET AL.

TO:             UNKNOWN OWNER (OR UNKNOWN CLAIMANT), HIS OR HER
                HEIRS, DEVISEES AND PERSONAL REPERSENTATIVES, AND HIS,
                HERS, THEIR OR ANY OF THEIR SUCCESSORS IN RIGHT, TITLE
                AND INTEREST

REGARDING:      TO ANYONE WHO MAY CLAIM TO OWN AN INTEREST IN LENOX
                HUDSON LLC, LENOX TEMPLE LLC, AND/OR TEANECK PLAZA
                VENTURES, LLC, WHICH ARE NEW JERSEY LIMITED LIABILITY
                COMPANIES

From The State of New Jersey To The Defendant(s) Named Above:

SUMMARY OF LAWSUIT:     The plaintiff, named above, has filed a lawsuit against you
                        in the Superior Court of New Jersey. The plaintiff, JLS
                        Equities, LLC, is foreclosing its security interest on all of the
                        ownership interests in Lenox Hudson LLC, Lenox Temple
                        LLC and/or Teaneck Plaza Ventures, LLC as evidenced by
                        a UCC financing statement filed with the New Jersey
                        Department of the Treasury on January 18, 2019, bearing
                        filing number 53193223.

HOW TO RESPOND:         If you dispute this complaint, you or your attorney must file
                        a written answer or motion and proof of service with the
                        deputy clerk of the Superior Court in the county listed above
                        within 35 days from the date you received this summons, not
                        counting the date you received it. (A directory of the
                        addresses of each deputy clerk of the Superior Court is
                        available in the Civil Division Management Office in the
                        county      listed      above      and      online      at
                        http://www.njcourts.gov/forms/10153_deptyclerklawref.pd
                        f.) A filing fee payable to the Treasurer, State of New Jersey
                        and a completed Case Information Statement (available from
                        the deputy clerk of the Superior Court) must accompany
                        your answer or motion when it is filed. You must also send
                        a copy of your answer or motion to plaintiff's attorney whose

{N0271969 3 }

name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.

*/s/Michelle M. Smith*
Michelle M. Smith
Clerk of the Superior Court

{N0271969 3 }                    4

# EXHIBIT "F"

**BECKER & POLIAKOFF, LLP**
Paul H. Shur, Esq. (020511977)
Sarah Klein, Esq. (164602015)
331 Newman Springs Road, Suite 225
Red Bank, New Jersey 07701
Tel. (732) 967-7112

**STARK & STARK**
**A Professional Corporation**
Timothy P. Duggan, Esq. (037691991)
993 Lenox Drive, Bldg. 2
Lawrenceville, NJ 08648-2389
(609) 896-9060

*Attorneys for Plaintiff JLS Equities LLC*

```
FILED
DEC 04 2020
James J. DeLuca, J.S.C.
SUPERIOR COURT BERGEN COUNTY
FILED
DEC 04 2020
DEPUTY CLERK
```

| | |
|---|---|
| JLS EQUITIES LLC,<br><br>           Plaintiff,<br><br>v.<br><br>HUTTON VENTURES LLC; ZF CAPITAL HOLDINGS LLC; ASCEND RE PARTNERS II, LLC; JG FUNDING CORP.; LENOX REAL ESTATE PARTNERS LLC; LARRY PORTAL; FRANK MAIORANO; GRACY WEBERMAN; JAHN BRODWIN; DONALD J. NOONE II; HUDSON NORSE LLC; TEMPLE NORSE LLC; RIVER FUNDING LLC; LENOX HUDSON LLC; LENOX TEMPLE LLC; TEANECK PLAZA VENTURES, LLC; SETH LEVINE; UNKNOWN OWNER (OR UNKNOWN CLAIMANT), HIS OR HER HEIRS, DEVISEES AND PERSONAL REPPERSATIVES, AND HIS, HERS, THEIR OR ANY OF THEIR SUCCESSORS IN RIGHT, TITLE AND INTEREST.<br><br>           Defendants. | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION: BERGEN COUNTY<br><br>DOCKET NO.: BER-C-124-20<br><br><u>Civil Action</u><br><br>**FINAL JUDGMENT BY DEFAULT IN FORECLOSURE AGAINST HUDSON NORSE LLC, TEMPLE NORSE LLC, LENOX HUDSON LLC, LENOX TEMPLE LLC, TEANECK PLAZA VENTURES, LLC, SETH LEVINE, UNKNOWN OWNER (OR UNKNOWN CLAIMANT), HIS OR HER HEIRS, DEVISEES AND PERSONAL REPRESENTATIVES, AND HIS, HERS, THEIR OR ANY OF THEIR SUCCESSORS IN RIGHT, TITLE AND INTEREST AND OTHER RELIEF AS TO <u>RIVER FUNDING LLC</u>** |

