# Exhibit J

| | | |
|---|---|---|
| John S. Hogan<br>Bergen County Clerk<br><br>**Bergen County Clerk**<br>One Bergen County Plaza<br>Hackensack, NJ 07601<br>(201) 336-7000<br>www.bergencountyclerk.org/ |  | <br><br>**INSTRUMENT # 19-061097**<br>**V 03349 2263**<br>RECORDED DATE: 09/16/2019 09:15:02 AM |

| | |
|---|---|
| **Document Type:** Mortgage | Transaction #: 9286128<br>Document Page Count: 18<br>Operator Id: CLERK |
| **RETURN TO:**<br>MADISON TITLE AGENCY, LLC<br>1125 OCEAN AVENUE<br>LAKEWOOD  NJ  08701<br>ERECORDED | **SUBMITTED BY:**<br>Madison Title Agency, LLC<br><br><br><br>(732) 333-2667 |
| **PRIMARY NAME**<br>  TEANECK PLAZA VENTURES LLC | **SECONDARY NAME**<br>  J & J CAPITAL REALTY ASSOCIATES LLC |
| **ADDITIONAL PRIMARY NAMES**<br>  LENOX TEMPLE LLC | **ADDITIONAL SECONDARY NAMES** |

**MARGINAL REFERENCES:**

| | |
|---|---|
| **DOCUMENT DATE:** 01/15/2019<br>**MUNICIPALITY:** TEANECK<br><br>**FEES / TAXES:**<br>  Recording Fee: Mortgage           $30.00<br>  Additional Pages Fee                $170.00<br>  Homeless Trust Fund - Bergen County  $3.00<br>**Total:**                                        $203.00 | INSTRUMENT #: 19-061097<br>Recorded Date: 09/16/2019 09:15:02 AM<br><br>I hereby CERTIFY that this document is recorded in the Clerk's Office in Bergen County, New Jersey.<br><br>*John S. Hogan*<br>**John S. Hogan**<br>**Bergen County Clerk**<br><br><br>**Recording Fees:** $203.00<br>**Realty Transfer Tax Fees:** $0.00 |

## OFFICIAL RECORDING COVER PAGE

Page 1 of 19

# PLEASE DO NOT DETACH
### THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT

NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION.

After Recording Return To:

**HERBERT TEPFER, ESQ.**
**TEPFER & TEPFER P.C.**
**4429 18th AVENUE**
**BROOKLYN, NY 11204-1202**
**718-854-7200**
**TepferLaw@GMail.com**

_____ [Space Above This Line For Recording Data] _____

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)    "**Security Instrument**" means this document, which is dated JANUARY 15, 2019, together with all Riders to this document.
(B)    "**Borrower**" is TEANECK PLAZA VENTURES LLC, as to PARCEL 1 and LENOX TEMPLE LLC, as to PARCEL 2, both with an address at, 210 RIVER ST, STE 24, HACKENSACK, NJ 07601, Borrower is the mortgagor under this Security Instrument.
(C)    "**Lender**" is J & J CAPITAL REALTY ASSOCIATES LLC, with an address at, 4429 18TH AVE, BROOKLYN, NY 11204. Lender is a New York LLC organized and existing under the laws of New York. Lender's address is 4429 18TH AVE, BROOKLYN, NY 11204. Lender is the mortgagee under this Security Instrument.
(D)    "**Note**" means the promissory note signed by Borrower and dated JANUARY 15, 2019. The Note states that Borrower owes Lender **EIGHT HUNDRED TWENTY FIVE THOUSAND ($825,000.00) DOLLARS** plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than One (1) year from the date hereof.
(E)    "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property."
(F)    "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(G)     **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider       ☐ Condominium Rider              ☐ Second Home Rider
☐ Balloon Rider               ☐ Planned Unit Development Rider  ☑ Other(s) [specify] Mortgage Rider
☐ 1-4 Family Rider            ☐ Biweekly Payment Rider

(H)     **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(I)     **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(J)     **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(K)     **"Escrow Items"** means those items that are described in Section 3.

