# Exhibit L

28p 303
MF

Record and Return To:

Allen J. Popowitz, Esq.
Brach Eichler L.L.C.
101 Eisenhower Parkway
Roseland, New Jersey 07068

13-127711    Mortgage
V Bk: 01586 Pg: 2346-2373   Rec. Fee $303.00
John S. Hogan, Bergen County Clerk
Recorded 12/19/2013  11:10:06 AM

Record and Return to:
MADISON TITLE AGENCY, LLC
COMMERCIAL DEPT.
1125 OCEAN AVE.
LAKEWOOD, NJ 08701
09 2988

## MORTGAGE AND SECURITY AGREEMENT

**THIS MORTGAGE** dated as of the 15th day of November, 2013, among **LENOX TEMPLE LLC,** a New Jersey limited liability company, having an address at 210 River Street, Suite 24, Hackensack, New Jersey 07601 (hereinafter known as the "Mortgagor");

and

**CUSTOMERS BANK,** having an office at 1015 Penn Avenue, Suite 103, Wyomissing, PA 19610 (hereinafter known as "Mortgagee" or "Lender").

WHEREAS, Mortgagor is justly indebted to Mortgagee in the principal sum of **SIX MILLION AND 00/100 ($6,000,000.00) DOLLARS** and interest thereon, as evidenced by a certain note, bearing even date hereof (the"Note").

NOW, WITNESSETH, that the Mortgagor for the better securing the observance, payment, and performance by the Mortgagor of all of its obligations and liabilities to the Mortgagee, and any and all advances at any time or from time to time made by the Mortgagee to the Mortgagor, any present or future indebtedness or other obligations of the Mortgagor to preserve the priority of the lien of this Mortgage or as otherwise expressly provided in this Mortgage, and all other indebtedness or other obligations, direct or indirect, absolute or contingent, due or to become due, now existing or hereafter arising, howsoever created, incurred, evidenced, acquired or arising, whether joint, several, or joint and several, or independent of the Mortgagor, under the Note (or any other instrument, contract or agreement entered into between the Mortgagor and the Mortgagee dated the date hereof (together with interest and charges as provided in the Note) and further to secure the prompt and faithful performance and observance by the Mortgagor of all the terms, undertakings, covenants and conditions by the Mortgagor to be kept, observed, or performed under or according to the provisions of the Note, this Mortgage (or any other instrument, contract or agreement entered into between the Mortgagor and the Mortgagee dated the date hereof (together with interest and charges as provided in the Note), and in further consideration of the sum of ONE and NO/100th ($1.00) DOLLARS and for other good and valuable consideration, the receipt whereof before the signing and delivery of these presents is hereby acknowledged, the Mortgagor does grant, bargain, sell, and convey to the Mortgagee and to its successors and assigns forever:

All that certain tract or parcel of land and premises hereinafter particularly described on **Schedule A** attached hereto and made a part hereof, situate, lying, and being in the Municipality of Hackensack, County of Bergen, and State of New Jersey (the "Land").

BE:2590813.2/CUS031-266088

V BOOK 2374 PAGE 2346

Being the same premises conveyed to Lenox Temple LLC by deed from Lighthouse Temple Avenue, LLC dated June 12, 2009 and recorded July 16, 2009 in the Bergen County Clerk's Office in V Book 176, Page 1599.

**TOGETHER** with all right, title and interest of the Mortgagor, now owned or hereafter acquired, in and to any and all sidewalks and alleys, and all strips and gores of land, adjacent to or used in connection with said Land.

**TOGETHER** with any and all awards, damages, payments and other compensation and any and all claims therefor and rights thereto which may result from taking or injury by virtue of the exercise of the power of eminent domain of or to, or any damage, injury or destruction in any manner caused to, the Premises (as hereinafter defined), or any part thereof, or from any change of grade or vacation of any street abutting thereon, all of which awards, damages, payments, compensation, claims and rights are hereby assigned, transferred and set over to Mortgagee to the fullest extent that Mortgagor may under the law so do. Mortgagee is hereby irrevocably appointed attorney-in-fact coupled with an interest for Mortgagor to settle for, collect and receive any such awards, damages, payments and compensation from the authorities making the same, to appear in and prosecute any proceeding therefor, and to give receipts and acquittances therefor.

**TOGETHER** with any and all fixtures, and all machinery, equipment, chattels, goods and other articles of property, whether real estate or not, now or at any time hereafter attached to or situated in or upon, and used or useful in the operation of, the Land or the buildings, structures and improvements erected or hereafter erected thereon, or of any business now or hereafter operated by the owner of the Premises (except any personal property, furnishings or furniture owned by any tenant unrelated to Mortgagor occupying the Land and/or the buildings, structures and improvements thereon, or any part of either or both and used by such tenant in the space occupied by it, to the extent that the same does not become the property of the Mortgagor, as landlord, under the lease with such tenant or under applicable law), including without limitation:

All gas and electric fixtures, radiators, heaters, engines and machinery, boilers, elevators and motors, bathtubs, sinks, water closets, basins, pipes, faucets, air-conditioning equipment, plumbing fixtures, heating fixtures, mirrors, mantels, refrigerating plant, carpeting, furniture, ranges, refrigerators, ovens, dishwashers, laundry equipment, cooking apparatus and appurtenances, and all building material and equipment now or hereafter delivered to the Land and/or the buildings, structures and improvements thereon, or any part of either or both and intended to be installed therein; and all renewals or replacements thereof, all additions thereto or articles in substitution thereof and all of the estate, right, title and interest of the Mortgagor in and to all property of any nature whatsoever, now or hereafter situate on or in the Land and/or buildings, structures and improvements thereon, or any part of either or both or intended to be used in connection with the operation thereof shall be deemed to be fixtures and an accession to the freehold and a part of the realty as between the parties hereto and all persons claiming by, through or under them and shall be deemed to be a portion of the security for the indebtedness herein mentioned and secured by this Mortgage.

-2-

**TOGETHER** with all right, title and interest of Mortgagor in and to all unearned premiums accrued, accruing or to accrue under any and all insurance policies now or hereafter obtained by Mortgagor with respect to the Premises (as hereinafter defined).

**TOGETHER** with all rights, dividends and/or claims of any kind, nature or description whatsoever (including, without limitation, damage, secured, unsecured, lien, priority, or administration claims); together with the right to take any action or file any papers or process in any Court of competent jurisdiction, which may in the opinion of Mortgagee be necessary to preserve, protect, or enforce such rights or claims, including without limitation the filing of any proof of claim in any insolvency proceeding under any State, Federal or other laws; including any rights, claims or awards accruing to, or to be paid to, Mortgagor in its capacity as landlord under any lease affecting all or any portion of the Land and/or the buildings, structures and improvements thereon. Mortgagee's lien and interest in the foregoing rights and claims is hereby deemed to be presently vested and perfected as of the date hereof.

**TOGETHER** with all and singular the tenements, hereditaments and appurtenances belonging to the Land or any part thereof, or the buildings, structures and improvements thereon, hereby mortgaged or intended so to be, or in anywise appertaining thereto (including but not limited to all leases, income, rents, issues and profits arising therefrom), all streets, alleys, passages, ways, watercourses, easements, all other rights, liberties and privileges of whatsoever kind or character, the reversions and remainders, and all the estate, right, title, interest, property, possession, claim and demand whatsoever, as well at law or in equity, of Mortgagor, in and to all the foregoing or any or every part thereof (said Land, buildings, structures, improvements, fixtures, machinery, equipment, tenements, and other property interests described and enumerated above are hereinafter collectively referred to as the "Premises" or the "Mortgaged Premises").