    **THIS MATTER** having been opened to the Court by Becker & Poliakoff, LLP, (Paul H.

Shur, Esq., appearing)  attorneys for plaintiff, JLS Equities LLC ("JLS") upon notice to all parties,

{N0296099 2 }

for an Order entering final judgment by default in foreclosure against Hudson Norse LLC, Temple

Norse LLC, Lenox Hudson LLC, Lenox Temple LLC, Teaneck Plaza Ventures, LLC, Seth Levine,

and Unknown Owner (or Unknown Claimant), His or Her Heirs, Devisees and Personal

Representatives, and His, Hers, Their, or Any of Their Successors in Right, Title and Interest and

other relief as to River Funding LLC; and it appearing that Hudson Norse LLC, Temple Norse

LLC, Lenox Hudson LLC, Lenox Temple LLC, Teaneck Plaza Ventures, LLC, Seth Levine, and

Unknown Owner (or Unknown Claimant), His or Her Heirs, Devisees and Personal

Representatives, and His, Hers, Their, or Any of Their Successors in Right, Title and Interests and

River Funding LLC having been properly served; and the time for Hudson Norse LLC, Temple

Norse LLC, Lenox Hudson LLC, Lenox Temple LLC, Teaneck Plaza Ventures, LLC, Seth Levine,

and Unknown Owner (or Unknown Claimant), His or Her Heirs, Devisees and Personal

Representatives, and His, Hers, Their, or Any of Their Successors in Right, Title and Interest and

River Funding LLC to answer having expired and not otherwise been extended; and it appearing

that proof of service upon Hudson Norse LLC, Temple Norse LLC, Lenox Hudson LLC, Lenox

Temple LLC, Teaneck Plaza Ventures, LLC, Seth Levine, and Unknown Owner (or Unknown

Claimant), His or Her Heirs, Devisees and Personal Representatives, and His, Hers, Their, or Any

of Their Successors in Right, Title and Interest and River Funding LLC having been filed herein;

and JLS having submitted sufficient proofs for the entry of final judgment by default against

Hudson Norse LLC, Temple Norse LLC, Lenox Hudson LLC, Lenox Temple LLC, Teaneck Plaza

Ventures, LLC, Seth Levine, and Unknown Owner (or Unknown Claimant), His or Her Heirs,

Devisees and Personal Representatives, and His, Hers, Their, or Any of Their Successors in Right,

Title and Interests; and for good cause shown∧ *And for the reasons set forth on the record on December 4, 2020*

    **IT IS** on this _____4_____ day of ___December___, 2020,

**ORDERED AND ADJUDGED AS FOLLOWS:**

1.       That final judgment of foreclosure is hereby entered in favor of JLS with respect to

Uniform Commercial Code Financing Statements filed on behalf of JLS in the New Jersey

Department of the Treasury: (a) No. 53193223 recorded on January 18, 2019 as to defendant Seth

Levine and (b) No. 53193223 recorded on January 18, 2019 as to defendant River Funding LLC,

A New Jersey limited liability company ("JLS UCC") as against Hudson Norse LLC, Temple

Norse LLC, Lenox Hudson LLC, Lenox Temple LLC, Teaneck Plaza Ventures, LLC, Seth Levine,

and Unknown Owner (or Unknown Claimant), His or Her Heirs, Devisees and Personal

Representatives, and His, Hers, Their, or Any of Their Successors in Right, Title and Interests with

respect to the Collateral described in the JLS UCC and the Complaint, including but not limited to

all membership interests in and to Lenox Hudson LLC, Lenox Temple LLC and Teaneck Plaza

Ventures, LLC and the proceeds of such membership interests (collectively, "Collateral") such

that Hudson Norse LLC, Temple Norse LLC, Lenox Hudson LLC, Lenox Temple LLC, Teaneck

Plaza Ventures, LLC, Seth Levine, and Unknown Owner (or Unknown Claimant), His or Her

Heirs, Devisees and Personal Representatives, and His, Hers, Their, or Any of Their Successors in

Right, Title and Interests are hereby adjudged and declared (a) to no longer have and be foreclosed

of any ownership, claim, lien, security interest or other entitlement to the Collateral, (b) to have

waived any further rights with respect to the Collateral, and (c) that Hudson Norse LLC, Temple

Norse LLC, Lenox Hudson LLC, Lenox Temple LLC, Teaneck Plaza Ventures, LLC, Seth Levine,

and Unknown Owner (or Unknown Claimant), His or Her Heirs, Devisees and Personal

Representatives, and His, Hers, Their, or Any of Their Successors in Right, Title and Interests and

all persons or entities taking, holding or claiming on their behalf stand absolutely debarred and

foreclosed of and from all equity of redemption of in and to the Collateral by virtue of this Judgment.