(L)     **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(M)     **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(N)     **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(O)     **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P)     **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For these purposes, Borrower does hereby mortgage, grant and convey to Lender the following described property located in the Township of: **SEE LEGAL DESCRIPTION**

[Type of Recording Jurisdiction]    [Name of Recording Jurisdiction]

which currently has the address of:

PARCEL 1: 1407 PALISADE AVE, TEANECK, NJ 07666
County: BERGEN Block: 5008 Lot: 1

PARCEL 2: 54-78 TEMPLE AVE, HACKENSACK, NJ 07601
County: BERGEN Block: 511 Lot: 11

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.
   Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future. If Lender accepts such payments, it shall apply such payments at the time such payments are accepted. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.
2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each

Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by

RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is

not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** OMIT

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument,

including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage**

Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of

Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or e-mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall

not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security

Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property; (e) the Borrower's right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure; and (f) any other disclosure required under the Fair Foreclosure Act, codified at §§ 2A:50-53 et seq. of the New Jersey Statutes, or other Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence permitted by Rules of Court.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing

this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. No Claim of Credit for Taxes.** Borrower will not make deduction from or claim credit on the principal or interest secured by this Security Instrument by reason of any governmental taxes, assessments or charges. Borrower will not claim any deduction from the taxable value of the Property by reason of this Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____  
TEANECK PLAZA VENTURES LLC, as to PARCEL 1  
BY: SETH LEVINE, Managing Member

_____  
LENOX TEMPLE LLC, as to PARCEL 2  
BY: SETH LEVINE, Managing Member

_____ [Space Below This Line For Acknowledgment] _____

State of New Jersey, County of Bergen ) ss.:

On the 15th day of JANUARY, in the year 2019 before me, the undersigned, personally appeared  
**SETH LEVINE** *  
personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____  
Notary Public

* of Teaneck Plaza Ventures LLC and Lenox Temple LLC

**ANDREW SELEVAN**  
**NOTARY PUBLIC OF NEW JERSEY**  
**My Commission Expires 1/25/2021**

# MORTGAGE RIDER

Rider to annexed mortgage dated JANUARY 15, 2019, between

**TEANECK PLAZA VENTURES LLC, as to PARCEL 1 and**
**LENOX TEMPLE LLC, as to PARCEL 2,**
as Mortgagor(s),

and

**J & J CAPITAL REALTY ASSOCIATES LLC,**
as Mortgagee(s).

25. In the event of the Mortgagor(s) default in the payment of taxes then at Mortgagee(s) option the Mortgagor of said premises, shall deposit with the Mortgagee, one-twelfth of the real estate taxes, water, sewer and required fire insurance premiums on the same day of each month that the principal and interest payment is due. The Mortgagee herein agrees to hold the said sums for the payment of said real estate taxes, water and sewer charges and fire insurance premiums, when due, on condition that there is sufficient monies to pay same. Said Mortgagee's liability for failure to make such payments hereunder, shall be limited to the return of said monies paid by the Mortgagor here under the Mortgagee. In the event that there is an increase in the tax rate, or there is insufficient money for the payment of the real estate taxes, water, sewer or fire insurance premium charges when due, then the Mortgagor on demand, shall immediately make payment to the Mortgagee, and/or holder of this mortgage a sufficient sum to make up for the deficiency and the said monthly escrow payments and/or deposit of real estate taxes, water, and sewer, and fire insurance premiums shall be increased accordingly.

26. At the option of the Mortgagee a sum sufficient to constitute one-twelfth of the said real estate taxes, water and sewer charges and fire insurance premiums and such other sum as may be necessary shall be deposited with the Mortgagor on the same day of each month that the principal and interest payment is due. In the event of any default by the Mortgagor in the payment and/or holder of this mortgage the whole of the principal sum of the mortgage shall become due and payable. Advanced monies for the payment of the aforementioned real estate taxes, sewer and water charges and fire insurance premiums, then the said sums of money so advanced may be added to the principal amount of the mortgage then due and owing and shall accrue interest and penalties at the same rate of the principal amount owing.

27. If the holder of this mortgage is or will at any time hereafter be more than one entity, the Mortgagor, upon request, will divide the monthly installments each holder at the place designated by them. The tax, etc. escrow, however, shall not be divided. They are to be paid to the designated party by the holder of this mortgage.

28. The rents, issues, profits and all leases of said mortgage premises are hereby transferred and assigned to the mortgagee as further security for the payment of said indebtedness. The Mortgagor, for himself, his heirs and all subsequent owners of said premises grants to the Mortgagee license to enter upon said premises for the purpose of collecting the same and to let said premises or any part thereof, and to apply the rents, issues and profits, after the payment of all necessary charges and expenses, on account of said indebtedness. This assignment and grant shall continue in effect until this mortgage is paid. The Mortgagee hereby waives the right to enter upon said premises for the purpose of collecting said rents, issues and profits, and the Mortgagor and any subsequent owner of said premises shall be entitled to collect and receive said rents, issues and profits until default under the covenants, conditions and agreements contained in this mortgage or the bond, note or obligation thereby secured, and the Mortgagor, for himself, his heirs and all subsequent owners of said premises, covenants to use such rents, issues and profits in payment of principal and interest becoming due on this mortgage and in payment of taxes and carrying charges becoming due against said premises, but such right of the Mortgagor and any subsequent owner to collect said rents, issues and