**TO HAVE AND TO HOLD**, the above granted and described Mortgaged Premises, with the appurtenances, fixtures, equipment and improvements, unto the Mortgagee, its successors and assigns, to its and their own proper use and benefit forever;

**PROVIDED ALWAYS**, and these premises are upon the express condition, that if the Mortgagor shall well and truly pay to the Mortgagee all money secured hereby when the same shall become due and payable, without deduction or credit for any amount payable for taxes, then these presents and the estate hereby granted shall cease, terminate and be void.

Mortgagor warrants, covenants and agrees with Mortgagee as follows:

1.     **DEFINITIONS:**

Unless the context otherwise connotes, as used herein:

(a)     **"Note"** means:

–3–

(1)     That certain Mortgage Note, bearing even date herewith, made by Mortgagor as Borrower and payable to the order of Mortgagee as Lender, evidencing indebtedness in the principal amount of **Six Million and 00/100 ($6,000,000.00) DOLLARS** advanced by Mortgagee to Mortgagor, with interest thereon at the initial rate of **3.75%** per annum as specified in the Note, the terms and conditions of which, and any amendments, extensions, or restatements thereof, are incorporated by reference in and to the terms and conditions of the within Mortgage as if fully set forth herein.  All amounts due under the Note are due and payable on or before December 1, 2018.

(2)     All amounts from time to time advanced, paid or expended by the Mortgagee under Section 18 of this Mortgage, with interest thereon at the rate stated in the Mortgage Note to Mortgagee of even date herewith;

(3)     All other amounts which Mortgagor and Mortgagee may agree, in writing, are to be secured hereby, with interest thereon at the rate or rates agreed upon; and

(4)     Any part of the principal of, and to any part of the interest on, any part of the Note, as well as to all of the Note.

(b)     **"Loan Documents"** means: This Mortgage, the Note, the Guaranty, the Indemnity Agreement, UCC-1 Financing Statements, Assignment Of Leases, Mortgagor's Affidavit of Title, Borrower's Certificate, Mortgage Commitment, and any other certifications, documents, instruments or agreements executed or delivered by Mortgagor to Mortgagee in connection with or collateral to the loan transaction evidenced by the Note.

(c)     **"Mortgage Commitment"** means:  That certain agreement by and between Mortgagor and Mortgagee dated  November 12, 2013, as amended to date.

(d)     **"Indemnity Agreement"** means:  That certain Governmental Compliance Warranty and Indemnification Agreement dated the date hereof, executed and delivered by Mortgagor and its principal(s) (collectively, the "Indemnitor") as an inducement for Mortgagee to advance monies to Mortgagor under the Note wherein the Indemnitor thereunder indemnifies the Mortgagee regarding certain environmental matters with respect to the Premises.

(e)     **"Assignment of Leases"** means:  That certain Absolute Assignment of Leases and Rents dated the date hereof executed and delivered by Mortgagor to Mortgagee assigning Mortgagor's rights under the leases affecting the Premises to Mortgagee as security for the Note.

(f)     **"Guaranty"** means:  That certain Carve-Outs Guaranty dated the date here of executed and delivered by Moshael J. Straus  (the "Guarantor" or "Principal") to Mortgagee guarantying the Borrower's obligations under the non-recourse carve-outs set forth in the Note and Mortgage.

(g)     **"UCC-1 Financing Statements"** means:  Those certain financing statements dated the date hereof executed and delivered by Mortgagor evidencing Mortgagee's security interest in the

ASCENDSMP023325

collateral therein specified.

    (h)    **"Title Binder"** means:  That certain title insurance commitment and report MTANJ-092988 by Madison Title Agency, LLC as agent for Stewart Title Guaranty Company.

**2.**    **PAYMENT OF DEBT:**

    Mortgagor shall pay the Note in accordance with its terms.

**3.**    **FIRST LIEN:**

    This Mortgage is a valid first mortgage and is a valid first lien against the Premises.

**4.**    **TITLE WARRANTY:**

    Mortgagor warrants that title to the Premises is marketable and unencumbered by any monetary liens, and Mortgagor agrees that Mortgagor will warrant and defend the title to the Premises and that the lien and priority of this Mortgage against the lawful claims and demands of all persons whomsoever.

**5.**    **REPAIR:**

    Mortgagor shall maintain the Premises in a good and substantial state of repair.

**6.**    **COMPLIANCE WITH LAW:**

    Mortgagor shall comply with and maintain the Premises in compliance with all laws and requirements of all governments and governmental authorities applicable thereto, including without limitation all applicable environmental laws, ordinances, rules, regulations, orders and requirements, whether federal, state, county, regional or municipal, which are applicable to the Mortgaged Premises, including but not limited to laws relating to air, water and noise pollution, handling of toxic substances, underground tank storage and occupational safety and health requirements ("Laws").

**7.**    **TAXES:**

    (a)    Mortgagor covenants to pay promptly as the same become due and payable all taxes, assessments, water and sewer charges and governmental charges on or with respect to the Premises; and no owner of the Premises shall be entitled to any credit by reason of the payment of any tax, assessment or other imposition thereon.  Mortgagor shall provide Mortgagee with such evidence as it may require, within ten (10) days after the final date any taxes, assessments, water and sewer charges or other governmental charges can be paid without penalty, that all such taxes, assessments, water and sewer charges and other governmental charges have been paid in full; and

-5-

(b)     Mortgagor shall, in lieu of paying such taxes and assessments directly as and when the same become due and payable, deposit with the Mortgagee on each payment date in the Note provided, until the principal sum secured hereby is fully paid, a sum equal to one-twelfth of the annual real estate taxes and assessments (estimated by the Mortgagee) levied or to be levied, assessed or imposed on said Premises, and if the total of such payments for taxes and assessments shall exceed the amounts actually paid by the Mortgagee therefore, such excess shall be credited to subsequent payments by the Mortgagor for the same purpose or to principal or interest that may be in arrears, but if the total of such payments shall be insufficient to pay such taxes and assessments in full when due, the Mortgagor shall pay to the Mortgagee, on demand, the amount necessary to make up the deficiency; and upon any default in the performance of this covenant, or any part thereof, the entire principal sum hereby secured with all interest thereon may be and shall become due and payable at the election of the Mortgagee.  Such sums so deposited shall not bear interest and may be commingled with the general funds of the Mortgagee.  If, Mortgagee, pursuant to any provision hereof, declares the indebtedness secured hereby to be due and payable, Mortgagee may then apply all sums in said account to the reduction of the indebtedness secured hereby.  Notwithstanding anything in this Section 7(b) to the contrary, provided Mortgagor timely pays all real estate taxes and assessments levied against the Mortgaged Premises and has not committed an Event of Default, the Mortgagor shall not be required to escrow monthly with the Mortgagee any funds for the payment of real estate taxes and/or assessments levied against the Mortgaged Premises.

## 8.     INSURANCE:

(a)      Mortgagor shall keep in effect upon the Premises:

(1)     Causes of Loss Special Form insurance, for not less than the amount of the Loan, with the following endorsements:  (i) valuation replacement cost, (ii) laws and ordinance coverage, (iii) boiler and machinery, if applicable, and (iv) agreed value.

(2)     Commercial general liability insurance, with a combined single limit in an amount not less than $1,000,000 per occurrence, $1,000,000 aggregate.  (If such policy covers more than one location, the policy must be endorsed to reflect the aggregate per location and the unimpaired aggregate).

(3)     Business Expense including loss of rental income in an amount not less than twelve months gross rent, with endorsements for (i) valuation actual loss sustained, (ii) extended period of indemnity for sixty (60) days, (iii) ordinance and law coverage.

(4)     Workmen's compensation coverage.

(b)     All insurance shall be in such amounts, form and by such companies as reasonably approved by the Lender (which insurance company shall have a Best's Rating of A or better, and Financial Size Category of Class VI or higher), with endorsements naming the Lender as certificate holder, first mortgagee, loss payee and additional insured, as applicable.  All insurance shall be prepaid for one year.  If any part of the Premises is in a Zone A or B Flood Hazard area, and such

–6–

condition is approved by Lender, Flood Insurance as required by Regulation H of the Federal Reserve Board shall be required. Deductibles shall not exceed $2,500.