2.     That JLS may proceed to liquidate, sell, lease or dispose the Collateral in accordance with law and in particular <u>N.J.S.A.</u> 12A:9-610 ("Disposition") and that JLS is entitled to have the sum of $1,100,000.00 together with interest,  together with costs of suit and reasonable counsel fees to be hereafter determined at the time of final judgment raised and paid out of the Collateral at such Disposition without further notice to Hudson Norse LLC, Temple Norse LLC, Lenox Hudson LLC, Lenox Temple LLC, Teaneck Plaza Ventures, LLC, Seth Levine, and Unknown Owner (or Unknown Claimant), His or Her Heirs, Devisees and Personal Representatives, and His, Hers, Their, or Any of Their Successors in Right, Title and Interests and River Funding LLC and that JLS may duly recover against Hudson Norse LLC, Temple Norse LLC, Lenox Hudson LLC, Lenox Temple LLC, Teaneck Plaza Ventures, LLC, Seth Levine, and Unknown Owner (or Unknown Claimant), His or Her Heirs, Devisees and Personal Representatives, and His, Hers, Their, or Any of Their Successors in Right, Title and Interests and all persons or entities taking, holding, or claiming on behalf of Hudson Norse LLC, Temple Norse LLC, Lenox Hudson LLC, Lenox Temple LLC, Teaneck Plaza Ventures, LLC, Seth Levine, and Unknown Owner (or Unknown Claimant), His or Her Heirs, Devisees and Personal Representatives, and His, Hers, Their, or Any of Their Successors in Right, Title and Interests possession of the  Collateral and that a Writ of Possession issue thereon;

3.     That at such Disposition an execution for that purpose duly issue by this Court to the Sheriff if required by JLS to effectuate the Disposition as herein provided and that in the event surplus proceeds be realized that such surplus be deposited into this Court to abide further

{N0296099 2 }                                                4

order of this Court and that the Sheriff make a report of any Disposition in which a Sheriff

participates;

    4.    That any transferee of any Collateral hereby foreclosed at such Disposition takes

free of and discharges any claims that Hudson Norse LLC, Temple Norse LLC, Lenox Hudson

LLC, Lenox Temple LLC, Teaneck Plaza Ventures, LLC, Seth Levine, and Unknown Owner (or

Unknown Claimant), His or Her Heirs, Devisees and Personal Representatives, and His, Hers,

Their, or Any of Their Successors in Right, Title and Interests may have to such Collateral;

    5.    That JLS is hereby adjudged to have a first priority security interest in the Collateral

as against Hudson Norse LLC, Temple Norse LLC, Lenox Hudson LLC, Lenox Temple LLC,

Teaneck Plaza Ventures, LLC, Seth Levine, and Unknown Owner (or Unknown Claimant), His or

Her Heirs, Devisees and Personal Representatives, and His, Hers, Their, or Any of Their

Successors in Right, Title and Interests;

    6.    That this proceeding and the service of process effectuated therewith shall be

deemed notice of such Disposition as required by N.J.S.A. 12A:9-613 as to Hudson Norse LLC,

Temple Norse LLC, Lenox Hudson LLC, Lenox Temple LLC, Teaneck Plaza Ventures, LLC, Seth

Levine, and Unknown Owner (or Unknown Claimant), His or Her Heirs, Devisees and Personal

Representatives, and His, Hers, Their, or Any of Their Successors in Right, Title and Interests and

River Funding LLC;

    7.    That the procedure and Disposition of Collateral herein provided is a

commercially reasonable disposition in accordance with N.J.S.A. 12A:9-627 as to Hudson Norse

LLC, Temple Norse LLC, Lenox Hudson LLC, Lenox Temple LLC, Teaneck Plaza Ventures,

LLC, Seth Levine, and Unknown Owner (or Unknown Claimant), His or Her Heirs, Devisees

{N0296099 2 }                                          5

and Personal Representatives, and His, Hers, Their, or Any of Their Successors in Right, Title and Interests;

8.      That River Funding LLC is adjudged to have received notice of these proceedings and is adjudged to have waived any objection to the Disposition by its default and failure to appear in these proceedings.

9.      That a true copy of this Judgment shall be served by JLS on all Defendants who have appeared in this action and on Hudson Norse LLC, Temple Norse LLC, Lenox Hudson LLC, Lenox Temple LLC, Teaneck Plaza Ventures, LLC, Seth Levine, and River Funding LLC by regular mail made pursuant to R. 4:43-2 (except Unknown Owner (or Unknown Claimant), His or Her Heirs, Devisees and Personal Representatives, and His, Hers, Their, or Any of Their Successors in Right, Title and Interests pursuant to Rule 1:1-2) no later than seven (7) days from receipt by the attorneys for Plaintiff.

_____
Hon. James J. DeLuca J.S.C.


___ Opposed

X Unopposed