profits may be revoked by the Mortgagee upon default, on five (5) days' written notice. The Mortgagor, for himself, his heirs and all subsequent owners of said premises covenants that he will not, without the written consent of the Mortgagee, receive or collect rents from and Tenant of said premises or any part thereof for a period of more than one month in advance, and, in the event of any default in the performance of any of the covenants, conditions and agreements herein contained, the then owner of the mortgaged premises, if he is the occupant of said premises or any part thereof, shall immediately surrender possession of the premises so occupied to the holder of this mortgage, and if such occupant is permitted to remain in possession, the possession shall be as Tenant of the holder of this mortgage and such occupant shall, on demand pay monthly in advance to the holder of this mortgage the fair and reasonable rental value for the space so occupied and in default thereof, such occupancy may be dispossessed by the usual summary proceedings. In case of foreclosure and the appointment of a receiver of rents, the covenants herein contained may be enforced by such receiver. The covenants contained in this paragraph shall run with the land and bind the Mortgagor, his heirs and all subsequent owners, tenants, sub-tenants and assigns of said premises or any part thereof.

29. Should the mortgagee or the holder of this mortgage commence any action to foreclose this mortgage by reason of any default hereunder, the mortgagee, or holder shall become entitled to and the mortgagor and then the owner of the premises agrees to pay to said mortgagee or holder shall pay reasonable legal fees and expenses in connection with said action, in addition to and apart from the usual costs and allowances to which the mortgagee may be entitled or be awarded under any law of statute applicable to such action.

30. It is hereby mutually agreed that the time of the repayment, accelerated or otherwise, of the loan when due as hereinbefore stated is of unique and specific importance and financial necessity to the mortgages or other holder of the mortgage delivered hereunder, and is hereby made of the essence. Should all sums due or payable under the mortgage, or under any written extension, postponement of the due date or renewal thereof, not be promptly paid in full, on or before the due date, stated or accelerated as a result of default, the mortgagor and other owner of said premises shall pay and hereby agree to pay to the mortgagee or other holder of said mortgage, interest thereunder at the rate of two (2%) percent per month on the unpaid balance for each and every month, or any fraction thereof, computed from said date of maturity to the date of actual repayment, but such interest rate shall not exceed the maximum rate permitted by law; said interest shall become due and payable at the same time that interest payments are due under said mortgage and shall be secured by and collected thereunder. It is hereby understood that this provision does not constitute a consent or agreement on the part of the mortgagee or other holder of said mortgage, to extend or postpone the time of such payment beyond the present date of maturity thereof.

31. That any failure by the Mortgagee to insist upon the strict performance by the Mortgagor of any of the terms and provisions hereof shall not be deemed to be a waiver of any of the terms and provisions hereof, and the Mortgagee, notwithstanding any such failure, shall have the right thereafter to insist upon the strict performance by the Mortgagor of any and all of the terms and provisions of the mortgage to be performed by the Mortgagor; that neither the Mortgagor nor any other person now or hereafter obligated for the payment of the whole or any part of the sums now or hereafter secured by the mortgage shall be relieved of such obligation by reason of the failure of the Mortgagee to comply with any request of the Mortgagor or of any other person so obligated to take action to foreclose the mortgage or otherwise enforce any of the provisions of the mortgage or of any obligations secured by the mortgage, or by reason of the release, regardless of consideration, of the whole or any part of the security held for the indebtedness secured by the mortgage, or by reason of any agreement or stipulation between any subsequent owner or owners of the premises and the Mortgagee extending the time and payment or modifying the terms of the note or mortgage without first having obtained the consent of the Mortgagor or such other person, and in the latter event, the Mortgagor and all such other persons shall continue liable to make such payments according to the terms of any such agreement of extension or modification unless expressly released and discharged in writing by the Mortgagee; that, regardless of consideration, and without the necessity for any notice to or consent by the holder of any subordinate lien on the premises, the Mortgagee may release the obligation of anyone at any time liable for any of the indebtedness secured by

the mortgage or any part of the security held for the indebtedness any may extend the time of payment or otherwise modify the terms of the note and/or the mortgage without, as to the security or the remainder thereof, in any wise impairing or affecting the lien of the mortgage or the priority of such lien, as security for the payment of the indebtedness as it may be so extended or modified, over any subordinate lien, that the holder of any subordinate lien shall have no right to terminate any lease effecting the premises whether or not such lease be subordinate to the mortgage; and that the Mortgagee may resort for the payment of the indebtedness secured hereby to any other security therefore held by the Mortgagee in such order and manner as the Mortgagee may elect.