(c)    Mortgagor shall pay the premiums on such policies as they become payable, and shall deliver to Mortgagee copies of such policies, with standard mortgagee clauses in favor of Mortgagee. Financing premiums is not permitted;

(d)    Mortgagor shall, at the sole option of Mortgagee, in lieu of paying such insurance directly as and when the same become due and payable, deposit with the Mortgagee on each payment date in the Note provided, until the principal sum secured hereby is fully paid, a sum equal to one-twelfth of the annual insurance premiums (estimated by the Mortgagee) on said Premises, and if the total of such payments shall exceed the amounts actually paid by the Mortgagee therefore, such excess shall be credited to subsequent payments by the Mortgagor for the same purpose or to principal or interest that may be in arrears, but if the total of such payments shall be insufficient to pay such insurance premiums in full when due, the Mortgagor shall pay to the Mortgagee, on demand, the amount necessary to make up the deficiency; and upon any default in the performance of this covenant, or any part thereof, the entire principal sum hereby secured with all interest thereon may be and shall become due and payable at the election of the Mortgagee. Such sums so deposited shall not bear interest and may be commingled with the general funds of the Mortgagee. If, Mortgagee, pursuant to any provision hereof, declares the indebtedness secured hereby to be due and payable, Mortgagee may then apply all sums in said account to the reduction of the indebtedness secured hereby. Notwithstanding anything in this Section 7(d) to the contrary, provided Mortgagor timely pays all insurance premiums and has not committed an Event of Default, the Mortgagor shall not be required to escrow monthly with the Mortgagee any funds for the payment of insurance premiums.

(e)    Copies of all renewal policies shall be delivered, by Mortgagor, premiums paid, to Mortgagee at least twenty (20) days before the expiration of the expiring policies. Each insurance company issuing any of the aforesaid policies shall agree in the policy, or shall otherwise agree in writing, to provide Mortgagee with thirty (30) days prior written notice before any policy may be canceled, changed, altered, amended, or modified, or any coverage therein be reduced, deleted, amended, changed, or canceled by either the party named as the insured, or the insurance company issuing the policy. If the insurance, or any part thereof shall expire, or be withdrawn or become void or voidable by Mortgagor's breach of any condition thereof, or become void or unsafe by reason of failure or impairment of the capital of any company in which the insurance may then be carried, or if for any reason whatsoever the insurance shall be unsatisfactory to Mortgagee, Mortgagor shall immediately place new insurance on the Premises, satisfactory to the Mortgagee. In the event Mortgagor fails to comply with this Section 8, or upon any other Event of Default, Mortgagee may procure, at Mortgagor's sole cost and expense, whether by a transfer of interest under the current policy of insurance or by purchase of a new policy of insurance, a single interest policy of insurance naming Mortgagee as sole loss payee for the Premises. If Mortgagee shall acquire title to the Premises by virtue of a deed in lieu of foreclosure, or a judicial sale thereof pursuant to the proceedings under the Note or Mortgage, then all of the Mortgagor's estate, right, title and interest in and to all such policies, including unearned premiums thereon and the proceeds

–7–

thereof, shall vest in Mortgagee;

(f)     Mortgagee shall be entitled to receive all insurance proceeds according to the terms of a standard mortgagee clause, not subject to contribution, pursuant to Section 8(i), below. Mortgagee shall have the right, at its election, to adjust or compromise any loss claims in excess of $10,000.00 under such insurance and to collect and receive the proceeds thereof.

(g)     Mortgagee is hereby irrevocably appointed by Mortgagor, as attorney-in-fact of Mortgagor, to assign any policy to itself or its nominee in the event of foreclosure of this Mortgage or other extinguishment of the Mortgage indebtedness.

(h)     The Mortgagor shall not take out separate insurance concurrent in form or contributing in the event of loss with that required to be maintained under this Mortgage.

(i)     No damage or destruction of the Premises or any application of insurance proceeds to the payment of the Note secured by this Mortgage shall postpone or reduce the amount of any of the current installments of interest becoming due under the Note which shall continue to be made in accordance with the terms of the Note until the Note and all interest due thereunder is paid in full.

(j)     If all or any part of the Mortgaged Property shall be partially or totally damaged or destroyed, then (i) there shall be no abatement or reduction in the amounts payable by the Mortgagor under the Loan Documents, and the Mortgagor shall continue to be obligated to make such payments; (ii) the Mortgagor shall immediately give notice thereof to the Bank in accordance with the terms of this Mortgage; (iii) the Mortgagor hereby authorizes and directs any affected insurance company to make payment of such proceeds directly to the Bank as its interest appears; and (iv) the Mortgagor hereby authorizes and empowers the Bank to settle, adjust or compromise, any claims for loss, damage, or destruction of the Mortgaged Property. The Mortgagor shall pay all costs of collection of insurance proceeds payable on account of such damage or destruction. The Mortgagor shall have no claim against the insurance proceeds and/or condemnation proceeds, or be entitled to any portion thereof, and all rights to insurance proceeds are hereby assigned to the Bank to the extent of the Liabilities as remain unpaid. The Bank shall have the option, in its sole discretion, of paying or applying all or any part of the insurance proceeds payable to the Bank hereunder to (i) reduction of the Liabilities; (ii) restoration, replacement and rebuilding of the Mortgaged Property or (iii) payment to the Mortgagor.

## 9.     EMINENT DOMAIN; CONDEMNATION:

(a)     As to any taking of the Premises by the exercise of power of eminent domain or purchase under threat thereof:

(1)     Mortgagor shall notify Mortgagee promptly of all action taken and, to Mortgagor's knowledge, proposed to be taken with respect thereto;

(2)     Mortgagor shall not exercise or waive any right with respect thereto, unless

–8–

Mortgagee consents; and

(3)    Mortgagee shall be entitled to receive the award of proceeds, and, at its sole option, to apply the same on account of the Note and/or to reimburse Mortgagor for the cost of the repair of the Premises pursuant to this Section.

(b)    To further secure said indebtedness, Mortgagor hereby assigns to Mortgagee any award of damages made in connection with any condemnation or taking with respect to the Premises or any part thereof.  Mortgagee is authorized and empowered (but not required) to collect and receive any such award and is authorized to apply it in whole or in part in reduction of the then outstanding debt secured by this Mortgage, notwithstanding the fact that the same may not then be due and payable.  Any amounts so applied to principal shall be applied to the principal last maturing hereon.  Mortgagor agrees to execute such further assignments of any such awards as Mortgagee may require.

(c)    In the event of the condemnation of the Premises or a portion thereof, then the condemnation award may, at Mortgagee's sole discretion, be held in a trust fund by the Mortgagee in the same manner as casualty insurance proceeds, and may be disbursed solely for repairs and reconstruction except that if, subsequent to any condemnation, any repair and/or reconstruction is, in Mortgagee's reasonable opinion, impossible or impractical, then Mortgagee may apply the condemnation proceeds toward reduction of the outstanding balance due under the Note.

## 10.    LEASES.

(a)    The Mortgagor will comply with and observe its obligation as landlord under all leases affecting the Premises or any part or parts thereof.  Except as may be specified below, no existing or future lease which affects the Premises, or any part or parts thereof, or any facilities or business located or operated thereon or therefrom, shall be canceled, surrendered, or modified without the prior written consent of Mortgagee.  Mortgagor shall notify the Mortgagee immediately of any default of Mortgagor asserted by any tenant under such a lease.  If Mortgagor fails to cure such default on its part, as landlord under any such lease, then Mortgagor expressly authorizes Mortgagee, at its option, to cure such default in order to prevent termination of any such lease by any such tenant, and the leases shall set forth the foregoing provisions. If, by reason of default of Mortgagor in the performance of any such lease, the tenant has the right to cancel such lease or to claim any diminution of or offset against future rents then, at the option of Mortgagee, such default shall be a default under the Note and this Mortgage.  The Mortgagor upon request, from time to time, but not more often than annually unless a default shall have occurred under this Mortgage, will furnish to the Mortgagee in such reasonable detail as the Mortgagee may request, certified by the Mortgagor, copies of all leases relating to the Premises; and on demand, the Mortgagor will furnish to the Mortgagee executed counterparts of any and all such leases. Further, the Mortgagor, upon request, will furnish to the Mortgagee information relative to the occupancy and vacancy rates of the Premises.