32. In the event any payment herein provided for shall become overdue for a period in excess of ten (10) days, a late charge of six (6) cents for each dollar so overdue shall become immediately due to the Mortgagee as liquidated damages for failure to make prompt payment, and the same shall be secured by this mortgage. Said late charges shall be computed from the due date to the date of payment and shall be payable with the next installment of principal and/or interest.

33. In the event that corporate stamp taxes should be required upon the bond, not or obligation secured by this mortgage, then the Mortgagor agrees that it will immediately remit to the Mortgagee the amount of the stamp taxes held to be so due. In the event the Mortgagor fails to make such payment within five (5) days after written notice thereof, the Mortgagee is authorized to purchase the necessary stamps and add the cost of same to the next payment due hereunder. Such payment shall be deemed an indebtedness secured by this mortgage and shall be collectible in like manner as the principal indebtedness secured by this mortgage

34. The Mortgagor hereby appoints the Mortgagee as its attorney-in-fact in connection with any of the personal property or fixtures covered by this mortgage to execute and file on its behalf any financing statements, or other statements in connection therewith with the appropriate public office. This power, being coupled with an interest, shall be irrevocable so long as this mortgage remains unsatisfied.

35. In the event of a condemnation, or a taking in lieu thereof, by purchase or otherwise, of all or a material part of the premises by any governmental authority or agency having jurisdiction, then the entire unpaid indebtedness including any additional moneys advanced hereunder shall at the option of the Mortgagee, immediately become due and payable. The condemnation, or a taking in lieu thereof, by purchase or otherwise, of the whole or any part of the premises, shall not reduce the interest provided to be paid on the indebtedness secured hereby, notwithstanding any statutory provisions to the contrary.

36. The validity and enforceability of this mortgage and all transactions and questions arising hereunder, shall be construed and interpreted according to the laws of the State wherein the premises is located. Whenever possible, each provision of this mortgage shall be interpreted in such manner as to be effective and valid under applicable law, but in any provision of this mortgage shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remaining provisions of this mortgage. Nothing in this mortgage or in any other agreement between Mortgagor and Mortgagee shall require Mortgagor to pay or Mortgagee to accept interest in an amount which would subject Mortgagee to penalty under applicable law. In the event any payment of interest pursuant to the bond, note, or obligation secured hereby or pursuant to this mortgage would subject Mortgagee to penalty under applicable law then ipso facto the obligation of Mortgagor to make such payment shall be reduced to the highest rate authorized under applicable law without penalty.

37. The whole of said principal sum and the interest thereon shall become due at the option of the Mortgagee in the following additional events; (a) non-performance by the Mortgagor of any agreement with or condition imposed by Mortgagee with respect to the indebtedness; or (b) if the Mortgagor fails or suspends business, makes an assignment for the benefit of creditors, applies for an extension from or composition with creditors, or if a trustee, receiver, or liquidator, be appointed for the Mortgagor for any of its property, or under the provisions of any State insolvency law a petition be filed by or against the Mortgagor; if such petition under said Bankruptcy Act shall be filed against the Mortgagor, the Mortgagor shall have thirty (30) days in which to cause said petition to be dismissed.

38. That the Mortgagee shall have the right, from time to time, to sue for any sums, whether interest, damages, for failure to pay principal or any installment thereof, taxes, installments of principal or any other sums required to be paid under the terms of the mortgage or any other mortgage to which this mortgage is expressly subordinate, as the same become due, without regard to whether or not the principal sums secured or any other sums secured by the note and mortgage shall be due and without prejudice to the right of the Mortgagee thereafter to bring an action of foreclosure, or any other action, for a default or defaults by the Mortgagor existing at the time such earlier action was commenced.

39. The whole of said principal sum and interest shall be due at the option of the Mortgagee if the Mortgagor is required to and fails to be a member or make appropriate filings with the Department of Housing and Community Renewal or successors or if, at any time, an Administrator is appointed to receive and administer the rent moneys under the provisions of Article 7-A of the Real Property Action and Proceeding Law of the State of New York.