(b)    The standard form of space lease used by Mortgagor in leasing space in the Premises

–9–

shall be subject to Mortgagee's prior approval. Mortgagor shall use only such approved form of lease in leasing space in the Premises and any deviations from and or amendments to such form lease shall be subject to Mortgagee's approval. All such leases shall be with bona fide, arms-length tenants. Furthermore, all extensions and other modifications of future or existing leases shall comply with the foregoing provisions of this paragraph unless the prior consent of Mortgagee is given to each such extension or modification. Any and all leases shall, by their terms, be subject to and subordinate to this Mortgage and shall be assigned, in form for recording, to Mortgagee, pursuant to the Assignment of Leases.

(c)     Notwithstanding anything in this Article 10 to the contrary, Mortgagor agrees that it will not, without the written consent of the Mortgagee, assign the rents, issues or profits, or any part thereof, from the Premises, receive or collect rents from any tenant, subtenant, undertenant, or other occupant of any part of the Premises for a period of more than one (1) month in advance, nor will Mortgagor grant any concessions to any of the foregoing persons or parties for more than one (1) month's rent (which must be at the front end of a lease) nor shall any lease be modified, entered, terminated or extended in any other way that would reduce monthly rent thereunder except in the ordinary course of business solely with regard to residential tenants, and in no event shall the sum total of all such concessions and other modifications reduce the gross rents for the Premises to less than the most recent fiscal period, without the prior written consent of the Mortgagee.

(d)     Mortgagor authorizes Mortgagee at its option to foreclose this Mortgage subject to the rights of any tenants of the Premises, and the failure to make any such tenants parties defendant to any such foreclosure proceeding and to foreclose their rights will not be asserted by Mortgagor as a defense to any proceeding instituted by Mortgagee to collect the indebtedness secured hereby or any deficiency remaining unpaid after the foreclosure sale of the Premises, it being expressly understood and agreed, however, that nothing herein contained shall prevent Mortgagor from asserting in any proceeding disputing the amount of the deficiency or the sufficiency of any bid at such foreclosure sale, that any such tenancies adversely affect the value of the Premises.

(e)     Any agreement entered into by the Mortgagor, its representatives, agents, successors or assigns, which provides for the payment of leasing commissions, (i) shall provide that the obligation to pay such leasing commissions will not be enforceable against any party other than the party who entered into such agreement, (ii) shall be subordinate to this Mortgage, and (iii) shall not be enforceable against Mortgagee or its successors by foreclosure, deed in lieu of foreclosure or by assignment of this Mortgage. The Mortgagors shall, upon the request of the Mortgagee, furnish satisfactory evidence to the Mortgagee of the Mortgagor's compliance with the provisions of this Section.

(f)     At the sole option of Mortgagee, this Mortgage shall become subject and subordinate, in whole or in part (but not with respect to priority entitlement to any award in condemnation), to any and all leases of any part of the Premises upon the execution by Mortgagee and recording thereof, at any time hereinafter, in the office of the recording of such documents for the locality in which the Premises are located, of a unilateral declaration to that effect.

-10-

Bergen County Clerk
CONFIDENTIAL
V  BK 01586  PG 2355
12/19/2013 11:10 AM
10 of 28
ASCENDSMP023331

## 11.   ENVIRONMENTAL REPRESENTATIONS, WARRANTIES AND COVENANTS:

(a)   To the best of Mortgagor's knowledge, after due inquiry and investigation, none of the real property owned and/or occupied by Mortgagor located in the State of New Jersey, including, but not limited to the Premises, has ever been used by previous owners and/or operators to refine, produce, store, handle, transfer, process or transport "Hazardous Substances", as such term is defined in N.J.S.A. 58:10-23.llb(k), and Mortgagor has not in the past, nor does Mortgagor intend in the future to use said real property, including but not limited to, the Premises for the purpose of refining, producing, storing, handling, transferring, processing or transporting said "Hazardous Substances".

(b)   None of the real property owned by Mortgagor and located in the State of New Jersey including, but not limited to, the Premises, has been or is now used as a "Major Facility", as such term is defined in N.J.S.A. 58:10-23.11b(1), and said real property, including, but not limited to the Premises, will not be used as a Major Facility after completion of the construction, renovation, restoration and other development work which Mortgagor intends to undertake thereon.

(c)   To the best of Mortgagor's knowledge, after due inquiry and investigation, no lien has been attached to revenues or any real or personal property owned by Mortgagor and located in the State of New Jersey, including, but not limited to, the Premises, as a result of the chief executive of the New Jersey Spill Compensation Fund expending monies from said fund to pay for "Damages", as such term is defined in N.J.S.A. 58:10-23.11b(d), arising from an intentional action or omission of Mortgagor or any previous owner and operator of said real property, including, but not limited to the Premises, resulting in the releasing, spilling, pumping, pouring, emitting, emptying or dumping of "Hazardous Substances", as such term is defined in N.J.S.A. 58:10-23.11b(k), into waters of the State of New Jersey or onto lands from which it might flow or drain into said waters or into waters outside the jurisdiction of the State of New Jersey where damage may have resulted to the lands, waters, fish, shellfish, wildlife, biota, air and other resources owned, managed, held in trust or otherwise controlled by the State of New Jersey.

(d)   Mortgagor has not received a summons, citation, directive, letter or other communication, written or oral, from the New Jersey Department of Environmental Protection concerning any intentional or unintentional action or omission on Mortgagor's part resulting in the releasing, spilling, leaking, pumping, pouring, emitting, emptying or dumping of "Hazardous Substances", as such term is defined in N.J.S.A. 58:10-23.llb(k), into waters of the State of New Jersey or onto lands from which it might flow or drain into said waters or into waters outside the jurisdiction of the State of New Jersey where damage may have resulted to the lands, waters, fish, shellfish, wildlife, biota, air and other resources owned, managed held in trust or otherwise controlled by the State of New Jersey.

(e)   Mortgagor shall not cause or permit to exist as a result of an intentional or unintentional action or omission on its part, a releasing, spilling, leaking, pumping, pouring, emitting, emptying or dumping of "Hazardous Substances", as such term is defined in N.J.S.A. 58:10-23.llb(k), into waters of the State of New Jersey or onto lands from which it might flow or

-11-

drain into said waters or into waters outside the jurisdiction of the State of New Jersey where damage may have resulted to the lands, waters, fish, shellfish, wildlife, biota, air and other resources owned, managed, held in trust otherwise controlled by the State of New Jersey, unless said release, spill, leak, and so forth, is pursuant to and in compliance with the conditions of a permit issued by the appropriate federal or state governmental authorities.