40. That any payment made in accordance with the terms of the mortgage by any person at any time liable for the payment of the whole or any part of the sums now or hereafter secured by the mortgage, or by any subsequent owner of the mortgaged premises, or by any other person whose interest in the premises might be prejudiced in the event of a failure to make such payment, or by any stockholder, officer or director or a corporation which at any time may be liable for such payment or may own or have such an interest in the premises, shall be deemed, as between the Mortgagee and all persons who at any time may be liable as aforesaid or may own the premises, to have been made on behalf of all such persons.

41. The Mortgagor and all other parties who are or hereafter may become secondarily liable for the payment of the obligation evidenced by the note for which this mortgage is given as collateral do hereby agree to remain liable to the Mortgagee, his successors and assigns, in the event that any extension of time for repayment is given to the Mortgagor or his successor in interest.

42. The printed part of this mortgage is hereby modified and supplemented by this attached Rider. Wherever there is any conflict between this Rider and the printed part of this mortgage, the provisions of this Rider are paramount and the mortgage shall be construed accordingly.

43. The Mortgagor or then owner of the subject premises shall deliver to the Mortgagee, within thirty (30) days at the end of each year, with notice and demand by the Mortgagee, a statement in such reasonable detail, certified by the Mortgagor or then owner of the subject premises or any executive officer of the corporate mortgagor or owner, setting forth the names of the tenants, the apartments they occupy and the lease expiration dates, the income and expense from the conduct of the operation of the premises. The failure to submit said reports within thirty (30) days from date of notice and demand provided shall be deemed a default under the terms and conditions of this mortgage in which event Mortgagee may exercise the option of declaring the entire unpaid balance immediately due and payable.

44. The whole of the principal sum and interest hereunder shall become due and payable at the option of the Mortgagee if the Mortgagor ceases to be the owner of the said premises herein described by reason of sale, and/or sale of over fifty (50%) percent of the common stock of the mortgagor, if the mortgagor be a corporation of the sale of over fifty (50%) percent of the partnership interest, if the mortgagor be a partnership or if at any time during the life of this mortgage secondary financing is placed upon the mortgaged premises.

45. Mortgagee agrees to furnish either assignment or satisfaction upon payment in full hereof at mortgagor's option.

46. In the event that mortgagor shall tender a check for payment hereunder of either principal or interest, which check is dishonored or returned for any reason by mortgagor's bank, then additional charge of One Hundred No/100 ($100.00) Dollars shall be added to the next regular payment made for such bounced check. This charge is calculated to cover bookkeeping and administrative charges, as well as for charges incurred by mortgagee.

47. It is a condition of this loan that the Mortgagor and no member or shareholder of the Mortgagor resides at the premises. This loan is a business loan given for an exclusively business purpose. The premises are not used as the residence of the Mortgagor and are owned as a business and investment venture by the Mortgagor.

**48. Borrower certified that Premises herein mortgaged are not their primary residence. Funds being borrowed are not for personal, household or medical purposes and are used exclusively for business purposes.**

**49. Borrower shall be responsible for compliance for all Federal Tax regulations, including providing any IRS notices or 1099 forms in connection with this loan.**

**50. The transfer of assignment of any percentage shares of membership interest of the Mortgagor(s) without the prior written consent of the Mortgagee(s) shall constitute a material and immediate default in the terms and conditions stated herein. Mortgagee(s) shall be entitled to avail themselves of all course of action as detailed in the Mortgage and Rider including (i) the acceleration of the principal amount due (ii) the impositon of the default penalty rate beginning from the date of the unauthorized assignment, irrespective of the timely payment of the monthly amount due.**

_____  
**TEANECK PLAZA VENTURES LLC**, as to PARCEL 1  
**BY: SETH LEVINE**

_____  
**LENOX TEMPLE LLC**, as to PARCEL 2  
**BY: SETH LEVINE**

# MORTGAGE

TITLE NO.: LT-1611-NJ / MTANJ-125489
====================================

TEANECK PLAZA VENTURES LLC, as to PARCEL 1

PARCEL 1: 1407 PALISADE AVE, TEANECK, NJ 07666
County: BERGEN Block: 5008 Lot: 1

And

LENOX TEMPLE LLC, as to PARCEL 2

PARCEL 2: 54-78 TEMPLE AVE, HACKENSACK, NJ 07601
County: BERGEN Block: 511 Lot: 11

TO

J & J CAPITAL REALTY ASSOCIATES LLC

================================

Return and Mail To:

HERBERT TEPFER, ESQ.
TEPFER & TEPFER P.C.
4429 18th AVENUE
BROOKLYN, NY 11204-1202
718-854-7200
TEPFERLAW@GMAIL.COM