(f)   In the event that there shall be filed a lien against the Mortgaged Premises by the New Jersey Department of Environmental Protection, pursuant to and in accordance with the provisions of N.J.S.A. 58:10-23.11f(f), as a result of the chief executive of the New Jersey Spill Compensation Fund having expended monies from said fund to pay for "Damages", as such term is defined in N.J.S.A. 58:10-23.11g, and/or "Cleanup and Removal Costs", as such term is defined in N.J.S.A. 58:10-23.11b(d), arising from an intentional or unintentional action or omission of Mortgagor, resulting in the releasing, spilling, leaking, pumping, pouring, emitting, emptying or dumping of "Hazardous Substances", as such term is defined in N.J.S.A. 58:10-23.11b(k), into waters of the State of New Jersey or onto lands from which it might flow or drain into said waters or into waters, then Mortgagor shall, within thirty (30) days from the date that Mortgagor is given notice that the lien has been placed against the Mortgaged Premises or within such shorter period of time in the event that the State of New Jersey has commenced steps to cause the Premises to be sold pursuant to the lien, either (1) pay the claim and remove the lien from the Premises; or (2) furnish (i) a bond satisfactory to the Title Insurance Company and Mortgagee in the amount of the claim out of which the lien arises, (ii) a cash deposit in the amount of the claim out which the lien arises, or (iii) other security reasonably satisfactory to Mortgagee in an amount sufficient to discharge the claim out of which the lien arises.

(g)   Mortgagor's use and any tenant's use of the Premises during the term of the loan obligation will not involve the generation, manufacture, refining, transport, treatment, storage, handling, or disposing of "Hazardous Waste" or "Hazardous Substances" as those terms are defined in the Industrial Site Recovery Act ("ISRA"), or N.J.S.A. 13:1k-6 or the Spill Compensation and Control Act N.J.S.A. 58:10-23.1. In the event the Mortgagor or any tenant shall breach this Section or in any way conduct its operations of the Premises or permit the Mortgaged Premises to be used or maintained so as to subject the Mortgagor or any tenant of the Premises to a claim or violation, the Mortgagor shall immediately remedy and fully cure such condition a its own cost and expense or cause such condition to be cured and shall indemnify and save harmless the Mortgagee from any and all damages, remedial orders, judgment decrees, and all costs and expenses related thereto or arising therefrom, including but not limited to attorney's and consultants' fees, cleanup, removal a restoration costs, and loss rentals.

## 12.   RESTRICTIVE AND AFFIRMATIVE COVENANTS:

(a)   Mortgagor shall not suffer or permit intentional destruction or legal waste on the Premises or remove or demolish the Premises. Mortgagor may make alterations to the Premises without Mortgagee's prior written consent, provided such alterations increase the value of the Premises and are performed in accordance with all applicable laws.

-12-

(b)     Mortgagor shall not install, or permit to be installed, in or on the Premises any new fixture or equipment in replacement of, substitution for, or addition to, any fixtures or equipment in or on the Premises, if such new fixture or equipment would be subject to a security interest held by any person other than Mortgagee, which has priority over this Mortgage.

(c)     Mortgagor covenants that it shall not sell, transfer, convey, assign, pledge or hypothecate any interest in the Premises or any part thereof without Mortgagee's prior written approval which may be withheld in Mortgagee's sole discretion.

(d)     Mortgagor shall not create nor permit to exist any interest, lien, charge, encumbrance, or security interest in the Premises which has priority over this Mortgage, or which may be subordinate to this Mortgage.

(e)     Mortgagor shall not sell, convey, transfer, nor assign, whether directly or indirectly, whether outright or as collateral security, any interest in the Mortgagor, or any entity which owns the Mortgagor, whether legal, equitable or beneficial, in the ownership of Mortgagor, except as otherwise permitted pursuant to the terms of Section 22 of the Note.

(f)     Mortgagor covenants that it shall not sell, lease or otherwise transfer all or a substantial portion of its assets during the term of the Loan which would materially impair the financial condition, net worth, and/or liquidity of Mortgagor without the express written consent of Mortgagee.

(g)     Mortgagor shall not lease any portion of the Premises except as may be permitted under this Mortgage and Mortgagor shall not further assign the leases or rents affecting the Premises.

(h)     Mortgagor and Guarantor will each furnish to Mortgagee, within the time periods specified:

(1)     tax returns, within 30 days after filing, or by September 30, whichever is earlier, and financial statements, within one hundred twenty (120) days of the close of each fiscal year, each reasonably acceptable to Mortgagee, sworn by Mortgagor and Guarantor, showing in reasonable detail for the fiscal year, as applicable:

(A)     The total income derived from the Premises from all sources;

(B)     Expenses incurred in connection with the operation and maintenance of the Premises;

(C)     Complete rent roll showing the term of each tenancy, tenant name, tenant rent and past due or prepaid rent; and

(D)     Reconciliation of rent security with corresponding certified copy of

-13-

rent security bank account statement.

(2)    Within ninety (90) days of the close of each fiscal year, a Certificate that Mortgagor:

        (A)    has not defaulted in any of the terms and covenants of any Loan Document;

        (B)    has no defenses, set-offs or claims against the Loan Documents;

        (C)    has not changed the property manager for the Premises; and

        (D)    continues to maintain security deposit accounts in accordance with the Loan Documents and applicable laws.

The Mortgagee shall have the right to retain an auditor to inspect the Mortgagor's income and expense records in connection with the Premises at no expense to the Mortgagor. After an Event of Default, all audits shall be at Mortgagor's sole expense.

Upon request of the Mortgagee, the Mortgagor shall provide Mortgagee with 5 certified true copies of Leases to confirm the rent roll.

(i)    Mortgagor shall promptly notify Mortgagee of the occurrence of any of the following: (a) fire or other casualty in excess of $5,000.00; (b) receipt of notice of condemnation; (c) receipt of notice of any violation of law; (d) commencement of any litigation involving a claim in excess of $5,000.00 not fully covered by insurance and defended by the carrier; (e) a change in tax assessment or proposed assessment; (f) receipt of a claim from the holder of any lien or security interest; or (g) other material facts adversely affecting the Premises.

(j)    Mortgagor covenants that it shall at all times use commercially reasonable efforts to keep the Premises fully rented at market rents and that it shall not inventory or warehouse vacant apartments.

(k)    Mortgagor shall maintain its tenant security deposit account(s) with Mortgagee, and shall comply with all applicable laws and regulations regarding landlord's handling of tenant security deposits. In the event of any shortage in the tenant security deposit account(s), the Mortgagor shall promptly remit to Mortgagee payment in the amount of such shortage which shall be deposited in said account and the principals of Mortgagor shall be personally liable for the payment of such amounts.

(l)    The Mortgagor shall notify the Mortgagee of the death, retirement, resignation, expulsion, bankruptcy or dissolution of any member of Mortgagor, whose interests in Mortgagor are being redeemed by Mortgagor.

(m)    During the term of this Note, Mortgagor shall maintain a Debt Service Coverage Ratio for the Premises of at least 1.20 to 1.00. "Debt Service Coverage Ratio" shall mean, with respect to each fiscal year, (a) the sum of net income, depreciation, amortization and interest expense for such period, divided by (b) the sum of Mortgagor's total debt service for such period. This financial covenant shall be tested annually by Lender on December 31st of each year, commencing on December 31, 2013.

## 13.    EVENTS OF DEFAULT:

The occurrence of any of the following events shall constitute an Event of Default:

(a)    The failure of Mortgagor to pay any monthly payment of principal and interest under the terms of the Note and this Mortgage within ten (10) days of its due date;

(b)    The failure of Mortgagor to duly observe, fulfill or perform any covenant, condition or agreement with respect to the payment of monies on the part of Mortgagor to be observed or performed or pursuant to the terms of the Loan Documents other than the periodic payment of principal and interest which shall be governed by subsection (a) above, and such default shall have remained uncured for a period of thirty (30) days after its due date;

(c)    The failure of Mortgagor to duly observe or fulfill or perform any covenant, condition or agreement, other than monetary payments, contained in this Mortgage, the Note or the Loan Documents, and such default shall have remained uncured for a period of thirty (30) days after notification;

(d)    The institution of proceedings by or against Mortgagor under any bankruptcy or insolvency law, or law for the benefit of creditors or relief of debtors; provided, however, the institution of proceedings against Mortgagor shall not be an Event of Default if such proceedings shall be discharged or dismissed within sixty (60) days after the commencement date thereof;

(e)    If any warranty, representation, certification, financial statement or other information made or furnished by Mortgagor at any time in connection with the loan transaction secured hereby shall prove to be false or misleading in any material respect when made;

(f)    [Intentionally omitted]

(g)    Mortgagor shall have transferred or caused to have been transferred title to or possession of any interest in the Premises, or any part thereof (except for leases to residential tenants or laundry rooms), or the making of an installment contract therefor, to any party without the express written consent of the Mortgagee;

(h)    The sale, transfer, conveyance, assignment, pledge, hypothecation or encumbrance of any interest in the ownership of Mortgagor in violation of Section 12(e) herein;

-15-

(i)     The passing of title to or possession of the Premises to a receiver, trustee, or assignee for the benefit of creditors;

(j)     The Mortgagor suffers or permits any waste on the Premises, reasonable wear and tear excepted;

(k)     Mortgagor's failure to maintain the Premises in good repair and to undertake repairs and improvements within thirty (30) days of notification by Mortgagee;

(l)     The Mortgagor fails to comply promptly with  all applicable requirements of the federal, state and municipal governments, or of any department officials or bureaus thereof having jurisdiction, or uses the Premises or property in any way that violates any federal, state or local law ordinance rule regulation or requirement, or any restrictive covenant on the use of the Premises;

(m)     After application by any holder of this Mortgage to two or more fire insurance companies lawfully doing business in the State of New Jersey and issuing policies of fire insurance on comparable buildings situated in the place where the Premises are situated, the companies to which such application has been made refuse to issue such policies;

(n)     The Mortgagor  fails to repair or replace any buildings or improvements damaged by fire or other casualty to the reasonable satisfaction of the Mortgagee to the condition of the property existing immediately  prior to the casualty, or fails to maintain the Premises and property in a rentable and tenantable condition and state of repair recognizing industry standards and with reasonable wear and tear excepted;

(o)     If Mortgagor abandons all or part of the Premises;

(p)     The disassociation, except by death, of Moshael J. Straus from Mortgagor or from the active operation and management of the Premises;

(q)     Any material adverse change in the financial condition of the Mortgagor or its principals and/or Guarantor;

(r)     Any change in the management of the Premises or the management of the Borrower without the prior written consent of the Mortgagee; or

(s)     Any Event of Default under the Note or any other Loan Documents.

**14.     RENTS AFTER DEFAULT:**

(a)     Pursuant to the Assignment of Leases, Mortgagor is simultaneously assigning to Mortgagee the rents, issues and profits of the Premises theretofore accrued and thereafter accruing;

(b)     After an Event of Default, Mortgagor shall hold in trust for Mortgagee the rents,

-16-

issues and profits of the Premises which Mortgagor receives, shall not commingle the same with Mortgagor's other property, and shall pay the same promptly to Mortgagee; and

      (c)    If Mortgagor remains in occupancy of the Premises during a foreclosure action he shall keep the Premises in good repair and condition or Mortgagee shall have the right to have Mortgagor removed; in any event Mortgagor's occupancy shall terminate upon delivery of deed, whether voluntary or in foreclosure.

## 15.   REMEDIES:

      Upon the happening of any one or more of said Events of Default, the entire unpaid balance of the principal, and accrued interest, and all other sums secured by this Mortgage shall at the option of Mortgagee become immediately due and payable without further notice or demand, and in any such Event of Default, Mortgagee may forthwith undertake any one or more of the following:

      (a)    Declare the debt to be immediately due and payable, and thereupon the same shall become immediately due and payable;

      (b)    Recover judgment against Mortgagor for any debt; and neither the recovery of judgment nor the levy of execution thereof on any property, including the Premises, shall affect Mortgagee's rights hereunder or the lien hereof;

      (c)    Enter upon and take possession of the Premises, or have a receiver of the rents, issues and profits thereof appointed, without proof of depreciation in the value of the Premises, inadequacy of the Premises, or insolvency of Mortgagor; and Mortgagee or the receiver may lease the Premises, in the name of Mortgagor, Mortgagee or the receiver, and may receive the rents issues and profits and apply the same:

          (1)    To the payment of expenses of operating, maintaining, repairing and improving the Premises, including renting commission and rental collection commissions paid to an agent of Mortgagee or of the receiver; and/or

          (2)    On account of the Note, in such order and in such amounts as Mortgagee or the receiver determines, but while in possession of the Premises, Mortgagee or the receiver shall be liable to account only for the rents, issues and profits actually received; and/or

      (d)    Take such other action to protect and enforce Mortgagee's rights hereunder and the lien hereof, as Mortgagee deems advisable, including:

          (1)    The foreclosure hereof, subject, at Mortgagee's option, and upon the filing of a Complaint in Foreclosure, Mortgagee shall be entitled to the appointment of a receiver of the rents of the Premises without the necessity of either inadequacy of the security or insolvency of the Mortgagor or any person who may be legally or equitably liable to pay money secured by this Mortgage, and the Mortgagor and each person waive such proof and consent to the appointment of

CONFIDENTIAL          ASCENDSMP023338

such receiver; and in any proceeding to enforce any liability of the debt, Mortgagor shall not assert as a defense that Mortgagee failed to foreclosure any such rights or that any such rights adversely affected the value of the Premises; and

(2) The sale of the Premises, in a foreclosure proceeding, and without obligation to have the Premises marshalled.

## 16. MORTGAGEE'S RIGHTS CUMULATIVE:

The rights and remedies of Mortgagee hereunder shall be in addition to every other right and remedy now and hereafter provided by law; the rights and remedies of Mortgagee shall be cumulative and not exclusive one or the other; Mortgagee may exercise the same at such times, in such order, to such extent, and as often as Mortgagee deems advisable, and without regard to whether the exercise of one precedes, concurs with, or succeeds the exercise of another; no delay or omission by Mortgagee in exercising a right or remedy shall exhaust or impair the same, or constitute a waiver of, or acquiescence in, the default; and no waiver of a default by Mortgagee shall extend to or affect any other default or impair any right or remedy with respect thereto.

## 17. INDULGENCES AND EXTENSIONS:

Mortgagee may allow Mortgagor any indulgences, forbearances and extensions with respect to the Note, the Premises and Mortgagor's obligations hereunder, may waive compliance with any of the provisions hereof, and may release all or any part of the Premises from the lien hereof, without affecting any obligations under the Note, or the priority of the lien hereof upon the remainder of the Premises.

## 18. ADVANCES BY MORTGAGEE:

Whether or not an Event of Default shall have occurred, if Mortgagor does not pay any amount payable by it under, or fails to comply with any provision of, this Mortgage or the Note, Mortgagee may pay such amount or comply with such provision of, this Mortgage or the Note, and make such expenditures, including reasonable counsel fees, in connection therewith and with enforcing this Mortgage and the Note, for repairing, maintaining and preserving the Premises, for establishing, preserving, protecting and restoring the priority of the lien hereof, for obtaining official tax searches of the Premises, for protecting and preserving any use being made of the Premises now or hereafter, and for advances to any trustee or receiver of the Premises, as Mortgagee deems advisable; each amount so paid or expended, with interest at the rate stated in the Note, shall become part of the Note and be secured hereby; and Mortgagor shall pay to Mortgagee, on demand, the amount of each such payment or expenditure with interest at the rate stated in the Note; but no such payment or compliance by Mortgagee shall constitute a waiver of Mortgagor's failure so to do or affect any right or remedy of Mortgagee with respect thereto.

## 19. WASTE - IMPAIRMENT OF SECURITY:

-18-

The Mortgagor shall abstain from the commission of intentional destruction or legal waste on the Premises and shall not remove, alter, or demolish any building on the land and shall not remove or demolish any fixtures or personal property covered by this Mortgage without the written consent of the Mortgagee which consent shall not be unreasonably withheld. The Mortgagor covenants and agrees with the Mortgagee and the successors and assigns of the Mortgagee that the Mortgagor will keep and maintain the Premises and all improvements thereon and all personal property included in this mortgage in a good condition and complete state of repair and will promptly comply with all the requirements of the Federal, State, and Municipal governments or of any departments or bureaus thereof having jurisdiction; that neither the value of the Premises nor the lien of this Mortgage will be diminished or impaired in any way by any act or omission of the Mortgagor; and that the Mortgagor will not do or permit to be done to, in, upon or about said Premises or any part thereof, anything that may in any way substantially impair the value thereof, or substantially weaken, diminish, or impair the security of this Mortgage; provided, however, that the Mortgagor may replace obsolete or outworn items of fixtures or personal property by similar items of equal or greater value and utility, in accordance with sound practice ordinarily employed by prudent and diligent owners of similar real property. This Section is based upon industry standards and with reasonable wear and tear excepted;

## 20.   NOTICES:

No notice, request, consent, approval, waiver or other communication under this Mortgage or the Note shall be effective unless, but any communication shall be effective and shall be deemed to have been given, if the same is in writing and is mailed by certified mail, return receipt requested, postage prepaid, or by nationally recognized overnight courier, addressed:

(a)    To Mortgagor at Mortgagor's address as it then appears on Mortgagee's records (as the same may be changed by Mortgagor by written notice to Mortgagee in accordance with this Section 20); and

(b)    To Mortgagee, at its principal office as stated on page one hereof, or such other address as Mortgagee designates.

## 21.   INSPECTION:

Mortgagee shall have the right to conduct inspections of the interior and exterior of the Premises from time to time. Mortgagor agrees to undertake and complete such repairs and improvements to the Premises as required by Mortgagee based upon such inspections. All such repair and improvement work shall be undertaken promptly within thirty (30) days of Mortgagee's request, weather permitting.

## 22.   INTENTIONALLY OMITTED.

## 23.   PREPAYMENT:

Bergen County Clerk
CONFIDENTIAL

The principal sum evidenced by the Note may not be prepaid, in whole or in part, at any time during the Loan Term, other than as provided by the terms set forth in the Note.

## 24. NO CREDIT FOR TAXES:

Mortgagor will not claim or demand or be entitled to receive any credit or credits on the principal indebtedness to secure payment of which this Mortgage is made, or on the interest payable thereon, for so much of the taxes assessed against said Premises as is equal to the tax rate applied to the principal indebtedness due on this Mortgage or any part thereof, and no deduction shall be claimed form the taxable value of said Premises by reason of this Mortgage.

## 25. SUCCESSORS AND ASSIGNS:

The provisions hereof shall bind and inure to the benefit of Mortgagor and Mortgagee and their respective successors and assigns.

## 26. COUNSEL FEES:

If Mortgagee becomes a party (by intervention or otherwise) to any action or proceeding affecting the Premises or the title thereto or Mortgagee's interest under this Mortgage, or employs an attorney to collect any of the indebtedness or to enforce performance of the obligations, covenants and agreements secured hereby, or to advise Mortgagee with respect to its rights and remedies hereunder and under the Note in case of an Event of Default or threatened Event of Default, Mortgagor shall reimburse Mortgagee forthwith, upon written notice, and without further demand, for all reasonable costs, charges and counsel fees incurred by Mortgagee in any such case, whether or not suit be commenced, and the same shall be added to the principal sum secured hereby as a further charge and lien upon the Premises and shall bear interest at the rate provided for in the Note.

## 27. TAXATION OF NOTE AND MORTGAGE:

If at any time before the Note hereby secured is fully paid any law of the State of New Jersey shall be enacted deducting from the value of the real estate for the purposes of taxation, the amount of any lien thereon, or imposing upon the Mortgagee the payment of the whole or any part of the taxes or assessments or charges or liens herein required to be paid by the Mortgagor or revising or changing in any way the laws relating to the taxation of mortgages or debts secured by mortgages or the Mortgagee's interest in the Premises or the manner of collection of taxes so as to affect adversely this Mortgage or the debt hereby secured, or the owner and holder thereof in respect thereto, then and in any such event, the Mortgagor, upon demand by the Mortgagee, shall pay such taxes or assessments or reimburse the Mortgagee therefore; provided, however, that if, in the opinion of counsel for the Mortgagee, (a) it might be unlawful to require Mortgagor to make such payment; or (b) the making of such payment might result in the imposition of interest beyond the maximum amount permitted by law, then, and in such event, the Mortgagee may elect, by notice in writing given to the Mortgagor, to declare all the indebtedness secured hereby to be and become due and payable within sixty (60) days from the giving of such notice. Notwithstanding the foregoing,

CONFIDENTIAL                                                                              ASCENDSMP023341

it is understood and agreed that Mortgagor is not obligated to pay any portion of Mortgagee's federal or state income taxes.

**28.    FURTHER ASSURANCES:**

At any time, and from time to time, upon request by the Mortgagee, the Mortgagor will make, execute, acknowledge and deliver or cause to be made, executed, acknowledged and delivered to the Mortgagee any and all further instruments, mortgages, conveyances, deeds, certificates, and other documents as may, in the reasonable opinion of the Mortgagee, be necessary or desirable in order to effectuate, complete, confirm or perfect or to continue and preserve the obligation of the Mortgagor under the Note and the lien of this Mortgage. Upon any failure by the Mortgagor so to do, the Mortgagee may make, execute and record any and all such instruments, certificates and documents for and in the name of the Mortgagor and the Mortgagor hereby irrevocably appoints the Mortgagee the agent and attorney-in-fact of the Mortgagor so to do. The Mortgagor agrees to pay all filing, registration and recording fees and all federal, state, county and municipal stamp taxes or other duties, imposts, assessments and charges on all such instruments, certificates and documents.

**29.    DECLARATION OF NO SET-OFFS:**

Within ten (10) days after requested to so by Mortgagee, Mortgagor shall certify to Mortgagee or to any proposed assignee of Mortgagee in writing duly acknowledged, the amount of principal, interest, and other charges then owing on the obligation secured by this Mortgage and by any prior liens, if any, whether there are any set-offs or defenses against them and whether any default has been asserted by any tenant of the Premises.

**30.    SECURITY AGREEMENT:**

This Mortgage creates a security interest in the personal property included in the Premises and constitutes a security agreement under the New Jersey Uniform Commercial Code. Mortgagor, at its expense, shall execute, file and refile such financing statements or other security agreements as Mortgagee shall require from time to time with respect to personal property included in the Premises.

**31.    SEVERABILITY:**

In case any one or more of the covenants, agreements, terms or provisions contained in the Mortgage or the Note shall be invalid, illegal or unenforceable in any respect, the validity of the remaining covenants, agreements, terms or provisions contained herein and in the Note shall be in no way affected, prejudiced or disturbed hereby.

**32.    GOVERNING LAW:**

This Mortgage has been executed and delivered in the State of New Jersey and is to be

-21-

CONFIDENTIAL                                                                                        ASCENDSMP023342

construed and enforced according to and governed by the Law of said State of New Jersey.

**33.    MODIFICATION:**

This Mortgage cannot be changed or modified except by agreement between the parties signed and acknowledged for recordation. The parties to this Mortgage may agree to change the interest rate, due date or other terms or conditions of this Mortgage or the obligation secured by this Mortgage. If the parties agree to a change, such change shall be deemed a "modification" as defined in N.J.S.A. 46:9-8.1d., and this Mortgage shall be subject to the priority provisions of that statute.

**34.    ASSUMPTION:**

This Mortgage is not assumable.

**35.    FORBEARANCE BY MORTGAGEE NOT A WAIVER:**

Any forbearance by Mortgagee in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**36.    LOAN CHARGES:**

Any and all payments under the Loan Documents, including without limitation, the Interest Rate, Default Rate, late charges, Prepayment Premium and any other charges or amounts due hereunder constitute material covenants of the Loan and are: (1) a material inducement for the Lender to enter into this Loan; (2) the Lender would not have entered into this Loan without the Borrower's agreement and covenant to make the payments as specified in the Loan Documents; (3) some additional payments, such as the Default Rate, are deemed by the Lender as compensation to the Lender for the increased risk associated with this Loan not being timely repaid and (4) the additional payments represent reasonable estimates to the Lender in allocating its resources (both personnel and financial) to the ongoing review, monitoring, administration and collection of the Loan.

If the loan secured by this Mortgage is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Mortgagor which exceeded permitted limits will be refunded to Mortgagor. Mortgagee may choose to make this refund be reducing the principal owed under the Note or by making a direct payment to Mortgagor. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**37.    SECURITY DEPOSITS:** All security deposits for tenants on the Premises shall be maintained by the Mortgagor in a designated account with the Mortgagee.

-22-

**38.    WAIVER OF JURY TRIAL:**

MORTGAGOR AND MORTGAGEE AGREE THAT ANY SUIT, ACTION OR PROCEEDING, WHETHER CLAIM OR COUNTERCLAIM, BROUGHT BY MORTGAGEE OR MORTGAGOR ON OR WITH RESPECT TO THIS MORTGAGE OR ANY OTHER LOAN DOCUMENT OR THE DEALINGS OF THE PARTIES WITH RESPECT HERETO OR THERETO, SHALL BE TRIED ONLY BY A COURT AND NOT BY A JURY. MORTGAGEE AND MORTGAGOR EACH HEREBY KNOWINGLY, VOLUNTARILY, INTENTIONALLY AND INTELLIGENTLY, AND WITH THE ADVICE OF THEIR RESPECTIVE COUNSEL, WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY SUCH SUIT, ACTION OR PROCEEDING. FURTHER, MORTGAGOR WAIVES ANY RIGHT IT MAY HAVE TO CLAIM OR RECOVER, IN ANY SUCH SUIT, ACTION OR PROCEEDING, ANY SPECIAL EXEMPLARY, PUNITIVE, CONSEQUENTIAL OR OTHER DAMAGES OTHER THAN, OR IN ADDITION TO, ACTUAL DAMAGES.   MORTGAGOR ACKNOWLEDGES AND AGREES THAT THIS SECTION IS A SPECIFIC AND MATERIAL ASPECT OF THIS MORTGAGE AND THAT MORTGAGEE WOULD NOT EXTEND CREDIT TO MORTGAGOR OR BORROWER (AS APPLICABLE) IF THE WAIVERS SET FORTH IN THIS SECTION WERE NOT A PART OF THIS MORTGAGE.

**39.    JURISDICTION:**

Mortgagor hereby submits to the personal jurisdiction of the courts of the State of New Jersey for any matters relating to this Mortgage and the Loan Documents.

**40.    MORTGAGE COMMITMENT:**

This Mortgage Commitment and all of its provisions shall survive closing of the Loan.

**41.    INDEMNIFICATION:**

Mortgagor shall indemnify, defend and hold Lender harmless from and against any and all losses, liabilities, claims, damages, expenses, obligations, penalties, actions, judgments, suits, costs and disbursements (including the reasonable fees and actual expenses of Lender's counsel) of any kind or nature whatsoever in connection with (1) any inspection, review or testing of or with respect to the Premises, (2) any investigative, administrative, mediation, arbitration, or judicial proceeding, whether or not Lender is designated a party thereto, commenced or threatened at any time (including after the repayment of the Loan) in any way related to the execution, delivery or performance of any loan document or to the Premises, (3) any proceeding instituted by any person or entity claiming a lien, and (4) any brokerage commissions or finder's fees claimed by any broker or other party in connection with the Loan, the Premises, or any of the transactions contemplated in the loan documents.

-23-

MORTGAGOR HEREBY DECLARES AND ACKNOWLEDGES THAT HE HAS RECEIVED, WITHOUT CHARGE, A TRUE COPY OF THIS MORTGAGE AND SECURITY AGREEMENT.

Schedules Attached:
A - Premises

IN WITNESS WHEREOF, the Mortgagor has executed this Mortgage and Security Agreement the day and year first above written.

MORTGAGOR:
LENOX TEMPLE LLC
a NJ limited liability company

By: Lenox  Real Estate Holdings LLC
its Managing Member

By:  Ascend RE Partners II, LLC
its Managing Member

By _____
Moshael J. Straus, Managing Member

−24−

CONFIDENTIAL                                                                                                      ASCENDSMP023345

## SCHEDULE A

LEGAL DESCRIPTION

−25−

## Stewart Title Guaranty Company

### TITLE INSURANCE POLICY

**Policy Number:** M-9302-003785256
**File Number:** MTANJ-092988

### DESCRIPTION

The land referred to in this Policy is described as follows:

All that certain lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the City of Hackensack, County of Bergen, State of New Jersey.

BEING known as Lots 18, 19, 20, 21, 22 and 23 as shown on a certain map entitled "Map of Property of Anderson and Ward, City of Hackensack, Bergen County, New Jersey" duly filed in the Bergen County Clerk's Office May 25, 1872 as Map No. 196.

BEGINNING at a point in the northeasterly line of Temple Avenue (50 foot ROW), said point being distant 471.54 feet northwesterly its intersection with the northwesterly line of Hackensack Avenue, and running; thence

1. North 43 degrees 10 minutes 00 seconds West, 300.00 feet to a point; thence

2. North 46 degrees 50 minutes 00 seconds East, 212.93 feet to a point; thence

3. South 43 degrees 04 minutes 10 seconds East, 300.00 feet to a point; thence

4. South 46 degrees 50 minutes West, 21.42 feet to the point and place of BEGINNING.

The above description is in accordance with a survey made by Hallard & Associates dated April 20, 2007.

NOTE:  Being Lot(s) 11, Block 511, Tax Map of the City of Hackensack, County of Bergen.

NOTE:  Lot and Block shown for informational purposes only.

Issued by:
**Madison Title Agency, LLC**
**1125 Ocean Avenue, Lakewood, NJ 08701**
**Telephone: 732-905-9400  Fax: 732-905-9420**

ALTA Loan Policy (6/17/06)                                                                                                          092988

CONFIDENTIAL                                                                                          ASCENDSMP023347

## ACKNOWLEDGEMENT

STATE OF NEW JERSEY

SS.:

COUNTY OF ESSEX

On this 15th day of November, 2013, before me, the undersigned, personally appeared Moshael J. Straus, who signed the foregoing instrument, and did acknowledge under oath, to my satisfaction, that:

(a)    he is the Managing Member of the entity named in the foregoing instrument;

(b)    he signed and delivered the foregoing instrument in their capacity as such Managing Member; and

(c)    the foregoing instrument is the duly authorized, voluntary act and deed of such entity.

**MICHAEL L. DONINI**
**NOTARY PUBLIC OF NEW JERSEY**
**Commission Expires 6/29/2018**

BE:2590813.2/CUS031-266088

| MORTGAGE AND SECURITY AGREEMENT | : :: | Dated: November 15, 2013 |
|---|---|---|

| | : | |
|---|---|---|
| LENOX TEMPLE LLC | : | |
| | : | |
| | : | |
| Mortgagor, | : | Lot 11,  Block 511 |
| | . | Hackensack, New Jersey |
| TO | : | |
| CUSTOMERS BANK | : | |
| | : | |
| | : | |
| Mortgagee | : | |

Record and Return To:
Allen J. Popowitz, Esq.
Brach Eichler L.L.C.
101 Eisenhower Parkway
Roseland, New Jersey  07068

Record and Return
MADISON TITLE AGE
COMMERCIAL
1125 OCEAN A
LAKEWOOD, NJ
09 2938

BE:2590813.2/CUS031-266088